## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| R.F.M., T.D., S.W., and D.A.F.A., on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v .<br><br>KIRSTJEN NIELSEN, in her capacity as Secretary of the Department of Homeland Security; LEE FRANCIS CISSNA, in his capacity as Director of United States Citizenship and Immigration Services; BARBARA VELARDE, in her capacity as Chief of the Administrative Appeals Office of United States Citizenship and Immigration Services; ROBERT M. COWAN, in his capacity as Director of the United States Citizenship and Immigration Services National Benefits Center; THOMAS CIOPPA, in his capacity as Director of the United States Citizenship and Immigration Services New York City District Office; EDWARD NEWMAN, in his capacity as Director of the United States Citizenship and Immigration Services Buffalo District Office; DANIEL RENAUD, in his capacity as Associate Director of United States Citizenship and Immigration Services Field Operations Directorate; GWYNNE DINOLFO, in her capacity as United States Citizenship and Immigration Services Albany Field Office Director; GINA PASTORE, in her capacity as United States Citizenship and Immigration Services Brooklyn Field Office Director; CARMEN WHALING, in her capacity as United States Citizenship and Immigration Services Buffalo and Syracuse Field Office Director; ELIZABETH MILLER, in her capacity as United States Citizenship and Immigration Services Long Island Field Office Director; WILLIAM BIERMAN, in his capacity as United States Citizenship and Immigration Services New York Field Office Director; and BRIAN MEIER, in his capacity as United States Citizenship and Immigration Services Queens Field Office Director,<br><br>    Defendants. | 18 Civ. 5068<br><br><br>COMPLAINT |

R.F.M., T.D., S.W., and D.A.F.A. ("Plaintiffs"), on behalf of themselves and all other similarly situated individuals (the "Proposed Class"), bring this action to challenge the wrongful denial of Special Immigrant Juvenile Status ("SIJS") on the ground that the U.S. Citizenship and Immigration Services' ("USCIS") recent processing of the Plaintiffs' SIJS petitions—and those of SIJS petitioners in New York who applied or who will apply for SIJS based on orders obtained from New York's Family Court between their 18th and 21st birthdays—violates the Administrative Procedure Act, 5 U.S.C. § 706(2), and for their Complaint hereby allege as follows:

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................1

PARTIES ....................................................................5

    I.      Plaintiffs.................................................5
    II.     Defendants ...............................................6

JURISDICTION AND VENUE ......................................................8

THE SIJS PROGRAM AND RELEVANT NEW YORK FAMILY LAW ..................................8

    I.      The SIJS Statute Grants Humanitarian Relief To Vulnerable Immigrant Youth Under The Age Of 21 Who Have Been Declared Dependent On A Juvenile Court ................................................8

        A.     History Of The SIJS Statute And USCIS Policy: Dependency *Or* Custody ...........................................8

        B.     History Of The SIJS Statute And Federal Regulation: Juvenile Courts, And Deference to State Law ...........................11

NEW YORK FAMILY COURT IS A "JUVENILE COURT" WITH JURISDICTION TO ISSUE ORDERS FOR CHILDREN BETWEEN THEIR 18TH AND 21ST BIRTHDAYS...........13

    I.      USCIS's Change In Policy....................................14
    II.     Irreparable Harm To The Plaintiff Class ........................17

USCIS'S CHANGE IN POLICY VIOLATES THE ADMINISTRATIVE PROCEDURE ACT.............................................................18

    I.      USCIS Misinterprets Federal and New York Law With Respect to Family Court's Jurisdiction Over The Custody Of Petitioners Between Their 18th And 21st Birthdays..................................19

        A.     USCIS Misinterprets Federal Law When It Concludes That The Family Court Must Have Jurisdiction Over The Custody Of Petitioners Between Their 18th And 21st Birthdays To Qualify As A "Juvenile Court"........................................19

        B.     USCIS Misinterprets New York Law To Claim That The Family Court Lacks Jurisdiction Over The Custody And Care Of Juveniles ........21

II.      USCIS Misinterprets Federal And New York Law With Respect To The
         Family Court's Determination That Reunifying The Petitioners With Their
         Parents Is Not Viable ...........................................................................................24

         A.      USCIS Misinterprets The Law When It Concludes That The
                 Family Court Must Have The Ability To Reunify The Petitioners
                 With Their Parents ...................................................................................24

         B.      USCIS Improperly Concludes That The Family Court Lacks Actual
                 Authority To Find That Reunification Is Not Viable.................................25

III.     USCIS'S Change In Policy Violates The APA Because It Is Unsupported By
         Reasoned Explanation And Results In Vastly Different Outcomes For Similarly
         Situated SIJS Petitioners .....................................................................................27

         A.      USCIS Has Failed to Provide an Adequate Basis and Explanation for
                 its New Policy ..........................................................................................27

         B.      USCIS's New Policy Arbitrarily Treats Similarly Situated SIJS
                 Petitioners Differently...............................................................................29

IV.      USCIS Has Violated The APA By Adopting Its New Policy Without
         Adequate Notice....................................................................................................30

PLAINTIFF FACTS ......................................................................................................31

   I.    USCIS's Denial Of R.F.M.'s SIJS Application....................................................31

   II.   USCIS's Denial Of T.D.'s SIJS Application ........................................................34

   III.  USCIS's Denial Of Plaintiff S.W.'s SIJS Application .........................................37

   IV.   USCIS's Denial Of Plaintiff D.A.F.A.'s SIJS Application ..................................40

CLASS ACTION ALLEGATIONS ...............................................................................44

CLAIM FOR RELIEF ....................................................................................................47

PRAYER FOR RELIEF .................................................................................................48

## PRELIMINARY STATEMENT

1.      R.F.M., T.D., S.W., and D.A.F.A. are 19 or 20 year-old immigrant children[1] who have been determined by New York State's Family Court ("Family Court") to have been abused, abandoned or neglected by one or both of their parents: (i) R.F.M. is a 20 year-old from the Dominican Republic who was abandoned by both parents and has lived in the care of her grandmother in the Bronx since she was an infant; (ii) T.D. is a 20 year-old from Haiti who was abused by family members and hospitalized for depression, but who has since been taken under the wing of the principal of her high school and strives for an education and the chance to work; (iii) S.W. is a 20 year-old who was bounced from home to home after being abandoned by her parents to the care of a grandmother, who was then killed in a random act of violence in S.W.'s native Jamaica; and (iv) D.A.F.A., who was born in El Salvador, is a 19 year-old who was abandoned by his father and fled gang violence in his home country.  The Family Court has appointed a guardian on each plaintiff's behalf and found that it would not be in each plaintiff's best interest to be returned to his or her country of origin.

2.      Until a recent change in USCIS policy, each of these Plaintiffs would have been found eligible for SIJS, a form of humanitarian immigration relief that provides a path to legal permanent residence and citizenship.  Instead, USCIS has denied each of their applications, as well as the applications of other members of the Proposed Class, for one of two related reasons never seen previously, challenging the authority of the Family Court on issues of child welfare under state law.

---

[1] Throughout this Complaint, when Plaintiffs and the Proposed Class are referred to as "children" or "minors", those terms are used in accordance with the Immigration and Nationality Act and the New York Family Law, respectively. *See* 8 U.S.C. § 1101(b)(1) (defining a child in part as an unmarried individual under the age of 21); N.Y. Fam. Ct. Act § 661(a) (defining the terms "infant" or "minor" for guardianship purposes to "include a person who is less than twenty-one years old who consents to the appointment or continuation of a guardian after the age of eighteen").

3.      Congress enacted the statute creating the SIJS program in 1990.  To apply for SIJS, an immigrant youth must (1) be under the age of twenty-one; (2) be unmarried; (3) have been declared dependent on a state juvenile court (such as by being appointed a guardian) or placed in the custody of a state agency or individual appointed by the court; (4) obtain a finding that reunification with one or both parents is not viable because of abuse, neglect or abandonment, or a similar basis found under state law; and (5) obtain a finding that it would not be in their best interests to be returned to their country of origin (collectively, the "SIJS Eligibility Findings" which are issued in a state court's Special Findings Order, or "SFO").  *See* 8 U.S.C. § 1101(a)(27)(J) (providing requirements (3)-(5) above) ("SIJS Statute"); 8 U.S.C. § 1232(d)(6) (providing that a SIJS petition may not be denied on the basis of age if the petitioner was a "child"—that is, unmarried and under the age of 21, 8 U.S.C. § 1101(b)(1)—at the time of filing).

4.      Recently, USCIS has asserted two new bases for denying petitioners between their 18th and 21st birthdays SIJS: first, that the Family Court no longer qualifies as a "juvenile court" as that term is defined in the Immigration and Nationality Act, because the Family Court lacks jurisdiction over the custody of petitioners between their 18th and 21st birthdays; and second, that the Family Court lacks the authority to reunify petitioners between their 18th and 21st birthdays with a parent. Ex. 8, Decl. of Eve Stotland at ¶ 11.

5.      These are both novel and unjustified interpretations of the SIJS Statute and New York law.  First, the SIJS Statute requires a finding that the petitioner is either dependent on a juvenile court *or* has been subject to a custody determination—there is no requirement that the juvenile court in fact render, or even have authority to render, a custodial determination for the child.  A finding that the petitioner is dependent on the court suffices.  Even if there were such a requirement, it would be satisfied here, as the Family Court's guardianship orders issued to

2

children between 18 and 21 necessarily involve the adjudication of physical custody rights and are the functional equivalent of determinations of legal custody under New York law.  Second, as to the reunification argument, the SIJS Statute does not contain any requirement that the state court possess the legal authority to order the reunification of a prospective SIJS applicant with his or her parent.  Rather, the statute merely requires that the state court render a factual finding that reunification is not viable.  But again, even if USCIS policy was that the SIJS Statute requires a state court to possess the authority to order reunification for children between 18 and 21, it would be satisfied under New York law.

6.     Over the last decade, USCIS applied the SIJS Statute in its current form to provide humanitarian relief to thousands of vulnerable immigrant children residing in New York, including children between their 18th and 21st birthdays.  Now, suddenly, USCIS has reversed its policy, harming this vulnerable population by depriving them of benefits to which they are entitled by statute.  In rejecting the New York Family Court orders on which SIJS petitioners have relied for a decade, USCIS is acting arbitrarily and capriciously, not in accordance with law, and in excess of its statutory authority, thereby violating the SIJS Statute and the Administrative Procedure Act, 5 U.S.C. § 706(2), in the following ways:

     a.   *First*, USCIS's policy change is premised on erroneous interpretations of federal and state law.

     b.   *Second*, USCIS's new policy—even if it were permissible under federal and state law (which it is not)—is arbitrary because it is unsupported by reasoned explanation and results in vastly different outcomes for similarly situated SIJS petitioners.

     c.   *Third*, USCIS adopted its new policy without adequate notice, despite the serious reliance interests at stake.

7.      Through the SIJS Statute, Congress provided thousands of young immigrants with the opportunity to obtain lawful permanent residence and access to an array of critical benefits that include pursuing higher education and employment opportunities, obtaining driver's licenses, serving in the U.S. military, supporting their families, and living securely without fear of removal and deportation.  In New York, in accordance with Congress's intent in enacting and expanding the SIJS Statute,[2] SIJS provides stability, safety and permanency.  The impact of SIJS extends beyond the SIJS recipients themselves (each of whom already faces the adversity associated with having being abused, neglected or abandoned at a young age) to the communities in which these young immigrants reside.  SIJS provides stability and a sense of permanence within the SIJS recipients' communities, schools, and local economies.  SIJS recipients become productive members of the workforce in the local economies.

8.      The severity of the impact of USCIS's policy change cannot be overstated.  The unlawful policy change has had the practical effect of depriving immigrant youth who have been abused, neglected or abandoned by a parent a pathway to legal permanent residence and citizenship solely because they were between 18 and 21 when the New York Family Court issued their SFOs.  Furthermore, by doing so without notice or reasoned explanation, the USCIS is unsettling longstanding expectations and generating anxiety among children who have, by definition, already suffered emotional trauma.

