## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| R.F.M., T.D., S.W., and D.A.F.A., on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br>   v.<br><br>KIRSTJEN NIELSEN, in her capacity as Secretary of the Department of Homeland Security; LEE FRANCIS CISSNA, in his capacity as Director of United States Citizenship and Immigration Services; BARBARA VELARDE, in her capacity as Chief of the Administrative Appeals Office of United States Citizenship and Immigration Services; ROBERT M. COWAN, in his capacity as Director of the United States Citizenship and Immigration Services National Benefits Center; THOMAS CIOPPA, in his capacity as Director of the United States Citizenship and Immigration Services New York City District Office; EDWARD NEWMAN, in his capacity as Director of the United States Citizenship and Immigration Services Buffalo District Office; DANIEL RENAUD, in his capacity as Associate Director of United States Citizenship and Immigration Services Field Operations Directorate; GWYNNE DINOLFO, in her capacity as United States Citizenship and Immigration Services Albany Field Office Director; GINA PASTORE, in her capacity as United States Citizenship and Immigration Services Brooklyn Field Office Director; CARMEN WHALING, in her capacity as United States Citizenship and Immigration Services Buffalo and Syracuse Field Office Director; ELIZABETH MILLER, in her capacity as United States Citizenship and Immigration Services Long Island Field Office Director; WILLIAM BIERMAN, in his capacity as United States Citizenship and Immigration Services New York Field Office Director; and BRIAN MEIER, in his capacity as United States Citizenship and Immigration Services Queens Field Office Director,<br><br>               Defendants. | 18 Civ. 5068 |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF RELEVANT FACTS ..............................................................................6

I.  The SIJS Statute and SIJS Regulation ..........................................................................6

II.  USCIS Has Arbitrarily Abandoned Its Policies And Past Practices To Start
     Denying SIJS Protections To Petitioners Between Their 18th and 21st Birthdays ............11

III.  Plaintiffs And The Proposed Class Are Currently Experiencing Irreparable Harm
      And Are At Grave And Immediate Risk Of Further Irreparable Harm ...........................15

ARGUMENT ..........................................................................................................................17

I.  Plaintiffs Are Entitled To Preliminary Relief Because USCIS's Policy Change Is
    Arbitrary and Capricious And Unlawful.......................................................................18

    A.  USCIS's Policy Change Is Premised On Erroneous Interpretations Of
        Federal And State Law.........................................................................................19

        1.  USCIS Misinterprets Federal and New York Law With Respect to
            Family Court's Jurisdiction Over The Custody Of Petitioners
            Between Their 18th And 21st Birthdays.......................................................20

        2.  USCIS Misinterprets Federal And New York Law With Respect
            To The Family Court's Determination That Reunifying The
            Petitioners With Their Parents Is Not Viable .............................................24

    B.  USCIS's Change In Policy Violates The APA Because It Is Unsupported
        By Reasoned Explanation And Results In Vastly Different Outcomes For
        Similarly Situated SIJS Petitioners ......................................................................27

    1.  USCIS Has Failed To Provide An Adequate Basis And Explanation For
        Its New Policy....................................................................................................28

    2.  USCIS's New Policy Arbitrarily Treats Similarly Situated SIJS Petitioners
        Differently..........................................................................................................32

    C.  USCIS Has Violated The APA By Adopting Its New Policy Without
        Adequate Notice....................................................................................................33

II.  Plaintiffs Are Entitled To A Preliminary Injunction Because They Are Suffering,
     And Will Continue To Suffer, Irreparable Harm Unless The Court Grants
     Preliminary Injunctive Relief....................................................................................35

III.   Plaintiffs Are Entitled To A Preliminary Injunction Because The Balance Of
       Equities And Public Interest Weigh Heavily In Favor Of Provisional Relief..................41

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Abdi v. Duke,*
    280 F. Supp. 3d 373 (W.D.N.Y. 2017) ...................................................................42

*Matter of Alamgir A.,*
    81 A.D.3d 937 (2d Dep't 2011) ........................................................................10

*In re Alana M.,*
    2011 N.Y. Slip. Op. 52321(U) (2011) ...........................................................10, 23

*Alimoradi v. United States Citizenship & Immigration Servs.,*
    No. CV 08-02529 DDP, 2008 U.S. Dist. LEXIS 86820 (C.D. Cal. Aug. 29,
    2008) ................................................................................................................20

*Allen v. Fiedler,*
    96 A.D.3d 1682 (4th Dep't 2012) ...................................................................23

*Anderson v. Butz,*
    550 F.2d 459 (9th Cir. 1977) ..........................................................................34

*In re Antowa McD.,*
    50 A.D.3d 507, 2008 N.Y. Slip. Op. 3690 (1st Dep't 2008) ...........................22

*Ariz. Dream Act Coal. v. Brewer,*
    757 F.3d 1053 (9th Cir. 2014) ........................................................................36

*Ariz. Dream Act Coal. v. Brewer,*
    855 F.3d 957 (9th Cir. 2017) ..........................................................................38

*Batalla Vidal v. Nielsen,*
    279 F. Supp. 3d 401 (E.D.N.Y. 2018) ............................................................42

*Doe v. Trump,*
    288 F. Supp. 3d 1045 (W.D. Wash. 2017), reconsideration denied, 284 F.
    Supp. 3d (W.D. Wash. 2018) ..........................................................................40

*El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. Dept. of Health and Human
    Serv.,*
    300 F. Supp. 2d 32 (D.D.C. 2004) ..................................................................32

*Encino Motorcars, LLC v. Navarro,*
    136 S. Ct. 2117 (2016) .......................................................................28, 30, 31

*Etelson v. Office of Personnel Management*,
 684 F.2d 918 (D.C. Cir. 1982) ........................................................33

*F.C.C. v. Fox Television Stations, Inc.*,
 556 U.S. 502 (2009) .......................................................................28

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
 481 F.3d 60 (2d Cir. 2007) .............................................................36

*I.N.S. v. Yueh-Shaio Yang*,
 519 U.S. 26 (1996) .........................................................................28

*Jesmer v. Dundon*,
 29 N.Y.2d 5 (1971) ....................................................................3, 22

*Judulang v. Holder*,
 565 U.S. 42 (2011) .........................................................................18

*In re Karen C.*,
 111 A.D.3d. 622 (2d Dep't 2013) ..................................................22

*Long Island Head Start Child Dev. Servs. v. NLRB*,
 460 F.3d 254 (2d Cir. 2006) ...........................................................32

*Lore v. City of Syracuse*,
 No. 00-CV-1833 HGM DEP, 2001 WL 263051 (N.D.N.Y. Mar. 9, 2011) ...........................40

*Marcelina M.-G. v. Israel S.*,
 112 A.D.3d 100 (2d Dep't 2013) ......................................................6

*Matter of Maria C.R. v. Rafael G.*,
 142 A.D.3d 165 (2d Dep't 2016) ....................................................25

*Matter of Marisol N.H.*,
 115 A.D.3d 185 (2d Dep't 2014) ....................................................26

*Morton v. Ruiz*,
 415 U.S. 199 (1974) .......................................................................34

*N.Y. v. Lyng*,
 829 F.2d 346 (2d Cir. 1987) ...........................................................34

*N.Y. Pathological & X-Ray Labs., Inc. v. INS*,
 523 F.2d 79 (2d Cir. 1975) .............................................................36

*N.Y. Progress & Prot. PAC v. Walsh*,
 733 F.3d 483 (2d Cir. 2013) ..............................................17, 35, 41

*Nat'l Elevator Cab & Door Corp. v. H & B, Inc.*,
   No. 07-CV-1562 (ERK)(RML), 2008 WL 207843 .............................................36

*National Cable & Telecomm. Ass'n v. Brand X Internet Services*,
   545 U.S. 967 (2005)...............................................................................................14, 28

*Nken v. Holder*,
   556 U.S. 418 (2009)...........................................................................................................42

*Matter of Perez Quintanilla*,
    A97 383 010 (AAO June 7, 2007) .........................................................................29

*Perez v. Mortg. Bankers Ass'n*,
   135 S. Ct. 1199 (2015)......................................................................................18, 28

*Perez v. Rodriguez*,
   No. 3:16-cv-00748-RJC-DSC, 2018 WL 1187780 (W.D.N.C. 2018)......................25

*Perez-Olano v. Gonzalez*,
   248 F.R.D. 248 (C.D. Cal. 2008) ................................................................................37

*Pollis v. New Sch. for Soc. Research*,
   829 F. Supp. 584 (S.D.N.Y. 1993).............................................................................40

*Reyes v. Cissna*,
   No. 17-7304, 2018 WL 1759467 (4th Cir. Apr. 12, 2018)......................................25

*Sampson v. Murray*,
   415 U.S. 61 (1974)......................................................................................................38

*New York ex rel. Schneiderman v. Actavis PLC*,
   787 F.3d 638 (2d Cir. 2015).......................................................................................36

*Sea-Land Serv., Inc. v. Dep't of Transp.*,
   137 F.3d 640 (D.C. Cir.) ............................................................................................19

*Seafarers Int'l Union of N. Am. v. Adams*,
   78 Civ. 4698, 1979 U.S. Dist. LEXIS 9767 (S.D.N.Y. Sep. 17, 1979) .................21

*Secretary of Agric. v. United States*,
   347 U.S. 645 (1954)....................................................................................................28

*Shapiro v. Cadman Towers, Inc.*,
   844 F. Supp. 116 (E.D.N.Y. 1994) ............................................................................40

*Wideman v. Wideman*,
   38 A.D.3d 1318 (4th Dep't 2007) ..............................................................................10

*Winter v. Nat. Res. Def. Council, Inc.*
    555 U.S. 7 (2008)........................................................................................41

*Yale-New Haven Hosp. v. Leavitt,*
    470 F.3d 71 (2d Cir. 2006)..........................................................................32

*Yeboah v. U.S. Dep't of Justice,*
    345 F.3d 216 (3d Cir. 2003)..........................................................................6

## STATUTES

5 U.S.C. § 552(a)(1)(D) ...............................................................................33, 34

5 U.S.C. § 706(2)(A)....................................................................................18, 19

5 U.S.C. § 706(2)(C)....................................................................................18, 19

5 U.S.C. § 706(2)(D)....................................................................................18, 34

8 U.S.C. § 1101(a)(27)(J) ............................................................................ *passim*

8 U.S.C. § 1101(b)(1) .....................................................................................2, 21

8 U.S.C. § 1227(a)............................................................................................41

8 U.S.C. § 1227(c)........................................................................................15, 41

8 U.S.C. § 1232(d)(6) ........................................................................................2

Administrative Procedure Act of 1946 .............................................................. *passim*

Immigration Act of 1990, Pub. L. No. 101-649, § 153, 104 Stat. 4978 (1990)..............................7

Immigration and Technical Corrections Act of 1994, Pub. L. No. 103-416,
    § 219(a) ..................................................................................................7

Immigration Reform and Control Act of 1986 .........................................................6

N.Y. Dom. Rel. Law § 74 ...............................................................................23

N.Y. Fam. Ct. Act § 115 ...............................................................................10

N.Y. Fam. Ct. Act § 141 ............................................................................3, 22

N.Y. Fam. Ct. Act § 657 .......................................................................10, 23, 26

N.Y. Fam. Ct. Act § 661 .......................................................................10, 26

N.Y. Fam. Ct. Act § 661(a) ....................................................................10, 24

Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457
(Dec. 23, 2008) .............................................................................................. *passim*

## TREATISES

13 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 65.22(1)(a) (3d ed.
1999) ......................................................................................................................41

## REGULATIONS

8 C.F.R. § 204.11 ..............................................................................................22, 26

8 C.F.R. § 204.11(a) .......................................................................................... *passim*

Special Immigrant Status, 58 Fed. Reg. 42843 (Aug. 12, 1993) ..................................6

Memorandum from Donald Neufeld, Acting Associate Director of Domestic
Operation, USCIS to Field Leadership re Trafficking Victims Protection
Reauthorization Act of 2008: Special Immigrant Juvenile Status Provisions
(Mar. 24, 2009) ......................................................................................................9

