## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| R.F.M., T.D., S.W., and D.A.F.A., on behalf of themselves and all others similarly situated, <br><br>                Plaintiffs, <br><br>    v . <br><br> KIRSTJEN NIELSEN, in her capacity as Secretary of the Department of Homeland Security; LEE FRANCIS CISSNA, in his capacity as Director of United States Citizenship and Immigration Services; BARBARA VELARDE, in her capacity as Chief of the Administrative Appeals Office of United States Citizenship and Immigration Services; ROBERT M. COWAN, in his capacity as Director of the United States Citizenship and Immigration Services National Benefits Center; THOMAS CIOPPA, in his capacity as Director of the United States Citizenship and Immigration Services New York City District Office; EDWARD NEWMAN, in his capacity as Director of the United States Citizenship and Immigration Services Buffalo District Office; DANIEL RENAUD, in his capacity as Associate Director of United States Citizenship and Immigration Services Field Operations Directorate; GWYNNE DINOLFO, in her capacity as United States Citizenship and Immigration Services Albany Field Office Director; GINA PASTORE, in her capacity as United States Citizenship and Immigration Services Brooklyn Field Office Director; CARMEN WHALING, in her capacity as United States Citizenship and Immigration Services Buffalo and Syracuse Field Office Director; ELIZABETH MILLER, in her capacity as United States Citizenship and Immigration Services Long Island Field Office Director; WILLIAM BIERMAN, in his capacity as United States Citizenship and Immigration Services New York Field Office Director; and BRIAN MEIER, in his capacity as United States Citizenship and Immigration Services Queens Field Office Director, <br><br>                Defendants. | 18 Civ. 5068 |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
## CLASS CERTIFICATION

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

FACTUAL BACKGROUND ................................................................................4

    I.      The SIJS Process In New York ...............................................................4

    II.     USCIS's Arbitrary New Policy .................................................................6

    III.    USCIS's Arbitrary And Capricious Policy Change Is Causing Devastating
         Harm To All Members Of The Proposed Class .......................................7

    IV.   USCIS's Arbitrary And Capricious Policy Change Is Causing Devastating
         Harm To The Named Plaintiffs .................................................................8

         A.     R.F.M. .............................................................................................8

         B.     T.D. .................................................................................................9

         C.     S.W. ..............................................................................................10

         D.    D.A.F.A. ........................................................................................10

LEGAL STANDARD ........................................................................................11

ARGUMENT ..................................................................................................13

    I.      Numerosity Is Satisfied Because Joinder Would Be Impracticable Due To
         The Size, Nature, Lack Of Financial Resources, And Inadequate Access
         To Legal Representation Of The Proposed Class ...................................13

    II.     Commonality Is Satisfied Because All Class Members' Claims Share
         Common Questions Of Law Which May Be Resolved In "One Stroke" .............15

    III.    Typicality Is Satisfied Because The Named Plaintiffs' Claims Arise From
         The Same USCIS Policy Faced By The Proposed Class .......................18

    IV.   Latham & Watkins LLP And The Legal Aid Society Are Exceptionally
         Qualified To Represent The Proposed Class And No Conflict Of Interest
         Exists Among The Class Members ..........................................................20

    V.     Class Certification Is Appropriate Under Rule 23(b)(2) Because Named
         Plaintiffs Seek Final Injunctive And Declaratory Relief .......................21

CONCLUSION ................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Amchem Prods., Inc. v. Windsor*,
      521 U.S. 591 (1997)..................................................................................................18, 21

*Ariz. Dream Act Coalition v. Brewer*,
      855 F.3d 957 (9th Cir. 2017) ......................................................................................7

*Brown v. Kelly*,
      609 F.3d 467 (2d Cir. 2010).............................................................................11, 12, 21

*Bruce v. Christian*,
      113 F.R.D. 554 (S.D.N.Y. 1986) ................................................................................13

*In re Cablevision Consumer Litig.*,
      No. 10–CV–4992 (JS) (AKT), 2014 WL 1330546 (E.D.N.Y. Mar. 31, 2014) ......................12

*Charron v. Pinnacle Group N.Y. LLC*,
      269 F.R.D. 221 (S.D.N.Y. 2010) ................................................................................16

*City of Westland Police and Fire Retirement Sys. V. Metlife, Inc.*
      12-CV-4992 (LAK) (AJP), 2017 WL 3608298 (S.D.N.Y. Aug. 22, 2017) ...........................12

*Consol. Rail Corp. v. Town of Hyde Park*,
      47 F. 3d 473 (2d Cir. 1995).................................................................................13, 14

*Denney v. Deutsche Bank AG*,
      443 F.3d 253 (2d Cir. 2006)......................................................................................20

*In re Drexel Burnham Lambert Group*,
      960 F.2d 285 (2d Cir. 1992)......................................................................................20

*Floyd v. City of New York*,
      283 F.R.D. 153 (S.D.N.Y. 2012) ...............................................................................23

*Gayle v. Warden Monmouth County Correctional Institution*,
      838 F.3d 297 (3d Cir. 2016)......................................................................................23

*German v. Federal Home Loan Mortgage Corp.*,
      885 F.Supp. 537 (S.D.N.Y. 1995)..............................................................................16

*Hill v. City of New York*,
      136 F. Supp. 3d 304 (E.D.N.Y. 2015) ........................................................................13

*Hirschfeld v. Stone*,
      193 F.R.D. 175 (S.D.N.Y. 2000) ...............................................................................14

*Jackson v. Foley*,
   156 F.R.D. 538 (E.D.N.Y. 1994) ........................................................................15

*Jane B. v. New York City Dep't of Soc. Servs.*,
   117 F.R.D. 64 (S.D.N.Y. 1987) ..........................................................................18

*Jermyn v. Best Buy Stores, L.P.*,
   256 F.R.D. 418 (S.D.N.Y. 2009) .........................................................................21

*Kaplan v. Chertoff*,
   No. 06-5304, 2008 WL 200108 (E.D. Pa. Jan. 24, 2008)...........................12, 22, 24

*Kirwa v. U.S. Dep't of Defense*,
   No. 17–1793, 2017 WL 4862763 (D.D.C. Oct. 25, 2017)..........................12, 22, 24

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ................................................................. *passim*

*Mayer v. Wing*,
   922 F. Supp. 902 (S.D.N.Y. 1996) ......................................................................20

*McDonald v. Heckler*,
   612 F. Supp. 293 (D. Mass. 1985) ......................................................................15

*N.J. Carpenters Health Fund v. Residential Capital, L.L.C.*,
   272 F.R.D. 160 (S.D.N.Y. 2011) .........................................................................18

*Nicholson v. Williams*,
   205 F.R.D. 92 (E.D.N.Y. 2001) ..........................................................................13

*Nio v. U.S. Dep't. of Homeland Security*,
   323 F.R.D. 28 (D.C. 2017)..................................................................................22

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   199 F.R.D. 119 (S.D.N.Y. 2001) .........................................................................18

*Parker v. Time Warner Entertainment Co.*,
   331 F.3d 13 (2d Cir. 2003)..................................................................................22

*Perez-Olano v. Gonzalez*,
   No. CV 05-03604, U.S. Dist. LEXIS 85675 (C.D.Cal. Jan. 8, 2008)......................17

