# EXHIBIT B

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    JEFFERSON RANDOLFO FLORES
     ZABALETA,
4
                    Petitioner,
5
                    v.                        17 Civ. 7512 (JGK)
6
     ELAINE DUKE, Acting Secretary
7    of the Department of Homeland
     Security, et al.,
8                                             Conference
                    Respondents.
9
     ------------------------------x
10
     JEFFERSON RANDOLFO FLORES
11   ZABALETA,

12                  Petitioner,

13                  v.                        18 Civ. 1802 (JGK)

14   DIRECTOR THOMAS DECKER, in
     His official capacity as
15   Field Office Director,
     New York City Field Office,
16   U.S. Immigration & Customs
     Enforcement, et al.,
17
                    Respondents.
18   ------------------------------x

19   R.F.M., on behalf of himself
     And all others similarly
20   Situated, et al.,

21                  Plaintiffs,

22                  v.                        18 Civ. 5068 (JGK)

23   KIRSTJEN NIELSEN, as Secretary
     Of the Department of Homeland
24   Security, et al.,

25                  Defendants.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

                                            New York, N.Y.

                                            June 26, 2018
                                            4:05 p.m.

Before:

                        HON. JOHN G. KOELTL,

                                            District Judge


                              APPEARANCES

SCOTT FOLETTA
ANGELO GUISADO
     Attorneys for Petitioner Zabaleta

JULIE DONA
THERESA MOSER
JENNIFER LEVY
     Attorneys for Petitioner and R.F.M. Plaintiffs

LATHAM & WATKINS, LLP
     Attorneys for R.F.M. Plaintiffs
BY:   ROBERT J. MALIONEK
      NICHOLAS LLOYD McQUAID

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
KIRTI REDDY
TOMOKO ONOZAWA
BRANDON WATERMAN
     Assistant United States Attorneys

 1              (Case called)

 2              MR. FOLETTA:  Scott Foletta of Make the Road New York

 3    for petitioner in Zabaleta v. Nielsen and Zabaleta v. Decker.

 4              MR. GUISADO:  Angelo Guisado, Center for

 5    Constitutional Rights, counsel for petitioner in Zabaleta v.

 6    Nielsen.

 7              MS. DONA:  Julie Dona with the Legal Aid Society,

 8    counsel for plaintiffs/petitioner in Zabaleta v. Duke and

 9    R.F.M. v. Nielsen.

10              MS. MOSER:  The Legal Aid Society, by Theresa Moser,

11    counsel for the petitioner in Zabaleta v. Duke and the putative

12    class in R.F.M. v. Nielsen.

13              MS. LEVY:  Jennifer Levy of the Legal Aid Society.

14    I'm counsel for the petitioner in Zabaleta v. Duke and the

15    putative class in R.F.M. v. Nielsen.

16              MR. MALIONEK:  Good afternoon, your Honor, Robert

17    Malionek of Latham Watkins on behalf of the lead plaintiffs and

18    the putative class members in R.F.M.

19              MR. McQUAID:  Good afternoon, your Honor, Nick McQuaid

20    of Latham & Watkins for the putative class and the lead

21    plaintiffs in R.F.M.

22              MS. REDDY:  Good afternoon, your Honor, Kirti Reddy

23    for the United States Attorney's Office on behalf of Zabaleta

24    v. Nielsen and R.F.M. v. Nielsen.

25              MS. ONOZAWA:  Tomoko Onozawa of the U.S. Attorney's

1    office on behalf of the defendants in R.F.M.

2           MR. WATERMAN:  Brandon Waterman, Assistant U.S.

3    Attorney, on behalf of the government in Zabaleta v. Decker.

4           THE COURT:  Let me begin with a disclosure.  I have a

5    niece who is a nonequity, nonshare partner in Latham.  It is a

6    situation I bring to the parties' attention but it's not a

7    disqualification.  She is a nonshare partner who works in

8    litigation in Washington.  There is nothing about that that

9    affects anything that I do, and I'm confident she would not

10   work on any cases in which I'm involved.

11          The situation in Zabaleta is fairly clear.  Usually,

12   for my first meeting with the parties I ask them to describe

13   for me very briefly what the case is about.  I have a

14   reasonable understanding from all of your correspondence, but

15   why doesn't the plaintiff in Zabaleta explain to me very

16   briefly and then the government in Zabaleta, and the plaintiffs

17   in R.F.M. and the government briefly.

18          MR. FOLETTA:  Certainly, your Honor.  And as counsel

19   in both of the actions involving Mr. Flores Zabaleta I can

20   briefly touch on both of those cases.

21          THE COURT:  Fine.

22          MR. FOLETTA:  Your Honor, our client, Jefferson Flores

23   Zabaleta, is a young man from Guatemala who has spent much of

24   the last year in immigration detention separated from his

25   close-knit family in Suffolk County, despite the fact that he

1   is clearly statutorily eligible for Special Immigrant Juvenile

2   status.

3         Jefferson has been caught up in two of the

4   government's most high-profile schemes for deporting young

5   immigrants:  One, a reversal of a decade of agency practice as

6   to the eligibility for special American juvenile status for

7   those between ages 18 and 21, which is also the subject of the

8   class action litigation, and the other issue is a pattern of

9   unsupported gang allegations which never need to be proven once

10  the person is put into the deportation pipeline.