---

[2] As explained *infra*, Congress expanded the scope of SIJS eligibility when it enacted the Trafficking Victims Protection Reauthorization Act of 2008.

## PARTIES

### I.    PLAINTIFFS

9.       Plaintiff R.F.M. is 20 years old and has lived in the Bronx, New York, with her grandmother since she was about 8 months old.  Ex. 1, Decl. of R.F.M. at ¶¶ 3-4.  On March 15, 2018, the USCIS National Benefits Center Director arbitrarily denied R.F.M.'s application for SIJS.  As its justification for denial, USCIS stated, in part, "[b]ecause [R.F.M was] over eighteen when the [Family Court] orders were issued, [she] did not provide an order from a juvenile court making a custody and care determination for a juvenile."  Ex. 1 Appendix G, USCIS Denial of R.F.M.'s Application for SIJS at 3.

10.      Plaintiff T.D. is 20 years old and has lived in Brooklyn, New York, since age 14.  Ex. 2, Decl. of T.D. at ¶ 4.  On October 31, 2016, both T.D. and her younger sister obtained orders from the Family Court regarding their eligibility for SIJS.  *See* Ex. 2 Appendix B, Oct. 31, 2016 Special Findings Order of T.D.  T.D. and her younger sister applied for SIJS together in 2016 when T.D. was 18 years old and her sister was 16 years old.  Their applications were virtually identical— except for differences in age and mothers.  On May 22, 2017, USCIS approved T.D.'s sister's application but on March 13, 2018, USCIS arbitrarily denied T.D.'s substantially identical application.  *See* Ex. 2 Appendix K, USCIS Acceptance of T.D.'s Sister's Application for SIJS; Appendix J, USCIS Denial of T.D.'s Application for SIJS.  As its justification for denial, USCIS stated, in part, "[b]ecause [T.D. was] over eighteen, [she] did not provide an order from a juvenile court making a custody and care determination for a juvenile."  Ex. 2 Appendix J, USCIS Denial of T.D.'s Application for SIJS at 3.

11.      Plaintiff S.W. is 20 years old and lives in Brooklyn, New York, with her aunt.  Ex. 3, Decl. of S.W. at ¶ 2.  On March 6, 2018, the USCIS National Benefits Center Director arbitrarily denied S.W.'s application for SIJS.  As its justification for denial, USCIS stated, in part, "[b]ecause

[S.W.] was eighteen, [she] did not provide an order from a juvenile court …declar[ing her] dependent on a juvenile court."  Ex. 3 Appendix H, USCIS Denial of S.W.'s Application for SIJS at 3.

12.     Plaintiff D.A.F.A. is 19 years old and lives in Central Islip, New York, with his mother, who was declared his guardian in 2017.  Ex. 4, Decl. of D.A.F.A. at ¶¶ 2, 8-9.  On March 7, 2018, the USCIS National Benefits Center Director arbitrarily denied D.A.F.A.'s application for SIJS.  As its justification for denial, USCIS stated, in part, "[b]ecause [D.A.F.A.] was over eighteen, [he] did not provide an order from a juvenile court making a custody and care determination for a juvenile." Ex. 4 Appendix F, USCIS Denial of D.A.F.A.'s Application for SIJS at 3.

## II.     DEFENDANTS

13.     Defendant Kirstjen Nielsen is named in her official capacity as the Secretary of the Department of Homeland Security ("DHS"), the agency responsible for adjudicating the appeals of Plaintiffs' SIJS denials.  Defendant Nielsen supervises Defendant Cissna.  Defendant Nielsen's office address is Nebraska Avenue Complex, 3801 Nebraska Ave NW, Washington, D.C.

14.     Defendant Lee Francis Cissna is named in his official capacity as Acting Director of USCIS, an agency within DHS that is responsible for the adjudication of applications under the immigration laws, including the SIJS petitions submitted by Plaintiffs.  Defendant Cissna supervises Defendant Verlade.  Defendant Cissna's office is located at 20 Massachusetts Avenue NW, Washington, D.C.

15.     Defendant Barbara Velarde is named in her official capacity as Acting Chief of the Administrative Appeals Office of USCIS, which issues final agency decisions by dismissing certain Proposed Class members' appeals of the District Director's SIJS denials.  Defendant Verlade's office is located at 20 Massachusetts Avenue NW, Washington, D.C.

16.     Defendant Robert M. Cowan is named in his official capacity as Director of the USCIS National Benefits Center, which permits the Proposed Class members' SIJS denials. Defendant Cowan's office is located at 850 NW Chipman Rd., #5000, Lee's Summit, MO.

17.     Defendant Thomas Cioppa is named in his official capacity as Director of the USCIS New York District Office, which permits the Proposed Class members' SIJS denials. Defendant Cioppa's office is located at 26 Federal Plaza, New York City, NY.

18.     Defendant Edward Newman is named in his official capacity as Director of the USCIS Buffalo District Office, which permits certain of the Proposed Class members' SIJS denials.  Defendant Newman's office is located at 306 Delaware Avenue, Buffalo, NY.

19.     Defendant Daniel Renaud is named in his official capacity as Associate Director of USCIS Field Operations Directorate, which oversees the National Benefits Center and domestic regional, district and field offices which issue final agency decisions denying Proposed Class members' SIJS petitions.  Defendant Renaud's office is located at 20 Massachusetts Avenue, NW, Washington, D.C.

20.     Defendant Gwynne Dinolfo is named in her official capacity as Director of the USCIS Albany Field Office, which permits certain of the Proposed Class members' SIJS denials. Defendant Dinolfo's office is located at 1086 Troy-Schenectady Rd., Latham, NY.

21.     Defendant Gina Pastore is named in her official capacity as USCIS Brooklyn Field Office Director, which permits certain of the Proposed Class members' SIJS denials.  Defendant Pastore's office is located at 26 Federal Plaza, New York, NY.

22.     Defendant Carmen Whaling is named in her official capacity as USCIS Buffalo and Syracuse Field Office Director, which permit certain of the Proposed Class members' SIJS denials.

Defendant Whaling's offices are located at 306 Delaware Avenue, Buffalo, NY and 213 South Salina Street, Syracuse, NY.

23.     Defendant Elizabeth Miller is named in her official capacity as USCIS Long Island Field Office Director, which permits certain of the Proposed Class members' SIJS denials. Defendant Miller's office is located 30 Barretts Avenue, Holtsville, NY.

24.     Defendant William Bierman is named in his official capacity as USCIS New York Field Office Director, which permits certain of the Proposed Class members' SIJS denials. Defendant Bierman's office is located at 26 Federal Plaza, New York, NY.

25.     Defendant Brian Meier is named in his official capacity as USCIS Queens Field Office Director, which permits certain of the Proposed Class members' SIJS denials. Defendant Meier's office is located at 26 Federal Plaza, New York, NY.

## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1361 because this case arises under the APA, 5 U.S.C. §§ 551 *et seq*.

27.     Venue properly lies in this District because a substantial part of the events or omissions giving rise to this action occurred in the District.  28 U.S.C. § 1391(b).  Further, Respondents are officers or employees of the United States acting in their official capacity.  *Id.* § 1391(e).

## THE SIJS PROGRAM AND RELEVANT NEW YORK FAMILY LAW

I.     **THE SIJS STATUTE GRANTS HUMANITARIAN RELIEF TO VULNERABLE IMMIGRANT YOUTH UNDER THE AGE OF 21 WHO HAVE BEEN DECLARED DEPENDENT ON A JUVENILE COURT**

A.     **History Of The SIJS Statute And USCIS Policy: Dependency *Or* Custody**

28.     The SIJS Statute, first enacted as part of the Immigration Act of 1990, protects abused and neglected immigrant youth in foster care by offering them a pathway to permanent

residence.  The original language of the statute defined a special immigrant juvenile as "an immigrant (i) who has been declared dependent on a juvenile court located in the United States and has been deemed eligible by that court for long-term foster care, and (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence . . . ."  Immigration Act of 1990, Pub. L. No. 101-649, § 153, 104 Stat. 4978 (1990).  Although the statute initially required a declaration that an immigrant was *dependent* on a juvenile court, Congress modified the Special Immigrant Juvenile definition in 1994 to include individuals who had been "legally *committed to*, or placed under the *custody* of, a[] [state] agency or department."  Immigration and Technical Corrections Act of 1994, Pub. L. No. 103-416, § 219, 108 Stat. 4316 (1994) (emphasis added).  While the statute did not specify the relevant age, it was interpreted by the Immigration and Naturalization Service (predecessor agency to USCIS) to apply to any individual under the age of 21 who otherwise met the SIJS criteria.  *See* Special Immigrant Status, 58 Fed. Reg. 42843, 42850 (Aug. 12, 1993) (codified at 8 C.F.R. § 204.11).

29.     The Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA") dramatically expanded the scope of SIJS by removing the requirement that the immigrant minor be eligible for foster care and modifying the reunification requirement.  Under the TVPRA, a finding that "reunification with 1 *or* both of the immigrant's parents is not viable due to abuse, neglect, or abandonment, or a similar basis found under State law" was sufficient.  Pub. L. No. 110-457, § 235, 122 Stat. 5080 (2008) (emphasis added).[3]  In addition, the TVPRA explicitly provided that a qualifying immigrant could apply for SIJS until the age of 21, consistent with the

---

[3] In addition, an applicant need not show that he or she is dependent on the juvenile court or commitment to a state agency or department if the applicant could show that the juvenile court placed him or her in the care of an "individual or entity appointed by a State or juvenile court located in the United States."

9

INA's definition of "child," and that such applications could not be rejected on the basis of the applicant's age, even if he or she turned 21 while his SIJS petition was pending.  *Id.*

30.    The TVPRA thus made SIJS an integral federal humanitarian initiative for thousands of immigrant youth.  Whether in foster care, or otherwise determined to be dependent on a juvenile court, SIJS was now designed to help all qualified immigrant children obtain safe and stable homes and brighter futures.

31.    A "special immigrant juvenile" is defined today, in relevant part, as "an immigrant who is present in the United States—

> (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law; [and]
>
> (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence . . . ."

*See* 8 U.S.C. § 1101(a)(27)(J).

32.    The current SIJS Statute, therefore, sets forth three alternative predicates regarding the petitioner's relationship to a state juvenile court: (i) the applicant must be declared dependent on a "juvenile court" (*e.g.*, through a guardianship order); *or* (ii) a "juvenile court" must have legally committed or placed the child under the custody of the state (*i.e.*, foster care); *or* (iii) the applicant was placed under the custody of an individual or entity appointed by the "juvenile court." *See* 8 U.S.C. § 1101(a)(27)(J).[4]

--------

[4] As noted below, the statute does not define the term "juvenile court."

33.    USCIS guidance and policy manuals for many years have affirmed that SIJS should be granted when the state court makes a custody determination *or when the petitioner is declared dependent on the court*.  In fact, as recently as 2016, USCIS reiterated in its own Policy Manual—which remains current today—that a state court order is sufficient so long as it contains findings about "dependency *or* custody."  *See* Ex. 11, USCIS POLICY MANUAL, vol. 6, pt. J, ch. 2, § A—Determining Eligibility ("If a juvenile court has made certain findings, under state law, on *dependency or* custody, parental reunification, and the best interests of the child, then the child may be eligible for SIJS classification.") (emphasis added); *id.* Ch. 2, Section D (discussing finding of dependency or custody); Ex. 6, Decl. of Beth Krause at ¶ 16.

**B.    History Of The SIJS Statute And Federal Regulation: Juvenile Courts, And Deference to State Law**

34.    Congress vested in the state courts the power to determine whether an immigrant is eligible for SIJS.  The SIJS Statute states that in order to qualify for SIJS protections, a *state* juvenile court must issue the requisite orders containing special findings of fact.  *See* 8 U.S.C. § 1101(a)(27)(J).  This reflects an understanding that child welfare determinations are traditionally the ambit of state courts.