Jonathan Scharfen, Policy Memorandum, U.S. CITIZENSHIP & IMMIGRATION
SERVS., *Re: Matter of Perez Quintanillia*,
2007 WL 2410060 (July 30, 2007) .......................................................................29

Michael Aytes, Interoffice Memorandum, U.S. CITIZENSHIP & IMMIGRATION
SERVS., *AFM Update: Chapter 22: Employment-based Petitions* (AD03-01)
(Sept. 12, 2006)....................................................................................................7, 9

Policy Memorandum, U.S. CITIZENSHIP & IMMIGRATION SERVS., Updated
Implementation of the Special Immigrant Juvenile *Perez-Olano* Settlement
Agreement, PM-602-0117 (June 25, 2015) ...............................................................9

USCIS POLICY MANUAL, vol. 6, pt. J., ch. 3 .........................................10, 21, 29

USCIS POLICY MANUAL, vol. 6, pt. J., ch. 2, § A.......................................9, 29

USCIS POLICY MANUAL, vol. 6, pt. J., ch. 2, § B .............................................21

USCIS POLICY MANUAL, vol. 6, pt. J., ch. 2, § D.................................................9

## CONSTITUTIONAL PROVISIONS

N.Y. CONST. art. VI, § 13 ..........................................................................................3

## OTHER AUTHORITIES

Laila L. Hlass, *States and Status: A study of Geographical Disparities for
Immigrant Youth*, 46 COLUM. HUM. RTS L. REV. 266 (2014)....................................6

Liz Robbins, *A Rule is Changed for Young Immigrants, and Green Card Hopes Fade*, NEW YORK TIMES, April 18, 2018 .......................................................................13, 30

N.Y. Bill Jacket, A.B. 8358-B, 231st Leg., 2008 Reg. Sess., Ch. 404 (N.Y. 2008) .....................23

R.F.M., T.D., S.W., and D.A.F.A. ("Plaintiffs"), on behalf of themselves and all other similarly situated individuals (the "Proposed Class"), by and through their attorneys, Latham & Watkins LLP and The Legal Aid Society, respectfully submit this Memorandum of Law, together with the Declaration of Robert J. Malionek in support of Plaintiffs' Motion for a Preliminary Injunction against Defendants Kirstjen Nielsen, Lee Francis Cissna, Barbara Velarde, Robert M. Cowan, Thomas Cioppa, Edward Newman, Daniel Renaud, Gwynne Dinolfo, Gina Pastore, Carmen Whaling, Elizabeth Miller, William Bierman, and Brian Meier, in their official capacities (each a "Defendant" and collectively, together with the U.S. Citizenship and Immigration Services, "USCIS").  As set forth below, Plaintiffs respectfully request that the Court enjoin USCIS to immediately cease applying its unlawful policy.  Because USCIS's unlawful conduct has left Plaintiffs and the Proposed Class members in precarious legal positions, Plaintiffs further request an injunction requiring USCIS to notify Proposed Class counsel prior to taking any adverse adjudicatory or enforcement action against any Plaintiff or member of the Proposed Class during the pendency of this litigation.

## PRELIMINARY STATEMENT

Plaintiffs are immigrant youths who, between their 18th and 21st birthdays, have been determined by New York State's Family Court to have been abused, abandoned or neglected by one or both parents.  R.F.M. is a 20 year-old from the Dominican Republic who has been abandoned by both parents and has lived in the care of her grandmother in the Bronx since she was an infant.  T.D. is a 20 year-old from Haiti who has been abused by family members, has been hospitalized for depression, but now has been taken under the wing of an assistant principal from her high school and strives for an education and the chance to work.  S.W. is a 20 year-old abandoned by her parents to the care of a grandmother who was killed in a random act of violence

in Jamaica who has subsequently bounced from home to home before her uncle was appointed her guardian.  D.A.F.A., who was born in El Salvador, is a 19 year-old who was abandoned by his father and is fleeing gang violence in his home country.  The New York Family Court ("Family Court") has appointed a guardian on each Plaintiff's behalf and found that it would not be in each Plaintiff's best interest to be returned to his or her country of origin.

Until a recent change in USCIS policy, Plaintiffs would have been found eligible for Special Immigrant Juvenile Status ("SIJS"), a form of humanitarian immigration relief, which provides a path to legal permanent residence and citizenship.  Congress enacted the SIJS statute in 1990—and expanded it in 2008—for the purpose of providing humanitarian relief and protection to immigrant youth who meet clearly delineated requirements.  To apply for SIJS, an immigrant youth must (1) be under the age of twenty-one; (2) be unmarried; (3) have been declared dependent on a state juvenile court (such as by being appointed a guardian) or placed in the custody of a state agency or individual appointed by the court; (4) obtain a finding that reunification with one or both parents is not viable because of abuse, neglect or abandonment, or a similar basis found under state law; and (5) obtain a finding that it would not be in his or her best interests to be returned to his or her country of origin (collectively, the "SIJS Eligibility Findings" which are issued in a state court's Special Findings Order, or "SFO").  *See* 8 U.S.C. § 1101(a)(27)(J) (providing requirements (3)-(5) above) ("SIJS Statute"); 8 U.S.C. § 1232(d)(6) (providing that a SIJS petition may not be denied on the basis of age if the petitioner was a "child"—that is, unmarried and under the age of 21, 8 U.S.C. § 1101(b)(1)—at the time of filing).

The SIJS Statute recognizes that issues of child welfare are appropriately vested in the states, not the federal government, and requires applicants to obtain a Special Findings Order ("SFO") with the requisite factual determinations from a state juvenile court.  The process under

the SIJS Statute and 8 C.F.R. § 204.11(1) ("SIJS Regulation") is as follows:  First, the young immigrant must petition for an order from a state juvenile court establishing the SIJS Eligibility Findings.[1]  Once the Family Court[2] issues an SFO containing the necessary SIJS Eligibility Findings, the SIJS petitioner submits his or her application to USCIS.  Upon approval by USCIS, the petitioner may apply for Adjustment of Status as soon as a visa is available.[3]  After the Adjustment of Status petition is approved, the petitioner becomes a lawful permanent resident.

Since 2008, the U.S. Citizenship and Immigration Services ("USCIS"), repeatedly granted SIJS based on SFOs issued by the Family Court for petitioners up to the age of 21.

Recently, USCIS issued Notices of Intent to Deny and actually denied Plaintiffs' applications, as well as the applications of other members of the Proposed Class, for a set of reasons never seen previously: that New York's Family Court (i) no longer qualifies as a "juvenile court" based on the argument that the Family Court does not have jurisdiction over the custody of petitioners between their 18th and 21st birthdays, and/or (ii) cannot issue a finding that reunification of a petitioner with a parent is "not viable" based on the argument that the Family Court does not

---

[1] A "juvenile court" is broadly defined under the SIJS Regulation as any court "having jurisdiction under State law to make judicial determinations about the custody and care of juveniles."  8 C.F.R. § 204.11(a).  The definition of "juvenile court" does *not* require the court to have jurisdiction over the custody of the specific SIJS petitioner before it, but only that the court be one with jurisdiction, generally, to make "custody and care" determinations.  Nor does anything in the SIJS Statute or SIJS Regulation require the court issuing the SFO to have the authority to reunify applicants with their parents.

[2] In New York State, the primary juvenile court that determines eligibility for SIJS is the Family Court.  N.Y. CONST. art. VI, § 13. The New York Family Court is particularly suited to make SIJS eligibility decisions.  The New York Family Court Act empowers the Court with a "wide range of powers for dealing with the complexities of family life so that its action may fit the particular needs of those before it," and the Court acts as "a special agency for the care and protection of the young."  N.Y. FAM. CT. ACT § 141; *Jesmer v. Dundon*, 29 N.Y.2d 5, 9 (1971) ("The Family Court – as the Joint Legislative Committee on Court Reorganization declared in 1962 in dealing with the then proposed new state-wide Family Court Act – is a special agency for the care and protection of the young and the preservation of the family.") (internal citation omitted).

[3] Visas may not be immediately available because Congress sets limits on the number of immigrant visas that can be issued each year.  Visa "retrogression" occurs when more people apply for a visa in a particular category or country than there are visas.  The Department of State publishes a monthly Visa Bulletin listing the dates that govern visa ability, and applicants must wait to become eligible to file for adjustment of status.

have the authority to order such reunification.  *See* Ex. 8, Decl. of Eve Stotland at ¶ 11.[4]  USCIS's

change in policy is not based on any change in law or regulation.  Nor has USCIS issued any policy

guidance setting forth this dramatic new policy.  In fact, it is contrary to USCIS's own guidance

and longstanding precedent.  *Id*. at ¶¶ 7-10.

On both bases of denial, USCIS's abrupt policy change reflects a profound misreading of

the SIJS Statute, corresponding regulations, and New York State law.  USCIS's conclusion that

the Family Court must have jurisdiction over the "custody" of petitioners is inconsistent with the

SIJS Statute itself, which requires only an order that the petitioner is either "dependent on" the

court, *i.e.*, when the court issues a guardianship order or places the petitioner in the custody of a

state agency or individual.  Moreover, under the SIJS Regulation, the Family Court needs to have

jurisdiction only over the care and custody of juveniles generally to qualify as a "juvenile court"

for the purposes of SIJS—a requirement that the New York Family Court plainly satisfies.  Finally,

USCIS ignores that under New York State law, a guardianship order is equivalent to a grant of

legal custody and encompasses the grant of physical custody rights to the guardian.  Thus, contrary

to USCIS's assertion, the New York Family Court *does* have jurisdiction over the custody of

petitioners in guardianship proceedings.

USCIS is similarly mistaken in its position that the Family Court must have the authority

to order reunification between petitioners aged 18 and older with their parents in order to make the

SIJS Eligibility Finding that it is "not viable" for a petitioner to be reunified with his or her natural

parents.  Nothing in the SIJS Statute or SIJS Regulation states that a court must have such

authority.  But in any event, the Family Court does in fact have the authority under New York law

to reunify a petitioner 18 and older with his or her natural parent.

---

[4] All references to "Ex. __" are references to the Declaration of Robert J. Malionek, filed herewith.

In now rejecting the same Family Court SFOs on which SIJS petitioners have relied and which USCIS has recognized for a decade, USCIS has adopted a position that conflicts with the SIJS Statute and Regulation and violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.* The policy change is arbitrary and capricious, wrong as a matter of law, and irreparably harms thousands of young people who the SIJS Statute aims to protect, yet who now are at risk of deportation.

The significance of SIJS for young immigrants, and therefore the impact of the unlawful denial of eligibility for its benefits, cannot be overstated. Through the SIJS Statute, Congress provided thousands of young immigrants—*explicitly* including those up to their 21st birthdays[5]— with the opportunity to obtain visas, green cards, and access to an array of critical benefits and protections that include pursuing higher education and employment opportunities, obtaining driver's licenses, serving in the U.S. military, supporting their families, and living securely without fear of removal and deportation. The impact of the SIJS Statute's benefits extends beyond the SIJS recipients themselves (each of whom already faces the adversity associated with having being abused, neglected or abandoned at a young age) to the neighborhoods and states in which these young immigrants reside. SIJS provides stability and a sense of permanence within the SIJS recipients' communities, dedicated students in the communities' schools, and productive members of the workforce in the local economies.

These individuals now confront the loss of all the protections and benefits of the SIJS Statute and the threat of being forced to return to unsafe and unfamiliar environments in their countries of origin. Ex. 1, Decl. of R.F.M. at ¶ 27; Ex. 2, Decl. of T.D. at ¶¶ 34-35, 40; Ex. 3, Decl. of S.W. at ¶ 31; Ex. 4, Decl. of D.A.F.A. at ¶¶ 38, 40. Unless this Court grants preliminary

---

[5] Through 2008 amendments expanding the benefits of the SIJS Statute, as discussed in further detail *infra*.

relief, the Proposed Class will continue to suffer irreparable harm each day that USCIS's unlawful policy is permitted to continue and they are denied the many benefits and protections of SIJS.