*R.I.L-R v. Johnson*,
   80 F. Supp. 3d 164 (D.D.C. 2015) ..........................................................12, 22, 23

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)....................................................................13, 14, 15, 18

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ...........................................................23

*Rojas v. Johnson*,
    No. 16-1024, 2017 WL 1397749 (W.D. Wash. June 30, 2016) .................................12, 22, 23

*Ruiz v. Citibank, N.A.*,
    93 F. Supp. 3d 279 (S.D.N.Y. 2015)...................................................17

*Santillan v. Ashcroft*,
    No. 04-2686, 2004 WL 2297990 (N.D. Cal. Oct. 12, 2004) ...........................12, 16, 18

*Sykes v. Mel Harris & Assocs. LLC*,
    285 F.R.D. 279 (S.D.N.Y. 2012) .......................................................13, 16

*Sykes v. Mel Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015).................................................................3, 15, 17

*Wilder v. Bernstein*,
    499 F. Supp. 980 (S.D.N.Y. 1980).....................................................18

**STATUTES**

5 U.S.C. § 706(2)(a) .......................................................................2, 17

8 U.S.C. § 1101(a)(27)(J) ...............................................................1, 3, 4, 5

8 U.S.C. § 1101(b)(1) .....................................................................1

8 U.S.C. § 1232(d)(6) .....................................................................1

8 U.S.C. § 1255(a) .........................................................................4

**RULES**

Fed. R. Civ. P. 23(a)(1)..................................................................13

Fed. R. Civ. P. 23(a)(1)-(4)............................................................11

Fed. R. Civ. P. 23(a)(2)..................................................................15

Fed. R. Civ. P. 23(a)(3)..................................................................18

Fed. R. Civ. P. 23(a)(4)..................................................................20

Fed. R. Civ. P. 23(b)(1)..................................................................21

Fed. R. Civ. P. 23(b)(2)............................................................ *passim*

Fed. R. Civ. P. 23(b)(3)..................................................................................................13, 21

Fed. R. Civ. P. 23(c)(1)(A) ....................................................................................................11

**TREATISES**

1 H. Newberg, Newberg on Class Actions (2d ed. 1985).......................................13, 22

**REGULATIONS**

8 C.F.R. § 103.3(a)(2)(i) ........................................................................................................17

8 C.F.R. § 204.11 ................................................................................................................2, 5

8 C.F.R. § 204.11(a)..........................................................................................................2, 3

R.F.M., T.D., S.W., and D.A.F.A. (the "Named Plaintiffs"), on behalf of themselves and all other similarly situated individuals (the "Proposed Class"), by and through their attorneys, Latham & Watkins LLP and The Legal Aid Society, respectfully submit this Memorandum of Law, together with the Declaration of Robert J. Malionek, in support of Plaintiffs' motion for class certification.

## PRELIMINARY STATEMENT

Special Immigrant Juvenile status ("SIJS") is a federal benefit with a singular purpose: to protect temporary or undocumented residents under the age of 21 who have been abused, neglected, or abandoned by giving them a pathway to citizenship in the United States.[1] Through the SIJS program, these vulnerable immigrants are eligible to adjust their status in the country, enabling them ultimately to obtain employment authorization, become lawful permanent residents ("LPR"), and even be awarded citizenship. Put simply, SIJS offers these immigrants the hope and opportunity to build a life in the United States, and thousands of children under age 21 across the country have benefited from the SIJS program in precisely this manner.

Now, however, eligibility for this critical program is being arbitrarily denied. Beginning in mid-2017, without warning, the United States Citizenship and Immigration Services ("USCIS") abruptly began systematically denying petitions submitted in New York by individuals between the ages of 18 and 21 years old. *See* Compl. at ¶ 42. USCIS has denied these petitions notwithstanding the fact that SIJS expressly protects children up to 21 years old, and that such petitioners had historically been granted SIJS.

---

[1] Originally enacted in 1990, Congress clarified in 2008 that SIJS is available to eligible children who apply before they turn 21. TVPRA § 235(d)(6), 8 U.S.C. § 1232(d)(6) ("Notwithstanding any other provision of law, an alien described in section 101(a)(27)(J) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(27)(J)) . . . may not be denied special immigrant status under such section after the date of the enactment of this Act based on age if the alien was a child on the date on which the alien applied for such status."); 8 U.S.C. § 1101(b)(1) (defining a "child" under the INA to include unmarried individuals under 21 years of age).

USCIS is asserting two new bases for these decisions: (1) that the New York Family Court ("Family Court") fails to qualify as a "juvenile court"[2] when issuing a Special Findings Order ("SFO")[3] to anyone between their 18th and 21st birthdays, and (2) that the Family Court lacks the authority to make a legal determination that the petitioner's reunification with one or both parents is not viable.  USCIS is wrong as a matter of law on both grounds.  Moreover, the about-face by USCIS was undertaken without any change in law, new guidance, formal or informal rulemaking, or policy announcements whatsoever.[4]  USCIS simply began issuing denials, or notices of its intent to deny, to members of the Proposed Class, including each of the Named Plaintiffs.  Because USCIS's policy change is arbitrary and capricious, it violates the Administrative Procedure Act ("APA") Section 706.  *See* 5 U.S.C. § 706(2)(a).[5]  *See* Pls.' Compl.; Prelim. Inj. Mem.

**Proposed Class.**  Plaintiffs respectfully ask the Court to certify a class (the "Proposed Class") of all SIJS petitioners who based their petitions on SFOs issued by the New York Family Court between the petitioners' 18th and 21st birthdays and either:

---

[2] "Juvenile court" is defined as "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles."  8 C.F.R. § 204.11(a) (Section 204.11 referred to herein as the "SIJS Regulation"); *see* Mem. Law Supp. Pls.' Mot. Prelim. Inj. ("Prel. Inj. Mem.") at 3; Pls.' Compl. at ¶¶ 36, 57..

[3] A SFO is an order from a state court with child welfare expertise establishing that a young immigrant meets the criteria for SIJS.  *See* Pls.' Compl. at ¶ 3.

[4] On April 18, 2018, USCIS denied to *The New York Times* that there had been any policy change on this issue.  *See* Ex. 12, Liz Robbins, *A Rule is Changed for Young Immigrants, and Green Card Hopes Fade*, N.Y. Times (Apr. 18, 2018).  On April 24, 2018, USCIS issued a *post hoc* statement that the agency had in fact instituted a policy change as part of a centralized process that had been ongoing for months.  Ex. 13, April 24, 2018 Statement from USCIS spokesperson Jonathan Withington to POLITICO.  All references to "Ex. __" are references to the Declaration of Robert J. Malionek, filed herewith, in support of Plaintiffs' Motions for Preliminary Injunction and Class Certification.

[5] Plaintiffs expect that USCIS may attempt to argue that its policy change is not a new policy but rather a reinterpretation of law.  This is a distinction without a difference.  USCIS's recent pattern of adjudications reflects a clear change in USCIS's position regardless of whether USCIS identifies its approach as a new policy or a new interpretation of law.  USCIS cannot circumvent APA requirements by framing its new approach to SIJS applications as a change in interpretation of law instead of a policy change.  *See*, *e.g.*, *National Cable & Telecomm. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 982 (2005) (performing an identical analysis regardless of whether an agency has labeled its new position as a policy change or a change in statutory interpretation).  No matter what USCIS might call it, therefore, it violates the APA.  *See* Pls.' Compl. at ¶ 45.