11        Like many young people from Central America, our

12  client has been accused of being a gang member, a member of the

13  very gang that has threatened his life, shot at his home, and

14  has cost his probation officer to warn him that he is marked

15  for murder.  The USCIS has not provided evidence to back this

16  portion of their denial of his petition and has failed to fully

17  consider ample evidence that he has provided to rebut, and the

18  procedural irregularities there violate not just an agency's

19  own regulations, but the Administrative Procedure Act and the

20  due process clause.

21        Mr. Flores Zabaleta is eligible for Special Immigrant

22  Juvenile status as a young man whose father abandoned him from

23  a very young age and, yet, the USCIS' denial of his petition

24  has put him in a very precarious position.  Particularly

25  because he is detained, he is in fast-track removal

1    proceedings, and as of two weeks ago the immigration judge in

2    this case set him down for a final hearing on September 17, at

3    which he must present all of his eligibility for relief.  If

4    this issue is not resolved before then, he will be unable to

5    present his eligibility for Special Immigrant Juvenile status

6    and may be irreparably harmed.  While our client is in jail,

7    the government's deadline to answer the complaint has come and

8    gone, and that is the reason why we are opposing an extension

9    to that deadline at this time.

10              His detention also relates to the habeas matter.

11              THE COURT:  You say it also relates to the habeas

12    matter.  Your claim is a habeas claim, isn't it?

13              MR. FOLETTA:  We have two pieces of litigation

14    pending.  Zabaleta v. Decker is a habeas claim, but the other

15    action is an Administrative Procedure Act/due process clause

16    that challenged the denial of his petition.

17              THE COURT:  The number of that is?

18              MR. FOLETTA:  17 Civ. 7512.

19              THE COURT:  In the habeas matter you have asked for

20    the opportunity to amend your petition, right?

21              MR. FOLETTA:  Yes, your Honor.

22              THE COURT:  So the government's time to respond would

23    only begin after you had filed your amended habeas petition.

24              MR. FOLETTA:  My apologies, your Honor.  My reference

25    to the government's response deadline is in reference to 17

IGOMZABG8

7

1   Civ. 7512.  That's the litigation about our client's SIJ

2   petition that was denied by USCIS.

3            THE COURT:  I'm sorry?  You went a little fast there.

4            MR. FOLETTA:  The government's answer deadline is not

5   in the habeas case.  It is in his litigation challenging the

6   denial of his Special Immigrant Juvenile status petition.

7            To speak briefly to the request to amend the complaint

8   in the petition, since the filing of the habeas petition there

9   has been a bond hearing.  Unfortunately, it has not resolved

10  the legal and constitutional issues with our client's

11  detention.  And so we are requesting to amend the petition to

12  include the facts of the bond hearing and three resulting legal

13  issues:  First, our client was redetained --

14            THE COURT:  I'm sorry.  One moment, please.  Go ahead.

15            MR. FOLETTA:  The first issue is that our client was

16  redetained and his bond summarily revoked by ICE despite the

17  fact that he had been ordered released by an immigration judge

18  about three months prior.  According to the agency's own

19  precedent and basic notions of due process and separation of

20  powers, when the agency wants to revoke a judge's bond order,

21  it must establish a changed circumstance, a materially changed

22  circumstance.

23            The immigration judge failed to hold the government to

24  that burden and found that our client had violated the terms of

25  the conditions of his bond without any evidence that any such

1   bond conditions existed.

2          The second issue with that determination was that the

3   judge found that our client was a danger to the community based

4   solely on one conviction for driving a vehicle without a

5   license, which our position is doesn't even approach the

6   minimum level of dangerousness sufficient to detain a person in

7   civil detention for purely preventive purposes.

8          The third issue is that the immigration judge failed

9   to apply the law of the case doctrine, which is a doctrine that

10  simply states that judges should not disturb the findings of

11  prior judges on the same issue.

12         And the immigration judge in this case reassessed our

13  client's flight risk and eligibility for relief as if de novo

14  despite the fact that had already been litigated by another

15  immigration judge three months prior.

16         Instead of appealing that issue, which the government

17  did not do, they simply redetained him and somehow claimed that

18  that gives them another bite at the apple.

19         THE COURT:  You said, I thought, that you also wanted

20  to address R.F.M., or was I wrong?

21         MR. MALIONEK:  Your Honor, if we could address R.F.M.

22  We are counsel in that case.  We, along with the Legal Aid

23  Society, represent four plaintiffs on behalf of a putative

24  class.  Mr. Flores Zabaleta would be a member of the putative

25  class.  These are young immigrants who are challenging USCIS'

1    recent change in policy denying Special Immigrant Juvenile

2    status, or we call it SIJ.

3           For those who are basing their petitions for SIJ on an

4    underlying special findings order issued by the New York Family

5    Court that was entered between their ages of 18 and 21, our

6    complaint challenges that policy change as a violation of the

7    APA.  It's arbitrary and capricious.  It's contrary to both New

8    York State law and federal immigration law.

9           And just briefly on the background for that APA

10   challenge, your Honor, in short, for many years USCIS

11   recognized that the New York Family Court had the authority and

12   the jurisdiction to enter these kinds of special findings

13   orders for those young immigrants who are in this class who are

14   applying for SIJ status between the ages of 18 and 21 and that

15   the Court, the New York Family Court, has the specific

16   authority to enter the kinds of findings that underlie a

17   petition for SIJ; for example, that they are under 21, that

18   they are unmarried, that reunification with parent as a factual

19   matter is not viable because of abuse, neglect, or abandonment.