35.    USCIS has continuously reaffirmed its policy of giving broad deference to state courts' determinations of their own jurisdiction and power to issue the findings contained in the required juvenile court orders.  *See* 58 Fed. Reg. at 42848; *see* Ex. 15, Interoffice Memorandum from Michael Aytes, U.S. CITIZENSHIP & IMMIGRATION SERVS., *AFM Update: Chapter 22: Employment-based Petitions* (AD03-01), at 82 (Sept. 12, 2006) (emphasis added) (hereinafter "Aytes Memo") (a juvenile court . . . could include *any court whose jurisdiction includes determinations as to juvenile dependency*") (emphasis added); *see id*. ("The task of the adjudicator is not to determine whether the [SFO] was properly issued.").  Indeed, the current and operative

11

version of the USCIS Policy Manual states, "[t]here is nothing in USCIS guidance that should be construed as instructing juvenile courts how to apply their own state law." *See* Ex. 11, USCIS POLICY MANUAL, vol. 6, pt. J., ch. 3—Documentation and Evidence.

36.     While the regulation adopted in 1993 defines a "juvenile court" as "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles," Special Immigrant Status, 58 Fed. Reg. 42843, 42850 (Aug. 12, 1993) (codified at 8 C.F.R. § 204, hereinafter the "SIJS Regulation"), this regulatory definition remains unchanged despite the subsequent amendments to the SIJS Statute.  8 C.F.R. § 204.11(a). The SIJS Regulation therefore incorporates neither the disjunctive added by the statute (*i.e.*, that SIJS can be based on either a determination that the petitioner is dependent on the court *or* a custody determination) nor the removal of the foster care eligibility requirement.  *See* 8 U.S.C. § 1101(a)(27)(J) (recognizing that it is sufficient for a juvenile court to declare the petitioner "dependent on" the court *or* to issue a custody order).

37.     While the SIJS Regulation has been outdated for many years, the term "judicial determinations about the custody and care of juveniles," as used in the Regulation, had been treated broadly by USCIS, without question that many state courts (whatever their titles) are well-equipped to issue the SFOs required by the SIJS Statute.  Indeed, consistent with the SIJS Statute, USCIS recognized SFOs from state courts that issued determinations that a petitioner was "dependent on" the court *or* issued a "custody" order; such courts were consistently acknowledged as juvenile courts for SIJS purposes.  Until the change in policy challenged in this case, USCIS did not interpret the regulatory definition of "juvenile court" as requiring that the court issue a custodial placement as to a particular petitioner.[5]  Instead, USCIS gave appropriate deference to

---

[5] For example, in 2007, USCIS adopted as binding guidance an Administrative Appeals Office decision that approved a SIJS petition for an 18 year-old applicant who was subject to the jurisdiction of the Florida juvenile court solely "for

the state courts on the question of whether a state court rendered "judicial determinations about the custody and care of juveniles."

## NEW YORK FAMILY COURT IS A "JUVENILE COURT" WITH JURISDICTION TO ISSUE ORDERS FOR CHILDREN BETWEEN THEIR 18TH AND 21ST BIRTHDAYS

38.     In New York State, the Family Court is a specialized court of the State Unified Court System that has jurisdiction over "abuse and neglect proceedings," among other legal matters related to the care and custody of minors.  N.Y. Fam. Ct. Act § 115 (outlining matters over which Family Court has jurisdiction, including "proceedings concerning adoption and custody of children . . . proceedings concerning guardianship and custody of children by reason of the death of, or abandonment or surrender by, the parent or parents . . .").

39.     The Family Court's jurisdiction includes making custodial and caretaking determinations of minors up to age 21, including in guardianship proceedings.  *See*, *e.g.*, N.Y. Fam. Ct. Act § 661 (providing family court with jurisdiction over minors up to age 21 in guardianship proceedings).  The New York statute is explicit: "[f]or purposes of appointment of a guardian of the person pursuant to this part, *the terms infant or minor shall include a person who is less than twenty-one years old* who consents to the appointment or continuation of a guardian after the age of eighteen." N.Y. Fam. Ct. Act § 661(a) (emphasis added).  The goal of guardianship is identical to that of children in child welfare proceedings, which is to provide youth with safety and stability using a best interests analysis.

---

the purpose of determining whether the young adult [was] receiving appropriate adult services." Jonathan Scharfen, *Re: Matter of Perez Quintanilla, Policy Memorandum*, 2007 WL 2410060 (July 30, 2007) (designating *Perez Quintanilla* a USCIS Adopted Decision that is binding policy guidance on all USCIS personnel).

40.     When the Family Court appoints a guardian of a person under the age of 21, that person—even if more than 18 years old—is deemed "dependent on" the juvenile court.[6] 8 U.S.C. § 1101(a)(27)(J); Ex. 5, Decl. of the Hon. A. Gail Prudenti at ¶ 12.  For years, USCIS granted SIJS petitions on the basis that these SFOs were validly issued by "juvenile courts" within the meaning of the SIJS Statute and the SIJS Regulation, and that the Family Court was empowered to issue a finding that the petitioner's reunification with his or her parent is not viable due to abuse, neglect or abandonment.  Ex. 6, Decl. of Beth Krause at ¶ 16; Ex. 7, Decl. of Maria Odom at ¶ 12.

## I.     USCIS'S CHANGE IN POLICY

41.     Until its recent policy change, upon information and belief, USCIS had not denied a single SIJS petition by any applicant who was between his or her 18th and 21st birthdays when the Family Court SFO was issued on the grounds that the Family Court lacked jurisdiction to make a determination over the petitioner's custody, or that the Family Court lacked authority to reunify the petitioner with his or her natural parent.  Ex. 6, Decl. of Beth Krause at ¶ 16.

42.     Beginning in mid-2017, plaintiffs and other SIJS applicants between their 18th and 21st birthdays began receiving puzzling Requests for Evidence and Notices of Intent to Deny from USCIS.  Several of these Requests and Notices stated that the Family Court SFOs "[did] not establish that [the applicant] ha[d] been placed under the custody of" the guardian, and directed the applicants to "provide evidence that [they] have been placed under the custody of an individual."  Ex. 2 Appendix H, June 10, 2017 RFE for T.D. at 1; Ex. 3 Appendix F, June 27, 2017 RFE for S.W. at 1; Ex. 4 Appendix D, Aug. 15, 2017 RFE for D.A.F.A. at 1.  In other letters,

---

[6] "An immigrant child becomes dependent upon a juvenile court when the court accepts jurisdiction over the custody of that child, irrespective of whether the immigrant child has been placed in foster care or a guardianship situation." *In re K.S.*, 54 N.Y.S.3d 555, 557 (N.Y. Fam. Ct. 2017).  Adoption, custody or guardianship matters involve determinations in which an individual is dependent upon a juvenile court.  *See In re Hei Ting C.*, 109 A.D.3d 100, 102 (N.Y. App. Div. 2d. Dep't 2013).

USCIS instructed SIJS applicants to "provide evidence that the court order [they] submitted was issued by a juvenile court with jurisdiction over [their] care and custody as a juvenile under the state law of New York." Ex. 1 Appendix E, Aug. 11, 2017 RFE for R.F.M at 1. Upon information and belief, no such letters were issued to SIJS applicants under the age of 18, including applicants for whom the Family Court appointed guardians.

43.    When USCIS began denying SIJS petitions on behalf of the Proposed Class, the agency no longer requested a showing that the applicant "ha[d] been placed under the custody of" the guardian. Instead, the agency embraced its novel interpretation that the Family Court was not a "juvenile court" when it issued guardianship orders for children between their 18th and 21st birthdays.

44.    On April 18, 2018, the New York Times contacted USCIS to understand the reason for the change in how SIJS applications of children between their 18th and 21st birthdays were being adjudicated. USCIS spokesperson Jonathan Withington denied that any policy change had occurred. *See* Ex. 12, Liz Robbins, *A Rule is Changed for Young Immigrants, and Green Card Hopes Fade*, N.Y. TIMES (Apr. 18, 2018). Specifically, Withington stated that "USCIS has not issued any new guidance or policy directives regarding the adjudication of SIJS petitions. We remain committed to adjudicating each petition individually based on the merits of the case and safeguarding the integrity of our lawful immigration system." *Id.*

45.    Just six days later, in response to requests prompted by the April 18, 2018 New York Times article, Mr. Withington stated an entirely different position for the denials, based upon a policy change driven by new legal guidance provided by USCIS's Office of Chief Counsel in February 2018:

>    In November 2016, USCIS decided to centralize adjudication of all
>    Special Immigrant Juvenile (SIJ) cases to the National Benefits

Center (NBC) in Missouri to more consistently and efficiently process these cases. By late summer 2017, the USCIS NBC asked for legal guidance that affected pending cases filed by individuals over 18 at the time the New York state court order was issued while the NBC sought legal clarification from the USCIS Office of Chief Counsel [OCC]. The agency began holding Texas cases for the same reason in fall 2017. In February 2018, OCC provided legal guidance on the statutory requirements for "reunification with one or both parents" for the purposes of establishing eligibility for the SIJ[S] classification.  In February, in light of OCC's legal guidance, the NBC began to review the approximately 5,500 pending cases, resulting in the issuance of Notices of Intent to Deny for approximately 130 cases in that population.  Pending cases that had previously been issued Requests for Evidence or Notices of Intent to Deny were issued final decisions.  <u>A total of approximately 260 have been denied.  For purposes of establishing eligibility for SIJ, the statute requires that a state court have the authority to return a child to the custody of their parent in order for that court to find that reunification is not viable.  Since most courts cannot place a child back in the custody of their parent once the child reaches the age of majority (as determined by state and in most instances that is age 18),[7] those state courts do not have power and authority to make the reunification finding for purposes of SIJ[S] eligibility.</u>

Ex. 13, April 25, 2018 Politico article entitled "USCIS Explains Juvenile Visa Denials" by Ted Hesson, with an April 24, 2018 statement from USCIS spokesperson Jonathan Withington to Politico appended thereto at 13 (emphasis added).  The two sentences underlined above, made to a reporter, reflect the entirety of the USCIS's justification for its new policy with respect to SIJS adjudications for applicants between their 18th and 21st birthdays.[8]   USCIS has not otherwise announced, published or explained its new policy.

---

[7] Upon information and belief, the requirement that state juvenile courts must be able to actually reunify their petitioners with their natural parents would effectively cut off SIJS eligibility at 18 years old for the vast majority of the country because the vast majority of states do not grant any court the authority to reunify a person with his or her natural parent after the age of 18.  Thus, this change in policy renders SIJS unavailable to the vast majority of 18-21 year-olds in the country, including those in foster care.  This is in direct contradiction to the statute making the program available to young immigrants up to the age of 21.  *See* 8 U.S.C. § 1232(d)(6) (providing that a SIJS petition may not be denied on the basis of age if the petitioner was a "child"—that is, unmarried and under the age of 21, 8 U.S.C. § 1101(b)(1)—at the time of filing).

[8] Plaintiffs expect that USCIS may attempt to argue that its policy change is not a new policy but rather a reinterpretation of law.  This is a distinction without a difference.  USCIS's recent pattern of adjudications reflects a

46.     New York SIJS petitioners, and their counsel, have rightfully relied upon USCIS's longstanding policy of recognizing the validity of Family Court SFOs, as well as USCIS's own policy guidance, in continuing to submit SIJS applications.  USCIS's sudden deviation from its longstanding policy has come without warning or explanation, and with grave consequences.

## II.     IRREPARABLE HARM TO THE PLAINTIFF CLASS

47.     USCIS's policy change is not only contrary to law, but is also having catastrophic effects on the Plaintiffs, the members of the Proposed Class, their families, and their communities. For example, the wrongful denial of R.F.M's SIJS application has stalled her life in the U.S., by denying her the opportunity to apply for financial aid to go to college and pursue her dreams of becoming a nurse.  USCIS's wrongful denial endangers R.F.M. by putting her at risk of deportation back to the Dominican Republic, a place she has never known.  Because she came to the U.S. as an infant, R.F.M. has no ties to her country of origin and knows only that what distant family she has in the Dominican Republic have been targeted by criminal activity.