Plaintiffs thus seek a preliminary injunction enjoining USCIS from reversing its longstanding practice of recognizing the New York Family Court as a "juvenile court" under 8 C.F.R. § 204.11(a), empowered to issue findings that a petitioner's reunification with his or her parent is not viable and to issue SIJS Orders under 8 U.S.C. § 1101(a)(27)(J) when appointing a guardian for an individual over the age of 18, pending a final adjudication of the case on the merits. Plaintiffs also seek to enjoin USCIS to provide 14 days' notice to Plaintiffs' counsel before USCIS takes any adverse adjudicatory or enforcement action against any Plaintiff or Proposed Class member while this litigation is pending.

<u>**STATEMENT OF RELEVANT FACTS**</u>

## I. THE SIJS STATUTE AND SIJS REGULATION

Congress created SIJS in 1990 to provide relief from deportation to unaccompanied or undocumented neglected children in the United States.[6] The purpose of SIJS is to protect juveniles from being forced to return to their countries of origin, where they may be subject to abuse or neglect. *See Marcelina M.-G. v. Israel S.*, 112 A.D.3d 100, 113 (2d Dep't 2013); *see also Yeboah v. U.S. Dep't of Justice*, 345 F.3d 216, 221 (3d Cir. 2003). Denying SIJS leaves young immigrants vulnerable to deportation and unable to apply for adjustment of status.[7] The original language of the statute defined a special immigrant juvenile as "an immigrant (i) who has been declared

---

[6] Initially, the SIJS Statute was drafted to assist children in foster care who lacked a pathway to permanent residence under the 1986 Immigration Reform and Control Act. See Laila L. Hlass, *States and Status: A study of Geographical Disparities for Immigrant Youth*, 46 COLUM. HUM. RTS L. REV. 266, 300 (2014). As discussed *infra*, Congress reaffirmed SIJS as an important form of humanitarian relief and expanded its scope through subsequent amendments.

[7] *See* Special Immigrant Status, 58 Fed. Reg. 42843, 42844 (Aug. 12, 1993) ("[SIJS] alleviates hardships experienced by some dependents of United States juvenile courts by providing qualified aliens with the opportunity to apply for special immigrant classification and lawful permanent resident status, with possibility of becoming citizens of the United States in the future.").

dependent on a juvenile court located in the United States and has been deemed eligible by that court for long-term foster care, and (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence . . . ."  Immigration Act of 1990, Pub. L. No. 101-649, § 153, 104 Stat. 4978 (1990).

In 1993, the Immigration and Naturalization Service (INS), now USCIS, issued a rule pursuant to the SIJS Statute clarifying that the state court need not be called a "juvenile court" to issue qualifying orders, and instead stating that the term referred to a "court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles."  8 C.F.R. § 204.11(a).[8] Noting that some state courts provide continued protection to individuals over the age of 18, the agency also explicitly extended SIJS benefits to individuals over the age of 18, but under 21 years old.  *Id*. at § 204.11(c)(1); Special Immigrant Status, 58 Fed. Reg. at 42846.

Over the last two decades, the scope of SIJS protections has expanded, making SIJS an integral federal humanitarian initiative for thousands of young immigrants across the country who have been abandoned, abused or neglected.  Initially, SIJS was available only to youth deemed "dependent" upon a juvenile care and determined to be eligible for long-term foster care.  Congress subsequently expanded the SIJS definition to include individuals placed under the "custody" of the state or an individual appointed by the state.  *See* Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, § 219(a), 108 Stat. 4305 (Oct. 25, 1994);

---

[8] In subsequent guidance, the agency advised adjudicators that a "juvenile court . . . could include *any* court whose jurisdiction includes determinations as to juvenile dependency" and provided as "[e]xamples (depending on the state jurisdiction): Juvenile Court; Family Court; Probate Court."  Ex. 15, Interoffice Memorandum from Michael Aytes, U.S. CITIZENSHIP & IMMIGRATION SERVS., *AFM Update: Chapter 22: Employment-based Petitions* (AD03-01), at 82 (Sept. 12, 2006) (emphasis added).

Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, § 235, 122 Stat. 5044 (Dec. 23, 2008) ("TVPRA").   In 2008, the TVPRA broadened SIJS by removing the requirement that a child be deemed eligible for long-term foster care, which permitted children to apply for SIJS if they obtained a court order stating that they had suffered "abuse, neglect, or abandonment" (or something similar) by *one* parent.   TVPRA § 235(d).   The TVPRA also expressly provided that a qualifying immigrant could apply for SIJS until the age of 21, consistent with the INA's definition of "child," and that such applications could not be rejected on the basis of the applicant's age.   *Id.*

Today, therefore, the SIJS Statute defines a petitioner who is eligible for SIJS as

> an immigrant who is present in the United States—(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law . . .

8 U.S.C. § 1101(a)(27)(J) (recognizing that it is sufficient for a juvenile court to declare the petitioner "dependent on" the court *or* to issue a custody order).[9]

SIJS is designed to help all qualified immigrant youth—whether in foster care, or otherwise determined to be dependent on a juvenile court (such as through a guardianship order), and including individuals between the ages of 18 and 21—obtain safe and stable homes and brighter futures.   In the decade following the TVPRA, USCIS routinely granted SIJS for juveniles declared dependent on the state juvenile courts, including juveniles between their 18th and 21st birthdays who were issued guardianship orders by the Family Court.   Ex. 8, Decl. of Eve Stotland at ¶¶ 7-

---

[9] Despite these expansions, the SIJS Regulation was never updated to make clear that a juvenile court means a court that issues findings as to *either* an individual's custody or an individual dependent on the court.

10.  USCIS's longstanding practice, affirmed repeatedly in its own policy guidance, has been to grant SIJS for juveniles "dependent on" juvenile courts.[10]  Identifying the court's action as a "custody determination" was never required.  Furthermore, the SIJS Statute simply provides that an immigrant is eligible for SIJS where reunification with one or both of the petitioner's parents is not a viable option due to abuse, neglect, abandonment, or similar basis under state law.  8 U.S.C. § 1101(a)(27)(J)(i).  Thus, USCIS had also never required that the state juvenile court have the authority to reunify a specific petitioner with his or her natural parent in order to make the SIJS Eligibility Finding that it would not be viable to reunify the petitioner with a parent.

Moreover, during this time USCIS consistently reaffirmed its policy of giving wide deference to state courts' determinations of their own jurisdiction to issue SFOs with such Findings.  *See* Special Immigrant Status, 58 Fed. Reg. at 42848 (expressing reluctance to "infringe[] upon the juvenile court system's ability to make determinations regarding its own jurisdictional issues"); Ex. 15, Interoffice Memorandum from Michael Aytes, U.S. CITIZENSHIP & IMMIGRATION SERVS., *AFM Update: Chapter 22: Employment-based Petitions* (AD03-01), at 82 (Sept. 12, 2006) ("The task of the adjudicator is not to determine whether the [SFO] was properly

---

[10] For example, in 2006, USCIS advised officials evaluating SIJS applications that a "juvenile court . . . could include *any court whose jurisdiction includes determinations as to juvenile dependency*."  Ex. 15, Interoffice Memorandum from Michael Aytes, U.S. CITIZENSHIP & IMMIGRATION SERVS., *AFM Update: Chapter 22: Employment-based Petitions* (AD03-01), at 82 (Sept. 12, 2006) (emphasis added) ("Aytes Memo").  Three years later, USCIS issued a memorandum stating that children in immigration custody could obtain valid SFOs that did not involve custody determinations.  *See* Memorandum from Donald Neufeld, Acting Associate Director of Domestic Operation, USCIS to Field Leadership re Trafficking Victims Protection Reauthorization Act of 2008: Special Immigrant Juvenile Status Provisions 3 (Mar. 24, 2009) (implicitly acknowledging that juvenile court orders can be obtained in non-custodial proceedings, in which case specific consent would not be required).  This policy was reaffirmed less than three years ago.  *See* USCIS Policy Memorandum, Updated Implementation of the Special Immigrant Juvenile *Perez-Olano* Settlement Agreement, PM-602-0117 (June 25, 2015) ("As a reminder, specific consent from HHS . . . is needed only if the applicant was in Federal custody at the time the juvenile court issued the order and the juvenile court order altered or determined custody status or placement.").  As recently as 2016, USCIS reiterated <u>in its own Policy Manual</u> that an SFO must contain findings about being dependent upon the court *or* custody.  *See* Ex. 11, USCIS POLICY MANUAL, vol. 6, pt. J., ch. 2, § A ("If a juvenile court has made certain findings, under state law, on dependency <u>or</u> custody, parental reunification, and the best interests of the child, then the child may be eligible for SIJ[S] classification.") (emphasis added); *id.* ch. 2, § D (discussing finding of dependency or custody).

issued.").  Indeed, the current and operative version of the USCIS Policy Manual states: "[t]here is nothing in USCIS guidance that should be construed as instructing juvenile courts on how to apply their own state law."  *See* Ex. 11, USCIS POLICY MANUAL, vol. 6, pt. J., ch. 3..  As noted above, the SIJS Regulation relies upon a factual determination by a state juvenile court.

In the State of New York, the Family Court is a specialized court of the State Unified Court System located in each county.  Ex. 5, Decl. of the Hon. A. Gail Prudenti at ¶ 6.  The Family Court has jurisdiction over "abuse and neglect proceedings" and "support proceedings," among other legal matters related to the care and custody of minors.[11]  N.Y. FAM. CT. ACT § 115 (outlining matters over which Family Court has jurisdiction, including "proceedings concerning adoption and custody of children . . . proceedings concerning guardianship and custody of children by reason of the death of, or abandonment or surrender by, the parent or parents . . .").  The Family Court's jurisdiction includes making custodial and caretaking determinations of minors up to age 21, including in guardianship proceedings.[12]  *See*, *e.g.*, N.Y. FAM. CT. ACT § 661 (providing Family Court with jurisdiction over minors up to age 21 in guardianship proceedings).  Under New York law, a guardianship order involves the grant of physical custody rights and, moreover, functions as a legal custody determination; the Family Court has jurisdiction over custody for minors up to age 21 and has the authority to return a minor over the age of 18 to the custody of his or her parent.  *Id.* at §§ 657, 661; *see also Wideman v. Wideman*, 38 A.D.3d 1318, 1319 (4th Dep't 2007); *In re Alana M.*, 2011 N.Y. Slip Op. 52321[U], *9 (N.Y. Fam. Ct. Dec. 22, 2011).

---

[11] In New York, depending on the type of proceeding or legal determination, a "minor" is a child under age 21.  Ex. 5, Decl. of the Hon. Gail A. Prudenti at ¶¶ 7-11; *see*, *e.g.*, *Matter of Alamgir A.*, 81 A.D.3d 937, 938 (2d Dep't 2011) (20-year-old minor in guardianship proceeding deemed dependent on Family Court).

[12] The New York statute is explicit:  "For purposes of appointment of a guardian of the person pursuant to this part, *the terms infant or minor shall include a person who is less than twenty-one years old* who consents to the appointment or continuation of a guardian after the age of eighteen." N.Y. FAM. CT. ACT § 661(a) (emphasis added).

Accordingly, USCIS has recognized the validity of the Family Court's SFOs for petitioners over the age of 18 in guardianship proceedings. Ex. 8, Decl. of Eve Stotland at ¶¶ 8-10; *see* Ex. 5, Decl. of the Hon. A. Gail Prudenti. Until recently, USCIS consistently granted SIJS petitions on the basis that these SFOs were validly issued by "juvenile courts" within the meaning of the SIJS Statute and Regulation, and that the Family Court was empowered to issue a finding that the petitioner's reunification with his or her parent is not viable due to abuse, neglect or abandonment. Ex. 8, Decl. of Eve Stotland at ¶¶ 8-10; *see* Ex. 5, Decl. of the Hon. A. Gail Prudenti.