1) have been issued (i) Notices of Intent to Deny ("NOID"), (ii) Notices of Intent to Revoke ("NOIR"), (iii) Decisions of Denial, or (iv) Decisions revoking previously-granted SIJS since January 1, 2016 on the ground that the Family Court is not a "juvenile court" under 8 C.F.R. § 204.11(a) and/or that the Family Court is not empowered to issue SIJS predicate Orders under 8 U.S.C. § 1101(a)(27)(J); or

(2) have a Family Court SFO finding the eligibility criteria of 8 U.S.C. § 1101(a)(27)(J) are satisfied and have a pending petition for SIJS before the USCIS based on the Family Court SFO.

The Proposed Class satisfies all class action prerequisites under Federal Rules of Civil Procedure 23(a) and 23(b)(2).

- *First*, the Proposed Class is sufficiently numerous that joinder is impracticable due to the size and nature of the Proposed Class, most of whom lack financial resources and legal representation, and some of whom are prospective class members yet to be identified.

- *Second*, the Proposed Class presents common questions of law and fact that will determine the outcome of litigation and can be resolved in "one stroke." *Sykes v. Mel Harris & Associates*, LLC, 780 F.3d 70, 80 (2d Cir. 2015) (internal citations omitted). Indeed, this case centers around a single legal issue—whether USCIS's sudden decision systematically to deny SIJS petitions of 18 to 21 year-olds violates the APA.

- *Third*, like all class members, the four Named Plaintiffs have been deprived of the opportunity to receive SIJS because USCIS has decided that Family Courts do not qualify as "juvenile courts" capable of issuing valid SIJ predicate orders for individual petitioners over 18 or that the Family Court lacks the authority to make a legal determination that the petitioner's reunification with one or both parents is not viable. Their claims for relief are thus typical of those of the Proposed Class.

3

- *Fourth*, the Named Plaintiffs are able fairly and adequately to protect the interests of the class, lack any material conflicts, and are able to rely upon counsel with the expertise and resources to prosecute this claim.

- Finally, USCIS has acted or refused to act on grounds that apply generally to the Proposed Class—namely denying or revoking SIJS when the petitioners received SFOs between their 18th and 21st birthdays or notifying them of an intent to do the same—making certification of a Rule 23(b)(2) class appropriate.

## FACTUAL BACKGROUND

Plaintiffs hereby incorporate by reference the factual background as set out in their Complaint and Memorandum of Law in Support of their Preliminary Injunction. *See* Pls.' Compl.; Prelim. Inj. Mem.  Plaintiffs highlight here only certain facts pertinent to class certification.

### I.    THE SIJS PROCESS IN NEW YORK

Congress enacted the Immigration and Nationality Act of 1990 to provide a pathway to permanent residence for youth without legal immigration status who have been abused, neglected or abandoned, and who lack parental support.  *See* 8 U.S.C. §§ 1101(a)(27)(J) ("SIJS Statute"), 1255(a); Pls.' Compl. at ¶ 28.  As amended over time, the SIJS Statute lays out five criteria that must be found by a state juvenile court in order to establish eligibility for SIJS.  *See id.*; *see also* Pls.' Compl. at ¶ 3.  In addition to finding that the child is (1) under 21 years old and (2) unmarried, and (3) that it would not be in the child's best interests to be returned to their country of origin, there are two eligibility criteria at issue in this action.  The child must (4) *either* be "declared dependent on a juvenile court" *or* "legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court."  8 U.S.C. §§ 1101(a)(27)(J), 1255(a); *see* Pls.' Compl. at ¶¶ 5, 55, and (5), the juvenile court must find that reunification of the SIJS petitioner with a parent is not viable because of abuse, neglect,

4

abandonment or a similar basis under state law.  *See* 8 U.S.C. § 1101(a)(27)(J)(i); Pls.' Compl. at ¶¶ 3, 29–31 66.

Accordingly, the SIJS Statute requires the SIJS petitioner to participate in a state juvenile court proceeding—and receive an SFO establishing that the child has satisfied the five SIJS eligibility requirements—before submitting a SIJS petition.[6]  U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11; *see* Pls.' Compl. at ¶¶ 3, 55.  In considering a petition for SIJS, USCIS may interview the SIJS petitioner, issue requests for evidence, and issue other notices, such as a Notice of Intent to Deny ("NOID") or a Notice of Intent to Revoke ("NOIR").  An NOID informs a SIJS petitioner of USCIS's intent to deny the petition, whereas an NOIR informs a young person who already has been granted SIJS that USCIS intends to revoke that status.  *See* Pls.' Compl. at ¶¶ 45, 52.  If USCIS approves a youth's SIJS petition, the youth has permission to reside in the United States and may have the opportunity to become a lawful permanent resident.  *See* Pls.' Compl at ¶¶ 2, 7, 28.

Since 2008, USCIS has consistently accepted Family Courts as valid "juvenile courts" with the power to issue findings of SIJS eligibility.  *See* Pls.' Compl. at ¶¶ 6, 33; Ex. 8, Decl. of Eve Stotland at ¶¶ 8-10; *see* Ex. 5, Decl. of the Hon. A. Gail Prudenti.  During this time, USCIS never interpreted the regulatory definition of "juvenile court" to require or allow USCIS to conduct an inquiry into a state court's authority to make custody or reunification determinations over individual petitioners. Ex. 6, Decl. of Beth Krause at ¶ 16.

---

[6] In New York State, the primary juvenile court that determines eligibility for SIJS is the Family Court.  *See* Pls.' Compl. at ¶¶ 5, 38; Ex. 5, Decl. of the Hon. A. Gail Prudenti  at ¶ 7 ("The Court's authority and responsibility to make care and custody findings arises in almost every type of proceeding, including guardianships; abuse, neglect, and abandonment determinations.")

## II.        USCIS'S ARBITRARY NEW POLICY

Beginning in mid-2017, USCIS abruptly shifted course.  Rather than granting SIJS petitions, as it had for the past ten years, USCIS began withholding approval of such petitions for individuals who received their SFOs from Family Courts when they were between 18 and 21 years of age.  *See* Pls.' Compl. at ¶¶ 6–7, 41–46; Ex. 7, Decl. of Maria Odom at ¶¶ 14-18; Ex. 6, Decl. of Beth Krause at ¶¶ 10-20.  For instance, some petitions that once would have been quickly approved were receiving arbitrary requests for additional evidence.  Others were denied outright. And others still received NOIDs or NOIRs.