20   Also, that it is not in their best interests to be returned to

21   their home country in connection with that New York Family

22   Court entering an order, for example, of guardianship with

23   respect to the petitioner between the ages of 18 and 21.

24          Once the petitioner obtains SIJ status, they can seek

25   to obtain a SIJ visa and they have all the benefits that come

1   with that.  For example, they can get jobs, they can get a

2   driver's license, health care, etc., but they also have removed

3   bases for deportation.  So those are the various benefits of

4   having a SIJ visa.

5           Now, suddenly, over the recent months and last year or

6   two, the USCIS has changed their position.  They, all of a

7   sudden, now have systematically been denying or issuing notices

8   of intent to deny with respect to those in this class on the

9   basis that the New York Family Court that had been recognized

10   for so long as having the authority and jurisdiction to enter

11   these orders no longer does.  There has been no change in

12   federal law, there has been no change in state law.  This is

13   inconsistent with USCIS's own policies and published precedent

14   on this.  Nevertheless, this is what we have been seeing as a

15   pattern.  It's been systematic across the board.

16           This certainly places these young immigrants in danger

17   of irreparable harm and so, your Honor, we have filed a motion

18   for class certification, a motion for preliminary injunction,

19   and we have also filed a motion to proceed based on initials,

20   and we have had discussions with the defendant's counsel with

21   respect to that particular issue.  We have said that we would

22   provide the names and the A numbers of the lead plaintiffs

23   under a simple protective order which we offered to enter into.

24           Because Mr. Flores Zabaleta is a putative class member

25   and because the issues overlap, we applied to have this case

1  marked as related and, your Honor, you granted that.

2         We became concerned with the status conference coming

3  up that the government had asked in the Zabaleta case for a

4  60-day extension because, as they say, they needed more time to

5  be able to analyze the policies underlying the SIJ issues.  We

6  filed our preliminary injunction motion and the class

7  certification motion, the other motions on June 7.  Their

8  oppositions would be due tomorrow.  They were served on June

9  13.

10         But we became concerned that the government would be

11 asking for an extension as to the briefing in the R.F.M. case

12 as well, so we wanted to come before your Honor to talk about

13 that.

14         And we do think that there are ways to be able to give

15 the government more time than it says it needs, so long as we

16 can avoid what we think would be the irreparable harm to the

17 lead plaintiffs, to Mr. Flores Zabaleta, and to the putative

18 class members, in particular, who are in removal proceedings.

19         THE COURT:  Ms. Reddy.

20         MS. REDDY:  Good afternoon, your Honor.

21         THE COURT:  Good afternoon.

22         MS. REDDY:  This case was initially scheduled before

23 your Honor because --

24         THE COURT:  Could you keep your voice up.

25         MS. REDDY:  -- because the government had filed a

1    motion to extend its time to respond to the Zabaleta mandamus

2    action which had then become an action challenging the agency's

3    decision.

4            THE COURT:  That was 17 Civ. 7512.

5            MS. REDDY:  That's correct, your Honor.  Which is now

6    an action challenging the agency's decision denying Special

7    Immigrant Juvenile status to Mr. Zabaleta.  That is an APA

8    action.

9            As your Honor may recall, this case, 17 7512, was

10   actually filed in October 2017, based on allegations of a delay

11   by the agency in issuing a decision on his application.  That

12   decision was issued in December of 2017.

13           More than four months passed, actually, until April

14   13, 2018, when Zabaleta's counsel actually filed the

15   supplemental complaint.  So more than four months had passed

16   from the time they received a decision from the agency and

17   filed their supplemental complaint.  To the extent they are now

18   claiming an urgency, it's a bit overstated.  They are

19   suggesting that the government's request for 60 days may be

20   unreasonable because Mr. Zabaleta is in removal proceedings,

21   and he has a hearing scheduled for September 2018, which is

22   correct.

23           However, your Honor, that is a hearing before an

24   immigration judge on the merits of an application for relief

25   from removal.  That theoretically could be granted, in which

1    case this action would become moot.  But, in addition to that,

2    that order does not immediately mean that Mr. Zabaleta would be

3    removed from the United States, and thereafter he would be

4    ineligible for a Special Immigrant Juvenile status, which is

5    the leap that they are making without basis.

6              Now, after an immigration judge makes a decision,

7    Mr. Zabaleta has a right to appeal that decision before the

8    Board of Immigration Appeals and that decision and process

9    could take up to two months or approximately two months.

10    Thereafter, if his ordered removal is sustained, then he can

11    file a petition for review before the Second Circuit Court of

12    Appeals, and that process could take another six months to two

13    years.

14              During this entire period of time he can also seek a

15    stay of removal.  To the extent they are basing the denial of

16    this request for an extension of time and request that the

17    Court issue a decision in the Zabaleta case before September

18    17, 2018 is overstated.

19              I also note that --

20              THE COURT:  There is a difference between overstated

21    and won't be removed, right?  I'm certainly prepared to accept

22    government representations that this person is not going to be

23    removed, that the hearing in September, even though the

24    plaintiff says if this has suddenly has been fast-tracked and

25    moved to a facility where the person can be spirited away

1    promptly.  You tell me that's not going to happen.  And there

2    are a series of steps leading up to the possibility of an

3    appeal to the Second Circuit.