48.     For T.D., the wrongful denial of her SIJS application has prevented her from pursuing a college degree.  T.D. needed a guardian because her father abandoned her and her mother died.  Today, T.D. struggles to work full-time to support herself and fears that at any moment, she could be taken from her sister and her community and sent back to Haiti to a father who has played no part in her life for more than five years and who failed to protect her from his family's gross mistreatment.

---

clear change in USCIS's position regardless of whether USCIS identifies its approach as a new policy or a new interpretation of law.  For the reasons discussed *infra*, USCIS cannot circumvent APA requirements by framing its new approach to SIJS applications as a change in interpretation of law instead of a policy change.  *See*, *e.g.*, *National Cable & Telecomm. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 982 (2005) (performing an identical analysis regardless of whether an agency has labeled its new position as a policy change or a change in statutory interpretation).  No matter what USCIS might call it, therefore, it violates the APA.

49.     The wrongful denial of S.W.'s SIJS application blunts all of her hard work and progress in the U.S.  After being abandoned by both of her parents as a child, S.W. struggled to find stability while she bounced from family member to family member in the U.S.  After graduating from high school, S.W. enrolled in college—but only part-time, as she is unable to apply for financial aid to fund full-time enrollment.  S.W.'s SIJS denial means it will take her twice as long to get her degree, and even once she does, she will not be able to earn a living without work authorization.  S.W.'s SIJS denial also prevents her from obtaining health insurance and receiving treatment for a congenital defect that continues to ail her.

50.     For D.A.F.A., USCIS's wrongful denial of his SIJS application will put him at risk of being sent back to El Salvador, which he fled to escape attempted gang recruitment.  Abandoned by his father, D.A.F.A. has been reunited with his mother and siblings in the U.S., and he hopes to go to college, become an engineer, and take care of his family.  His SIJS denial, however, makes those dreams impossible, as D.A.F.A. is unable to attend college without financial aid, and is unable to pursue a career without employment authorization.

51.     Because Plaintiffs and other similarly situated individuals are at risk of being arbitrarily denied protections as a result of USCIS's newly adopted and legally erroneous analysis of the SIJS Statute, the SIJS Regulation and New York law, Plaintiffs ask this Court to declare USCIS's arbitrary and capricious SIJS denials unlawful and to enjoin USCIS to process SIJS applications under the same legal analysis and standards that applied before USCIS's policy change.

## USCIS'S CHANGE IN POLICY VIOLATES THE ADMINISTRATIVE PROCEDURE ACT

52.     In its denials of Plaintiffs' SIJS applications, USCIS suddenly changed its interpretation of both federal and state law so that Plaintiffs and the Proposed Class members could

not qualify for SIJS by the simple fact that they were between their 18th and 21st birthdays at the time of their Family Court SFO was issued.  USCIS's new policy, as stated in these denials (or Notices of Intent to Deny or Revoke), is that the Family Court was not acting as a "juvenile court" when it issued Plaintiffs' guardianship orders, or that the Court lacked the authority to make a legal determination that the petitioner's reunification with one or both parents is not viable.

53.     USCIS's new policy is arbitrary, capricious, and contrary to the plain text of the applicable statute, regulations, and longstanding agency guidance.  It is therefore in violation of the APA.  Specifically, as set forth below, the APA prohibits agencies from interpreting statutes or changing policy in instances where they have, among other things: (i) relied on an erroneous interpretation of the relevant law; (ii) failed to explain their reasons for implementing a new policy and treated similarly situated parties differently without a reasoned explanation; and (iii) adopted a new policy without adequate notice.  USCIS's recent actions violate the APA on all of these grounds, as explained below.

I.      **USCIS MISINTERPRETS FEDERAL AND NEW YORK LAW WITH RESPECT TO FAMILY COURT'S JURISDICTION OVER THE CUSTODY OF PETITIONERS BETWEEN THEIR 18TH AND 21ST BIRTHDAYS**

A.      **USCIS Misinterprets Federal Law When It Concludes That The Family Court Must Have Jurisdiction Over The Custody Of Petitioners Between Their 18th And 21st Birthdays To Qualify As A "Juvenile Court"**

54.     USCIS arbitrarily construes the SIJS Statute such that a petitioner can only qualify for SIJS if he or she was under the age of 18 when his or her SFO was issued by the Family Court. USCIS erroneously asserts that the Family Court must have jurisdiction over the "custody" of the specific applicant.  For instance, in a recent SIJS denial, USCIS reasoned that:

> [W]hile the New York family court orders in your case show that the court had jurisdiction to appoint a guardian for you pursuant to your consent, the record does not show that the court had jurisdiction over your custody as a juvenile.  For special immigrant juvenile purposes, a state court must have jurisdiction under state law over

> both "the custody and care" of the SIJ[S] petitioner as a juvenile to
> be considered a juvenile court.

Ex. 2 Appendix J, USCIS Denial of T.D.'s Application for SIJS at 3.

55.     The SIJS Statute requires, among other things, that a petitioner be declared "dependent on" a juvenile court *or* placed in the custody of, *inter alia*, a juvenile court.  *See* 8 U.S.C. § 1101(a)(27)(J) (an applicant must be either "declared dependent on a juvenile court," or "legally committed to, or placed under the custody of, an agency or department of State, or an individual or entity appointed by a State or juvenile court"; and reunification).  SFOs issued by the New York Family Court for petitioners between their 18th and 21st birthdays satisfy this requirement.

56.     USCIS's recent denials of Plaintiffs' petitions are based on a narrowing of the SIJS Statute to apply only to custody orders.  That is plainly a misinterpretation or misapplication of the SIJS Statute.[9]  Further, contrary to USCIS's policy, every indication exists that Congress intended that the state court's interpretation of its own powers be given deference, and that SIJS be available to all youth up to age 21.  *See* 8 U.S.C. § 1101(a)(27)(J); Ex. 11, USCIS POLICY MANUAL, vol. 6, pt. J., ch. 2, § B—General; 8 U.S.C. § 1101(b)(1).

57.     USCIS's interpretation is also a misapplication of the federal regulation which defines a "juvenile court" as "a court located in the United States having jurisdiction under State

---

[9] To the extent USCIS argues that the SIJS Regulation requires that the SIJS Statute be narrowed to require that a state court issue custody orders, that is wrong as a matter of law because it ignores that the SIJS Statute allows a state court to issue orders declaring petitioners "dependent" on those state courts.  *See Alimoradi v. United States Citizenship & Immigration Servs.*, No. CV 08-02529 DDP (JCx), 2008 U.S. Dist. LEXIS 86820, at *10 (C.D. Cal. Aug. 29, 2008) (holding that "[n]othing in the statute allows for the regulatory interpretation" advocated by USCIS because "the narrow construction imposed by the regulation is manifestly contrary to the plain language of the statute"); *see also Seafarers Int'l Union of N. Am. v. Adams*, 78 Civ. 4698, 1979 U.S. Dist. LEXIS 9767, at *19-20 (S.D.N.Y. Sep. 17, 1979) ("When this regulation is laid alongside the statute . . . it is readily apparent that the regulation impermissibly narrows the statutory grant of participatory rights.").  In any event, the SIJS Regulation has not been updated since the SIJS Statute was updated in 2008 pursuant to the TVPRA, so the SIJS Statute is controlling.

law to make judicial determinations about the custody and care of juveniles." 8 C.F.R. § 204.11(a).

The regulatory definition does *not* require that a "juvenile court" be able to make a custody

determination over each SIJS applicant; rather, it simply provides that the court have jurisdiction,

as a general matter, to make "determinations about the custody and care of juveniles." C.F.R.

§ 204.11(a). Under the SIJS Regulation, a juvenile court need only be one that has jurisdiction

over the custody and care of juveniles generally. (The SIJS Statute, meanwhile, dictates what the

finding is that must be issued by that juvenile court, and that finding, as made clear above, need

only be one that orders an individual "dependent on" the court.)

58.     Therefore, with respect to USCIS's new policy that the Family Court must have

jurisdiction to make a custody determination as to the petitioner in order to qualify as a "juvenile

court," USCIS reads into the SIJS Statute a requirement that simply does not exist. This strained

reading of a simple definition of "juvenile court" in the SIJS Regulation appears designed to serve

as an obstacle to SIJS petitioners between their 18th and 21st birthdays—an obstacle that has no

basis in law.

**B.     USCIS Misinterprets New York Law To Claim That The Family
        Court Lacks Jurisdiction Over The Custody And Care Of Juveniles**

59.     Even if USCIS's new interpretations of the SIJS Statute and Regulation were

permissible, its application of those interpretations to New York Family Court orders cannot be

sustained. USCIS is plainly wrong in its policy that the Family Court lacks jurisdiction over the

custody and care of juveniles. To the contrary, such jurisdiction is well established. *See* N.Y.

Fam. Ct. Act § 141 (empowering the Family Court with a "wide range of powers for dealing with

the complexities of family life so that its action may fit the particular needs of those before it," and

the court acts as "a special agency for the care and protection of the young."). This is all that is

required to qualify as a "juvenile court" under the SIJS Regulation. 8 C.F.R. § 204.11. In fact,

USCIS clearly recognized the Family Court's qualification as a "juvenile court" in granting the SIJS petition submitted by T.D.'s younger sister.   T.D. and her sister submitted substantially identical petitions to USCIS based on substantially similar orders issued by the same Family Court in substantially similar guardianship proceedings.

60.     The SIJS Statute explicitly recognizes that the eligibility finding that a court may issue can be a finding that the immigrant is "dependent upon" the court.   *See* 8 U.S.C. § 1101(a)(27)(J)(i).   Under New York law, it is clear that the Family Court is authorized to declare a person up to age 21 dependent on the court.   Ex. 5, Decl. of the Hon. A. Gail Prudenti at ¶¶ 8-11.   Indeed, a guardianship order—such as those issued on behalf of the Plaintiffs—is a determination that the individual is dependent upon the court.   *See, e.g.*, *In re Antowa McD.*, 50 A.D.3d 507, 2008 NY Slip Op 03690, at *1-2 (1st Dep't 2008) ("Family Court's appointment of a guardian constitutes the necessary declaration of dependency on a juvenile court."); *see also In re Karen C.*, 111 A.D.3d. 622, 623 (2d Dep't 2013) ("Inasmuch as the Family Court granted the guardianship petition and appointed her stepfather as co-guardian, the child is dependent on the Family Court in that she has been 'legally committed to, or placed under the custody of . . . an individual or entity appointed by a State or juvenile court located in the United States,' within the meaning of 8 USC § 1101(a)(27)(J)(i).").

61.     Even if USCIS were correct that the SIJS Statute requires state courts to have jurisdiction to make a custody determination (which it does not), the Family Court's guardianship proceedings would satisfy such a requirement.   New York law, in fact, considers guardianship—which provides the guardian with a wide array of rights, including those relating to the physical custody of the child—as the functional equivalent of legal custody.   Under New York law, the Family Court's award of guardianship grants *custodial* rights over the subject child.   *See* N.Y. Bill

Jacket, A.B. 8358-B, 231st Leg., 2008 Reg. Sess., Ch. 404 (N.Y. 2008) (clarifying that guardians and custodians have the same rights and responsibilities with respect to the children in their care); N.Y. Fam. Ct. Act § 657; N.Y. Dom. Rel. Law § 74.  A Family Court order of guardianship confers the guardian with the "right and responsibility to make decisions, including any necessary consents, regarding the child's protection, education, *care and control*, health and medical needs, and the physical *custody* of the person of the child."  N.Y. Fam. Ct. Act § 657 (emphasis added).  Accordingly, by virtue of the guardianship order from the Family Court, that individual has been committed to the *custody* of the guardian.  *See Allen v. Fiedler*, 96 A.D.3d 1682, 1684 (4th Dep't 2012) ("[T]here is no substantive difference between the rights and responsibilities of a custodian or guardian of a child" (quoting Assembly Memo in Support, Bill Jacket, L. 2008 ch. 404) (internal quotation marks omitted)); *In re Alana M.*, 2011 NY Slip Op 52321[U], at *11 ("Appointment as a guardian by the court is akin to lawful custody.").  Although a child (regardless of age) need not reside with the guardian, the guardian nevertheless retains the right and responsibility to make decisions about the child's physical custody—again, regardless of whether the child is under or over eighteen years of age.[10]

62.     In short, USCIS has impermissibly and wrongly misinterpreted the SIJS Regulation in a manner that is contrary to the SIJS Statute, and applied its faulty interpretation in a manner that fundamentally contradicts New York law.