## II.   USCIS HAS ARBITRARILY ABANDONED ITS POLICIES AND PAST PRACTICES TO START DENYING SIJS PROTECTIONS TO PETITIONERS BETWEEN THEIR 18TH AND 21ST BIRTHDAYS

USCIS abruptly changed its approach starting in mid-2017. At that time—and without any change in statute or regulation, or issuing new formal or informal guidance—USCIS reversed its longstanding policies and practices regarding SIJS petitions for petitioners between their 18th and 21st birthdays. USCIS began to issue a number of seemingly frivolous Requests for Evidence ("RFEs") and Notices of Intent to Deny ("NOIDs") regarding the validity of the SFOs from Family Court. Ex. 7, Decl. of Maria Odom at ¶¶ 14-18; Ex. 6, Decl. of Beth Krause at ¶¶ 10-20. These requests and notices from USCIS implicitly challenged the validity of Family Court orders offered in support of SIJS applications. *See id.* For example, the RFEs required petitioners: (i) to show that the Family Court was acting under state law; (ii) to provide evidence that a guardian was issued custody as opposed to guardianship; and (iii) to offer details of the evidence submitted to the Family Court in support of the request for an SFO. *See, e.g.*, Ex. 1 Appendix E, Aug. 11, 2017 RFE for R.F.M. at 1 (instructing applicant to "provide evidence that the court order [they] submitted was issued by a juvenile court with jurisdiction over [their] care and custody as a juvenile under the state law of New York,"; *see also* Ex. 2 Appendix H, June 10, 2017 RFE for T.D. at 1; Ex. 3 Appendix F, June 27, 2017 RFE for S.W. at 1; and Ex. 4 Appendix D, Aug. 15,

2017 RFE for D.A.F.A. at 1 (all requesting evidence to prove that the applicants had been "placed under the custody of an individual"). Upon information and belief, USCIS had never previously solicited such evidence from SIJS applicants. Ex. 8, Decl. of Eve Stotland at ¶ 8; Ex. 6, Decl. of Beth Krause at ¶ 16, 19, 20.

Despite detailed responses submitted by petitioners, including Plaintiffs, in early 2017, USCIS began issuing denials of SIJS petitions for applicants who offered supporting SFOs from Family Court based on guardianship proceedings when petitioners were over the age of 18. Ex. 1 Appendix G, USCIS Denial of R.F.M.'s Application for SIJS at 3; Ex. 2 Appendix J, USCIS Denial of T.D.'s Application for SIJS at 3; Ex. 3 Appendix H, USCIS Denial of S.W.'s Application for SIJS at 3; Ex. 4 Appendix F, USCIS Denial of D.A.F.A.'s Application for SIJS at 3; *see also* Ex. 7, Decl. of Maria Odom at ¶ 15; Ex. 6, Decl. of Beth Krause at ¶¶ 14-15. The purported basis of these denials was an unannounced change in policy that the Family Court (i) is not a "juvenile court" with respect to applicants between their 18th and 21st birthdays because the Family Court lacks jurisdiction to make custody determinations for individuals older than the age of 18, and/or (ii) must have the authority to reunify each petitioner with a natural parent in order to make the requisite determination that it would not be viable to reunify with the parent. Ex. 6, Decl. of Beth Krause at ¶ 15; Ex. 8, Decl. of Eve Stotland at ¶ 11; *see also* Ex. 3 Appendix H, USCIS Denial of S.W.'s Application for SIJS at 3 (denying Plaintiff's application for SIJS in part "[b]ecause [she] was eighteen, [she] did not provide an order from a juvenile court…declar[ing her] dependent on a juvenile court"; Ex. 4 Appendix F, USCIS Denial of D.A.F.A.'s Application for SIJS at 3 (denying Plaintiff's application for SIJS in part "[b]ecause [he] was over eighteen, [he] did not provide an order from a juvenile court making a custody and care determination for a juvenile."). In some cases, moreover, USCIS has moved to <u>revoke</u> SIJS that USCIS already had conferred on

12

young immigrants—based solely on this newly adopted policy that the Family Court lacks

jurisdiction to issue SFOs for children over the age of 18. Ex. 8, Decl. of Eve Stotland at ¶ 13.

USCIS has not been forthcoming in explaining its departure from past agency practice. On

April 18, 2018, USCIS spokesperson Jonathan Withington denied to The New York Times that

there had been any policy change on this issue. *See* Ex. 12, Liz Robbins, *A Rule is Changed for

Young Immigrants, and Green Card Hopes Fade*, N.Y. TIMES (Apr. 18, 2018). Specifically,

Withington stated that, "[USCIS] has not issued any new guidance or policy directives regarding

the adjudication of [SIJS] petitions. We remain committed to adjudicating each petition

individually based on the merits of the case and safeguarding the integrity of our lawful

immigration system." *Id.* On April 24, 2018, however, USCIS issued a statement to a news

organization that the agency had in fact instituted a policy change:

> In November 2016, USCIS decided to centralize adjudication of all
> Special Immigrant Juvenile (SIJ) cases to the National Benefits
> Center (NBC) in Missouri to more consistently and efficiently
> process these cases. By late summer 2017, the USCIS NBC asked
> for legal guidance that affected pending cases filed by individuals
> over 18 at the time the New York state court order was issued while
> the NBC sought legal clarification from the USCIS Office of Chief
> Counsel. The agency began holding Texas cases for the same reason
> in fall 2017. In February 2018, OCC provided legal guidance on the
> statutory requirements for "reunification with one or both parents"
> for the purposes of establishing eligibility for the SIJ classification.
> In February, in light of OCC's legal guidance, the NBC began to
> review the approximately 5,500 pending cases, resulting in the
> issuance of Notices of Intent to Deny for approximately 130 cases
> in that population. Pending cases that had previously been issued
> Requests for Evidence or Notices of Intent to Deny were issued final
> decisions. A total of approximately 260 have been denied. ***For
> purposes of establishing eligibility for SIJ, the statute requires that
> a state court have the authority to return a child to the custody of
> their parent in order for that court to find that reunification is not
> viable. Since most courts cannot place a child back in the custody
> of their parent once the child reaches the age of majority (as
> determined by state and in most instances that is age 18), those***

*state courts do not have power and authority to make the*
*reunification finding for purposes of SIJ eligibility.*

Ex. 13, April 25, 2018 Politico article entitled "USCIS Explains Juvenile Visa Denials" by Ted Hesson, with an April 24, 2018 statement from USCIS spokesperson Jonathan Withington to Politico appended thereto at 13 (emphasis added).   Although USCIS conceded that a new interpretation was adopted within the agency, the two sentences underlined above reflect the agency's only attempt to explain the reasoning for its newfound approach to SIJS adjudications and novel legal interpretations.[13]

USCIS is now imposing extra-statutory requirements that state courts have (i) jurisdiction over the custody of the individual applicants in order to issue valid SFOs and (ii) authority to reunify a petitioner with his or her parent.   And it is applying these requirements to New York Family Court orders in a manner that fundamentally misunderstands New York family law.   The sudden shift in policy is arbitrary and capricious, and it is not in accordance with the SIJS statute, agency rules, or state laws on child welfare and juveniles.

Prior to this sudden and arbitrary change in policy, upon information and belief, hundreds of individual petitioners between their 18th and 21st birthdays were granted SIJS in New York each year.   Ex. 5, Decl. of the Hon. A. Gail Prudenti at ¶¶ 12-13; Ex. 8, Decl. of Eve Stotland at ¶¶ 7-11.   Now, hundreds of New Yorkers with pending applications are at risk of receiving a denial. Ex. 8, Decl. of Eve Stotland at ¶¶ 11-13.

---

[13] Plaintiffs expect that USCIS may attempt to argue that its policy change is not a new policy but rather a reinterpretation of law.   This is a distinction without a difference.   USCIS's recent pattern of adjudications reflects a clear change in USCIS's position regardless of whether USCIS identifies its approach as a new policy or a new interpretation of law.   For the reasons discussed *infra*, USCIS cannot circumvent APA requirements by framing its new approach to SIJS applications as a change in interpretation of law instead of a policy change.   *See*, *e.g.*, *National Cable & Telecomm. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 982 (2005) (performing an identical analysis regardless of whether an agency has labeled its new position as a policy change or a change in statutory interpretation). No matter what USCIS might call it, therefore, it violates the APA.

**III.    PLAINTIFFS AND THE PROPOSED CLASS ARE CURRENTLY EXPERIENCING IRREPARABLE HARM AND ARE AT GRAVE AND IMMEDIATE RISK OF FURTHER IRREPARABLE HARM**

Before USCIS's policy change, SIJS benefited thousands of young people between their 18th and 21st birthdays by opening doors to educational, professional, economic, and personal opportunities through lawful permanent residence.  For thousands of these especially vulnerable young people, SIJS offered relief from the constant threat of deportation and the daily psychological stress that is foreign to those whose lawful immigration status is unquestioned.

The wrongful denial of SIJS exposes an already vulnerable population to immediate harm. Depending on their country of origin, SIJS applicants may file their lawful permanent residence application concurrently with their applications for SIJS.  Delaying the process of obtaining lawful permanent residence and concomitant benefits, such as work authorization, denies SIJS applicants from the protections that SIJS was meant to provide.  Further, applicants who are granted SIJS are immediately subject to fewer grounds for deportation.  *See* 8 U.S.C. § 1227(c).  Thus, the denial of SIJS—and the concurrent exposure to additional grounds for removal—has an immediate negative impact even setting aside the ability to obtain lawful permanent residency.

For example, the wrongful denial of R.F.M.'s SIJS application has stalled her life in the U.S., by denying her the opportunity to apply for financial aid to go to college and pursue her dreams of becoming a nurse.  USCIS's wrongful denial endangers R.F.M. by putting her at risk of deportation back to the Dominican Republic, a place she has never known.  Because she came to the U.S. as an infant, R.F.M. has no ties to her country of origin and knows only that what distant family she has in the Dominican Republic have been targeted by criminal activity.

For T.D., the wrongful denial of her SIJS application has prevented her from pursuing a college degree.  T.D. needed a guardian because her father abandoned her and her mother died. Today, T.D. struggles to work full-time to support herself and fears that at any moment, she could

be taken from her sister and her community and sent back to Haiti to a father who has played no part in her life for more than five years and who failed to protect her from his family's gross mistreatment.

The wrongful denial of S.W.'s SIJS application blunts all of her hard work and progress in the U.S.  After being abandoned by both of her parents as a child, S.W. struggled to find stability while she bounced from family member to family member in the U.S.  After graduating from high school, S.W. enrolled in college—but only part-time, as she is unable to apply for financial aid to fund full-time enrollment.  S.W.'s SIJS denial means it will take her twice as long to get her degree, and even once she does, she will not be able to earn a living without work authorization.  S.W.'s SIJS denial also prevents her from obtaining health insurance and receiving treatment for a congenital defect that continues to ail her.

For D.A.F.A., USCIS's wrongful denial of his SIJS application will put him at risk of being sent back to El Salvador, which he fled to escape attempted gang recruitment.  Abandoned by his father, D.A.F.A. has been reunited with his mother and siblings in the U.S., and he hopes to go to college, become an engineer, and take care of his family.  His SIJS denial, however, makes those dreams impossible, as D.A.F.A. is unable to attend college without financial aid, and is unable to pursue a career without employment authorization.

Because Plaintiffs and other similarly situated individuals are at risk of being arbitrarily denied protections as a result of USCIS's newly adopted and legally erroneous analysis of the SIJS Statute, the SIJS Regulation and New York law, Plaintiffs ask this Court to enjoin USCIS to process SIJS applications under the same analysis that applied before USCIS's policy change. Further, because Plaintiffs remain vulnerable to adverse action during the pendency of this case prior to reversal of all wrong decisions, Plaintiffs seek to enjoin USCIS to provide 14 days' notice

to Plaintiffs' counsel before USCIS takes any adverse adjudicatory or enforcement action against any Plaintiff or Proposed Class member while this litigation is pending.

## LEGAL STANDARD

Preliminary injunctive relief is warranted where plaintiffs establish that (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) an injunction is "in the public interest." *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (reversing order denying preliminary injunction) (citation omitted). Plaintiffs satisfy each of these four requirements for preliminary injunctive relief.

## ARGUMENT

Plaintiffs are likely to succeed in demonstrating that USCIS's change in policy is arbitrary and capricious, contrary to the SIJS Statute and implementing regulation, and violates the APA. Moreover, USCIS's policy change is of great consequence, irreparably harming thousands of individuals, families, employers, and educational and governmental institutions across New York State. Notably, Plaintiffs will continue to remain ineligible for green cards and all of the benefits that accrue from an adjustment of status. Plaintiffs also remain unshielded from certain grounds for deportation—an immediate benefit conferred on SIJS applicants. Because Plaintiffs—who are young immigrants Congress recognized as in need of protection—will suffer irreparable harm and the balance of equities favors the Plaintiffs, preliminary injunctive relief should be granted.