In each case, USCIS's stated justification for its adverse action was predicated (at least in part) on a determination that Family Court orders submitted in support of SIJS petitions for petitioners between the ages of 18 and 21 were not legitimate or acceptable for the purposes of SIJS petitions or that the Family Court was not empowered to issue a finding that the petitioner's reunification with his or her parents was not viable.  Ex. 6, Decl. of Beth Krause at ¶ 15; Ex. 8, Decl. of Eve Stotland at ¶ 11; *see also* Ex.  3 Appendix C, USCIS Denial of S.W.'s Application for SIJS at 3 (denying Plaintiff's application for SIJS in part "[b]ecause [she] was eighteen, [she] did not provide an order from a juvenile court…declar[ing her] dependent on a juvenile court"); Ex. 4 Appendix C, USCIS Denial of D.A.F.A.'s Application for SIJS at 3 (denying Plaintiff's application for SIJS in part "[b]ecause [he] was over eighteen, [he] did not provide an order from a juvenile court making a custody and care determination for a juvenile.").  USCIS has now even begun revoking SIJS petitions *that it had already approved* based on these grounds.  *See* Prelim. Inj. Mem. at 13; Ex. 4, Decl. of Eve Stotland at ¶ 13.

### III.     USCIS'S ARBITRARY AND CAPRICIOUS POLICY CHANGE IS CAUSING DEVASTATING HARM TO ALL MEMBERS OF THE PROPOSED CLASS

Named Plaintiffs and the Proposed Class are currently experiencing irreparable harm and are at immediate risk of further irreparable harm. *See* Prelim. Inj. Mem. at 15–17. Before the agency's policy change, SIJS transformed the lives of thousands of SIJS beneficiaries between the ages of 18 and 21 by opening doors to educational, professional, economic and personal opportunity through attainment of LPR status. Ex. 10, Decl. of Judith Meltzer at ¶¶ 5-10. For thousands, the pendency of the SIJS petition alone removed the constant threat of deportation and the daily psychological stress that those with lawful status do not endure. *See* Prelim. Inj. Mem. at 15–16. The wrongful denial of SIJS exposes an already vulnerable population to at least three immediate harms.

First, the Proposed Class remains ineligible for LPR and all the benefits that accrue from an adjustment of status. Denying the Proposed Class the opportunity to become LPRs through SIJS prevents them from pursuing legal employment and educational opportunities. This harm is especially apparent for young adults at the start of their careers: "setbacks early in [] careers are likely to haunt [young] Plaintiffs for the rest of their lives" because Plaintiffs' entire careers could be "constrained by professional opportunities they are denied today." *Ariz. Dream Act Coalition v. Brewer*, 855 F.3d 957, 978 (9th Cir. 2017) (finding DACA recipients were irreparably harmed by Arizona's policy denying them driver's licenses, because plaintiffs were unable to commute to jobs, and their professional opportunities were therefore limited). Without LPR, members of the Proposed Class are unable to plan for their futures, whether that be enrolling in higher education and graduate programs or pursuing career opportunities. *See* Prelim. Inj. Mem. at 38–40; Ex. 10, Decl. of Judith Meltzer at ¶¶ 11-14.

Second, the Proposed Class experiences the daily mental and emotional harm of being undocumented aliens subject to immediate removal.  SIJS petitioners will be faced with the possibility of returning to environments of abuse and neglect, and separated from family and communities that support them in the United States.  *See* Memorandum in Support of Motion for Prelim. Inj. Mem. at 40–42; Ex. 1, Decl. of R.F.M. at ¶ 27; Ex. 2, Decl. of T.D. at ¶¶ 34-35, 40; Ex. 3, Decl. of S.W. at ¶ 31; Ex. 4, Decl. of D.A.F.A. at ¶¶ 38, 40.

Finally, depending on one's country of origin, an SIJS petitioner may file his or her LPR application concurrently with the petition for SIJS.  *See* 8 U.S.C. § 1227(c).[7]  Once a petitioner files the LPR application, several grounds of deportation are waived.  *See id.*  Thus, the wrongful denial of SIJS has the immediate harmful effect of placing Plaintiffs at risk of deportation on grounds that would not otherwise have applied to them had USCIS not adopted its arbitrary and capricious SIJS denial policy.  *See* Prelim. Inj. Mem. at 42.

## IV.     USCIS'S ARBITRARY AND CAPRICIOUS POLICY CHANGE IS CAUSING DEVASTATING HARM TO THE NAMED PLAINTIFFS

The unjustified policy change by USCIS has had the catastrophic consequences described above on the lives of the Named Plaintiffs.

### A.     R.F.M.

On March 15, 2018, R.F.M. received notice of USCIS's denial of her SIJS petition.  *See* Ex. 1 Appendix E, USCIS Denial of R.F.M.'s Application for SIJS.  In denying R.F.M.'s petition, USCIS asserted that the Family Court did not have jurisdiction over her when it issued its SFO because she was then between the ages of 18 and 21, misinterpreting both New York State and federal law. *Id.* at 3; *see also* Pls.' Compl. at ¶¶ 9, 83–90.

---

[7] An approved SIJS petition provides the basis for an application for adjustment of status to LPR. *See* Prelim. Inj. Mem. at 42.

The wrongful denial of R.F.M.'s SIJS petition has prevented her from pursuing a college degree and obtaining work authorization, and therefore a stable job.  Ex. 1, Decl. of R.F.M. at ¶ 28.  Without work authorization, R.F.M. cannot obtain legal employment and provide for her grandmother, who serves as R.F.M.'s legal guardian.  *Id.* at ¶ 29.  Although R.F.M. wants to attend college and become a nurse, she cannot afford college without financial aid.  *Id.* at ¶ 28.  R.F.M. lives in constant fear of being deported to the Dominican Republic—a country she lived in during only the first eight months of her life and knows nothing about.  *Id.* at ¶¶ 10, 27.

### B.     T.D.

T.D. is originally from Haiti.  Ex. 2, Decl. of T.D. at ¶ 2.  She does not remember ever living with her mother.  *Id.*  T.D. was raised until the age of fourteen by aunts and uncles in her father's home.  *Id.*  At fourteen, her father sent her to live with her aunt in Brooklyn, and he has not been involved in her life since.  *Id.* at ¶ 4.  Three years after arriving in the U.S., she learned her mother died in Haiti.  *Id.* at ¶ 3.  On November 21, 2016, T.D. applied for SIJS.  Ex. 2 Appendix D, USCIS Form I-797C, Notice of Action for T.D.  On March 13, 2018, T.D. received notice of USCIS's denial of her SIJS petition.  Ex. 2 Appendix E, USCIS Denial of T.D.'s SIJS Application. In denying T.D.'s petition, USCIS asserted that Family Court did not have jurisdiction over her when it issued its SFO because she was then between the ages of 18 and 21, misinterpreting both New York State and federal law.  *See id.*; *see also* Pls.' Compl. at ¶¶ 100–04.

The wrongful denial of T.D.'s petition for SIJS has caused her tremendous fear and depression.  Ex. 2, Decl. of T.D. at ¶ 34.  T.D. is currently working full-time to save up to reach her dream of attending college, but at any moment, she could be ripped from her community and sent back to Haiti to a father she does not know. *Id.* at ¶¶ 34–35, 40.  Her younger sister, who emigrated from Haiti a year later than T.D., was granted SIJS, is shielded from removal, and plans to enroll in college with scholarships for which T.D. is ineligible to apply because of T.D.'s SIJS

denial.  *Id.* at ¶¶ 30, 31, 39.  The only difference between T.D. and her sister is that her sister was under 18 when she obtained her SFO.  *Id.* at ¶ 31.  T.D.'s juxtaposition with her sister puts the arbitrariness of USCIS's policy in sharp relief.