4         My understanding has been that the Second Circuit

5    actually has an agreement that if there is an immigration case

6    before the Second Circuit, the person will not be removed until

7    the Second Circuit has an opportunity to decide it.  The

8    government has told me in at least one other case, yes, yes,

9    but that's an agreement with the Second Circuit, not with you,

10   as a district court judge.  OK.

11        But if the government tells me that this person is not

12   going to be removed, while you are deciding this case, it is

13   just not going to happen, then I can reasonably adjust the

14   schedule for both sides to establish a reasonable schedule to

15   deal with the important issues that both sides point out.

16        I pause there because the way in which you laid out

17   the time frame initially had given me confidence that the

18   plaintiff is not going to be removed for a considerable period

19   of time and certainly for a considerable period of time after

20   the September hearing.  But that was a little different from

21   when you told me that the defendants' or the plaintiffs'

22   concern about the September hearing is "overstated."

23        MS. REDDY:  Understood, your Honor.  September 17,

24   2018 is definitely a date that is scheduled in immigration

25   court for a hearing.  There is no guarantee that the

1    immigration judge will render a decision on that date, or if

2    the judge issues a decision that the judge will order him

3    removed.

4              THE COURT:  It's possible the judge can order Zabaleta

5    removed at the September hearing.

6              MS. REDDY:  Correct.  And to the extent your Honor is

7    concerned about Mr. Zabaleta getting removed, perhaps we could

8    revisit this issue if Mr. Zabaleta is issued an order of

9    removal and if he requests a stay of removal and that order is

10   denied.  But at this juncture that has not yet happened.

11             THE COURT:  That doesn't give us much time, though,

12   does it?

13             MS. REDDY:  Correct, your Honor.  But his order is not

14   final simply upon the immigration judge issuing a decision.

15   The order would become final -- if he filed an appeal to the

16   board and to the Second Circuit, the order would be a nonfinal

17   decision.

18             THE COURT:  The question becomes whether if the

19   immigration judge issues the order of removal, the immigration

20   authorities could then remove him from the United States, even

21   if he filed an appeal.  If no stay was granted -- the whole

22   scenario that the plaintiff points out to me or argues in their

23   papers is, he has been moved to a facility such that if in

24   September there is an adverse decision against him, he can be

25   whisked away.

1        And that leads to a question.  You say there are all

2    these opportunities.  But if the opportunities depend upon his

3    successfully getting a stay from either the immigration

4    authorities or some court, that's a problematic situation to me

5    because I have no idea whether the immigration authorities

6    would stay the removal.

7        The plaintiffs' attempt, rightly or wrongly, to

8    portray a situation in which the immigration authorities are

9    preparing to remove him immediately by placing him in a

10   facility which is the final facility from which he would be

11   removed.  The plaintiffs' attempt to portray a situation in

12   which the immigration authorities have made all of the

13   necessary preparations to remove him from the United States and

14   the only thing remaining is the final decision or the decision

15   in September.  And I don't want to place all of us in the

16   position of, come September, unless this case is decided, there

17   may be an adverse decision from the immigration judge and he

18   will be immediately, without an opportunity for further review,

19   removed.

20       Let me add one other fact.  When the issue has come up

21   before, and I have been concerned over a similar situation,

22   easy enough.  I've said the government can give me assurance

23   that he will not be removed until I make the decision or the

24   government can respond promptly to these papers so that I can

25   make my decision in confidence that I'm not prejudicing any

1   party's rights.

2          Then when I give the government 10 days to respond, lo

3   and behold, I get a letter that indicates that after

4   consultation the government is prepared to say that the person

5   won't be removed until I make a decision.  But I can't leave

6   all of that up in the air.

7          MS. REDDY:  Your Honor, I think to better respond to

8   your Honor's concerns, my client, Brandon Waterman will discuss

9   his detention and removability issues.

10         THE COURT:  OK.

11         MR. WATERMAN:  Your Honor, if I may just clarify, the

12  argument or the hearing on September 17, 2018 is a merits

13  hearing on Zabaleta's application for relief from removal.  If

14  the immigration judge orders Zabaleta removed on that date and

15  denies his application, that is a nonfinal order and ICE cannot

16  remove Zabaleta on that date unless Mr. Zabaleta waives appeal

17  and accepts that as final.  If he waives appeal, he no longer

18  has any appellate remedies either at the Board of Immigration

19  Appeals or the Second Circuit, and then ICE may permissibly

20  remove him.

21         He has 30 days to file an appeal from any immigration

22  judge's order, and after he does so he cannot be removed during

23  the pendency of that order Board of Immigration Appeals appeal,

24  which could take any number of months.  I believe, briefing is

25  usually set a few weeks or a month after an appeal is filed,

1   and then it could take -- I believe the Board of Immigration

2   Appeals' goal is to resolve those within 90 days.  The appeal

3   could likely take up to five months, four to five months to be

4   resolved.

5          Then after that, Mr. Zabaleta can take a petition for

6   review to the Second Circuit, which could take any number of

7   months up to a year.

8          Your Honor, I think the possibility that he would ever

9   be removed in September or very soon after that is very

10  unlikely unless Mr. Zabaleta waives appeal and accepts a final

11  removal order.