---

[10] Although minors above the age of 18 must consent to guardianship, N.Y. Fam. Ct. Act § 661(a), this requirement does not alter the fact that the Family Court possesses jurisdiction over custody in guardianship proceedings for petitioners over 18.

II.   **USCIS MISINTERPRETS FEDERAL AND NEW YORK LAW WITH RESPECT TO THE FAMILY COURT'S DETERMINATION THAT REUNIFYING THE PETITIONERS WITH THEIR PARENTS IS NOT VIABLE**

   A.   **USCIS Misinterprets The Law When It Concludes That The Family Court Must Have The Ability To Reunify The Petitioners With Their Parents**

63.    Recently, USCIS has started taking the position that the Family Court lacks the power to determine that the petitioner's reunification with one or more parent is "not viable" because the Family Court lacks the legal authority to order reunification.

64.    In doing so, USCIS misinterprets the SIJS Statute and the SIJS Regulation to create a requirement that cannot be found anywhere in federal law.  Specifically, USCIS is requiring that the juvenile court issuing an order have actual authority to reunify the petitioner with his or her natural parent in order to make a legal finding that it would not be in the petitioner's best interest to be reunified with a parent.

65.    Neither the SIJS Statute, the SIJS Regulation, nor USCIS policy guidance contains such a requirement that the state juvenile court have the authority to order reunification.

66.    The SIJS Statute merely requires a finding that "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law."  8 U.S.C. § 1101(a)(27)(J)(i).  This is a finding of fact, not a legal determination that the court is empowered to—but chooses not to—reunify the petitioner with his or her parent. *See, e.g.*, *Matter of Maria C.R. v. Rafael G.*, 142 A.D.3d 165, 167 (2d Dep't 2016) (noting the determinations in the SFO of the eligibility criteria are "findings of fact," including that reunification with a parent is not viable); *Reyes v. Cissna*, 2018 WL 17559467, at *2 (4th Cir. 2018) (characterizing state juvenile courts' determination of the SIJS Eligibility Findings as "factual" findings, including that reunification with a parent is not viable); *Perez v. Rodriguez*, 2018 WL 1187780, at *2 (W.D.N.C. 2018) (same).

24

67.     To the extent USCIS considers this to be a jurisdictional requirement similar to the custody determination requirement, there is simply nothing in the statute indicating that a juvenile court must possess authority to order the petitioner or SIJS applicant back into the control of his or her parent.  Not even the outdated SIJS Regulation suggests that a "juvenile court" must have such authority.  Indeed, the definition of a "juvenile court" makes no reference whatsoever to reunifying applicants with their parents.  *See generally* C.F.R. § 204.11(a).

68.     In addition to having no basis in law, USCIS's position that state courts must have the power to actually reunify SIJS petitioners with their natural parents makes little sense because such a requirement would eviscerate SIJS protections for the very population the SIJS Statute was originally intended to protect: children in foster care.  Put simply, no state court has the power to actually reunify an immigrant youth in foster care with his or her natural parents when those parents are both deceased.  That is precisely the vulnerable population for whom SIJS was originally enacted to provide relief.[11]

### B.     USCIS Improperly Concludes That The Family Court Lacks Actual Authority To Find That Reunification Is Not Viable

69.     In any event, USCIS ignores the fact that the Family Court *does* have the power to reunify a petitioner with his or her parents.  Indeed, New York law authorizes its Family Courts to appoint a natural parent to be the guardian of his or her children.  *See In re Marisol N.H.*, 115 A.D.3d 185, 187 (N.Y. App. Div. 2d Dep't 2014).  Guardianship, including when the guardian is

---

[11] USCIS's adjudications are also improper because they cite to and rely upon an outdated provision in the SIJS Regulation.  USCIS cites to 8 C.F.R. § 204.11(a)'s definition of a youth eligible for long-term foster care (which references reunification), but that provision is no longer relevant to SIJS eligibility because, as discussed *supra*, the TVPRA of 2008 eliminated the requirement that a youth be found eligible for long-term foster care.  Pub L. No. 110-457, § 235(d) (2008).  The outdated provision upon which USCIS relies mentions reunification only in the context of long-term foster care and does not support USCIS's proposition that the Family Court must have the authority to reunify a petitioner with his or her parent.  *See* 8 C.F.R. § 204.11.  USCIS is well aware of the outdated nature of the SIJS Regulation, as its 2015 Ombudsman report recommended that USCIS "[i]ssue final SIJ regulations that fully incorporate all statutory amendments."  Ex. 14, U.S. Dep't of Homeland Sec., Citizenship & Immigration Services Ombudsman, Recommendation to the Director of USCIS, at 1 (Dec. 11, 2015).

a natural parent, includes taking legal custody of a child and exercising decisions about physical custody on their behalf. *See* N.Y. Fam. Ct. Act § 661 ("[G]uardianship confers "the right and responsibility to make decisions, including issuing any necessary consents, regarding the child's protection, education, care and control, health and medical needs, and the *physical custody* of the person of the child . . .") (emphasis added); N.Y. Fam. Ct. Act § 657 ("[P]ersons possessing a lawful order of guardianship of a child shall have the right and responsibility to make decisions, including issuing any necessary consents, regarding the child's protection, education, care and control, health and medical needs, and the *physical custody* of the person of the child.") (emphasis added).

70.    Thus, USCIS's misinterpretation to the contrary, the Family Court does have jurisdiction under New York state law to make a legal conclusion about returning a petitioner over the age of 18 to his or her parent's custody.[12]

71.    In sum, USCIS has violated the APA by misinterpreting both federal and New York law when it adjudicates SIJS petitions based on the finding that the Family Court (i) no longer qualifies as a "juvenile court" because Family Court does not have jurisdiction over the custody of petitioners between their 18th and 21st birthdays, and/or (ii) does not have the authority to make a finding as to whether reunification of petitioners between their 18th and 21st birthdays with a parent is not viable because the court lacks the ability to actually reunify such petitioners with their parents.

---

[12] There are many reasons why the Family Court may return a petitioner over the age of 18 to his or her parent's custody. For instance, guardianship can allow the parent of a vulnerable 18 year old to continue making decisions on behalf of the child, obtain documents for the child, or deal with school matters on behalf of the child.

### III.   USCIS'S CHANGE IN POLICY VIOLATES THE APA BECAUSE IT IS UNSUPPORTED BY REASONED EXPLANATION AND RESULTS IN VASTLY DIFFERENT OUTCOMES FOR SIMILARLY SITUATED SIJS PETITIONERS

72.     An agency action that is taken pursuant to statutory authority nevertheless must be set aside if the agency fails to provide "an adequate basis and explanation" for its action, *Motor Veh. Mfrs. Ass'n v. State Farms Ins*., 463 U.S. 29 (1983), or if the action is otherwise arbitrary and capricious.  Thus, even if the SIJS Statute were sufficiently ambiguous to support USCIS's novel interpretation (which it is not), and even if such interpretation were properly applied to New York law (which it is not), USCIS's new policy must be set aside as arbitrary and capricious.  This is because USCIS has failed to explain adequately why it adopted its new interpretation, departed from past practice, and declined to consider reasonable alternative interpretations.  Moreover, USCIS's new policy impermissibly leads the agency to treat similarly situated individuals differently, without any basis in law.

### A.   USCIS Has Failed to Provide an Adequate Basis and Explanation for its New Policy

73.     For more than ten years, USCIS consistently interpreted the SIJS Statute and New York law in a manner that recognized the validity of New York Family Court orders, including for individuals over the age of 18.  Its longstanding policy provided SIJS protections to deserving petitioners between their 18th and 21st birthdays, and the positive impact of those protections on individual, community, and national levels is striking.  For example, SIJS and legal permanent residency are associated with an increase in wages and participation in the workforce, leading to increased consumption, resulting in job creation and economic growth.  *See* Ex. 10, Decl. of Judith Meltzer.

74.     USCIS began issuing requests for evidence and notices of intent to deny challenging the validity of plaintiffs' and similarly situated class members' Family Court SFOs in

mid-2017.  There was no public announcement or proclamation of its change in policy, and no reasoned reevaluation of the applicable law.

75.    Based on the agency's guidance and longstanding policy, Plaintiffs and similarly situated class members reasonably expected that USCIS would continue to recognize the Family Court as a juvenile court and would adjudicate their SIJS petitions on their merits.  Instead, they received burdensome requests for evidence followed by denials based on incorrect interpretations of applicable law.

76.    While USCIS purports to analyze each petition, and thus each state court's situation, on a case-by-case basis, *see* Ex. 12, Liz Robbins, *A Rule is Changed for Young Immigrants, and Green Card Hopes Fade*, N.Y. TIMES (Apr. 18, 2018), the agency's admission that its scrutiny of state court jurisdiction and authority is part of a centralized process only underscores the arbitrary nature of its policy.  *See* Ex. 13, April 25, 2018 Politico article entitled "USCIS Explains Juvenile Visa Denials" by Ted Hesson, with an April 24, 2018 statement from USCIS spokesperson Jonathan Withington to Politico appended thereto.  Upon information and belief, USCIS has begun to deny SIJS petitions in other states predicated on a similar newfound scrutiny of the authority of state juvenile courts.  Ex. 7, Decl. of Maria Odom at ¶¶ 16-18.  Indeed, USCIS has—unprompted by any change in relevant or applicable federal or state laws—also begun to deny SIJS petitions for applicants between their 18th and 21st birthdays in (at least) California and Texas based on determinations that the court that made the SIJS Eligibility Findings was not acting as a "juvenile court," and on other grounds similar to those it has asserted in denying applications based on Family Court SFOs.

77.    The agency has not accounted for its radical departure from its own prior legal conclusions, policy memoranda, and policy manuals.  After more than a decade of properly

defining "juvenile court" as one with jurisdiction to make "custody and care" determinations generally—specifically including courts that issue either custody orders or orders that an individual is "dependent on" the court, consistent with the SIJS Statute—USCIS has changed its policy to contradict its prior practice and legal conclusions.  USCIS's April 24, 2018 statement purporting to explain the recent pattern of decisions does not contain a plausible justification for the agency's abrupt rejection of its past policy guidance, memoranda, and adjudications of SIJS petitions.  *See* Ex. 13, April 25, 2018 Politico article entitled "USCIS Explains Juvenile Visa Denials" by Ted Hesson, with an April 24, 2018 statement from USCIS spokesperson Jonathan Withington to Politico appended thereto (incorrectly stating that the SIJS Statute "requires that a state court have the authority to return a child to the custody of their parent in order for that court to find that reunification is not viable.").

> **B.     USCIS's New Policy Arbitrarily Treats Similarly Situated SIJS Petitioners Differently**

78.     USCIS's interpretation is substantively unreasonable because it arbitrarily  treats similarly situated individuals differently.  But for USCIS's unfounded change in policy, a 17 year-old SIJS applicant in guardianship proceedings in Family Court would be in an identical legal situation as an 18 year-old SIJS applicant in guardianship proceedings.  Both applicants are "children" under the INA.  Both are "minors" under New York law.  Each applicant's guardian may make custody decisions—including decisions about physical custody—on the child's behalf. In neither situation does the SIJS Statute require that the juvenile court issue an order pertaining to the applicant's physical custody.  And in neither situation does the SIJS Statute require that the juvenile court be able to actually reunify the petitioner with her parent.  Nevertheless, USCIS has abruptly begun treating the 17 year-old SIJS applicant in guardianship proceedings radically

differently than the 18 year-old applicant, who is in an identical legal posture.  The result is that

the older applicant's petition is denied on arbitrary and capricious grounds.