Further, the balance of equities and the public interest favor granting a preliminary injunction. Without an injunction, Plaintiffs will suffer hardships from facing the loss of SIJS benefits and the risk of deportation. In contrast, the injunction would only require USCIS to maintain the correct interpretation of the SIJS Statute that it consistently adhered to for many years.

17

The public interest weighs in favor of Plaintiffs because the injunction would allow the SIJS Statute to continue to fulfill its purpose of protecting vulnerable, abused, and neglected young people.

**I.     PLAINTIFFS ARE ENTITLED TO PRELIMINARY RELIEF BECAUSE USCIS'S POLICY CHANGE IS ARBITRARY AND CAPRICIOUS AND UNLAWFUL**

Plaintiffs are likely to prevail on their APA claim because USCIS's policy change is contrary to the clear meaning of the applicable federal statute, regulations, and New York state law, procedurally improper, and arbitrary and capricious.

Under the APA, a reviewing court must set aside a challenged agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A); "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," *id.* § 706(2)(C); or "without observance of procedure required by law," *id.* § 706(2)(D). *See, e.g.*, *Judulang v. Holder*, 565 U.S. 42, 52 (2011).  Final agency actions are subject to an "arbitrary and capricious" review even if they are taken through informal processes.  *See, e.g.*, *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1209 (2015) (noting "arbitrary and capricious" review is available to rules issued through informal rulemaking).

USCIS's change in its policy violates the SIJS Statute and the APA for at least three independent reasons, each of which alone would be sufficient to find that Plaintiffs are likely to succeed on the merits.  *First*, USCIS relies on erroneous interpretations of federal and state law: (a) USCIS's unfounded proposition that the Family Court lacks jurisdiction as a "juvenile court" for petitioners between their 18th and 21st birthdays; and (b) USCIS's baseless claim that the Family Court must have and lacks the power to issue a finding of fact about the viability of a petitioner's reunification with his or her natural parents because the Family Court lacks legal authority to order such reunification.  *Second*, USCIS's new policy—even if it were permissible under federal and

state law (which it is not)—is arbitrary because it is unsupported by reasoned explanation and results in vastly different outcomes for similarly situated SIJS petitioners. *Third*, USCIS adopted its new policy without adequate notice, despite the serious reliance interests at stake. For each of these independent reasons, USCIS has violated the APA. Plaintiffs are thus likely to succeed on the merits of their claim and merit preliminary relief.

**A.      USCIS's Policy Change Is Premised On Erroneous Interpretations Of Federal And State Law**

USCIS's new policy of denying SIJS petitions on the basis of refusing to recognize the validity of SFOs for SIJS petitioners between their 18th and 21st birthdays is plainly not in accordance with the SIJS Statute, SIJS Regulation, or New York law. The language used in various individual denials has varied, but the core principal has been consistent—denying SIJS applications based on an erroneous conclusion that the Family Court is not a "juvenile court" for purpose of the SIJS Statute with respect to applicants over the age of 18, or that the Family Court lacks authority to issue an SFO. Because both of the bases for denial (discussed *supra* at pp. 12-13) are improper under the SIJS Statute and Regulation, and under New York law, the change of policy underlying these denials violates the APA. *See* 5 U.S.C. § 706(2)(C) (authorizing court to set aside any agency action taken "short of statutory right"); *id.* § 706(2)(A) (allowing court to set aside actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"); *Sea-Land Serv., Inc. v. Dep't of Transp.*, 137 F.3d 640, 646 (D.C. Cir. 1998) (noting that an agency action cannot be sustained "where it is based not on the agency's own judgment but on an erroneous view of the law").

1.    **USCIS Misinterprets Federal and New York Law With Respect to Family Court's Jurisdiction Over The Custody Of Petitioners Between Their 18th And 21st Birthdays**

a.    **USCIS Misinterprets Federal Law When It Concludes That The Family Court Must Have Jurisdiction Over The Custody Of Petitioners Between Their 18th And 21st Birthdays To Qualify As A "Juvenile Court"**

USCIS arbitrarily construes the SIJS Statute such that a petitioner can only qualify for SIJS if he or she was under the age of 18 when his or her SFO was issued by the Family Court.  USCIS erroneously asserts that the Family Court must have jurisdiction over the "custody" of the specific applicant.  USCIS has issued NOIDs and denials to Plaintiffs, stating that:

> [W]hile the New York family court orders . . . show that the court had jurisdiction to appoint a guardian . . . , the record does not show that the court had jurisdiction over [] custody . . . .  For special immigrant juvenile purposes, a state court must have jurisdiction under state law over both "the custody and care" of the SIJ[S] petitioner as a juvenile to be considered a juvenile court.

Ex. 2 Appendix J, USCIS Denial of T.D.'s Application for SIJS at 3.  This is a fundamental misinterpretation of federal law.

The SIJS Statute requires, among other things, that a petitioner be declared "dependent on" a juvenile court *or* placed in the custody of, *inter alia*, a juvenile court.  *See* 8 U.S.C. § 1101(a)(27)(J) (an applicant must be either "declared dependent on a juvenile court," or "legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court").  SFOs issued by the New York Family Court for petitioners between their 18th and 21st birthdays satisfy this requirement.

USCIS's recent denials of Plaintiffs' petitions are based on a narrowing of the SIJS Statute to apply only to custody orders.  That is plainly a misinterpretation or misapplication of the SIJS

Statute.[14]   Further, contrary to USCIS's policy, Congress intended that the state court's interpretation of its own powers be given deference, and that SIJS be available to all youth up to age 21.   *See* 8 U.S.C. § 1101(a)(27)(J); Ex. 11, USCIS POLICY MANUAL, vol. 6, pt. J., ch. 2, § B; *id.* at ch. 3, § A; 8 U.S.C. § 1101(b)(1).

USCIS's interpretation is also a misapplication of the federal regulation which defines a "juvenile court" as "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles."  8 C.F.R. § 204.11(a).  The regulatory definition does *not* require that a "juvenile court" be able to make a custody determination over each SIJS applicant; rather, it simply provides that the court have jurisdiction, as a general matter, to make "determinations about the custody and care of juveniles."  *Id.*  Under the SIJS Regulation, a juvenile court need only be one that has jurisdiction over the custody and care of juveniles generally.  (The SIJS Statute, meanwhile, dictates what the finding is that must be issued by that juvenile court, and that finding, as made clear above, need only be one that orders an individual "dependent on" the court.)

        **b.**      **USCIS Misinterprets New York Law To Claim That The Family Court Lacks Jurisdiction Over The Custody And Care Of Juveniles**

Even if USCIS's new interpretations of the SIJS Statute and Regulation were permissible (which they are not), its application of those interpretations to New York Family Court orders

---

[14] To the extent USCIS argues that the SIJS Regulation requires that the SIJS Statute be narrowed to require that a state court issue custody orders, that is wrong as a matter of law because it ignores that the SIJS Statute allows a state court to issue orders declaring petitioners "dependent" on those state courts.  *See Alimoradi v. United States Citizenship & Immigration Servs.*, No. CV 08-02529 DDP (JCx), 2008 U.S. Dist. LEXIS 86820, at *10 (C.D. Cal. Aug. 29, 2008) (holding that "[n]othing in the statute allows for the regulatory interpretation" advocated by USCIS because "the narrow construction imposed by the regulation is manifestly contrary to the plain language of the statute"); *see also Seafarers Int'l Union of N. Am. v. Adams*, 78 Civ. 4698, 1979 U.S. Dist. LEXIS 9767, at *19-20 (S.D.N.Y. Sept. 17, 1979) ("When this regulation is laid alongside the statute . . . it is readily apparent that the regulation impermissibly narrows the statutory grant of participatory rights.").  In any event, the SIJS Regulation has not been updated since the SIJS Statute was updated in 2008 pursuant to the TVPRA, so the SIJS Statute is controlling.

cannot be sustained.  USCIS is plainly wrong in its policy that the Family Court lacks jurisdiction over the custody and care of juveniles.  To the contrary, such jurisdiction is well established.  *See* N.Y. FAM. CT. ACT § 141 (empowering the Family Court with a "wide range of powers for dealing with the complexities of family life so that its action may fit the particular needs of those before it"); *Jesmer v. Dundon*, 29 N.Y.2d 5, 9 (1971) (the Family Court acts as "a special agency for the care and protection of the young.").  This is all that is required to qualify as a "juvenile court" under the SIJS Regulation.  8 C.F.R. § 204.11.  In fact, USCIS clearly recognized the Family Court's qualification as a "juvenile court" in granting the SIJS petition submitted by T.D.'s younger sister.  T.D. and her sister submitted substantially identical petitions to USCIS based on substantially similar orders issued by the same Family Court in substantially similar guardianship proceedings.

The SIJS Statute explicitly recognizes that the eligibility finding that a court may issue can be a finding that the immigrant is "dependent upon" the court.  *See* 8 U.S.C. § 1101(a)(27)(J)(i). Under New York law, it is clear that the Family Court is authorized to declare a person up to age 21 dependent on the court.  Ex. 5, Decl. of the Hon. A. Gail Prudenti at ¶¶ 8-11.  Indeed, a guardianship order—such as those issued on behalf of the Plaintiffs—is a determination that the individual is dependent upon the court.  *See*, *e.g.*, *In re Antowa McD.*, 50 A.D.3d 507, 2008 N.Y. Slip. Op. 03690, at *1-2 (1st Dep't 2008) ("Family Court's appointment of a guardian constitutes the necessary declaration of dependency on a juvenile court.");[15] *see also In re Karen C.*, 111 A.D.3d 622, 623 (2d Dep't 2013) ("Inasmuch as the Family Court granted the guardianship

---

[15] *Antowa McD.* is particularly instructive.  50 A.D.3d 507 (1st Dep't 2008).  The case was decided in 2008, the same year that the TVPRA expanded SIJS eligibility from immigrants in foster care to those declared dependent on a state juvenile court.  In *Antowa McD.*, the court held that "Family Court's appointment of a guardian constitutes the necessary declaration of dependency on a juvenile court."  *Id.*  Since *Antowa McD.* was decided in 2008, New York Family Court guardianship orders qualify as a finding that the immigrant is "dependent on" the Family Court as a matter of New York law.

petition and appointed her stepfather as coguardian, the child is dependent on the Family Court in that she has been 'legally committed to, or placed under the custody of . . . an individual or entity appointed by a State or juvenile court located in the United States,' within the meaning of 8 USC § 1101(a)(27)(J)(i).").

Even if USCIS were correct that the SIJS Statute requires state courts to have jurisdiction to make a custody determination (which it does not), the Family Court's guardianship proceedings would satisfy such a requirement.  New York law, in fact, considers guardianship—which provides the guardian with a wide array of rights, including those relating to the physical custody of the child—as the functional equivalent of legal custody.  Under New York law, the Family Court's award of guardianship grants *custodial* rights over the subject child.  *See* N.Y. Bill Jacket, A.B. 8358-B, 231st Leg., 2008 Reg. Sess., Ch. 404 (N.Y. 2008) (clarifying that guardians and custodians have the same rights and responsibilities with respect to the children in their care); N.Y. FAM. CT. ACT § 657; N.Y. DOM. REL. LAW § 74.  A Family Court order of guardianship confers the guardian with the "right and responsibility to make decisions, including issuing any necessary consents, regarding the child's protection, education, *care and control*, health and medical needs, and the physical *custody* of the person of the child."  N.Y. FAM. CT. ACT § 657 (emphasis added). Accordingly, by virtue of the guardianship order from the Family Court, that individual has been committed to the *custody* of the guardian.  *See Allen v. Fiedler*, 96 A.D.3d 1682, 1684 (4th Dep't 2012) ("[T]here is no substantive difference between the rights and responsibilities of a custodian or guardian of a child" (quoting Assembly Memo in Support, Bill Jacket, L. 2008 ch. 404) (internal quotation marks omitted)); *In re Alana M.*, 2011 NY Slip Op 52321[U], at *11 ("Appointment as a guardian by the court is akin to lawful custody.").  Although a child (regardless of age) need not reside with the guardian, the guardian nevertheless retains the right and responsibility to make

decisions about the child's physical custody—again, regardless of whether the child is under or over eighteen years of age.[16]

Indeed, USCIS itself has recognized the Family Court's qualification as a "juvenile court." For example, USCIS granted the SIJS petition submitted by T.D.'s younger sister, thus affirming that the sister's petition was based on a valid "juvenile court" SFO. T.D. and her sister submitted substantially identical petitions to USCIS based on substantially similar orders issued by the same Family Court. The fact that T.D. is over 18 cannot suddenly turn the same court into something other than a juvenile court.