### C.    S.W.

On March 6, 2018, S.W. received notice of USCIS's denial of her SIJS petition.  Ex. 3 Appendix D, USCIS Denial of S.W.'s Application for SIJS.  In denying S.W.'s petition, USCIS asserted that the New York Family Court did not have jurisdiction over her when it issued its SFO because she was then between the ages of 18 and 21, misinterpreting both New York State and federal law.  *See id.*; *see also* Pls.' Compl. at ¶¶ 114–15.

For S.W., this wrongful denial effectively negates all the progress she has made in the U.S., and stalls her opportunity to pursue her dreams.  S.W. is currently pursuing a degree in criminal justice, but is forced to work at half-pace because she cannot apply for financial aid to fund a full-time curriculum.  Ex. 3, Decl. of S.W. at ¶ 27.  Because of this, her opportunity to earn a living is stalled—if not completely destroyed—by her inability to obtain work authorization.  *Id.* at ¶¶ 27, 29.  Further, S.W. battles with a life-long medical condition for which she is unable to seek treatment because her SIJS denial prevents her from obtaining health insurance.  *Id.* at ¶ 28.  S.W.'s SIJS denial permeates every aspect of her life: she grew up playing team sports and hoped to continue in college, but her denial prevents her from joining a team because her college requires a Social Security Number for registration.  *Id.* at ¶ 30.

### D.    D.A.F.A.

On March 7, 2018, D.A.F.A. received notice of USCIS's denial of his SIJS petition.  Ex. 3 Appendix C, USCIS Denial of D.A.F.A.'s Application for SIJS.  In denying D.A.F.A.'s petition, USCIS asserted that the New York Family Court did not have jurisdiction over him when it issued

10

its SFO because he was then between the ages of 18 and 21, misinterpreting both New York State and federal law.  *See id.*; *see also* Pls.' Compl. at 125–32.

For D.A.F.A., this denial puts him at risk of being sent back to El Salvador, the place he fled out of fear of attempted gang recruitment.  Ex. 3, Decl. of D.A.F.A. at ¶¶ 23–27.  His SIJS denial prevents him from pursuing his dream of becoming an engineer and providing for his family—as without status he is unable to apply for financial aid for college.  *Id.* at ¶¶ 37–40. Further, the denial puts D.A.F.A. at risk of being separated from his family to be victimized by attempted gang recruitment.  *Id.*

## LEGAL STANDARD

The decision to certify a class should occur "[a]t an early practicable time after a person sues or is sued as a class representative." FED. R. CIV. P. 23(c)(1)(A).  In order to be certified, a proposed class must satisfy four requirement: numerosity, commonality, typicality, and adequacy. FED. R. CIV. P. 23(a)(1)–(4); *see also Marisol A. v. Giuliani,* 126 F.3d 372, 375 (2d Cir. 1997) (setting forth prerequisites of Rule 23(a)).[8]

A class must also satisfy the requirements of one of three categories outlined in Rule 23(b). *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010).  The Proposed Class satisfies Rule 23(b)(2), which provides that certification is proper when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2).

The Second Circuit has instructed district courts to interpret Rule 23 liberally and to "adopt a standard of flexibility" when determining whether a proposed class satisfies its requirements.

---

[8] Under Rule 23(a), the party moving for class certification must demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(1)-(4).

*Marisol A.*, 126 F.3d at 377 (internal quotation marks omitted); *see also Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010) (summarizing requirements of Rule 23(b)(2)); *In re Cablevision Consumer Litig.*, No. 10–CV–4992 (JS) (AKT), 2014 WL 1330546, at *5 (E.D.N.Y. Mar. 31, 2014) ("[Rule 23 requirements] should be given a liberal rather than restrictive interpretation") (internal quotation marks omitted); *City of Westland Police and Fire Retirement Sys. v. Metlife, Inc.* 12-CV-4992 (LAK) (AJP), 2017 WL 3608298, at *2 (S.D.N.Y. Aug. 22, 2017).

Courts have routinely certified Rule 23(b)(2) classes in suits, such as this one, where plaintiffs challenge agency action—including changes in immigration policy—as arbitrary and capricious. *See, e.g., Rojas v. Johnson*, No. 16-1024, 2017 WL 1397749, at *7 (W.D. Wash. Jan. 10, 2017) (certifying a nationwide class of current and future asylum seekers who would be subjected to a DHS vetting policy); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 183–84 (D.D.C. 2015) (granting for the purposes of a preliminary injunction the provisional certification of nationwide class of Central American asylum seekers who were or will have been denied release from detention due to a newly adopted DHS policy); *Santillan v. Ashcroft*, No. 04-2686, 2004 WL 2297990, at *12 (N.D. Cal. Oct. 12, 2004) (certifying nationwide class of persons who have been or will be granted lawful permanent resident status and to whom USCIS has failed to issue evidence of status as a lawful permanent resident); *see also Kirwa v. U.S. Dep't of Defense*, No. 17–1793, 2017 WL 4862763, at *16 (D.D.C. Oct. 25, 2017) (certifying nationwide class of noncitizen members of the Army reserve arbitrarily denied access to naturalization forms by the military); *Kaplan v. Chertoff*, No. 06-5304, 2008 WL 200108, at *1 (E.D. Pa. Jan. 24, 2008) (conditionally certifying for settlement a nationwide class of individuals who had lost or will have lost their social security benefits because of unreasonable USCIS delays in processing naturalization or adjustment of status applications).

**ARGUMENT**

The Court should certify the Proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2).  The Proposed Class easily satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), and class certification is appropriate under Rule 23(b)(2).

**I.      NUMEROSITY IS SATISFIED BECAUSE JOINDER WOULD BE IMPRACTICABLE DUE TO THE SIZE, NATURE, LACK OF FINANCIAL RESOURCES, AND INADEQUATE ACCESS TO LEGAL REPRESENTATION OF THE PROPOSED CLASS**

The Proposed Class satisfies the numerosity requirement of Rule 23(a)(1).  To meet this requirement, the class must be "so numerous that joinder of all members is impracticable."  FED. R. CIV. P. 23(a)(1); *see Sykes v. Mel Harris & Assocs. LLC*, 285, 286 F.R.D. 279, 286-687 (S.D.N.Y. 2012).  No particular number of individuals is required for a class to be certified, but courts have generally found that a class consisting of at least 40 members will satisfy the numerosity requirement.  *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F. 3d 473, 483 (2d Cir. 1995).  Moreover, courts in this circuit have relaxed the numerosity requirement in lawsuits where, as here, the putative class seeks injunctive relief pursuant to Rule 23(b)(2), as opposed to damages pursuant to 23(b)(3).  *Robidoux v. Celani*, 987 F.2d 931, 935-936 (2d Cir. 1993) ("Consolidating in a class action what *could be* over 100 individual suits serves judicial economy") (emphasis added); *see also, e.g., Bruce v. Christian*, 113 F.R.D. 554, 557 (S.D.N.Y. 1986) (granting class certification despite the fact plaintiff only identified 16 current cases supporting her claim); *Hill v. City of New York*, 136 F. Supp. 3d 304, 353 (E.D.N.Y. 2015); *Nicholson v. Williams*, 205 F.R.D. 92, 98 (E.D.N.Y. 2001).  Courts consider a variety of other factors besides the sheer number of class members when determining practicality of joinder, including "the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the

ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *See Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (citing 1 Newberg on Class Actions § 3.06 (2d ed. 1985)).