12         MR. FOLETTA:  If I may.

13         THE COURT:  No.  Hold on.

14         There is a difference between he cannot be removed and

15  it's unlikely he would be removed.  If the only obstacle to the

16  government telling me that he cannot be removed as a result of

17  the September hearing is if Mr. Zabaleta waives his right to

18  appeal, I will accept that if that's the government's

19  representation to me.  He cannot be removed unless he waives

20  his right to appeal.  If the immigration judge says he can be

21  removed, that's not a final order, he cannot be removed without

22  the opportunity to appeal.  He has 30 days to appeal.  If he

23  appeals, the appeal has to be decided, and he cannot be removed

24  until the appeal is decided.  It does not depend upon his

25  ability to get a stay of removal.  He, by law, cannot be

1    removed while the appeal is pending.  That's not quite the same

2    as I have heard in some other cases.  If that's the

3    government's representation -- is it?  Why would you ever need

4    a stay pending appeal?

5          MR. WATERMAN:  Are you referring to the Board of

6    Immigration Appeals, your Honor, or at the Second Circuit?

7          THE COURT:  Either.

8          MR. WATERMAN:  At the Board of Immigration Appeals the

9    removal order has not yet been final, so ICE cannot remove an

10   alien until the alien receives a final removal order.

11         THE COURT:  From the BIA.

12         MR. WATERMAN:  Correct.  Once the BIA dismisses the

13   appeal, the order becomes final.  At that point it becomes an

14   executable removal order, which is why an alien has to file a

15   petition for review to the Second Circuit.  He may file a

16   motion to stay removal, at which point the Second Circuit's

17   forbearance policy kicks in.

18         THE COURT:  But it's not necessary to file a motion

19   for a stay before the BIA.

20         MR. WATERMAN:  I don't believe so, your Honor, not for

21   a direct appeal from a removal order.  If an alien has a

22   removal order and seeks to reopen his proceedings, then, yes,

23   in that situation --

24         THE COURT:  I'm sorry.  If the alien had what?

25         MR. WATERMAN:  If the alien has a final removal order

1   from the BIA and wishes to reopen those proceedings, and he

2   files a motion to reopen at the BIA, that motion must be

3   accompanied by a motion for a stay of removal.  That is not the

4   situation here.

5          The situation here, we are in the initial proceedings

6   where the alien is scheduled for a merits hearing with the

7   immigration judge in September, and any order at that point

8   would be a nonfinal order and ICE would not be permitted to

9   execute that removal order until after the BIA dismisses the

10  appeal or the time period to appeal has expired.

11         As far as I understand it, and I understand that that

12  caveat may concern your Honor, but I'm pretty certain that you

13  do not need to seek a stay of removal during that direct

14  appeal.  Petitioner's counsel could clarify that as well.

15         THE COURT:  You all can check on these things so that

16  the caveats are removed.

17         I'll certainly listen to the petitioner on this, but I

18  would expect that whatever schedule that I set out is dependent

19  upon an ironclad representation by the government checking the

20  law that assures me that the schedule that I set out in order

21  to let the parties fairly argue the issues and give me time to

22  fairly decide them is not going to prejudice either side.

23         So the letter from the government will make the

24  representations that are necessary based on the law that he

25  cannot be removed from the United States after the September

1    hearing.  He has 30 days in which to file an appeal.

2        And if he files an appeal, he cannot be removed until

3    that appeal is decided by the BIA.  The shortest time that the

4    BIA can decide this is probably two months, and as long as five

5    months, and then there are the discretionary stays pending an

6    appeal to the Second Circuit, but I believe the immigration

7    authorities have made the representation to the Court of

8    Appeals that they would not remove someone who has a pending

9    proceeding before the Court of Appeals.

10       Plaintiff.

11       MR. FOLETTA:  Thank you, your Honor.

12       Briefly to the suggestion that our client has waited

13   too long between the time period in which its petition was

14   denied and the time in which we filed for APA review, the point

15   that has made his proceeding so time sensitive was his

16   detention in March, and that detention makes every stage of his

17   proceedings expedited, including each stage of appeal.

18       Upon a final order from the immigration judge he may

19   appeal and that would trigger an automatic stay, presuming

20   there is an appealable issue, but the proceedings will be

21   expedited.  The appeal will be expedited and can be affirmed by

22   a single judge in the summary order.  And if there is an

23   appealable issue there for petition review for the Second

24   Circuit --

25       THE COURT:  I assume you think there is a substantive

1  issue or else you wouldn't be before me, right?

2         MR. FOLETTA:  I couldn't presume what the final order

3  of the immigration judge will say.  But even in a circumstance

4  of appealing on petition review to the circuit, the provision

5  that the person will not be removed is only while a stay is

6  pending.  If the circuit denies a stay, then that person can

7  then be removed, even during the pendency of that appeal.

8         THE COURT:  Based upon what you've told me and what

9  the government has told me, there will be the hearing in

10  September.  There is 30 days to file after a decision.  Even if

11  it's decided in September, there is a 30 days to appeal.  And

12  then there is the pendency of the appeal in the BIA.  That

13  takes us at least into October, end of October, November.  Even

14  if the appeal is decided promptly, right?

15         MR. FOLETTA:  I think that's accurate, your Honor.

16         THE COURT:  Plainly, what I would like the parties to

17  do is to give me a reasonable schedule as prompt as the

18  plaintiff believes is necessary and the government believes is

19  necessary for a fair response so that I can decide the issues,

20  and then the question is, what is that reasonable schedule?