## IV.    USCIS HAS VIOLATED THE APA BY ADOPTING ITS NEW POLICY WITHOUT ADEQUATE NOTICE

79.    USCIS has failed to provide adequate notice of this policy change, despite the

substantial reliance interests at stake.  Under federal law, an agency must notify the public of

"substantive rules . . . [and] interpretations of general applicability formulated and adopted by the

agency."  5 U.S.C. § 552(a)(1)(D) (requiring publication of such rules and interpretations).

80.    When USCIS began to deny SIJS petitions by refusing to recognize the validity of

SFOs issued by New York Family Courts for immigrants between their 18th and 21st birthdays, the

agency remained silent as to its reasoning for adopting its new policy, thereby violating the APA.

Furthermore, the cursory and *post-hoc* statement that USCIS issued to a news organization on

April 24, 2018—in response to a news story about the policy change—utterly failed to meet the

agency's obligation to inform potentially affected individuals of its new policy.  After more than

a decade of properly defining a "juvenile court" as one with jurisdiction to make "custody and

care" determinations generally, specifically including the New York Family Court, it was

incumbent upon USCIS to notify the public about its wholesale departure from its prior practice

and legal conclusions.

81.    In sum, USCIS's policy change with respect to the SIJS program violates the APA

for all of these reasons: (i) USCIS's apparent new policy relies upon an erroneous interpretation

of the SIJS Statute and New York law; (ii) even if USCIS's interpretation did not directly conflict

with federal and state law, USCIS's policy is arbitrary and capricious, as the agency has failed to

provide adequate reasoning and arbitrarily treats similarly situated individuals differently; and (iii) USCIS failed to provide adequate and timely notice to the public of its policy change.[13]

## PLAINTIFF FACTS

82.     R.F.M., T.D., S.W., and D.A.F.A.—representatives of the Proposed Class—have each had their SIJS application denied by USCIS.  Until the recent change in USCIS policy, each of these Plaintiffs would have been found eligible for SIJS.

## I.     USCIS'S DENIAL OF R.F.M.'S SIJS APPLICATION

83.     R.F.M. was born in the Dominican Republic.  She lived there only briefly with her mother until she was approximately eight months old, when she was sent to live with her maternal grandmother, her guardian, in New York.  R.F.M. has lived in New York ever since.  Throughout her life, R.F.M. has had only irregular and insubstantial telephone contact with her mother and her mother has never provided financial support for R.F.M.  Ex. 1, Decl. of R.F.M. at ¶¶ 4, 15-16.

84.     R.F.M.'s father has never been involved in her life.  R.F.M. does not recall ever meeting him in person.  Throughout her life, telephone contact with him was sporadic.  R.F.M.'s father has never supported her emotionally or financially, except for a one-time payment of approximately $200 that he gave to R.F.M.'s grandmother after she demanded it of him when she

---

[13] Plaintiffs have no burden to show bad faith in order to make out an APA claim; however, USCIS's clear misinterpretation of the law and the manner in which USCIS's new policy was rolled out call into question USCIS's motives.  Indeed, far from attempting to act transparently, USCIS undertook a reevaluation of its interpretation of SIJS in November 2016 but gave no hint as to that reevaluation until April 2018.  In the interim, USCIS quietly began issuing RFEs, denials, NOIDs, and NOIRs predicated on its unannounced policy change.  When finally asked by an investigative journalist about whether USCIS had in fact changed its policies, USCIS issued a blanket denial of any such policy change.  *Six days later*, USCIS issued a retraction and admitted that it had begun to redefine SIJS eligibility drastically, and that it was doing so on a nationwide, centralized basis.  The allegations set out in this Complaint suggest a potentially nationwide scope and agenda attached to USCIS's new interpretation of SIJS.  At the appropriate time, therefore, after a preliminary injunction—respectfully—is in place, these circumstances justify targeted and limited discovery into USCIS's rationale for its policy change, and the extent of its application.  *See Moody Hill Farms Ltd. v. Dept. of Interior, Nat. Park Service*, No. 95 Civ. 11001, 1996 WL 474209, at *10 (S.D.N.Y. Aug. 20, 1996) (allowing discovery into APA claim and noting that "courts will go beyond the agency record when bad faith is claimed"); *New York v. Salazar*, 701 F. Supp. 2d 224, 240 (N.D.N.Y. 2010) (allowing discovery into APA claim given extreme delay in providing FOIA documents addressing agency decision-making process).

encountered him in the Dominican Republic.  R.F.M. has not had contact with her father in at least

four years and believes he may currently live in Spain.  Ex. 1, Decl. of R.F.M. at ¶¶ 12-13.

85.     Despite having no relationship with her parents, R.F.M. has thrived in New York

with the support of her grandmother and her large family that lives nearby.  R.F.M.'s grandmother

is the only mother and New York the only home R.F.M. has ever known.  Ex. 1, Decl. of R.F.M.

at ¶¶ 19-22.

86.     For a brief period of time, when R.F.M. was approximately 17 years old, R.F.M.'s

mother came to live with R.F.M. and her grandmother in New York.  Things did not go well.  In

addition to saying negative things about R.F.M. to neighbors and family, R.F.M.'s mother made

hurtful comments to R.F.M. about her having been the victim of a sexual assault.  R.F.M.'s mother

would say things to R.F.M., such as that it was good that R.F.M. had been assaulted because she

deserved it for being "outside with [her] little friends."  Her mother's comments and presence were

so distressing to R.F.M. that R.F.M. was hospitalized.  R.F.M.'s grandmother was eventually able

to persuade R.F.M.'s mother to leave the home.  R.F.M. has had no contact with her mother since

that time.  Ex. 1, Decl. of R.F.M. at ¶¶ 15-17.

87.     On February 15, 2017, when R.F.M. was 19 years old and still in high school, Bronx

Family Court Referee Tamra Walker appointed R.F.M.'s grandmother as R.F.M.'s guardian,

finally giving R.F.M.'s grandmother legal authority over R.F.M.'s care.  Ex. 1 Appendix A, Order

of Guardianship for R.F.M. at 1.  On the same date, the Court issued an SFO which found that

R.F.M. is "dependent upon the Family Court by virtue of the appointment of a guardian of the

person for her."  Ex. 1 Appendix B, Feb. 15, 2017 Special Findings Order of R.F.M. at 1.  The

Court also found that reunification with R.F.M.'s father was not viable due to abandonment and

reunification with her mother was not viable due to neglect in that "[t]he mother failed to provide

proper guardianship to the child by making hurtful comments, including telling the child that it was her fault that she had been sexually assaulted, such that the child's mental health was detrimentally affected." *Id.* The Court also found that it "is not in the child's best interest to be removed from the United States and returned to the Dominican Republic . . . where she has no safe and stable place to live and would be separated from her guardian who has cared for her since she was an infant." *Id*.

88.     Upon receiving the Bronx Family Court orders, R.F.M. completed and submitted her petition for designation as a Special Immigrant Juvenile with USCIS. Her Form I-360 SIJS Application was received by USCIS on March 2, 2017. Ex. 1 Appendix G, USCIS Denial of R.F.M.'s Application for SIJS at 2. R.F.M's petition reflected that she meets the criteria set forth in the Immigration and Nationality Act at 8 U.S.C. § 1101(a)(27)(J)(i). R.F.M.'s petition was supported by the Bronx Family Court's order finding that she met the SIJS Eligibility Criteria.

89.     On August 11, 2017, USCIS issued an RFE requesting "evidence that the court order you submitted was issued by a juvenile court with jurisdiction over your care and custody as a juvenile under the state law of New York." Ex. 1 Appendix E, Aug. 11, 2017 RFE for R.F.M. at 1. On November 3, 2017 R.F.M. timely responded to the RFE with a written response from R.F.M.'s lawyer, copy of the Guardianship Order, an expert affidavit from the Hon. A. Gail Prudenti, and an amended Bronx Family Court SFO dated October 19, 2017, issued *nunc pro tunc* to February 15, 2017. *See* Ex. 1 Appendix F, Response to Aug. 11, 2017 RFE for R.F.M. The SFO was enhanced with references to New York State law, including that the court has "jurisdiction under New York Family Court Act § 661(a) and New York Surrogates Procedure Act § 103(27) to make judicial determinations about the custody and care of minors, which include juveniles up to the age of 21." Ex. 1 Appendix C, Oct. 19, 2017 Special Findings Order for R.F.M.

at 1.  The SFO also states that R.F.M. is "under 21 years of age and within the jurisdiction of this court and remains under this court's jurisdiction until the child reaches the age of 21."  Family Court Act § 661(a) and New York Surrogates Procedure Act §§ 103(27) and 1700 *et seq*.  *Id*. at 1.

90.     On March 15, 2018, USCIS denied R.F.M.'s petition for SIJS.  *See* Ex. 1 Appendix G, USCIS Denial of R.F.M.'s Application for SIJS.  In the denial, the agency claimed that because R.F.M. was 19 years old at the time her Family Court orders were issued, there was insufficient evidence to find that her SFO was issued by a "juvenile court" as required under INA § 101(a)(27)(J)(i).  *Id.* at 3.  Instead, USCIS asserted that the Family Court must have had jurisdiction to make a custody determination regarding R.F.M. for R.F.M. to be eligible for SIJS, directly contradicting the clear language of INA § 101(a)(27)(i).  *Id.*

## II.     USCIS'S DENIAL OF T.D.'S SIJS APPLICATION

91.     T.D. was born in Haiti, where she lived with her father, sister, and other family members.  T.D. did not have a close relationship with her father.  Although her mother lived nearby, T.D.'s mother was not involved in her life.  T.D.'s uncle, who lived nearby on the compound, regularly physically abused her.  Ex. 2, Decl. of T.D. at ¶¶ 10-13.

92.     At age 14, T.D. was sent by her father on a plane by herself to New York.  She stayed with her paternal aunt.  Since her arrival in the U.S. in 2012, T.D.'s father has offered her no financial or emotional support.  She seldom communicates with her father, and has not seen him in several years.  Ex. 2, Decl. of T.D. at ¶¶ 15-16, 19.

93.     Once she arrived in Brooklyn, T.D. started high school, but the transition was difficult.  She had been uprooted to a new country with a new language, and she lacked any support from her parents.  T.D. received no emotional support from her aunt, and although her younger sister moved into the same home in Brooklyn about a year after T.D. first arrived, T.D. was extremely vulnerable.  During this time, her mother died suddenly in 2015.  T.D. suffered from

depression and self-harm, and sought mental health treatment.  She has received the therapy and treatment she needed, and has worked tirelessly to find more stability in her life.  She developed a passion for art and worked a paying job as a teacher's assistant for her school's art class.  A talented artist, T.D.'s work has been featured in local art shows *See* Ex. 2, Decl. of T.D..

94.     Though the odds were stacked against her, T.D. persevered through high school and graduated.  She always planned to go to college, and considered herself lucky to entertain that opportunity here in the U.S.—if she had stayed in Haiti, she would not have had that option.

95.     During her high school career, T.D. developed a close relationship with her assistant principal, Ms. I.L.  Ms. I.L. recognized the hurdles T.D. had to overcome, and took an interest in T.D.'s achievements.  Ms. I.L. regularly checked in on T.D.'s studies and home life.  Ex. 2, Decl. of T.D. at ¶¶ 21-25.

96.     Because T.D. lacked formal adult influences in her life, Ms. I.L. sought to become T.D.'s legal guardian, willing to take on the responsibility to continue to guide and protect her.  On October 18, 2016, the New York State Family Court for Kings County appointed Ms. I.L. as T.D.'s guardian.  Ex. 2 Appendix A, Order of Guardianship for T.D. at 1.  After determining that it was in T.D.'s best interest, the Family Court granted guardianship to Ms. I.L., allowing her to provide additional emotional and financial support to T.D. and permitting her to make decisions on T.D.'s behalf until she reaches the age of 21.  *Id.*

97.     On October 31, 2016, Family Court Judge Javier E. Vargas issued an SFO which found, among other things, that reunification of T.D. with her parents was not a viable option because her mother had died in 2015 and her father had "permitted her to be beaten at home" and

had "failed to plan for his child, oversee her medical care, and provide any emotional or financial support since 2012." Ex. 2 Appendix B, Oct. 31, 2016 Special Findings Order of T.D. at 1.