In sum, USCIS has impermissibly and wrongly misinterpreted the SIJS Regulation in a manner that is contrary to the SIJS Statute, and applied its faulty interpretation in a manner that fundamentally contradicts New York law.

> **2.** **USCIS Misinterprets Federal And New York Law With Respect To The Family Court's Determination That Reunifying The Petitioners With Their Parents Is Not Viable**
>
> > **a.** **USCIS Misinterprets The Law When It Concludes That The Family Court Must Have The Ability To Reunify The Petitioners With Their Parents**

Recently, USCIS has started taking the position that the Family Court lacks the power to determine that the petitioner's reunification with one or more parent is "not viable" because the Family Court lacks the legal authority to order reunification.

In doing so, USCIS misinterprets the SIJS Statute and the SIJS Regulation to create a requirement that cannot be found anywhere in federal law. Specifically, USCIS is requiring that the juvenile court issuing an order have actual authority to reunify the petitioner with his or her

---

[16] Although minors above the age of 18 must consent to guardianship, N.Y. FAM. CT. ACT § 661(a), this requirement does not alter the fact that the Family Court possesses jurisdiction over custody in guardianship proceedings for petitioners over 18.

natural parent in order to make a finding that the petitioner's reunification with a parent is not viable.

Neither the SIJS Statute, the SIJS Regulation, nor USCIS policy guidance contains such a requirement that the state juvenile court have the authority to order reunification.

The SIJS Statute merely requires a finding that "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law." 8 U.S.C. § 1101(a)(27)(J)(i). This is a finding of fact, not a legal determination that the court is empowered to—but chooses not to—reunify the petitioner with his or her parent. *See, e.g.*, *Matter of Maria C.R. v. Rafael G.*, 142 A.D.3d 165, 172 (2d Dep't 2016) (noting the determinations in the SFO of the eligibility criteria are "findings of fact," including that reunification with a parent is not viable); *Reyes v. Cissna*, No. 17-7304, 2018 WL 1759467, at *2 (4th Cir. Apr. 12, 2018) (characterizing state juvenile courts' determination of the SIJS Eligibility Findings as "factual" findings, including that reunification with a parent is not viable); *Perez v. Rodriguez*, No. 3:16-cv-00748-RJC-DSC, 2018 WL 1187780, at *2 (W.D.N.C. Mar. 7, 2018), *appeal docketed*, No. 18-1330 (4th Cir. Mar. 26, 2018) (same).

To the extent USCIS considers this to be a jurisdictional requirement similar to the custody determination requirement, there is simply nothing in the statute indicating that a juvenile court must possess authority to order the petitioner or SIJS applicant back into the control of his or her parent. Not even the outdated SIJS Regulation suggests that a "juvenile court" must have such authority. Indeed, the definition of a "juvenile court" makes no reference whatsoever to reunifying applicants with their parents. *See generally* 8 C.F.R. § 204.11(a).

In addition to having no basis in law, USCIS's position that state courts must have the power to reunify SIJS petitioners with their natural parents makes little sense because such a

requirement would eviscerate SIJS protections for the very population the SIJS Statute was originally intended to protect: children in foster care.  Put simply, no state court has the power to reunify an immigrant youth in foster care with his or her natural parents w*hen those parents are both deceased*.  That is precisely the vulnerable population for whom SIJS was originally enacted to provide relief.[17]

> **b.**  **USCIS Improperly Concludes That The Family Court Lacks Authority To Reunify Petitioners With Parents**

USCIS's purported basis for denial of SIJS also ignores the fact that the New York Family Court *does* have the power to reunify a petitioner with a parent.  Indeed, New York law authorizes its Family Courts to appoint a natural parent to be the guardian of his or her children.  *See Matter of Marisol N.H.*, 115 A.D.3d 185, 187 (2d Dep't 2014).  Guardianship, including when the guardian is a natural parent, includes taking physical custody of a child.  *See* N.Y. FAM. CT. ACT § 661 (guardianship confers "the right and responsibility to make decisions, including issuing any necessary consents, regarding the child's protection, education, care and control, health and medical needs, and the *physical custody* of the person of the child . . .") (emphasis added); N.Y. FAM. CT. ACT § 657 ("[P]ersons possessing a lawful order of guardianship of a child shall have the right and responsibility to make decisions, including issuing any necessary consents, regarding the child's protection, education, care and control, health and medical needs, and the *physical custody* of the person of the child.") (emphasis added).  Thus, USCIS's misunderstanding

---

[17] USCIS's adjudications are also improper because they cite to and rely upon an outdated provision in the SIJS Regulation.  USCIS cites to 8 C.F.R. § 204.11(a)'s definition of a youth eligible for long-term foster care (which references reunification), but that provision is no longer relevant to SIJS eligibility because, as discussed *supra*, the TVPRA of 2008 eliminated the requirement that a youth be found eligible for long-term foster care. Pub. L. No. 110-457, § 235(d)(1)(A).  The outdated provision upon which USCIS relies mentions reunification only in the context of long-term foster care and does not support USCIS's proposition that the Family Court must have the authority to reunify a petitioner with his or her parent.  *See* 8 C.F.R. § 204.11.  USCIS is well aware of the outdated nature of the SIJS Regulation, as its 2015 Ombudsman report recommended that USCIS "[i]ssue final SIJ regulations that fully incorporate all statutory amendments."  Ex. 14, U.S. Dep't of Homeland Sec., Citizenship & Immigration Services Ombudsman, Recommendation to the Director of USCIS (Dec. 11, 2015).

notwithstanding, the Family Court does have jurisdiction under New York state law to make a legal conclusion about returning a petitioner over the age of 18 to a parent's custody.

In sum, USCIS has violated the APA by misinterpreting both federal and New York law when it adjudicates SIJS petitions based on the finding that the Family Court (i) no longer qualifies as a "juvenile court" because Family Court does not have jurisdiction over the custody of petitioners between their 18th and 21st birthdays, and/or (ii) does not have the authority to make a finding as to whether reunification of petitioners between their 18th and 21st birthdays with a parent is not viable because the court lacks the ability to actually reunify such petitioners with their parents.  Because USCIS's adjudication of the Proposed Class's SIJS petitions relies upon an erroneous interpretation of both the SIJS Regulation and New York law, the Court should find that Plaintiffs are likely to succeed on the merits of their APA claim and thus grant preliminary relief.

### B.   USCIS's Change In Policy Violates The APA Because It Is Unsupported By Reasoned Explanation And Results In Vastly Different Outcomes For Similarly Situated SIJS Petitioners

Even if the SIJS Statute were sufficiently ambiguous to support USCIS's novel interpretation (which it is not), and even if such interpretation were properly applied to New York law (which it is not), USCIS's new policy must be set aside as arbitrary and capricious.  This is because USCIS has failed to explain adequately why it adopted its new interpretation, departed from past practice, and declined to consider reasonable alternative interpretations.  Moreover, USCIS's new policy impermissibly leads the agency to treat similarly situated individuals differently, without any basis in law.

1.    **USCIS Has Failed To Provide An Adequate Basis And Explanation For Its New Policy**

Even assuming, *arguendo*, that USCIS has interpreted federal and New York law correctly and applied these interpretations in non-arbitrary manner—which it has not—the agency has impermissibly failed to provide any reasoned explanation for its new policy.

When choosing between reasonable alternatives or departing from past practice, an agency must give "adequate reasons for its decision." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016). USCIS failed to do so here. The entirety of its statement explaining its departure from prior policy is two sentences issued to the press. "[A]n unexplained inconsistency in agency policy is a reason for holding an interpretation to be an arbitrary and capricious change from agency practice." *Id.* at 2126 (quoting *National Cable & Telecomm. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981 (2005)) (internal quotation marks omitted).

Administrative agencies have an obligation to render consistent opinions and to follow, distinguish or overrule their own precedent, adequately explaining departures from prior norms and the legal basis of their decisions. *Secretary of Agric. v. United States*, 347 U.S. 645, 652-53 (1954); *I.N.S. v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996) (If an agency "announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as 'arbitrary, capricious, [or] an abuse of discretion. . . .'"). This is particularly true where a prior policy "has engendered serious reliance interests that must be taken into account." *Mortgage Bankers Ass'n*, 135 S. Ct. at 1209 (reaffirming its holding in *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009)) (internal quotation marks omitted).

28

Until recently, USCIS routinely granted SIJS to immigrants who had obtained SFOs from the Family Court when they were between their 18th and 21st birthdays.  USCIS had always recognized the New York Family Court as a valid juvenile court because the Family Court has jurisdiction over the "custody and care" over juveniles generally.  *See*, *e.g.*, *Matter of Perez Quintanilla*, A97 383 010 (AAO June 7, 2007); Jonathan Scharfen, *Re: Matter of Perez Quintanilla*, Policy Memorandum, 2007 WL 2410060 (July 30, 2007) (designating *Perez Quintanilla* as a USCIS Adopted Decision as binding policy guidance on all USCIS personnel). Individuals aged 18 or older qualified for SIJS if they met the requirements for eligibility, even if the benefits they receive under the authority of the court are narrower than those offered to individuals under the age of 18.  *See Perez Quintanilla*, A97 383 010 at *3, *9 (an Administrative Appeals Office decision approving a SIJS petition for an 18 year-old applicant who was subject to the jurisdiction of the Florida juvenile court solely "for the purpose of determining whether the young adult [was] receiving appropriate adult services").

USCIS's own written guidelines, in fact, routinely recognized that USCIS is to defer to state courts on matters of their own jurisdiction and authority to issue SFOs to SIJS petitioners. *See* Ex. 11, USCIS POLICY MANUAL, vol. 6, pt. J., ch. 3 ("There is nothing in USCIS guidance that should be construed as instructing juvenile courts on how to apply their own state law."); *id.*, ch. 2, § A ("The special immigrant juvenile (SIJ) classification is available to children who have been subject to state juvenile court proceedings related to abuse, neglect, abandonment, or a similar basis under state law.  If a juvenile court has made certain findings, under state law, on dependency *or* custody, parental reunification, and the best interests of the child, then the child may be eligible for SIJ classification." (emphasis added)); U.S. Dep't of Homeland Sec., Citizenship & Immigration Services Ombudsman, Recommendation to the Director of USCIS (Apr. 15, 2011)

("Juvenile court dependency determinations are not a matter of federal law. USCIS is not vested with authority to make dependency determinations. It is not empowered to engage in post-decision legal or factual review of such decisions and it lacks the expertise possessed by state tribunals specializing in family law.").

For USCIS to change its policy so suddenly and drastically, one would expect—and the APA requires—USCIS to justify its change with a reasoned explanation.  Instead, USCIS was not even forthcoming on whether it was changing its policy.  As discussed above, USCIS denied to the New York Times on April 18, 2018 that any policy change had occurred, and then backpedaled 6 days later, admitting that it had changed both its processes and relevant legal interpretations.  *See* Ex. 12, Liz Robbins, *A Rule is Changed for Young Immigrants, and Green Card Hopes Fade*, N.Y. TIMES (Apr. 18, 2018); *see also* Ex. 13, April 25, 2018 Politico article entitled "USCIS Explains Juvenile Visa Denials" by Ted Hesson, with an April 24, 2018 statement from USCIS spokesperson Jonathan Withington to Politico appended thereto at 13.  USCIS's reluctance to admit to *a significant change in policy*, combined with its lack of any sufficient reasoning offered even when it finally did admit to a change, underscores the unjustifiable manner in which the change was undertaken and the lack of care in its rollout.  Under these circumstances, USCIS's dramatic shift in a nearly ten year-old policy change is, to put it mildly, an "unexplained inconsistency" that constitutes an arbitrary and capricious agency action.  *Encino Motorcars*, 136 S. Ct. at 2126.  USCIS has not discussed why its prior interpretation of law was wrong, or explain why its past policy guidance, memoranda or precedent were wrong, or offer any meaningful analysis.