Joinder of class members here would be impracticable due to the size and nature of the Proposed Class. While exact figures are unknown, Plaintiffs have compiled estimates based on data collected from The Door, KIND, and the Legal Aid Society—non-profit organizations that provide free legal services to immigrant youth. Ex. 8, Decl. of Eve Stotland at ¶ 6; Ex. 6, Decl. of Beth Krause at ¶¶ 6–9; Ex. 7, Decl. of Maria Odom at ¶ 14-18. Based on these estimates, hundreds of individuals have received (i) NOIDs, (ii) NOIRs, (iii) Decisions of Denial, or (iv) Decisions revoking previously-granted SIJS all based on the USCIS's new and erroneous interpretation of New York state and federal law. *See* Ex. 6, Decl. of Beth Krause at ¶¶ 10–18; Ex. 7, Decl. of Maria Odom at ¶¶ 13–15. Taken together, the size of the proposed class easily satisfies the numerosity requirement for class certification. *See Consol. Rail Corp.*, 47 F.3d at 483. In addition, new class members are regularly joining the Proposed Class, making joinder virtually impossible. *See Robidoux*, 987 F.2d at 936 (explaining that a court should consider whether the class seeks "prospective injunctive relief which would involve future class members" when analyzing numerosity); *Hirschfeld v. Stone*, 193 F.R.D. 175, 182 (S.D.N.Y. 2000) (certifying a class of criminal defendants who were or would be confined to state psychiatric hospital for purposes of care and treatment) ("The fluid nature of the class further supports this Court's finding that joinder is impracticable.").

Members of the Proposed Class also lack financial resources and, often, the legal representation necessary to mount individual challenges to USCIS's arbitrary and capricious policy change. *See* Decl. of Eve Stotland ¶ 7; *see Robidoux*, 987 F.2d at 936 (citing the "financial

resources of class members" as a factor to consider when analyzing the numerosity requirement of Rule 23); *Jackson v. Foley*, 156 F.R.D. 538, 542 (E.D.N.Y. 1994) (considering the likelihood "that the majority of the class members are from extremely low income households, thereby greatly decreasing their ability to bring individual suits" as a factor in the court's determination that numerosity requirement of Rule 23 was satisfied); *McDonald v. Heckler*, 612 F. Supp. 293, 300 (D. Mass.) (citing the plaintiffs' low income as a factor in favor of ruling that the numerosity requirement was satisfied).  As immigrants between the ages of 18 and 21, individuals in the Proposed Class generally lack the financial resources to mount legal challenges, particularly significant challenges to a policy and practice of the federal government.  The Proposed Class is relying upon non-profit organizations and lawyers offering pro bono legal services.  *See id.* at ¶¶ 6–7.

Plaintiffs request certification of the Proposed Class under Rule 23(b)(2), which applies to plaintiffs seeking injunctive relief.  A remedy in the form of injunctive relief would protect future class members and further justifies the Court granting certification.  *See Robidoux*, 987 F.2d at 936.

Because the Proposed Class includes well over 100 members and is regularly gaining new members, is dispersed across the state of New York, generally lacks both financial resources and access to legal representation, and seeks prospective injunctive relief, it satisfies the numerosity requirement for class certification.

## II.      COMMONALITY IS SATISFIED BECAUSE ALL CLASS MEMBERS' CLAIMS SHARE COMMON QUESTIONS OF LAW WHICH MAY BE RESOLVED IN "ONE STROKE"

The Proposed Class satisfies the commonality requirement, which requires that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Rule 23(a)(2) "does not require all questions of law or fact to be common.  Indeed, even a single common question will

suffice." *Sykes v. Mel Harris & Assocs. LLC*, 285 F.R.D. 279, 286–287 (S.D.N.Y. 2012); *see also*

*Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir. 1997).  To satisfy the commonality requirement,

Plaintiffs must show that their common question "be of such a nature that it is capable of classwide

resolution—which means that determination of its truth or falsity will resolve an issue that is

central to the validity of each one of the claims in *one stroke*." *Sykes v. Mel Harris & Assocs. LLC*,

LLC, 780 F.3d 70, 80 (2d Cir. 2015) (internal citations omitted) (emphasis added).

This "one stroke" rule is often satisfied where, as here, there is a uniform policy or practice

that affects all class members.  *Id.* (finding commonality in class of debtors who have been or will

be sued by defendants, where plaintiffs identified "a common contention … capable of classwide

resolution . . . central to the validity of [their] claims").  This holds true even when there are factual

distinctions among the claims of the putative class members, as long as those dissimilarities do not

impede a common resolution.  *See German v. Federal Home Loan Mortgage Corp.*, 885 F.Supp.

537, 553 (S.D.N.Y. 1995) (certifying a class even though it consisted of thousands of members

who had suffered varying levels of injury due to lead exposure, since all class members' claims

presented a common legal question regarding defendants' responsibility for the presence of

hazardous lead paint on plaintiffs' property).[9]  Commonality is frequently found where injunctive

relief is sought.  *See, e.g.*, *Marisol A.*, 126 F.3d at 376–77; *Charron v. Pinnacle Group NY LLC*,

269 F.R.D. 221, 230–31 (S.D.N.Y. 2010).

The Proposed Class presents several common questions of law and fact, resolution of

which will not require individualized determinations based on particular class members'

---

[9] Plaintiffs recognize that there may be other issues to be resolved on an individual basis in the SIJS petitions of various members of the Proposed Class.  The relief sought by Plaintiffs, however, is narrowly tailored to resolve only the issues raised in this action with respect to the validity of SFOs from the Family Court to support SIJS petitions, and thereby seeks a return to the status quo on that issue alone.  Other issues regarding the SIJS petitions of individual class members may still be addressed (if appropriate) by USCIS entirely outside the proposed relief sought on a classwide basis in this action.

circumstances.   The common questions include whether USCIS, in violation of 5 U.S.C.

§ 706(2)(A):

1.  misinterpreted the SIJS Statute, SIJS Regulation, and New York law; specifically:

     o   whether USCIS's requirement that the Family Court must have jurisdiction over
         the custody of petitioners between their 18th and 21st birthdays to qualify as a
         "juvenile court" for SIJS purposes is arbitrary and capricious or otherwise not
         in accordance with the law;

     o   whether USCIS's requirement that the Family Court have the power to reunify
         the petitioner with one or both parents is arbitrary and capricious or otherwise
         not in accordance with the law;

2.  articulated an unjustified and unelaborated change in policy that is substantively
    unreasonable because it treats similarly situated SIJS petitioners differently;

3.  adopted its new policy without adequate notice.