21  There are at least two issues, right?  One is the plaintiff

22  wants an opportunity to amend the habeas case.  I am sure the

23  government doesn't have a problem with that, right?  Yes?

24         MR. WATERMAN:  No, your Honor.  But I don't know that

25  the claims are meritorious.

1          THE COURT:  But plaintiff can file an amended habeas

2     petition in 18 Civ. 1802, right?  And you can do that promptly.

3     And then it's a question of what does the government want to do

4     in terms of a response or a motion to dismiss, right?  That is

5     one of the few easy issues for us today.

6          Plaintiff has indicated the issues the plaintiff wants

7     to raise, so the plaintiff can file an amended habeas petition

8     in 18 Civ. 1802 by next Tuesday, July 3.

9          MR. FOLETTA:  Yes, your Honor.

10         THE COURT:  And then what does the government propose

11    as a reasonable time?  Do the parties want an opportunity to

12    attempt to work out a reasonable schedule between them in the

13    habeas case, the mandamus case, and R.F.M.?

14         With R.F.M., I appreciate that the government says its

15    time to respond hasn't come yet and the government generally

16    has 60 days to respond and it's got to do work to respond.  On

17    the other hand, there is a motion for a preliminary injunction

18    which sometimes gets briefed and argued before there is even an

19    answer.  So the fact that the government usually has 60 days to

20    answer is not a response to when those issues will be briefed.

21         MS. REDDY:  Your Honor, if I may, as to that issue,

22    the main concern we have at this point with R.F.M. is that the

23    plaintiffs have only been identified by their initials.  We

24    have requested from plaintiffs the names and A numbers of the

25    named plaintiffs so we can investigate the allegations in the

1    complaint.

2            At this juncture we have stated that they will enter

3    into a protective order which has several contingencies that

4    are not reasonable to us.  For example, they said they will

5    provide the names of the named plaintiffs or initial plaintiffs

6    if only counsel has access to that information or, in the

7    alternative, if we were required to disclose that information

8    to our clients, that that information cannot be disclosed in

9    any way, cannot be used in any other law enforcement or in any

10   other manner.

11           Our client, the Department of Homeland Security, is a

12   law enforcement agency.  At this juncture the initial

13   plaintiffs are likely illegal aliens and the immigration

14   authorities at any time may execute its enforcement actions

15   against any illegal alien.

16           Your Honor, their concerns at this juncture are

17   speculative and a defendant has a right to obtain the identity

18   of the plaintiffs who are bringing actions against them.

19           So at this juncture the government's position is that

20   it cannot adequately respond to the motion for a preliminary

21   injunction or a class certification because it does not have

22   the information as relating to the named plaintiffs.  We are in

23   discussions about that.  But to the extent that they are not

24   willing to provide that information or allow us to disclose

25   that information to our clients we find unreasonable.

1       THE COURT:  There must be other cases where the issue

2  has come up.  It is not unreasonable to say that the

3  information can be used only for purposes of the litigation.

4  It would be surprising.  In order to bring the litigation, the

5  party would have to risk removal.  On the other hand, are the

6  individual plaintiffs in R.F.M. in removal proceedings already?

7       MR. MALIONEK:  Your Honor, one of the four lead

8  plaintiffs --

9       THE COURT:  Is Zabaleta.

10       MR. MALIONEK:  Zabaleta is a putative class member,

11  but one of the four lead plaintiffs is in removal proceedings.

12       THE COURT:  The defendants already have that

13  information, yes?

14       MR. MALIONEK:  They should have that information.

15  Your Honor, we have also supplied, I think, all of the

16  information based on the plaintiff declarations and redactions

17  of underlying documents with respect to those declarations in

18  order to respond to the APA issues that we have raised.  But we

19  have also offered to supply the names and the A numbers on a

20  protective order.  Do you want to address that issue?

21       MS. MOSER:  Your Honor, we have offered to enter into

22  a protective order with the government which would condition

23  the release of the names and A numbers on the government's

24  agreement to use that information only in the litigation.

25       As far as Ms. Reddy's assertions about the law

1   enforcement responsibilities of the government, I think that

2   nothing in a protective order would preclude the government

3   from using information that it otherwise already has to pursue

4   its obligations.

5        But what we are asking is that the information that it

6   shared in this litigation is not then redistributed for

7   purposes that might be retaliatory in nature.  These are

8   particularly vulnerable plaintiffs and it is fair and

9   reasonable to have concerns about how their information would

10  be used

11       MS. ONOZAWA:  Your Honor, if I may, we are concerned

12  with plaintiffs' carve-out for limiting the information, the

13  use of the information relating to the individual named

14  plaintiffs because all of the government's protective and

15  confidentiality orders that have been entered in civil cases

16  specifically includes the following clause:  Nothing prevents

17  the protected information to be disclosed to government

18  authorities for the purposes of enforcing the criminal laws or

19  in furtherance of civil enforcement of regulatory proceedings.

20  We simply can't enter into a protective order that would bind

21  the government's valid law enforcement and civil enforcement

22  authority, and the request that plaintiff is seeking seems to

23  directly implicate that paragraph in that light.

24       THE COURT:  The government does not, I take it, intend

25  to use the information for purposes of removal, the information

1    that it gets in the litigation.

2            On the other hand, the fact that there has been

3    disclosure in the litigation doesn't prevent the government

4    from removing the people based on other information.  But the

5    government presumably would not want to retaliate against the

6    plaintiffs for being plaintiffs in this litigation by using

7    that information to remove these claimants.