98.    In an amended SFO, Judge Vargas also found that T.D.'s "long-term safety, as well as her physical, emotional, psychological, and educational development would be impaired if [she] returned to Haiti," because there is "no suitable caretaker to provide adequate financial, emotional, and medical support for [T.D.]." Ex. 2 Appendix C, Aug. 24, 2017 Special Findings Order of T.D. at 1.  Accordingly, Judge Vargas found that it was not in T.D.'s best interest to be removed from the U.S. and returned to Haiti.

99.    Upon receiving the juvenile court's first SFO, T.D. promptly petitioned USCIS for designation as a Special Immigrant Juvenile.  Her Form I-360 Petition was received by USCIS on November 21, 2016.  Ex. 2 Appendix D, USCIS Form I-797C, Notice of Action for T.D. at 1. T.D.'s petition reflected that she meets the criteria set forth in the Immigration Nationality Act ("INA") at 8 U.S.C. § 1101(a)(27)(J)(i).  T.D.'s Petition was supported by the SFO issued by Judge Vargas of the Kings County Family Court.

100.    On March 13, 2018, USCIS issued a denial of T.D.'s Form I-360 petition.  *See* Ex. 2 Appendix J, USCIS Denial of T.D.'s Application for SIJS.  In the denial, the agency claimed, among other things, that because T.D. was 19 years old at the time of her petition, there was insufficient evidence to find that her SFO was issued by a "juvenile court" as required under section 101(a)(27)(i) of the INA, apparently because the agency was requiring a showing that the Family Court be able to make a custody determination over T.D.  *Id.* at 3.

101.    Although USCIS cited to the SIJS Regulation, 8 C.F.R. § 204.11(a), (d)(2)(i), and USCIS POLICY MANUAL Volume 6, Part J, Chapter 2, Section D, the agency did not explain how

or why these authorities suddenly required a custody determination in order for the state court to have jurisdiction to make SIJS eligibility determinations.

102.    In its denial, the agency confused the question of juvenile-court jurisdiction by importing a requirement that the court have jurisdiction over the <u>custody</u> of the juvenile.  As stated above, the SIJS Regulation provides that juvenile courts have jurisdiction over the "custody and care" of juveniles.  This definitional section of the SIJS Regulation cannot be read to require exercise of custody over an individual applicant without rendering the plain language of the SIJS Statute meaningless.

103.    Thus, according to USCIS's unfounded and erroneous interpretation of clearly established law, the Family Court did not have jurisdiction to make a SIJS eligibility determination.  Ex. 2 Appendix J, USCIS Denial of T.D.'s Application for SIJS at 3.

104.    As discussed below, this conclusion conflicts with the plain text of the SIJS Statute, 8 U.S.C. § 1101(a)(27)(J), the SIJS Regulation, and the USCIS Policy Manual, as well as longstanding agency policy.

## III.    USCIS'S DENIAL OF PLAINTIFF S.W.'S SIJS APPLICATION

105.    S.W. was born in Jamaica and lived with her mother, younger sister, and maternal grandmother until about the age of five.  Then S.W.'s mother left Jamaica to move to England and S.W.'s maternal grandmother assumed all responsibility for S.W. and her sister.  S.W. rarely saw her father even though he lived nearby.  S.W.'s grandmother was her sole care taker and provided for all of S.W.'s needs without assistance from either of her parents.  S.W. recalls only seeing her father a handful of times in her life.  S.W.'s only memory of her mother is the day that her mother

left her to move to England.  Since that time, S.W. has received no support from either parent and has had only sporadic telephonic communication with either of them.  *See* Ex. 3, Decl. of S.W.

106.    S.W. was born with clubbed feet.  S.W. had to use crutches to walk for the first few years of her life.  From an early age, S.W. recalls traveling to the United States to see specialized doctors and to obtain surgeries to help correct her condition.  While in the U.S., S.W. would also visit with her paternal family, including her grandfather, in Florida.  Ex. 3, Decl. of S.W. at ¶¶ 11-12.

107.    During one of these visits in 2005 when S.W. was approximately 6 or 7 years old, S.W. received the devastating news that her maternal grandmother and sole caretaker had been shot in the head in Jamaica while riding the bus with S.W.'s sister.  Since S.W.'s sole source of support in Jamaica was deceased, S.W.'s family decided that she should stay in the U.S.  Ex. 3, Decl. of S.W. at ¶¶12-13.

108.    In the U.S., S.W. was shipped between paternal family members, living in two states and three cities.  She initially lived with an aunt in Florida, but after a year or two, was sent to live with an uncle in Bronx, New York.  When her uncle began having difficulties in his marriage, S.W. was sent to an aunt in Albany.  Around age 13, S.W. was sent back to her aunt in Florida, but only for about another two years until she was sent back to Albany.  *See* Ex. 3, Decl. of S.W.

109.    Finally, around age 17, S.W. was sent back to the Bronx to live once again with her uncle and his new wife.  With her uncle's help, S.W. was able to refocus on school, graduated high school, and now attends college in the Bronx.  Ex. 3, Decl. of S.W. at ¶ 21.

110.    On October 3, 2016, when S.W. was 18 years old and still attending high school, Bronx County Family Court Referee Lauren Norton Lerner granted S.W.s petition to have her

uncle appointed as her guardian.  Ex. 3 Appendix A, Order of Guardianship for S.W. at 1.  The Referee also issued an SFO finding that S.W. was "dependent upon the Family Court, or [that she] has been committed to or placed in the custody of a state agency or department, or an individual or entity appointed by the state or Family Court."  Ex. 3 Appendix B, Oct. 3, 2016 Special Findings Order of S.W. at 1.

111.    The Referee also determined that reunification of S.W. with both of her parents was not viable due to abandonment because her parents "have both demonstrated their intent to forgo their parental rights and responsibilities with respect to [S.W.] since she was a small child."  *Id.*, and that it was not in S.W.'s best interest to be returned to Jamaica.  *Id.*

112.    Upon being placed under guardianship of her uncle and receiving the SFO, S.W. petitioned USCIS for designation as a Special Immigrant Juvenile.  Her form I-360 Petition was received by USCIS on November 14, 2016 Ex. 3 Appendix C, USCIS Form I-797C, Notice of Action for S.W. at 1.  S.W.'s petition reflected that she meets the criteria set forth in the INA at 8 U.S.C. § 1101(a)(27)(J)(i).  S.W.'s petition was supported by the SFO, Guardianship Order, and Letters of Guardianship issued by Referee Lerner of the Bronx County Family Court.

113.    On March 29, 2017, USCIS issued an RFE requesting that S.W. provide evidence of her age and documentation to establish a reasonable factual basis for the court's finding that it would not be in S.W.'s best interest to be returned to Jamaica.  *See* Ex. 3 Appendix E, March 29, 2017 RFE for S.W.  On June 12, 2017, S.W. timely responded to the RFE by submitting a memorandum of law, copy of S.W.'s birth certificate, and an affidavit by S.W. detailing how it is not in S.W.'s best interest to be returned to Jamaica because she would have no one to care for her there as her mother abandoned her as a young child and currently resides in England, her father never showed interest in caring for S.W., and S.W.'s only loving caregiver in Jamaica was

murdered while riding on public transportation.  *See* Ex. 3 Appendix E, Response to March 29, 2017 RFE for S.W.

114.    On June 27, 2017, USCIS issued a second RFE requesting that S.W. provide "evidence that you have been placed under the custody of an individual" and "evidence that the court the court order you submitted was issued by a juvenile court with jurisdiction over your care and custody as a juvenile under the state law of New York."  Ex. 3 Appendix F, June 27, 2017 RFE for S.W. at 1.  On September 5, 2017, S.W. timely responded to the second RFE with a memorandum of law, attorney affirmation in support of the RFE, and an expert affidavit from the Honorable A. Gail Prudenti, former Chief Administrative Judge of the Courts of New York State. *See* Ex. 3 Appendix G, Response to June 27, 2017 RFE for S.W.

115.    After many months without a word from USCIS, on March 6, 2018, USCIS issued a final decision denying S.W.'s Form I-360 petition.  *See* Ex. 3 Appendix H, USCIS Denial of S.W.'s Application for SIJS.  In the denial, USCIS claimed, among other things, that because S.W. was 18 years old at the time her Family Court orders were issued, there was insufficient evidence to find that the family court orders were issued by a "juvenile court making a custody and care determination for a juvenile."  *Id.* at 3.  USCIS provided no explanation of how or why they suddenly required a state court to make a custody determination in order to have authority to issue SFOs for use in SIJS applications.

IV.    **USCIS'S DENIAL OF PLAINTIFF D.A.F.A.'S SIJS APPLICATION**

116.    D.A.F.A. was born in El Salvador.  After his birth, D.A.F.A. lived with his mother, older brother, and maternal grandmother.  D.A.F.A.'s parents separated when D.A.F.A.'s mother was pregnant with D.A.F.A. because D.A.F.A.'s father was unfaithful.  When D.A.F.A. was still a baby, D.A.F.A.'s father disappeared from D.A.F.A.'s life despite promising to help raise and

support D.A.F.A.  D.A.F.A. cannot recall ever meeting his father in person or having any contact with him.  Ex. 4, Decl. of D.A.F.A. at ¶ 4.

117.    D.A.F.A.'s mother met D.A.F.A.'s stepfather when D.A.F.A was a few months old. D.A.F.A.'s stepfather is the only father D.A.F.A has ever known.  D.A.F.A's stepfather moved to the United States when D.A.F.A. was around five years old to better financially support the family. A few years later, D.A.F.A.'s mother also moved to the United States to financially support D.A.F.A. and his siblings.  Ex. 4, Decl. of D.A.F.A. at ¶¶ 15-19.

118.    Despite being separated, D.A.F.A. and his mother remained in regular contact. They video-chatted nearly every day.  D.A.F.A's mother and stepfather financially and emotionally supported D.A.F.A. and his siblings.  They regularly sent D.A.F.A's grandmother money and D.A.F.A. clothing, shoes, and other items.  Ex. 4, Decl. of D.A.F.A. at ¶ 20.

119.    When D.A.F.A. was in the 8th grade, gang members from the gang "18" started to approach him after school and attempt to recruit him.  D.A.F.A. feared that these gang members would threaten him or his family for his refusal to join the gang.  Ex. 4, Decl. of D.A.F.A. at ¶ 23.

120.    D.A.F.A.'s mother helped D.A.F.A. transfer schools to escape the threat of the gang "18." However, D.A.F.A.'s sense of security was short-lived.  When D.A.F.A. began the 9th grade in January 2015, "MS-13" gang members approached him and asked him to join their gang.  Ex. 4, Decl. of D.A.F.A. at ¶¶ 24-25.

121.    Eventually, D.A.F.A.'s mother decided that it was no longer safe for D.A.F.A. to attend school in El Salvador.  Not too long after that, D.A.F.A., fearing for his life, made the treacherous journey to the United States.  Ex. 4, Decl. of D.A.F.A. at ¶¶ 26-27.

122.    In November of 2015 when D.A.F.A. arrived in the United States, he was apprehended by immigration officials.  Eventually, he was released to the care of his mother in New York.  Ex. 4, Decl. of D.A.F.A. at ¶¶ 6-7.

123.    D.A.F.A. and his mother were thrilled to be united again.  They held each other and cried.  Ex. 4, Decl. of D.A.F.A. at ¶ 29.

124.    In New York, D.A.F.A. began living with his mother, step-father, two younger brothers, and other family members.  Ex. 4, Decl. of D.A.F.A. at ¶ 30.