Although USCIS states that it is analyzing each petition—and thus each state court's jurisdiction or authority—on a case-by-case basis, it also admits that its scrutiny of state court

jurisdiction and authority has been part of a centralized, nationwide process.  Indeed, upon information and belief, as part of this centralized process, USCIS has also begun to deny SIJS petitions for applicants between their 18th and 21st birthdays in (at least) California and Texas based on determinations that the juvenile court that issued those SFOs was not acting as a "juvenile court," and on other similar grounds.  The agency's actions appear to be part of a results-oriented, nationwide pattern of SIJS petition denials that reflect a disregard for the deference to state law contemplated by the SIJS Statute.  This is particularly evident against the backdrop of USCIS's well-established and longstanding policy of deference to state courts with respect to their own jurisdiction and authority to issue the findings underlying SFOs and the fact that each state has its own unique juvenile court system and legislation.

USCIS has made no reference to the fact that, beginning in 2008 and continuing until at least 2016, SIJS was routinely granted for petitioners whose Family Court orders were obtained when they were over the age of 18.  Thousands of beneficiaries have been relying on this consistent practice.  Many of them have structured their education, employment, and other life activities on the assumption that they would be eligible for SIJS benefits, including permanent residency.  Many petitioners and their attorneys based the timing of their SIJS applications on the assumption that there was no meaningful difference between applying for SIJS as an 18 year old as compared to a 17 year old.  The Supreme Court has set aside changes in agency policies for failure to consider reliance interests that pale in comparison to those at stake here.  *See*, *e.g.*, *Encino Motorcars*, 136 S. Ct. at 2126 (setting aside the Department of Labor's interpretation of a statutory exemption from the Fair Labor Standards Act's overtime-pay requirements, in part because the agency had failed to address "decades of industry reliance" on its prior view that the exemption applied to a particular class of employees).  Because USCIS has failed even to acknowledge that SIJS-eligible petitioners

have reasonably come to rely on the expectation that they would be protected by SIJS, USCIS's failure to explain its departure from prior practice cannot support its new policy.

Not only does an agency need to provide an explanation for its actions, it must also "consider[] all relevant issues and factors" to withstand arbitrary and capricious review.  *Long Island Head Start Child Dev. Servs. v. NLRB*, 460 F.3d 254, 258 (2d Cir. 2006).  Further, "the agency must consider reasonably obvious alternatives and, if it rejects those alternatives, it must give reasons for the rejection, sufficient to allow for meaningful judicial review."  *See Yale-New Haven Hosp. v. Leavitt*, 470 F.3d 71, 80 (2d Cir. 2006) (citation omitted).

USCIS's new policy upends the Family Court's jurisdiction to issue SFOs for petitioners over the age of 18 and, in doing so, ignores the impact of this new policy on individual lives. USCIS's April 24, 2018 statement does not contain any indication that it recognizes the devastating impact of its policy change to eligible and deserving SIJS petitioners between their 18th and 21st birthdays.  For example, SIJS and legal permanent residency are associated with an increase in wages and participation in the workforce, leading to increased consumption, resulting in job creation and economic growth.  *See* Ex. 10, Decl. of Judith Meltzer.  USCIS fails to show that they have taken these compelling factors into account.

### 2.   USCIS's New Policy Arbitrarily Treats Similarly Situated SIJS Petitioners Differently

USCIS's interpretation is substantively unreasonable because it arbitrarily treats similarly situated individuals differently.  Even if the SIJS Statute were ambiguous, such that it reasonably presented USCIS with a choice between alternative policies (which it does not), USCIS has not accounted for the fact that the policy it has selected results in treating nearly identical SIJS petitioners differently.  "It is axiomatic that an agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so."  *El Rio Santa Cruz Neighborhood*

*Health Ctr., Inc. v. Dep't of Health and Human Servs.*, 300 F. Supp. 2d 32, 42 (D.D.C. 2004) (internal quotation marks omitted); *see also id.* ("[I]f an agency treats similarly situated parties differently, its action is arbitrary and capricious in violation of the APA.").

Absent USCIS's policy change, a 17 year-old SIJS applicant in guardianship proceedings in Family Court is in an identical legal situation as an 18 year-old SIJS applicant in guardianship proceedings: they are both "children" as defined in the INA, and "juveniles" under New York law; each of their guardians may make custody decisions on their behalf; neither situation requires that the Family Court reach a custody determination over the petitioner; and neither situation requires that the Family Court have the authority to reunify the petitioner with a parent.  Nevertheless, USCIS is routinely honoring Family Court orders issued to 17 year olds, while finding identical orders invalid if they are obtained by individuals aged 18 or older.  USCIS thus treats the 17 year-old SIJS applicant in guardianship proceedings radically differently than the 18 year-old applicant—despite their identical legal posture.  The result is that USCIS denies the older applicant's petition on arbitrary and capricious grounds, as USCIS has done with T.D.'s SIJS petition.  *See Etelson v. Office of Personnel Management*, 684 F.2d 918, 926 (D.C. Cir. 1982) ("Government is at its most arbitrary when it treats similarly situated people differently.").

### C.   USCIS Has Violated The APA By Adopting Its New Policy Without Adequate Notice

USCIS has failed to provide adequate notice of this policy change, despite the substantial reliance interests at stake.  Under federal law, an agency must notify the public of "substantive rules . . . [and] interpretations of general applicability formulated and adopted by the agency."  5 U.S.C. § 552(a)(1)(D) (requiring publication of such rules and interpretations).  Because the agency has failed to comply with its procedural obligation to inform the public of such change, it cannot be applied to adversely affected plaintiffs or class members.

Under the APA, an agency action may be invalidated if it is not undertaken pursuant to procedures required by law.  5 U.S.C. § 706(2)(D).  A companion statute, 5 U.S.C. § 552(a)(1)(D), provides that an agency must publish "statements of general policy or interpretations of general applicability formulated and adopted by the agency."  Violation of this notice requirement can be a basis for setting aside the agency action where the affected individuals lacked adequate and timely notice and suffered prejudice.  *N.Y. v. Lyng*, 829 F.2d 346, 354 (2d Cir. 1987) (citing publication requirement for "matters which if not published would adversely affect a member of the public") (internal quotation marks omitted); *see, e.g.*, *Morton v. Ruiz*, 415 U.S. 199, 235-36 (1974) (overturning the Bureau of Indian Affairs' denial of benefits to two Indians living adjacent to a reservation for failure to provide notice that such benefits were no longer available to Indians who lived off reservations); *Anderson v. Butz*, 550 F.2d 459, 463 (9th Cir. 1977) (finding the Secretary of Agriculture's new formulation for determining food stamp eligibility invalid for failure to notify food stamp recipients, as it would have a "widespread and immediate" adverse effect on their substantive rights).

When USCIS began to deny SIJS petitions by refusing to recognize the validity of SFOs issued by New York Family Courts for immigrants between their 18th and 21st birthdays, the agency remained silent as to its reasoning for adopting its new policy, thereby violating the APA. Furthermore, the cursory and *post-hoc* statement that USCIS issued on April 24, 2018 to a news organization utterly failed to meet the agency's obligation to inform potentially affected individuals of USCIS's new policy.  After more than a decade of properly defining a "juvenile court" as one with jurisdiction to make "custody and care" determinations generally, it was incumbent upon USCIS to notify the public about its wholesale departure from its prior practice and legal conclusions.  *See Morton*, 415 U.S. at 232, 236 (explaining that "determination of

eligibility [for benefits] cannot be made on an ad hoc basis," particularly where applicants had a "legitimate expectation" of relief).

Given the widespread impact of the USCIS's sudden restrictions on SIJS eligibility, the agency had an obligation to publish or otherwise notify the public of its policy.  In addition to constituting a procedural violation of the APA, USCIS's lack of transparency illustrates the arbitrary and capricious manner in which this policy was implemented.

In sum, Plaintiffs are likely to succeed on the merits because USCIS's policy change with respect to the SIJS program violates the APA for all of these reasons: (i) USCIS's apparent new policy relies upon an erroneous interpretation of the SIJS Statute and New York law; (ii) even if USCIS's interpretation did not directly conflict with federal and state law, USCIS's policy is arbitrary and capricious, as the agency has failed to provide adequate reasoning and arbitrarily treats similarly situated individuals differently; and (iii) USCIS failed to provide adequate and timely notice to the public of  its policy change.

II.     **PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION BECAUSE THEY ARE SUFFERING, AND WILL CONTINUE TO SUFFER, IRREPARABLE HARM UNLESS THE COURT GRANTS PRELIMINARY INJUNCTIVE RELIEF**

Plaintiffs and members of the Proposed Class are suffering and will continue to suffer irreparable harm absent the Court's provision of preliminary relief.  *See N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (discussing necessary non-merits requirements for preliminary relief).  The preliminary relief sought here is to enjoin USCIS from reversing its longstanding practice of recognizing the New York Family Court as empowered to issue valid SFOs when appointing a guardian for individuals over the age of 18.  This preliminary relief will prevent Plaintiffs from continuing to suffer harms from USCIS's wrongful SIJS denials while this litigation is pending.  Similarly, enjoining the USCIS to provide 14 days' notice to Plaintiffs before

USCIS takes any adverse adjudicatory or enforcement action against any Proposed Class member will also prevent Plaintiffs from suffering additional harms from USCIS's erroneous new policy.

Plaintiffs are entitled to preliminary relief pending adjudication of this case on the merits because USCIS's policy of wrongfully denying SIJS to eligible petitioners is causing, and will continue to cause, Plaintiffs and the Proposed Class to suffer actual and imminent injuries that cannot be remedied if the Court waits until the end of trial to resolve the harm.  *See Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007).   Monetary damages cannot remedy the harms Plaintiffs face.  *See New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015); *see also N.Y. Pathological & X-Ray Labs., Inc. v. INS*, 523 F.2d 79, 81 (2d Cir. 1975) ("Such harm often resides where money damages cannot provide adequate compensation").   Because Plaintiffs are not afforded the legal protections to which they are entitled, they are confronted with the possibility of being removed from their communities (and the country), and from the guardians upon whom they depend on for emotional, psychological, and practical support.   Such intangible injuries typically lack adequate legal remedies, and "intangible injuries may qualify as irreparable harm."  *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (internal quotation marks and brackets omitted).   Without an injunction, Plaintiffs are already suffering and they and the Proposed Class will continue to suffer immediate harms before the court has a chance to resolve the issue of USCIS's wrongful policies on the merits.  *Nat'l Elevator Cab & Door Corp. v. H & B, Inc.*, No. 07-CV-1562 (ERK)(RML), 2008 WL 207843, at *6 (E.D.N.Y. Jan. 24, 2008) (In analyzing the irreparable harm factor, "the question is not whether the plaintiff has suffered irreparable harm, but whether it will be irreparably harmed *in the absence of an injunction*.") (emphasis in original).

Absent preliminary relief, the Proposed Class will continue to suffer immediate harm in several ways, including the following.  *First*, the Proposed Class will continue to remain ineligible for green cards and all the benefits that accrue from an adjustment of status.  *Second*, the Proposed Class members will continue to experience the daily mental and emotional harm of being undocumented aliens subject to immediate removal.  *Third*, the Proposed Class will continue to remain unshielded from certain grounds of deportation, an immediate benefit conferred by SIJS.

First, Plaintiffs and the Proposed Class face the imminent and irreparable harm of being unable to obtain green cards and receive the benefits that come with an adjustment of their immigration status.  At least one federal court has found that the deprivation of SIJS protection based on an unlawful application of a SIJS provision constitutes irreparable harm sufficient for a permanent injunction based on the rationale that the denial of SIJS results in an inability to obtain a green card.  *See Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 267 (C.D. Cal. 2008) ("As a result of Defendants' unlawful application of the specific consent requirement, Plaintiffs have and will suffer substantial and immediate irreparable injury in losing eligibility for SIJ status and SIJ-based adjustment.").