*See* Pls.' Compl. at ¶ 6, 141–42; Prelim. Inj. Memo. at 17–34.   Indeed, the answers to these

questions will be the same for all members of the Proposed Class, are not dependent on the

individual characteristics of each class member's case, and will "drive the resolution of the

litigation." *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 289 (S.D.N.Y. 2015).[10]

The Proposed Class also shares common legal issues subject to administrative appeal.   An

individual who receives an NOID, NOIR, Decision of Denial, or Decision revoking previously-

granted SIJS has a 30-day window to appeal the decision to the Administrative Appeals Office

(AAO) or file an individual challenge under the APA.   *See* 8 C.F.R. § 103.3(a)(2)(i).   Certifying

the Proposed Class preserves judicial resources by litigating these common issues in "one stroke"

---

[10] The fact that different members of the Proposed Class may be in slightly different procedural postures in no way
undermines commonality. *See, e.g. Marisol A.*, 126 F.3d at 376 (certifying a class even though some members had
claims that were time barred by an applicable statute of limitations); *Perez-Olano v. Gonzalez*, No. CV 05-03604 DDP
(RZx), U.S. Dist. LEXIS 85675, at *39 (C.D. Cal. Jan. 8, 2008) (certifying two subclasses of juveniles based on the
shared specific injury of the loss of SIJS eligibility).

rather than evaluating each AAO appeal or individual APA action separately. *See Sykes*, 780 F.3d at 80.

The injunctive relief sought would require USCIS to return to the status quo and would provide identical relief to all members of the class; thus, the commonality requirement is satisfied.

## III.   TYPICALITY IS SATISFIED BECAUSE THE NAMED PLAINTIFFS' CLAIMS ARISE FROM THE SAME USCIS POLICY FACED BY THE PROPOSED CLASS

The Proposed Class also satisfies the typicality requirement because "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). A proposed class satisfies Rule 23(a)(3) if "each member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux*, 987 F.2d at 936-37; *see also N.J. Carpenters Health Fund v. Residential Capital, LLC*, 272 F.R.D. 160, 165 (S.D.N.Y. 2011) ("Courts in [the Second Circuit] have held that the typicality requirement is not demanding.").

There is no need for the claims of the named plaintiffs to be identical, as long as they arise from the same practice or course of conduct that gave rise to the claims of the proposed class. *See Marisol A.*, 126 F.3d at 376-77; *Robidoux,* 987 F.2d at 936-37 ("[T]he typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.")*; Wilder v. Bernstein*, 499 F. Supp. 980, 992 (S.D.N.Y. 1980); *In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 123 (S.D.N.Y. 2001). For the same reasons that the Named Plaintiffs satisfy the commonality requirement, they also meet the typicality requirement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (noting that the typicality, adequacy, and commonality requirements "tend[] to merge"). Additionally, where a class seeks injunctive relief, this favors a finding that the claims of the named plaintiffs are typical of the class. *See Jane B. v. New York City Dep't of Soc. Servs.*, 117 F.R.D. 64, 70 (S.D.N.Y. 1987).

The Proposed Class easily satisfies the typicality requirement. *First*, the Named Plaintiffs, and all members of the Proposed Class, have lost their opportunity to qualify for SIJS under USCIS's arbitrary and capricious new policy. USCIS cites the same reasons—the Family Court's lack of jurisdiction or the Family Court's lack of authority to make a legal determination regarding reunification—for depriving the Proposed Class members of the opportunity to qualify for SIJS. Ex. 6, Decl. of Beth Krause at ¶ 15; Ex. 7, Decl. of Eve Stotland at ¶ 11; *see also* Ex. 3 Appendix C, USCIS Denial of S.W.'s Application for SIJS at 3 (denying Plaintiff's application for SIJS in part "[b]ecause [she] was eighteen, [she] did not provide an order from a juvenile court…declar[ing her] dependent on a juvenile court"); Ex. 4 Appendix C, USCIS Denial of D.A.F.A.'s Application for SIJS at 3 (denying Plaintiff's application for SIJS in part "[b]ecause [he] was over eighteen, [he] did not provide an order from a juvenile court making a custody and care determination for a juvenile"). *Second*, the harms suffered by the Named Plaintiffs are typical of the harms suffered by all members of the Proposed Class, including the loss of educational and employment opportunities, as well as eligibility for certain state and federal programs and other financial benefits. But for USICS's new policy, Plaintiff R.F.M., for example, would have obtained work authorization and had the opportunity to support her family through the financial security of legal employment. Ex. 1, Decl. of R.F.M. at ¶ 26. Plaintiff T.D. would have applied for a scholarship or financial aid and had the opportunity to attend college. Ex. 2, Decl. of T.D. at ¶¶ 36, 38. Plaintiff S.W. would have applied for loans to allow her to attend college full-time, obtained health insurance, and obtained full time employment. Ex. 3, Decl. of S.W. at ¶¶ 26–30. These benefits and protections are stripped from every member of the Proposed Class, and every member of the Proposed Class is adversely affected in the same manner. Worse, USICS's arbitrary and capricious change in policy threatens the entire Proposed Class with removal, including the

Named Plaintiffs.  All the Named Plaintiffs fear being returned to countries where they would be separated from their family members or guardians in the U.S.  Ex. 1, Decl. of R.F.M. at ¶ 27; Ex. 2, Decl. of T.D. at ¶¶ 34–35; Ex. 3, Decl. of S.W. at ¶ 31; Ex. 4, Decl. of D.A.F.A. at ¶¶ 37–40. *Third*, the theories under which the Named Plaintiffs seek declaratory and injunctive relief are the same as those upon which all members of the Proposed Class will advance.  *See generally* Prelim. Inj. Mem.

Where, as here, the interests of the Proposed Class are squarely aligned with those of the Named Plaintiffs, minor or immaterial differences in individual circumstances cannot defeat 23(a)(3) typicality.  The claims of the Named Plaintiffs "arise from the same conduct as those of the proposed members of the class, their claims are premised on the same legal bases, and their interests are not adverse to the interests of the other class members."  *Mayer v. Wing*, 922 F. Supp. 902, 908 (S.D.N.Y. 1996).  Thus, the Named Plaintiffs and members of the Proposed Class are aggrieved in substantially the same way by USCIS's unlawful action.

## IV.     LATHAM & WATKINS LLP AND THE LEGAL AID SOCIETY ARE EXCEPTIONALLY QUALIFIED TO REPRESENT THE PROPOSED CLASS AND NO CONFLICT OF INTEREST EXISTS AMONG THE CLASS MEMBERS

The Proposed Class satisfies the final requirement of Rule 23(a), which requires that the representative parties of a class be able to "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). To satisfy this requirement, first the Court must determine whether counsel is qualified, experienced and generally able to conduct the litigation.  *See In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992).  Second, the court must find there is no conflict of interest among the class members.  *See id.*  Minor or speculative conflicts alone will not bar class certification; rather, a conflict must be "fundamental" to the representation.  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).  As mentioned above, this requirement

"tends to merge" with the inquiry into commonality and typicality.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997).

The Named Plaintiffs have retained counsel more than adequate to represent the Proposed Class.  The Named Plaintiffs are represented by attorneys at The Legal Aid Society of New York and Latham & Watkins LLP.  The counsel involved are experienced in litigating complex civil rights matters and class actions.  Decl. of Robert Malionek at ¶ 17.