8            There ought to be a way of fairly explaining that.  If

9    that fails in terms of the conversations between the parties,

10   then not clear to me why the plaintiffs need more than the

11   individual plaintiff who is already known to be in removal

12   proceedings, right?

13           MR. MALIONEK:  I think that's right, your Honor.

14           THE COURT:  This issue should not long detain us.

15           MS. REDDY:  Your Honor, the government does not intend

16   to proceed in bad faith.  That said, the documents that

17   plaintiffs have provided in R.F.M. are redacted.  They do not

18   provide an alien number so that the government is unable to

19   look at its agency file to see if any of the information

20   differs.

21           THE COURT:  I take it that there will be a resolution

22   in which the A numbers are given over or, at the very least,

23   the one plaintiff as to whom there is no dispute that the

24   government already knows or certainly should know the identity

25   of the person who is already in removal proceedings.

1         As to the others, I thought that, based upon the

2    discussion that we just had, there is a resolution that's

3    available in terms of the government representing that it

4    doesn't intend to use the information for retaliatory purposes,

5    but there is nothing that prevents the government from

6    otherwise removing the people.  The fact that the people are

7    plaintiffs in the case is not a key to immunity from removal.

8         If the remaining plaintiffs other than the already

9    identified plaintiff who is in removal proceedings are not

10   prepared to go forward, based upon what you can work out on

11   that, plaintiffs concede, they at least have one plaintiff as

12   to whom there is no dispute.

13        The only reason I go over this is, I don't want an

14   unnecessary procedural skirmish to delay the decision on the

15   preliminary injunction, which seems to me to be a matter of

16   some urgency.  I wouldn't want to believe that the government

17   was delaying for the sake of delaying.  There is a resolution

18   to the plaintiffs providing the information for one or more of

19   the plaintiffs in such a way that the government can make its

20   determinations as to how it's going to respond to the motion

21   for a preliminary injunction so that we can get this briefed

22   and argued, and I can decide it within a reasonable time frame.

23        Not 60 days down the road because that's not the way

24   in which we usually decide preliminary injunctions.  60 days

25   down the road would place us at a government response at the

1    end of August to which the defendants would then have the

2    opportunity to reply sometime in September, and I would be

3    deciding the motion optimistically sometime in October.  That's

4    way too long on a motion for a preliminary injunction.

5         MS. REDDY:  Your Honor, there is one other issue with

6    regard to the motion for a preliminary injunction, and that is

7    that this is a case filed under the Administrative Procedures

8    Act, which means that the Court's decision would be based on an

9    administrative record.  The agency needs time to compile the

10   administrative record in order for the government to submit its

11   opposition to the preliminary injunction briefing.  What we

12   propose is that --

13        THE COURT:  All the more reason, by the way, for the

14   plaintiffs -- you have to make your own choices here, but it

15   would seem that fewer plaintiffs would be an argument for more

16   expedition.  Go ahead.  Also, I can't imagine that the

17   administrative record for the individual plaintiffs here is all

18   that great.

19        MS. REDDY:  For the individual plaintiffs, no.  The

20   administrative record would consist of the alien file.

21   However, this action challenges the agency practice and

22   policies and procedures as to its adjudication of Special

23   Immigration Juvenile status applications, and that

24   administrative record is what the agency needs time to compile.

25        THE COURT:  I don't understand what that is.  I

1  thought that the precise issue that was being teed up, if you

2  will, is the question of whether it was unreasonable or

3  arbitrary or capricious or the correct standard for the

4  immigration authorities to fail to recognize the family court

5  in New York as an acceptable court to make the determination of

6  the Special Immigrant Juvenile status.

7        MS. REDDY:  Part of plaintiffs' argument is based on

8  the fact that they are alleging that the government has changed

9  what they call a policy.  There has been a reversal in the

10 policy.  The government has made some self-corrective actions

11 in recent time, and those decisions and documents would be part

12 of the administrative record.

13       THE COURT:  Correct me if I'm wrong, but I would be

14 surprised if the administrative record were equal to the Clean

15 Air Act regulations.  I can't imagine that the kind of record

16 that went into the decision, if in fact there is an

17 administrative record, to decide that the family court is not

18 an acceptable court to make the determination is so extensive

19 that it requires huge amounts of time to compile.

20       The individual A files for the individual plaintiffs

21 are not extensive and then there is the administrative record,

22 which -- obviously, you have to be careful about the

23 representations because if the administrative record that ends

24 up being produced can be filed in a manila folder, it shouldn't

25 take that long to compile.

I6QMZABG

 1          MS. REDDY:  Along those lines, your Honor, I'd like to

 2    remind the Court that we were only served with this action, I

 3    believe, 12 days ago.  In the interim, I was out of the country

 4    for seven of those days.  In speaking briefly to our clients

 5    today, we are still figuring out what the administrative record

 6    would be and how voluminous it would be and what it would

 7    consist of.

 8          THE COURT:  Wasn't this issue raised in the mandamus

 9    proceeding in Zabaleta?

10          MS. REDDY:  Yes, your Honor.

11          THE COURT:  So the issue is not a new one for the

12    government.

13          MS. REDDY:  Correct, your Honor.  In Zabaleta we were

14    determining if we would proceed with a motion to dismiss prior

15    to the filing of an administrative record or answering and then

16    filing possibly a motion for judgment on the pleadings.  So we

17    had not yet come to the administrative record decision.