125.    On February 21, 2017, a few months after D.A.F.A.'s 18th birthday, Suffolk County Family Court Judge Goglas granted D.A.F.A.'s mother's petition to be appointed the guardian of the person of D.A.F.A., stating that "this Court having determined that the best interests of the subject of the petition [D.A.F.A.] will be promoted by the appointment of a guardian of the person, and that [M.A.A.T] [D.A.F.A.'s mother] is in all respects competent to act as such guardian and to raise the subject of the proceeding to adulthood . . . IT IS HEREBY ORDERED that [M.A.A.T.]… is appointed guardian of the person of [D.A.F.A.]"  Ex. 4 Appendix A, Order of Guardianship for D.A.F.A at 1.

126.    Suffolk County Family Court Judge Goglas also issued an SFO with several findings, including that "[p]ursuant to § 661 of the Family Court Act, the above-named child [D.A.F.A.] is dependent upon the Family Court has been placed in the guardianship of [an] individual or entity appointed by the state or Family Court."  *See* Ex. 4 Appendix B, Feb. 21, 2017 Special Findings Order of D.A.F.A. at 1.

127.    Judge Goglas also found that reunification of D.A.F.A. with his father was not viable because " [D.A.F.A.'s] father failed to support and maintain regular contact with [D.A.F.A.] for most of his life."  *Id.* at ¶ 4.

42

128.    Judge Goglas additionally found that it was not in D.A.F.A.'s best interest to be returned to El Salvador because D.A.F.A. was threatened by gang members and "there is no one there to protect and care for him." *Id.* at ¶ 5.

129.    D.A.F.A. petitioned USCIS for designation as a Special Immigrant Juvenile.  His form I-360 Petition was received by USCIS on March 3, 2017 when D.A.F.A. was 18 years old. *See* Ex. 4 Appendix C, USCIS Form I-797C, Notice of Action for D.A.F.A.  Along with his form I-360 Special Immigrant Petition, D.A.F.A. submitted the Guardianship and Special Findings Orders issued by Judge Goglas of the Suffolk County Family Court.

130.    On August 15, 2017, USCIS issued a Request for Evidence ("RFE") on three grounds.  The RFE requested that D.A.F.A. provide evidence that he had "been placed under the custody of an individual."  Ex. 4 Appendix D, Aug. 15, 2017 RFE for D.A.F.A. at 1.  The RFE also stated that "it is unclear if the Court relied upon state law in reaching its finding that (1) reunification with your father is not viable due to abandonment and (2) it is not in your best interest to return to [El Salvador]." *Id.*  The RFE asked for evidence that the Special Findings Order was "issued in accordance with relevant state law." *Id.*  Finally, the RFE requested D.A.F.A. to "provide evidence that the court order you submitted was issued by a juvenile court with jurisdiction over your care and custody as a juvenile under the state law of New York." *Id.* at 2.

131.    On October 20, 2017, D.A.F.A.'s attorney at the time timely mailed a response to the RFE. *See* Ex. 4 Appendix E, Response to Aug. 15, 2017 RFE for D.A.F.A.  In D.A.F.A.'s RFE response, D.A.F.A.'s attorney included a memorandum of law with several supporting exhibits, including, a copy of D.A.F.A's SFO, a copy of D.A.F.A's Guardianship Order, and citations to New York family law. *See id.*  The memorandum of law addresses all areas of concern mentioned in the RFE. *Id.* at 5.  First, the memorandum of law explains that D.A.F.A.'s SFO was proper

because it was the official New York State Court Form GF-42 developed by the New York State

Unified Court System in consultation with USCIS to comply with the requirements of the INA §

1101(a)(27)(J) and 8 C.F.R. § 204.11(c).  *Id.* at 5.  Second, the memorandum of law also explains

how the statutory definition of a Special Immigrant Juvenile does not require a custodial placement

because it includes the word "or" between "declared dependent on a juvenile court" and "placed

under the custody of."  *Id.* at 6-7.  Additionally, the memorandum of law details how under New

York Law, guardianship satisfies the requirement that a child be "declared dependent on a juvenile

court."  *Id.* at 7.  Finally, the memorandum of law clarifies that even if the INA required "physical

custody" for SIJ applicants, guardianship in New York would meet this standard because guardians

in New York, pursuant to N.Y. Surr. Ct. Proc. Act § 1706(1), "exercise decision-making authority"

regarding the child's "protection, education, care and control, health and medical needs, and the

physical custody of the person of the child."  *Id.* at 8.

132.    On March 7, 2018, more than four months after receiving D.A.F.A.'s RFE

response, USCIS denied D.A.F.A.'s Form I-360 petition.  *See* Ex. 4 Appendix F, USCIS Denial

of D.A.F.A.'s Application for SIJS.  In the denial, USCIS states that it determined that "there is

insufficient evidence to conclude that the order was issued by a juvenile court" because D.A.F.A.

was 18 years old at the time his family court orders were issued.  *Id.* at 2. USCIS states that the

initial RFE was founded on three bases, but in its denial only addresses one of those three bases.

USCIS does not address its previous claim that the D.A.F.A. had to provide evidence that he was

"placed under the custody of an individual."

## CLASS ACTION ALLEGATIONS

133.    Pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, Plaintiffs

seek to represent a certified Plaintiff class consisting of all SIJS petitioners who based their

petitions on SFOs issued by the New York Family Court between the petitioners' 18th and 21st birthdays and either:

> 1) have been issued (i) Notices of Intent to Deny ("NOID"), (ii) Notices of Intent to Revoke ("NOIR"), (iii) Decisions of Denial, or (iv) Decisions revoking previously-granted SIJS since January 1, 2016 on the ground that the Family Court is not a "juvenile court" under 8 C.F.R. § 204.11(a) and/or that the Family Court is not empowered to issue SFOs under 8 U.S.C. § 1101(a)(27)(J); or

> (2) have a Family Court SFO finding the eligibility criteria of 8 U.S.C. § 1101(a)(27)(J) are satisfied and have a pending petition for SIJS before the USCIS based on the Family Court SFO.

"Proposed Class."

134.    This action meets all the Rule 23(a) prerequisites for maintaining a class action.

135.    The Proposed Class is sufficiently numerous that joinder is impracticable due to the size and nature of the Proposed Class, most of whom lack financial resources and legal representation, and some of whom are prospective class members yet to be identified.

136.    The Proposed Class presents common questions of law and fact that will determine the outcome of litigation and can be resolved in "one stroke." *Sykes v. Mel S. Harris & Assocs.*, LLC, 780 F.3d 70, 80 (2d Cir. 2015) (internal citations omitted).  Indeed, this case is centered on a single legal issue—whether USCIS's sudden decision systematically to deny SIJS petitions of 18 to 21 year-olds violates the APA.

137.    Like all class members, the four representatives of the Proposed Class have been deprived of the opportunity to receive SIJS because USCIS has decided that Family Courts do not qualify as "juvenile courts" capable of issuing valid SIJS SFOs for individual petitioners over 18 or that the Family Court lacks the authority to make a legal determination that the petitioner's

reunification with one or both parents is not viable.  Their claims for relief are thus typical of those of the Proposed Class.

138.    The four representative Plaintiffs are able fairly and adequately to protect the interests of the Proposed Class, lack any material conflicts, and are able to rely upon counsel with the expertise and resources to prosecute this claim.

139.    Finally, USCIS has acted or refused to act on grounds that apply generally to the Proposed Class—namely denying or revoking SIJS when the petitioners received SFOs between their 18th and 21st birthdays or notifying them of an intent to do the same—making certification of a Rule 23(b)(2) class appropriate.

## CLAIM FOR RELIEF

### ADMINISTRATIVE PROCEDURE ACT
### (Violations of the SIJS Statute and the APA)
### By All Plaintiffs Against Defendants

140.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the proceeding paragraphs as if fully set forth herein.

141.    The APA prohibits federal action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* § 706(2)(A), and that is taken "without observance of procedure required by law," *id.* § 706(2)(D).

142.    As alleged above, USCIS's new policy of refusing to acknowledge New York Family Court as a "juvenile court" for applicants between their 18th and 21st birthdays relies upon an erroneous interpretation of the SIJS Statute and New York law.  In misinterpreting the SIJS Statute, the agency is acting "in excess of statutory . . . authority . . . [and] short of statutory right." 5 U.S.C. § 706(2)(C).  Furthermore, its legal errors in interpreting the SIJS Statute, SIJS Regulation and New York law render USCIS's new policy "arbitrary, capricious . . . or otherwise not in accordance with the law."  *Id.* § 706(2)(A).  A decision based on a misinterpretation of clearly established law is necessarily arbitrary and capricious, and it is particularly so here, where the legal questions relating to the jurisdiction of the New York Family Court should be decided by state courts, not by a federal agency.

143.    As alleged above, even if USCIS's interpretations were not inconsistent with federal and state law (which they are), they nevertheless must be set aside as arbitrary and capricious, as the agency has not provided adequate reasoning for its policy shift.  Specifically, the

agency has failed to explain why it adopted its new interpretation and why it departed from past practice, and the legal support for each.

144.    As alleged above, even if even if USCIS's interpretations were not inconsistent with federal and state law (which they are), its new policy impermissibly leads the agency to treat similarly situated individuals differently, and therefore is substantively arbitrary and capricious.

145.    As alleged above, USCIS has failed to provide timely or adequate notice of its policy shift to the public, in violation of its obligation to publish its new policy. 5 U.S.C. § 552(a)(1)(D); *see also id*. § 552(a)(1).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

1.    Assume jurisdiction over this matter;

2.    Certify the case as a class action as proposed herein and in the accompanying motion for class certification;

3.    Issue a preliminary injunction barring USCIS from departing from its longstanding policy of recognizing, when the Family Court's Special Findings Order appointed a guardian for an individual over the age of 18, (i) the New York Family Court as a "juvenile court" under 8 C.F.R. § 204.11(a) and (ii) that the New York Family Court is empowered to issue SIJS Orders under 8 U.S.C. § 1101(a)(27)(J), pending a final adjudication of the case on the merits;

4.    Declare that:

    a.    The denials of Plaintiffs' and the putative class's SIJS petitions by USCIS were arbitrary, capricious and contrary to applicable law;

      b.   The New York Family Court has proper jurisdiction and authority to enter SFOs containing the SIJS Eligibility Findings for any petitioner between 18 and 21 years old;

5.     Issue a preliminary injunction that enjoins Defendants to provide 14 days' notice to Plaintiffs' counsel before Defendants take any adverse adjudicatory or enforcement action against any Plaintiff or putative class member while this litigation is pending;

6.     Issue an injunction that sets aside USCIS decisions denying the SIJS petitions of Plaintiffs and those similarly situated;

7.     Order USCIS to reopen and reconsider the SIJS petitions of Plaintiffs and any members of the Proposed Class whose petitions were denied based on the New York Family Court's purported lack of jurisdiction and authority to enter SFOs, and to re-adjudicate those petitions in light of the foregoing declaration;

8.     Award attorney's fees pursuant to 28 U.S.C. § 2412; and

9.     Grant such further relief as the Court deems just, equitable, and appropriate.

Dated:  June 7, 2018
        New York, New York                     Respectfully submitted,

                                                /s/ Robert J. Malionek
                                                Robert J. Malionek
                                                Nicholas L. McQuaid
                                                Virginia F. Tent
                                                Alexander R. DeLisi
                                                LATHAM & WATKINS LLP
                                                885 Third Avenue
                                                New York, NY 10022
                                                Tel: (212) 906-1200
                                                Robert.Malionek@lw.com
                                                Nicholas.McQuaid@lw.com
                                                Virginia.Tent@lw.com
                                                Alexander.DeLisi@lw.com

                                                Seymour James
                                                Adriene Holder
                                                Hasan Shafiqullah
                                                Judith Goldiner
                                                Lisa Freeman
                                                Beth Krause (*pro hac vice* forthcoming)
                                                Jennifer Levy
                                                Julie Dona
                                                Theresa B. Moser
                                                THE LEGAL AID SOCIETY
                                                199 Water Street, 3rd Floor
                                                New York, NY 10038
                                                (212) 577-3536
                                                JLevy@legal-aid.org

                                                *Attorneys for Plaintiffs*