The court in *Perez-Olano* noted that SIJS petitioners challenging a policy depriving them of protections prescribed by Congress are entitled to a class-wide injunction because these vulnerable immigrant minors would otherwise be forced to re-litigate challenges to USCIS policies, which they would be unable to do, being unfamiliar with the legal system and without parental support.  *Id*.  Here, similar to harms to SIJS petitioners in *Perez-Olano*, the inability to obtain a green card has a profound impact on individuals, families, employers, and educational and governmental institutions.  Successful SIJS petitioners are able to enroll in colleges and universities, obtain jobs, driver's license, bank accounts, and health insurance.  Now, as a result of

USCIS's arbitrary and capricious actions that pulled the rug out from under SIJS-eligible immigrants between their 18th and 21st birthdays, Plaintiffs will not be able to obtain green cards. For the vast majority of the Proposed Class, SIJS is the only path to a green card. Plaintiffs and the Proposed Class are unable to plan for their futures, whether that be enrolling in higher education and graduate programs, pursuing career opportunities, or marrying and starting families of their own.

Denying Plaintiffs the opportunity to obtain green cards through SIJS prevents them from pursuing professions that require the ability to legally remain in the United States. In a similar context, the Ninth Circuit Court of Appeals has held that the loss of the opportunity to pursue one's chosen profession may constitute irreparable harm. *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 978 (9th Cir. 2017) (finding Deferred Action for Childhood Arrival recipients were irreparably harmed by Arizona's policy denying them driver's licenses, because plaintiffs were unable to commute to jobs, and their professional opportunities were therefore limited). That harm is especially apparent for young adults at the start of their careers: "Setbacks early in [] careers are likely to haunt [young] Plaintiffs for the rest of their lives" because Plaintiffs' entire careers could be "constrained by professional opportunities they are denied today." *Arizona Dream Act Coalition*, 757 F.3d at 1068.[18]

Plaintiffs' long-term plans are disrupted by their inability to apply for lawful permanent residence due to denials of their SIJS applications. For example, R.F.M. works to help support her grandmother, but is unable to find a well-paying job without a work permit. R.F.M. cannot pursue

---

[18] The mere fact that certain Proposed Class members may have some other route to obtain a green card does not diminish the irreparable harm those class members face each and every day. Those other avenues of relief are far from certain and can take years or even decades to achieve. *See, e.g.*, Ex. 10, Decl. of Judith Meltzer. Asylum and other visa-based routes to green cards are not adequate forms of relief. *Cf. Sampson v. Murray*, 415 U.S. 61, 90 (1974) (finding that adequate corrective relief weighs against irreparable harm when the "relief will be available . . . in the ordinary course of litigation").

her goal of attending college because she is ineligible for financial aid.  Her goals of becoming a nurse and potentially joining the air force are also on hold as a result of her inability to apply for a green card.  Similarly, T.D. needs to work to support herself and her sister, but it is difficult for her to get hired for a decent job because she does not have work authorization.  When she is able to work, she sometimes does not receive payment.  T.D. is also unable to attend college because she cannot receive financial aid.  Likewise, since S.W. is unable to work without work authorization, she can only volunteer.  It is too expensive for her to attend college full-time without the ability to apply for financial aid, which has delayed her studies.  She is also unable to obtain treatment for ongoing health issues related to her feet.  While in high school, S.W. was an avid athlete, but she is not allowed to play in college without immigration status needed to register for sports.  As another example, D.A.F.A. wants to attend college to study engineering, but his plans have been disrupted now that his SIJS application was denied.

Second, Plaintiffs are and will continue to be subject to mental, emotional, and psychological harm due to fear of exposure to immediate removal proceedings and deportation based on information they provided USCIS when applying for SIJS.  For example, R.F.M. knows no one in the Dominican Republic, where she left as an infant, and she fears the possibility of being uprooted and sent back to a foreign place.  Similarly, T.D. fears being sent back to Haiti, as she has no ties to the country and being separated from her sister and guardian would devastate her.  S.W. has worked tirelessly to find stability in the U.S.—where she's bounced from one family member's home to another's—and the threat of deportation will never allow her to feel settled.  D.A.F.A. fled his country of origin for fear of retribution after two separate gangs attempted to recruit him; he fears for his and his family's lives if he is deported back to El Salvador.  For all Plaintiffs and those similarly situated, the threat of removal is harm enough.  Indeed, stress and

psychological damage—much like what Plaintiffs are enduring—can work irreparable harm. *Pollis v. New Sch. for Soc. Research*, 829 F. Supp. 584, 598 (S.D.N.Y. 1993); *see also Shapiro v. Cadman Towers, Inc.*, 844 F. Supp. 116, 121-22 (E.D.N.Y. 1994); *Lore v. City of Syracuse*, No. 00-CV-1833 HGM DEP, 2001 WL 263051, at *5 (N.D.N.Y. Mar. 9, 2011).   Courts find that plaintiffs suffer irreparable harm when they are forcibly separated from family members.  *See, e.g.*, *Doe v. Trump*, 288 F. Supp. 3d 1045, 1082 (W.D. Wash. 2017), *reconsideration denied*, 284 F. Supp. 3d (W.D. Wash. 2018).   Plaintiffs will be faced with the possibility of returning to environments of abuse and neglect, and separated from family and communities that support them in the United States.

Immigrant youth applying for SIJS are survivors of psychologically damaging experiences, and the denial of lawful status is damaging to these petitioners' mental health. Ex. 9, Decl. of Alan Shapiro at 8–13. For example, T.D. fears that she will be separated from her sister and be sent back to Haiti, where it is difficult for women to find jobs.  T.D.'s guardian supports her and T.D. has access to psychiatric and medical services in the United States.  In contrast, she is afraid of being returned to Haiti, where her family members were abusive to her.  R.F.M. also fears returning to the Dominican Republic, a country she has no memory of, where her family is targeted by violent crime, and where she will be separated from the support of her grandmother, whom she considers to be her mother.  R.F.M. has also struggled with depression, and she fears she will lose the mental health treatment she has been receiving by being unable to stay in the country.  S.W. has been moved around between family members all her life, and she will lose the stability she has been able to establish with support from her uncle.  She is afraid of having to return to Jamaica, where the only person who supported her there, her grandmother, was killed in a random act of violence. D.A.F.A. fled El Salvador, where he had been targeted by gangs, and is now terrified by the

prospect of being returned there.  Further, he is afraid of being again separated from his mother, with whom he was recently reunited after almost a decade apart.

Finally, Plaintiffs and Proposed Class members who are wrongfully denied SIJS will not benefit from the waiver of certain grounds of deportation granted to aliens with SIJS.  *See* 8 U.S.C. § 1227(c).  The Deportable Aliens statute permits the Attorney General to remove an alien who falls within any of a number of defined classes of deportable aliens.  *See* 8 U.S.C. § 1227(a). However, aliens with SIJS protections may not be removed on certain grounds of deportation, including (i) inadmissibility at the time of entry or adjustment of status, *id.* at § 1227(a)(1)(A); (ii) presence in the United States in violation of law, *id.* at § 1227(a)(1)(B); and (iii) violation of nonimmigrant status or a condition of entry, *id.* at § 1227(a)(1)(C).  Thus, the wrongful denial of SIJS has the immediate harmful effect of placing Plaintiffs at risk of deportation on grounds that would not have otherwise applied to them had USCIS not adopted its arbitrary and capricious policy.

## III.   PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION BECAUSE THE BALANCE OF EQUITIES AND PUBLIC INTEREST WEIGH HEAVILY IN FAVOR OF PROVISIONAL RELIEF

The party seeking a preliminary injunction must also demonstrate, by clear and convincing evidence, that the balance of the equities tips in its favor, and that an injunction is in the public interest. *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (citation omitted). This requirement means that the Court must balance the relative hardships between the parties. Courts determine hardship by considering "if the hardship experienced by the movant if the injunction were denied would outweigh the hardship experienced by the non-movant if the injunction were granted."   13 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 65.22(1)(e) (3d ed. 1999).  The Court must "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v.*

*Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  Furthermore, the federal government cannot suffer harm from an injunction that simply requires it to follow its legal obligations.  *See Abdi v. Duke*, 280 F. Supp. 3d 373, 410 (W.D.N.Y. 2017).  Finally, a plaintiff must show that an injunction would serve the public interest.  This factor merges with balancing the equities and the two can be considered together when the government is the opposing party.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

The SIJS Statute protects vulnerable, abused and neglected young people, so the costs to the public and New York State from its termination would be significant if USCIS's wrongful denials of SIJS are allowed to continue.  USCIS's change in policy adversely affects important institutions such as the Family Court, which is rendered unable provide SIJS protections to the young people it is charged with protecting.  The new policy threatens to affect law enforcement adversely as well by perpetuating mistrust of law enforcement authorities and depressing cooperation among immigrant communities with police, leading to increases in unreported crime.

On the other hand, an injunction would require only that USCIS correctly interpret the law and return to enforcing the policy it has enforced for years; the requested relief thus imposes no hardship on the USCIS.  *Abdi*, 280 F. Supp. 3d at 410.  USCIS has offered no reasons for adopting the change in policy, so a return to their prior practices imposes no clear harm on the agency. USCIS's prior policy demonstrates that SIJS petitioners are not a priority for immigration enforcement, which undermines the argument that a preliminary injunction would injure the Government's interest in denying SIJS protections to Plaintiffs.  *See Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 436 (E.D.N.Y. 2018).  For Plaintiffs, however, the hardships that will be endured if USCIS's policy change is not enjoined will be enormous.  Plaintiffs risk deportation and the loss of SIJS benefits and protections, as well as the accompanying emotional distress and fear of

42

immigrant removal.  For these reasons, the balance of equities and public interest overwhelmingly weigh toward injunctive relief.

Moreover, the public interest weighs strongly in favor of granting Plaintiffs' motion for a preliminary injunction, insofar as the SIJS is critical to achieving the goals of the SIJS Statute to protect vulnerable immigrant youth.  Moreover, the USCIS's sudden policy change with regard to applicants over the age of 18 has harmed the public interest by generating fear and uncertainty among SIJS applicants and undermining the credibility of U.S. promises to foreign nationals regarding immigration status.

## CONCLUSION

Plaintiffs, respectfully, have demonstrated they are likely to succeed on the merits of their claims, and have established they are suffering—and will continue to suffer—irreparable harm if USCIS continues to wrongfully deny SIJS applications. Similarly, Plaintiffs have established that the balance of equities and the public interest strongly support the conclusion that preliminary relief is necessary.

For the reasons set forth above, this Court should issue a preliminary injunction:

1. barring Defendants from departing from their longstanding practice of recognizing, when the Family Court's Special Findings Order appointed a guardian for an individual over the age of 18, (i) the New York Family Court as a "juvenile court" under 8 C.F.R. § 204.11(a) and (ii) that the New York Family Court is empowered to issue SIJS Orders under 8 U.S.C. § 1101(a)(27)(J), pending a final adjudication of the case on the merits;

2. enjoining Defendants to provide 14 days' notice to Plaintiffs' counsel before Defendants take any adverse adjudicatory or enforcement action against Plaintiffs or members of the Proposed Class during the pendency of this litigation;

3.   and granting any other relief the Court deems just and equitable.

Dated:  June 7, 2018
      New York, New York

Respectfully submitted,

/s/ Robert J. Malionek
LATHAM & WATKINS LLP
Robert J. Malionek
Nicholas L. McQuaid
Virginia F. Tent
Alexander R. DeLisi
885 Third Avenue
New York, NY 10022
Tel: (212) 906-1200
Robert.Malionek@lw.com
Nicholas.McQuaid@lw.com
Virginia.Tent@lw.com
Alexander.DeLisi@lw.com

THE LEGAL AID SOCIETY
Seymour James
Adriene Holder
Hasan Shafiqullah
Judith Goldiner
Lisa Freeman
Beth Krause(*pro hac vice* forthcoming)
Jennifer Levy
Julie Dona
Theresa B. Moser
199 Water Street, 3rd Floor
New York, NY 10038
(212) 577-3536
JLevy@legal-aid.org

*Attorneys for Plaintiffs*