Given the harm they face, the Named Plaintiffs are highly motivated to pursue this action vigorously.  *See* Ex. 1, Decl. of R.F.M.; Ex. 2, Decl. of  T.D.; Ex. 3, Decl. of S.W.; Ex. 4, Decl. of D.A.F.A.  The Named Plaintiffs seek the same remedies as the Proposed Class through injunctive relief.  All of the members of the Proposed Class have a shared interest in enjoining USCIS's recent policy change.  No actual or potential conflict exists between the Named Plaintiffs and the putative members of the Proposed Class.  Ex. 1, Decl. of R.F.M. at ¶¶ 30–35; Ex. 2, Decl. of T.D. at ¶¶ 41–46; Ex. 3, Decl. of  S.W. at ¶¶ 32–38; Ex. 4, Decl. of D.A.F.A. at ¶¶ 41–46.

## V.      CLASS CERTIFICATION IS APPROPRIATE UNDER RULE 23(B)(2) BECAUSE NAMED PLAINTIFFS SEEK FINAL INJUNCTIVE AND DECLARATORY RELIEF

Finally, the Proposed Class satisfies the requirements of Rule 23(b)(2), which states that certification is proper when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2);[11] *see, e.g., Brown v. Kelly*,

---

[11] The Federal Rules of Civil Procedure also permit class certification in two other contexts.  Courts may certify a class if "prosecuting separate actions by or against individual class members would create: (A) inconsistent or varying adjudications…that would establish incompatible standards of conduct… or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." FED. R. CIV. P. 23(b)(1).  Courts may also certify a class if "the court find that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

609 F.3d 467, 476 (2d Cir. 2010) (summarizing requirements of Rule 23(b)(2) for a class seeking a preliminary injunction); *Parker v. Time Warner Entertainment Co.*, 331 F.3d 13, 18-19 (2d Cir. 2003) (same). Class certification under Rule 23(b)(2) is appropriate where "broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury." *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 433 (S.D.N.Y. 2009) (internal citations omitted).

Courts have routinely certified Rule 23(b)(2) classes in suits, such as this one, where plaintiffs challenge agency action—including changes in immigration policy—as arbitrary and capricious. *See, e.g., Rojas v. Johnson*, No. 16-1024RSM, 2017 WL 1397749, at *7 (W.D. Wash. June 30, 2016) (certifying a nationwide class of current and future asylum seekers who would be subjected to a DHS vetting policy); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 183 (D.D.C. 2015) (granting provisional certification of nationwide class of Central American asylum seekers who were or will have been denied release from detention due to a newly adopted DHS policy); *Santillan v. Ashcroft*, No. 04-2686, 2004 WL 2297990, at *12 (N.D. Cal. Oct. 12, 2004) (certifying nationwide class of persons who have been or will be granted lawful permanent resident status and to whom USCIS has failed to issue evidence of status as a lawful permanent resident); *see also Kirwa v. U.S. Dep't of Defense*, No. 17–1793, 2017 WL 4862763, at *16 (D.D.C. Oct. 25, 2017) (certifying nationwide class of noncitizen members of the Army reserve seeking a preliminary injunction after being arbitrarily denied access to naturalization forms by the military); *Kaplan v. Chertoff*, No. 06-5304, 2008 WL 200108, at *1 (E.D. Pa. Jan. 24, 2008) (conditionally certifying for settlement a nationwide class of individuals who had lost or will have lost their social security benefits because of unreasonable USCIS delays in processing naturalization or adjustment of status applications).

Rule 23(b)(2) was enacted in large part to provide an avenue for citizens to challenge discriminatory action by government officials and private parties under the then-newly enacted civil rights statutes. *See* FED. R. CIV. P. 23(b)(2) advisory committee's note to 1966 amendment. Accordingly, Congress intended potential litigants seeking institutional reform through injunctive relief to rely on Rule 23(b)(2). *See* 1 H. Newberg, Newberg on Class Actions § 4.11, at 291 (2d ed. 1985). That continues today, as litigants have used Rule 23(b)(2) to certify classes challenging other forms of governmental action, including improper immigration-related actions. *See, e.g., Nio v. U.S. Dep't. of Homeland Security,* 323 F.R.D. 28, 34 (D.C. 2017) (certifying class under Rule 23(b)(2) where plaintiffs sought injunctive relief against a decision by the USCIS to hold applications pending the outcome of Department of Defense screening); *Gayle v. Warden Monmouth County Correctional Institution*, 838 F.3d 297, 311 (3d Cir. 2016) (noting that 23(b)(2) was "designed specifically for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons"); *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) (vacating denial of 23(b)(2) certification of class of aliens alleging constitutional violations stemming from their detention by ICE).

USCIS's arbitrary and capricious refusal to recognize the authority of Family Courts affects all members of the Proposed Class in the same manner:  Class members have been wrongfully deprived of SIJS and have been immediately and irreparably harmed as a result. *See* Prelim. Inj. Mem. at 15–17.  Given that the Named Plaintiffs will be moving to enjoin a government policy with widespread application, certification under Rule 23(b)(2) is appropriate and in accord with case law. *See, e.g., Floyd v. City of New York,* 283 F.R.D. 153, 172 (S.D.N.Y. 2012); *Rojas v. Johnson*, No. 16-1024RSM, 2017 WL 1397749, at *7 (W.D. Wash. June 30, 2016); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 183 (D.D.C. 2015); *Santillan v. Ashcroft*, No. 04-

2686, 2004 WL 2297990, at *12 (N.D. Cal. Oct. 12, 2004); *see also Kirwa v. U.S. Dep't of Defense*, No. 17–1793, 2017 WL 4862763, at *16 (D.D.C. Oct. 25, 2017); *Kaplan v. Chertoff*, No. 06-5304, 2008 WL 200108, at *1 (E.D. Pa. Jan. 24, 2008).  With a Rule 23(b)(2) class, the Named Plaintiffs will be able to seek a declaration from the court that the new USCIS policy is unlawful and request an injunction forcing the USCIS to return to the status quo ante.

## CONCLUSION

For the foregoing reasons, the Named Plaintiffs respectfully request that this Court: (i) certify this action to proceed as a class action pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure; (ii) appoint Named Plaintiffs to serve as the Class Representatives; (iii) appoint Latham & Watkins, LLP and The Legal Aid Society of New York as Class Counsel pursuant to Rule 23(g); and (iv) grant such other and further relief as the Court deems just and proper.

Dated:  June 7, 2018
        New York, New York                    Respectfully submitted,

                                             /s/ Robert J. Malionek
                                             Robert J. Malionek
                                             Nicholas L. McQuaid
                                             Virginia F. Tent
                                             Alexander R. DeLisi
                                             LATHAM & WATKINS LLP
                                             885 Third Avenue
                                             New York, NY 10022
                                             Tel: (212) 906-1200
                                             Robert.Malionek@lw.com
                                             Nicholas.McQuaid@lw.com
                                             Virginia.Tent@lw.com
                                             Alexander.DeLisi@lw.com

                                             Seymour James
                                             Adriene Holder
                                             Hasan Shafiqullah
                                             Judith Goldiner
                                             Lisa Freeman
                                             Beth Krause (*pro hac vice* forthcoming)
                                             Jennifer Levy
                                             Julie Dona
                                             Theresa B. Moser
                                             THE LEGAL AID SOCIETY
                                             199 Water Street, 3rd Floor
                                             New York, NY 10038
                                             (212) 577-3536
                                             JLevy@legal-aid.org

                                             *Attorneys for Plaintiffs*