18          What we would propose, your Honor, is that we can

19    speak to counsel about scheduling issues.  However, we would

20    request that upon them providing the name or names of the named

21    plaintiffs in R.F.M., along with their A numbers, that we be

22    given 30 days to inform the parties and the Court as to how we

23    intend to proceed; in other words, whether or not we intend to

24    file a motion or an administrative record or proceed in some

25    other manner.

1          THE COURT:  But you still have to respond to the

2     motion for a preliminary injunction.

3          MS. REDDY:  Yes, your Honor.  We would request that we

4     be given the 30 days to respond to the motion for a preliminary

5     injunction while we obtain information as to the named class

6     members in R.F.M. as well as work with our clients on

7     determining how to proceed.

8          THE COURT:  OK.  My preference is to have the parties

9     discuss the schedule in all three cases.  I think the

10    government's proposal is a constructive one.  As I hear it,

11    essentially, the government would be responding to each of the

12    cases in 30 days.  So the government would be responding to the

13    preliminary injunction, the government would be responding in

14    the habeas action and in the mandamus action in 30 days.

15         MS. REDDY:  Your Honor, that's not what I meant, if

16    that's how it was understood.  What I meant is, in 30 days we

17    would inform the Court as to how we intended to proceed.  I

18    apologize if I had miscommunicated my intentions.

19         THE COURT:  No.  That's not reasonable, 30 days to

20    make a determination as to what you are going to do when there

21    is a motion for a preliminary injunction out there.  That's not

22    usually the way in which preliminary injunctions are responded

23    to.  We will tell you in 30 days how much time we are going to

24    take to respond to the motion for a preliminary injunction.

25    That will lead you to exactly the schedule that I said was

1   unacceptable.  Thirty days to tell how much time the government

2   needs to respond, and I will tell you that the government will

3   tell me that it will be at least another 30 days, so it's

4   another way of saying, we want 60 days to respond, and that

5   would be the end of August.  The reply would be the end of

6   September.  I would be listening to all of you in October.

7          All of that is not really acceptable on a preliminary

8   injunction, even putting aside for a moment the fact that

9   Mr. Zabaleta is going to have his hearing in September, unless

10  that gets put off, which there is no indication it will be.

11         MS. REDDY:  In that case, your Honor, we would propose

12  that counsel provide us with the identifying information as to

13  the named plaintiffs immediately, and during the week we will

14  confer with the plaintiffs and submit a proposed briefing

15  schedule to the Court.

16         THE COURT:  Plaintiffs, you were going to come up with

17  some proposal.  You said you were going to work with the

18  government.

19         MR. MALIONEK:  Your Honor, I think that that proposal

20  makes sense.  We can continue to work with the government.  I

21  think we can hopefully take this off your Honor's docket to

22  come up with a briefing schedule that then coordinates.

23         Our concern is that as with the prejudice to

24  Mr. Flores Zabaleta, there are putative class members who are

25  in various stages of removal proceedings.  And if as part of

1    the meet and confer with the government we can agree to a

2    similar letter representation, that there will not be any

3    putative class member that is removed during the pendency of

4    the determination on the preliminary injunction motion, then I

5    think that we can dispose of that issue.

6              THE COURT:  Well, you have what the government has

7    already said and what your cocounsel has already said, that

8    even after there is an order of removal there will be 30 days

9    to file an appeal during which, according to the government's

10   representation, unless corrected, the person cannot be removed.

11   And if an appeal is filed, then the person cannot be removed

12   until there is a decision from the BIA.

13             If you have any particular people who have particular

14   issues, you will have to look at that and address that.  I have

15   not been asked to issue any temporary restraining orders which

16   would lead to all of their own issues, and that's something

17   that you'll simply have to look at with your own clients.

18             MR. MALIONEK:  I think that's all we are saying, your

19   Honor, is that as part of that process, if there are certain

20   putative class members that even we are aware of or the

21   government is aware of that are in removal proceedings during

22   the pendency of this briefing, then we would want to be able to

23   discuss with them the same representation that they will not be

24   removed, and I think all of that would go hand in hand with

25   then agreeing on the particular dates for the briefing.

1        If the government's proposal over our meet and confer

2   period over the next week extends briefing out for months, then

3   it would become more of a problem for us, especially as we

4   learn who the different putative class members of who are in

5   that particular situation.  We do want to be able to discuss

6   all of those issues with the government as part of the meet and

7   confer.

8        THE COURT:  You are certainly welcome.

9        MR. MALIONEK:  Thank you.

10        THE COURT:  So the government has asked the plaintiffs

11   to provide the name and A file number for at least the one

12   plaintiff about whom the government should know, in any event,

13   and the other plaintiffs that the plaintiffs want to proceed

14   with.  And you can talk about any agreements relating to those

15   people and you all should do it promptly and give me a schedule

16   for all three of the cases by next Tuesday, a week from now,

17   July 3.  And if there is disagreement with respect to the

18   schedule, I will either decide it on the papers or have another

19   conference with you, and I will try to decide it promptly so

20   that you have a schedule.

21        Anything else that I can decide for you all?

22        MR. MALIONEK:  No.  Thank you, your Honor.

23        MS. REDDY:  No.  Thank you, your Honor.

24        THE COURT:  Good to see you all.

25        (Adjourned)