UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
R.F.M., *et al.*, on behalf of themselves and all others        :
similarly situated,                                             :
                                                               :
                            Plaintiffs,                         :
                                                               :        18 Civ. 5068 (JGK)
           -against-                                            :
                                                               :
KIRSTJEN NIELSEN, *et al.*,                                     :
                                                               :
                            Defendants.                         :
                                                               :
-------------------------------------------------------------- x


# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS IN PART FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR SUMMARY JUDGMENT


GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York,
*Attorney for Defendants*
86 Chambers Street, Third Floor
New York, New York 10007
Telephone:  (212) 637-2721
Facsimile:   (212) 637-2686


KIRTI V. REDDY
TOMOKO ONOZAWA
Assistant United States Attorneys
        – Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................1

STANDARDS OF REVIEW ...............................................................................3

I.       RULE 12(B)(1) MOTION TO DISMISS ............................................3

II.      RULE 56 MOTION TO DISMISS .....................................................4

ARGUMENT .....................................................................................................5

I.       THIS COURT LACKS JURISDICTION TO REVIEW DECISIONS REVOKING
         USCIS'S PREVIOUS GRANT OF SIJ CLASSIFICATION.............................5

II.      USCIS'S DENIALS OF THE PLAINTIFFS' SIJ PETITIONS WERE NOT
         ARBITRARY, CAPRICIOUS, OR CONTRARY TO LAW.............................7

         A.       The Only Reviewable "Final Agency Action" under the APA is USCIS's
                  Denials of the Named Plaintiffs' SIJ Petitions ........................7

         B.       USCIS's Denials of the Plaintiffs' SIJ Petitions Were Not Contrary to Law........11

                  1.       USCIS Has the Authority to Determine Whether a Family Court
                           Order is a "Juvenile Court Order" For Purposes of Establishing SIJ
                           Eligibility .......................................................12

                  2.       USCIS's Interpretation of Federal Law Is Reasonable and in
                           Accordance With Law .............................................13

                  3.       USCIS's Denials of SIJ Petitions Were Not Contrary to Law.................16

                  4.       SIJ Petitioners Under 18 and Petitioners Over 18 Are Not
                           "Similarly Situated".............................................19

                  5.       Plaintiffs Cannot Assert a "Reliance Interest" in Obtaining SIJ
                           Classification...................................................19

         C.       USCIS Was Not Required to Provide "Adequate Notice" ...................21

CONCLUSION.................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Abboud v. I.N.S.*,
   140 F.3d 843 (9th Cir. 1998) ......................................................................................... 10

*Abdelwahab v. Frazier*,
   578 F.3d 817 (8th Cir. 2009) ........................................................................................... 6

*Acquest Wehrle LLC v. United States*,
   567 F. Supp. 2d 402 (W.D.N.Y. 2008) ......................................................................... 10

*ANA Int'l, Inc. v. Way*,
   393 F.3d 886 (9th Cir. 2004) ........................................................................................... 6

*Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*,
   968 F.2d 196 (2d Cir. 1992) ............................................................................................ 4

*Azizi v. Thornburgh*,
   908 F.2d 1130 (2d Cir. 1990) ....................................................................................... 20

*Bechtel v. Admin. Review Bd.*,
   710 F.3d 443 (2d Cir. 2013) ..................................................................................... 5, 11

*Bennett v. Spear*,
   520 U.S. 154 (1997) ........................................................................................... 7, 9, 10

*Bernardo* ex rel. *M & K Eng'g, Inc. v. Johnson*,
   814 F.3d 481 (1st Cir. 2016) ........................................................................................... 6

*Budhathoki v. Nielsen*,
   898 F.3d 504 (5th Cir. 2018) ................................................................................... 12, 13

*Bultasa Buddhist Temple of Chicago v. Nielsen*,
   878 F.3d 570 (7th Cir. 2017) ........................................................................................... 6

*Camp v. Pitts*,
   411 U.S. 138 (1973) (per curiam) .................................................................................... 5

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
   467 U.S. 837 (1984) ................................................................................................... 4, 11

*Christensen v. Harris Cty.*,
   529 U.S. 576 (2000) ........................................................................................................ 11

*Durkin v. Shea*,
   957 F. Supp. 1360 (S.D.N.Y. 1997) ............................................................................. 15

*Ghanem v. Upchurch,*
   481 F.3d 222 (5th Cir. 2007) ........................................................................ 6

*Golden & Zimmermann, LLC v. Domenech,*
   599 F.3d 426 (4th Cir. 2010) ...................................................................... 10

*Green v. Napolitano,*
   627 F.3d 1341 (10th Cir. 2010) .................................................................... 6

*J. Andrew Lange, Inc. v. FAA,*
   208 F.3d 389 (2d Cir. 2000), ....................................................................... 4

*Jillin Pharm. USA, Inc. v. Chertoff,*
   447 F.3d 196 (3d Cir. 2006) ........................................................................ 6

*Just Bagels Mfg., Inc. v. Mayorkas,*
   900 F. Supp. 2d 363 (S.D.N.Y. 2012) ......................................................... 4

*Karpova v. Snow,*
   402 F. Supp. 2d 459 (S.D.N.Y. 2005), *aff'd*, 497 F. 3d 262 (2d Cir. 2007) .............................. 5

*Khalil v. Napolitano,*
   983 F. Supp. 2d 484 (D.N.J. 2013) ........................................................... 10

*Larson v. United States,*
   888 F.3d 578 (2d Cir. 2018) ........................................................................ 7

*Mada-Luna v. Fitzpatrick,*
   813 F.2d 1006 (9th Cir. 1988) .................................................................... 22

*Mehanna v. U.S. Citizenship & Immigration Servs.,*
   677 F.3d  312 (6th Cir. 2012) ...................................................................... 6

*Motor Vehicles Mfrs. Ass'n of  the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
   463 U.S. 29 (1983) ................................................................................ 5, 11

*Nat. Res. Def. Council v. EPA,*
   808 F.3d 556 (2d Cir. 2015) ...................................................................... 11

*National Federation of Independent Business v. Sebelius,*
   567 U.S. 519 (2012) .................................................................................. 16

*Navajo Nation v. U.S. Dep't of Interior,*
   819 F.3d 1084 (9th Cir. 2016) ...................................................................... 9

*Phifer v. City of New York,*
   289 F.3d 49 (2d Cir. 2002) ........................................................................... 4

*Royal Siam Corp. v. Chertoff*,
  484 F.3d 139 (1st Cir. 2007) .................................................................... 20

*S.E.C. v. Alpine Sec. Corp.*,
  308 F. Supp. 3d 775 (S.D.N.Y. 2018) ...................................................... 11

*Shakhnes v. Berlin*,
  689 F.3d 244 (2d Cir. 2012) ....................................................................... 7

*Spencer Enterprises, Inc. v. United States*,
  345 F.3d 683 (9th Cir. 2003) .................................................................... 10

*State of New York v. Lyng*,
  829 F.2d 346 (2d Cir. 1987) .................................................................... 22

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
  752 F.3d 239 (2d Cir. 2014) ....................................................................... 4

*Xia Fan Huang v. Holder*,
  591 F.3d 124 (2d Cir. 2010) .................................................................... 11

## Statutes

Departments of Commerce, Justice, and State, the Judiciary, and Related
  Agencies Appropriations Act, Pub. L. No. 105–119, § 113, 111 Stat. 2440,
  2469 (1997) ............................................................................................... 20

5 U.S.C. § 552(a)(1)(D) ........................................................................... 3, 21

5 U.S.C. § 552(a)(2)(C) ............................................................................... 22

5 U.S.C. § 704 ............................................................................................... 7

5 U.S.C. § 706 ..................................................................................... 5, 11, 21

8 U.S.C. § 1101(a)(27)(J) ................................................................... passim

8 U.S.C. § 1154 ......................................................................................... 5, 6

8 U.S.C. § 1155 ...................................................................................... 5, 6, 7

8 U.S.C. § 1252(a)(2)(B)(ii) ................................................................. 2, 5, 6

8 U.S.C. § 671 ............................................................................................. 18

N.Y. Fam. Ct. Act § 1011 ........................................................................... 18

N.Y. Fam. Ct. Act § 1012 ........................................................................... 17

N.Y. Fam. Ct. Act § 1015-a ............................................................................................... 19

N.Y. Fam. Ct. Act § 1028 ................................................................................................... 19

N.Y. Fam. Ct. Act § 119 ..................................................................................................... 16

N.Y. Fam. Ct. Act § 651 ..................................................................................................... 16

N.Y. Fam. Ct. Act § 657 ..................................................................................................... 16

N.Y. Fam. Ct. Act § 661 ................................................................................................ 16, 17

N.Y. Fam. Ct. Act § 141 ..................................................................................................... 16

N.Y. Soc. Serv. L. § 383-C ................................................................................................. 17

N.Y. Soc. Serv. L. § 384 ..................................................................................................... 17

N.Y. Soc. Serv. L. § 384-b .................................................................................................. 17

**Other Authorities**

H.R. Rep. No. 105–405 (1997) ........................................................................................... 12

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................................. 4

**Regulations**

8 C.F.R. § 103.3(c) ............................................................................................................... 9

8 C.F.R. § 204.11 ....................................................................................................... 1, 13, 14

8 C.F.R. § 205.1 ................................................................................................................... 6

8 C.F.R. § 205.2 ................................................................................................................... 6

Defendants (the "Government"), by their attorney, Geoffrey S. Berman, United States

Attorney for the Southern District of New York, respectfully submit this memorandum of law in

support of their motion to dismiss the Amended Complaint in part for lack of subject matter

jurisdiction and for summary judgment.

### PRELIMINARY STATEMENT[1]

Congress enacted the Special Immigrant Juvenile ("SIJ") statute, 8 U.S.C.

§ 1101(a)(27)(J), to provide a path for lawful permanent residency and ultimately citizenship to a

specific group of children who are physically present in the United States and have required the

intervention of a juvenile court to provide relief from parental abuse, neglect or abandonment.

The United States Citizenship and Immigration Services ("USCIS"), a component agency of the

Department of Homeland Security ("DHS"), has sole statutory authority under federal law to

implement the SIJ classification provisions.  To ensure that the SIJ provisions are utilized for

their intended purpose and to prevent SIJ benefits from being used as alternate means of

immigration for children under the age of 21, USCIS must review the petition and consider the

factual basis for the juvenile courts rulings in order to decide if the petition is *bona fide*.

Under the implementing regulations, USCIS has made clear that a state court that lacks

authority under state law to render custody decisions with respect to a particular juvenile—that

is, it lacks authority to make determinations such as viability of parental reunification—cannot

make the rulings necessary to support an SIJ petition.  8 C.F.R. § 204.11.  New York family

courts have not been granted jurisdiction to affect the custodial rights of parents of individuals

---

[1] The Government hereby incorporates by reference the Statement of Facts set forth on pages 4–32 of Defendants' Memorandum of Law in Opposition to (I) Plaintiffs' Motion for Preliminary Injunction; (II) Plaintiffs' Morion for Class Certification; and (III) Plaintiffs' Motion for Leave to Proceed Anonymously, filed on September 17, 2018 [Dkt. No. 77] ("Defendants'

over the age of 18.  Instead, the power of such state courts over 18- to 21-year olds is limited to

adjudicating certain types of consensual guardianship proceedings.  In this action, plaintiffs

R.F.M., T.D., S.W., D.A.F.A., and O.M.S. ("Plaintiffs") filed for SIJ classification based on

boilerplate guardianship orders that they obtained from New York state juvenile courts when

they were between the ages of 18 and 21.  USCIS properly denied their SIJ petitions, as the state

court had no jurisdictional bases for making the necessary decisions regarding reunification for

petitioners, who are of majority age.

As a preliminary matter, this Court should dismiss that part of the Amended Complaint

which seeks relief under the Administrative Procedures Act ("APA") for a proposed subclass of

"all SIJS petitioners who based their petitions on [Special Findings Orders] issued by the New

York Family Court between the petitioners' 18th and 21st birthdays and either (1) have been

issued . . . (ii) Notices of Intent to Revoke ('NOIR')."  Am. Compl. ¶ 157.  This Court lacks

subject matter jurisdiction to review USCIS's discretionary guidance with respect to NOIRs, as

the exercise of such jurisdiction is prohibited by 8 U.S.C. § 1252(a)(2)(B)(ii).

More broadly, this Court should grant Defendants' motion for summary judgment on all

of Plaintiffs' APA claims.  First, there was no "change in policy" that was arbitrary, capricious,

or contrary to law.  Prior to November 2016, USCIS decisions regarding SIJ petitions were done

on an *ad hoc* basis by each field office.  There was no "policy" in effect with respect to the issue

of New York guardianship orders issued to individuals over the age of majority.  To ensure

consistency in adjudication of SIJ petitions that are based on different state juvenile courts, in

November 2016 USCIS centralized its adjudications of SIJ-based benefits to one location.  In

doing so, USCIS was able to thoroughly consider whether and under what circumstances state

_____

Opposition Brief").

courts had jurisdiction to make the necessary findings about the possibility of parental reunification, and provide uniform training to those adjudicating SIJ petitions.  But USCIS did not adopt guidance or policy with respect to the specific issue of New York guardianship orders. Rather, the denial of the named Plaintiffs' petitions are the only decisions that are subject to judicial review under the APA, and were the result of USCIS's correct application of the law to the facts of each case.

Second, USCIS's decisions on the named Plaintiffs' SIJ petitions were consistent with the SIJ statute, the implementing regulations, and agency policy guidance. USCIS's denials of Plaintiffs' SIJ petitions were not contrary to law, but rather were based on the plain terms of the statute and implementing regulations.  USCIS's reading of the statute gives proper effect to Congress's dual intent of granting SIJ classification only to those juveniles who have been determined, in *bona fide* custody proceedings, to be the subjects of abuse, neglect or abandonment, while preventing SIJ classification from being exploited as a means of obtaining immigration status by those who do not fall within the ambit of the statute.  Moreover, USCIS's reading of the state court orders and the state law cited therein was not arbitrary or capricious, but rather was fully consistent with the statutory language and state caselaw.  Finally, this Court should also dismiss Plaintiffs' claim that the purported "policy" violated the APA because  it was not "publish[ed]" pursuant to 5 U.S.C. § 552(a)(1)(D), because there was no policy that would have been subject to section 552(a)(1)(D)'s requirements.

## STANDARDS OF REVIEW

## I.    RULE 12(B)(1) MOTION TO DISMISS

On a  Rule 12(b)(1) motion to dismiss, the party asserting subject matter jurisdiction bears "the burden of proving by a preponderance of the evidence that it exists." *Tandon v.*

*Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted).

In considering challenges to subject matter jurisdiction under Rule 12(b)(1) at the pleading stage,

the court "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable

inferences in favor of the party asserting jurisdiction." *Id.*  The Court may also consider

evidence extrinsic to the pleadings.  *See Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir.

2002).  However, "argumentative inferences favorable to the party asserting jurisdiction should

not be drawn." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir.

1992**).**

## II.     RULE 56 MOTION TO DISMISS

Ordinarily, summary judgment is appropriate when "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

 As here, when "a party seeks review of agency action under the APA, the 'entire case on review

is a question of law,' such that '[j]udicial review of agency action is often accomplished by filing

cross-motions for summary judgment.'"  *Just Bagels Mfg., Inc. v. Mayorkas*, 900 F. Supp. 2d

363, 372 (S.D.N.Y. 2012) (citation omitted).[2]  The Court reviews issues of law *de novo*, *see J.*

*Andrew Lange, Inc. v. FAA*, 208 F.3d 389, 391 (2d Cir. 2000), but defers to the agency's

reasonable interpretation of an ambiguous statute that the agency is charged with administering,

*see Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984).  Under the

APA, this Court may only hold unlawful and set aside an agency decision that is "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with [the] law" or

---

[2] As a result of the nature of APA review, it is neither necessary nor appropriate to submit
a Local Civil Rule 56.1 statement listing the material facts as to which the moving party
contends there is no genuine issue to be tried, and a counter-statement of additional material facts
as to which it is contended that there exists a genuine issue to be tried.  *See, e.g.*, *Karpova v.*

"unsupported by substantial evidence." *See* 5 U.S.C. § 706(2); *Bechtel v. Admin. Review Bd.,* 710 F.3d 443, 445–46 (2d Cir. 2013). This standard of review is narrow and does not give the Court the authority to substitute its judgment for the agency's. *See Motor Vehicles Mfrs. Ass'n of the U.S., Inc.,* 463 U.S. 29, 43 (1983). The Court's review of an agency's action under the APA is generally limited to the administrative record compiled by the agency. *See* 5 U.S.C. § 706; *Camp v. Pitts,* 411 U.S. 138, 142 (1973) (per curiam).

## ARGUMENT

## I.   THIS COURT LACKS JURISDICTION TO REVIEW DECISIONS REVOKING USCIS'S PREVIOUS GRANT OF SIJ CLASSIFICATION

As a preliminary matter, to the extent Plaintiffs seek relief for a proposed class that includes petitioners between the ages of 18 and 21 who "have been issued . . . (ii) Notices of Intent to Revoke'" and by extension, have had their SIJ petitions revoked, *see* Am. Compl. ¶ 157, this Court lacks subject matter jurisdiction to review any decisions revoking the agency's previous grant of SIJ classification.

Under the INA, courts lack jurisdiction to review "any decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is . . . in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). The agency's revocation of an SIJ petition as a matter of discretion is premised on application of three statutory provisions: 8 U.S.C. § 1101(a)(27)(J), 8 U.S.C. § 1154, and 8 U.S.C. § 1155.

First, SIJ classification is defined in 8 U.S.C. § 1101(a)(27)(J). Second, section 1154(a)(1)(G) of the INA provides in relevant part: "Certain special immigrant visas shall be made available, in a number not to exceed 7.1 percent of such worldwide level, to *qualified*

*Snow*, 402 F. Supp. 2d 459, 465 (S.D.N.Y. 2005), *aff'd*, 497 F. 3d 262 (2d Cir. 2007).

*special immigrants described in section 1101(a)(27)* of this title . . ." *Id.* § 1154(a)(1)(G) (emphasis added).  Third, section 1155 of the INA provides that the "Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title" *Id.* § 1155; *see also* 8 C.F.R. §§ 205.1, 205.2.  Under the INA, however, courts lack jurisdiction to review "any decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is . . . in the discretion of the Attorney General or the Secretary of Homeland Security," 8 U.S.C. § 1252(a)(2)(B)(ii), which includes decisions to revoke the classifications granted by an I-360 visa petition, including SIJ classification.  *See id.* §§ 1101(a)(27), 1154(a)(1)(G).

Although the Second Circuit has not addressed this issue, nearly all of the courts of appeals and other district courts to have considered this question have uniformly held that decisions made in accordance with § 1155 to revoke a visa petition—which includes decisions to revoke the classification granted by a Form I-360 visa petition—are barred by judicial review under 8 U.S.C. § 1252(a)(2)(B)(ii).  *See, e.g., Bultasa Buddhist Temple of Chicago v. Nielsen*, 878 F.3d 570, 573–74 (7th Cir. 2017) (DHS decision to revoke previous grant of I-360 petition not reviewable under APA because of § 1252(a)(2)(B)(ii)); *Bernardo* ex rel. *M & K Eng'g, Inc. v. Johnson*, 814 F.3d 481, 482 (1st Cir. 2016); *Mehanna v. U.S. Citizenship & Immigration Servs.*, 677 F.3d  312, 314–15 (6th Cir. 2012); *Green v. Napolitano*, 627 F.3d 1341, 1344–46 (10th Cir. 2010); *Abdelwahab v. Frazier*, 578 F.3d 817, 821 (8th Cir. 2009); *Ghanem v. Upchurch*, 481 F.3d 222, 223–24 (5th Cir. 2007); *Jillin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196, 205-06 (3d Cir. 2006).  *But see ANA Int'l, Inc. v. Way*, 393 F.3d 886 (9th Cir. 2004) (holding that  § 1252(a)(2)(B)(ii) does not deny jurisdiction to review a revocation decision made

pursuant to § 1155).  Accordingly, any claims for relief brought on behalf of any plaintiff whose

grant of SIJ classification was revoked by USCIS must be dismissed for lack of subject matter

jurisdiction.

## II.    USCIS'S DENIALS OF THE PLAINTIFFS' SIJ PETITIONS WERE NOT ARBITRARY, CAPRICIOUS, OR CONTRARY TO LAW

### A.    The Only Reviewable "Final Agency Action" under the APA is USCIS's Denials of the Named Plaintiffs' SIJ Petitions

"APA review is limited to (1) final agency action (2) not committed to agency discretion

by law (3) where Congress has not implicitly or explicitly precluded judicial review.").  *See* 5

U.S.C. § 704; *Larson v. United States*, 888 F.3d 578, 587 (2d Cir. 2018).  An agency action is

"final" if two conditions are met: "(1) the action must mark the consummation of the agency's

decisionmaking process—it must not be of a merely tentative or interlocutory nature, and (2) the

action must be one by which rights or obligations have been determined, or from which legal

consequences will flow."  *Shakhnes v. Berlin*, 689 F.3d 244, 260 (2d Cir. 2012) (quoting *Bennett*

*v. Spear*, 520 U.S. 154, 177–78 (1997)).

Plaintiffs allege that for several years, USCIS has "applied the SIJS statute in its current

form" to grant SIJ petitions to immigrant children in New York between the ages of 18 and 21,

Am. Compl. ¶ 6, but because of a vague and unidentified "recent change in policy," *see, e.g.*, *id.*

¶¶ 2, 8, 41–46, USCIS has denied SIJ status to more petitioners in New York between the ages of

18 to 21.  *See, e.g. id.* ¶ 43.  There was, however, no "change in policy."  As explained by

USCIS, before SIJ adjudications were centralized at the National Benefits Center ("NBC") in

November 2016, decisions were rendered by individual field offices, which may have applied the

regulations inconsistently at times.  Thus, although the New York USCIS Field Office approved

certain Form I-360 petitions for SIJ classification in which a state court appointed a guardian for

petitioners between the ages of 18 and 21, prior to 2016, other USCIS field offices also denied

SIJ petitions on the basis that the state court that issued the orders did not have jurisdiction over the care and custody of the petitioner as a juvenile under state law.  In one case, the USCIS Administrative Appeals Office ("AAO") upheld the Nebraska Field Office's denial of an SIJ petition filed by an 18-year-old citizen of El Salvador in 2011.  *See, e.g., In Re Self Petitioner* (AAO Feb. 13, 2013), at 3, *available at* https://www.uscis.gov/sites/default/files/err/C6%20-%20Dependent%20of%20Juvenile%20Court/Decisions_Issued_in_2013/FEB152013_01C6101.pdf.[3]  The petitioner submitted an Iowa court order appointing a guardian over him, and the order was later amended to include a determination that petitioner was abandoned by his parents.  *Id*. The USCIS field office denied the petition because at the time of the state guardianship proceedings, the petitioner was not a minor under Iowa state law, and there was no evidence in the record that the guardianship order was issued pursuant to the court's jurisdiction over the petitioner as a juvenile.  *Id.* at 3–4.  *See also In re Self Petitioner* (AAO Oct. 6, 2015), at 4, *available at* https://www.uscis.gov/sites/default/files/err/C6%20-%20Dependent%20of%20Juvenile%20Court/Decisions_Issued_in_2015/OCT062015_02C6101.pdf (juvenile court order submitted by SIJ petitioner from Honduras  was "deficient" because the petitioner was not a minor under Missouri law, and his Missouri court order "does not cite to any exception supporting its jurisdiction over the Petitioner); *In re Self Petitioner* (AAO June 9, 2015), at 3–4, *available at* https://www.uscis.gov/sites/default/files/err/C6%20-%20Dependent%20of%20Juvenile%20Court/Decisions_Issued_in_2015/JUN092015_01C6101.pdf (upholding denial of SIJ to 20-year-old citizen of Honduras who submitted a Texas "Order of Dependency and Findings," because the petitioner was not a minor under the Texas Family

---

[3] The AAO is the appeals unit of USCIS and its decisions constitute the final decision of the agency.  The decisions cited in this paragraph are not "precedent decisions" that are binding

Code, and there was no evidence that the order was issued pursuant to the court's jurisdiction over the petitioner as a juvenile under state law).

To the extent Plaintiffs assert that the centralization of SIJ adjudications in the NBC, USCIS's training to NBC adjudicators, the USCIS Policy Manual, the February 2018 Legal Guidance, and the April 2018 CHAP collectively constitute a "new" policy or a "reversal" of prior "policy," the agency's effort to centralize adjudications and train its adjudicators on the applicable law are not a "final agency action" "by which rights or obligations have been determined or from which legal consequences will flow" under both prongs of the *Bennett* test. *Bennett*, 520 U.S. at 178.  Rather, the increase in Form I-360 petition denials relating to SIJ petitioners between the ages of 18 through 21 in New York was the result of a newly-established centralization of SIJ-based adjuciations, which resulted in improved consistency in the overall adjudications process.  (AR 0622).

"For an action to 'mark the consummation of the agency's decisionmaking process' under the first *Bennett* prong, there must be an established 'formal procedure,' in which the agency 'evaluate[s] the merits of [the issue] to arrive at a reasoned, deliberate decision.'"  *Navajo Nation v. U.S. Dep't of Interior*, 819 F.3d 1084, 1098 (9th Cir. 2016) (citing cases).  "A final decision must establish an official position that is 'considered, definite and firm,' and constitutes the agency's 'last word on the matter.'"  *Id.* (citing cases).  In this case, Plaintiffs have not identified, nor cannot identify, any deliberate, established "formal procedure" for changing the agency's interpretation of the SIJ statute and regulations—because there was none—and thus they cannot meet the first prong of the *Bennett* test.

---

on the agency within the meaning of 8 C.F.R. § 103.3(c).

Moreover, even if the centralization of adjudications, the Policy Manual, training documents and internal guidance somehow mark the "consummation" of some formal agency decisionmaking process, these documents and processes are not ones "by which rights or obligations have been determined or from which legal consequences will flow." *Bennett*, 520 U.S. at 178.  Rather, it is the SIJ statute and the regulations that impose such legal obligations, and legal consequences flow from USCIS's application of the law and regulations in individual cases.  As a result, the only reviewable "final agency decision" here is USCIS's decision to deny or approve an individual SIJ petition—not the training given to NBC adjudicators or the agency's publicly-available guidance documents.  *See, e.g., Spencer Enterprises, Inc. v. United States*, 345 F.3d 683, 688 (9th Cir. 2003) (identifying the "particular agency action at issue" as "INS's denial of an immigrant investor visa petition"); *Abboud v. I.N.S.*, 140 F.3d 843, 847 (9th Cir. 1998) ("[B]ecause the INS's denial of [claimant's visa petition] was a final order, we conclude that the district court had jurisdiction over this matter."); *Khalil v. Napolitano*, 983 F. Supp. 2d 484, 488–89 (D.N.J. 2013) ("[T]he district courts may review the final determinations of visa denials when they are alleged to have violated the terms of the APA").  *Cf. Golden & Zimmermann, LLC v. Domenech*, 599 F.3d 426, 433 (4th Cir. 2010) (agency's FAQ explaining law and regulations was not final agency action under the APA because, *inter alia*, "if the [agency] had never published the Reference Guide and FAQ[], the [agency] would still have had the authority to prosecute licenses for engaging in the conduct described in FAQ[] because legal consequences do not emanate from FAQ[] but from the [statute] and its implementing regulations."); *Acquest Wehrle LLC v. United States*, 567 F. Supp. 2d 402, 410 (W.D.N.Y. 2008) (no final agency action when "the legal rights and obligations of the parties were precisely the same day after the jurisdictional determination was issued as they were the day before").

**B.      USCIS's Denials of the Plaintiffs' SIJ Petitions Were Not Contrary to Law**

Under the APA, this Court may only hold unlawful and set aside an agency decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law" or "unsupported by substantial evidence."  5 U.S.C. § 706(2); *Bechtel v. Admin. Review Bd.,* 710 F.3d 443, 445–46 (2d Cir. 2013).  This standard of review is narrow and does not give the Court the authority to substitute its judgment for that of the agency.  *See Motor Vehicles Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983).  The Court's review of an agency's action under the APA is generally limited to the administrative record compiled by the agency.  *See* 5 U.S.C. § 706; *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam).  "An agency to which Congress has delegated authority to administer a statute is entitled to judicial deference to its views of the statute it administers."  *S.E.C. v. Alpine Sec. Corp.*, 308 F. Supp. 3d 775, 789 (S.D.N.Y. 2018) (citing *Chevron. U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)).  Additionally, "[t]o defer to an agency's interpretation of a statute as reasonable, this Court 'need not conclude that the agency construction was the only one it permissibly could have adopted . . . or even the reading the court would have reached if the question initially had arisen in a judicial proceeding.'"  *Xia Fan Huang v. Holder*, 591 F.3d 124, 129 (2d Cir. 2010) (quoting *Chevron*, 467 U.S. at 843 n.11).  This Court must also "defer to to an agency's 'interpretation of its own regulations unless that interpretation is plainly erroneous or inconsistent with the regulation.'"  *Id.* (quoting *Nat. Res. Def. Council v. EPA*, 808 F.3d 556, 569 (2d Cir. 2015)).  If the regulation at issue "is unambiguous, however, 'the clear meaning of the regulation controls and may not be overridden by an inconsistent agency interpretation.'"  *Id.* (citing *Christensen v. Harris Cty.*, 529 U.S. 576, 588 (2000)).  As set forth below, USCIS's denials of the Plaintiffs' SIJ petitions were not arbitrary, capricious or contrary to law.

1.      USCIS Has the Authority to Determine Whether a Family Court Order is a
         "Juvenile Court Order" For Purposes of Establishing SIJ Eligibility

Plaintiffs argue that USCIS's denials of their petitions are wrong because USCIS went

beyond its authority to require "the Family Court [to] have jurisdiction to make a custody

determination as to the petitioner in order to qualify as a 'juvenile court.'" Am. Compl. ¶ 60.

Plaintiffs further assert that USCIS was required by law to give "broad deference" or

"appropriate deference" to state courts' determinations of their own jurisdiction and power to

issue the findings contained" in the Special Findings Orders.  *Id.* ¶¶ 36, 38, 58.

USCIS is under no obligation to defer to state court orders that endeavor to satisfy

immigration requirements.  To "consent" to SIJ eligibility under the INA, USCIS must review

the juvenile court order to conclude that the petition for SIJ classification is *bona fide*, meaning

that the state court order was sought to obtain relief from abuse, neglect, abandonment, or a

similar basis under state law, and not primarily to obtain an immigration benefit.  H.R. Rep. No.

105–405, at 130 (1997); AR 0709.  Moreover, Plaintiffs' contentions regarding USCIS's

purported "deference" to state courts was flatly rejected by the Fifth Circuit in a recent SIJ-

related decision similar to this one.

In *Budhathoki v. Nielsen*, 898 F.3d 504 (5th Cir. 2018), three alien plaintiffs over the age

of 18 filed what is known in Texas as a "Suit Affecting Parent-Child Relationship" ("SAPCR")

under the Texas Family Code.  *Id.* at 506.  Texas law generally defines "child" or "minor" as "a

person under 18 years of age who is not and has not been married," but in the child-support

context, "child" includes persons over 18.  *Id.*  In the plaintiffs' SAPCR suits, the state courts

awarded plaintiffs child support and made certain findings—*e.g.*, that the applicants were under

21, unmarried, had been abandoned by their parents, and that returning to their home countries

were not in their best interest.  *Id.* at 507.  Plaintiffs filed SIJ petitions with USCIS and submitted

their SAPCR orders, but USCIS denied the petitions.  *Id.*  USCIS's denials were based on the

ground that, while Texas courts had the legal authority to order *child support* for juveniles over

18, plaintiffs' SAPCR orders did not show that they were issued by a court "having jurisdiction

under state law to make judicial determinations about the care and custody of juveniles."  *Id.* at

509 (citing 8 C.F.R. § 204.11(a)).  In short, USCIS determined that an order requiring child

support was not a "care and custody" determination, and under state law, individuals 18 years

and older were not juveniles even if they were eligible for child support.  *Id.* at 509–510.

     Plaintiffs brought an APA challenge against DHS, arguing that a SAPCR order is "a valid

custody or dependency order for SIJ purposes."  *Id.* at 510.  The Fifth Circuit affirmed the

district court's decision rejecting plaintiffs' APA challenge, finding that USCIS had not acted

arbitrarily and capriciously.  *Id.* at 516.  Characterizing the dispute as one "about the discretion,

indeed the obligation in USCIS's view, of the federal agency to decide the sufficiency for federal

purposes of Texas state court child support orders," the Fifth Circuit held that "[w]hether a state

court order submitted to a federal agency for the purpose of gaining a federal benefit made the

necessary rulings *very much is a question of federal law*, not state law, *and the agency had*

*authority to examine the orders for that purpose*."  *Id.* at 511 (emphases added).  Likewise, here,

USCIS properly exercised its authority under federal law to examine the Plaintiffs' Special

Findings Orders to determine whether they were qualifying state law "care and custody"

determinations that established SIJ eligibility, and reasonably concluded that they were not.

    2.    <u>USCIS's Interpretation of Federal Law Is Reasonable and in Accordance With</u>
           <u>Law</u>

    Plaintiffs also contend that USCIS "misinterpret[ed]" state and federal law when it

determined that the named Plaintiffs (and other members of the putative class between the ages

of 18 to 21 in similarly situated circumstances) had not met their burden of showing that the

Family Courts which issued Special Findings Orders were "juvenile courts" for purposes of establishing SIJ eligibility, as required by 8 U.S.C. § 1101(a)(27)(J)(i).  *See, e.g.,* Am. Compl. ¶¶ 56–60.  Plaintiffs similarly allege that the SIJ statute and regulations do not require "the juvenile court issuing an order" to "have actual authority to reunify the petitioner with his or her natural parent in order to make a legal finding that it would not be in the petitioner's best interest to be reunified with a parent."  *Id.* ¶ 66.  As set forth below, USCIS's interpretation of applicable law was reasonable and correct.

The INA defines an SIJ as an immigrant in the United States "whom. . . .  has [been] legally committed to, or placed under the custody of . . . an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law."  8 U.S.C. § 1101(a)(27)(J)(i).  The SIJ regulations provide that an SIJ petitioner must submit: (i) "[a] juvenile court order, *issued by a court of competent jurisdiction* located in the United States, showing that the court has found the beneficiary to be dependent upon that court; (ii) "[a] juvenile court order, *issued by a court of competent jurisdiction located in the United States*, showing that the court *has found the beneficiary eligible for long-term foster care*; and (iii) [e]vidence of a determination made in judicial or administrative proceedings by a court or agency recognized by the juvenile court *and authorized by law to make such decisions*, that it would not be in the beneficiary's best interest to be returned to the country of nationality or last habitual residence of the beneficiary or of his or her parent or parents."  8 C.F.R. § 204.11(d)(2)(i)-(iii) (emphases added).  Under the same regulations, "[e]ligible for long-term foster care *means that a determination has been made by the juvenile court that family reunification is no longer a viable option.*" *Id.* § 204.11(a) (emphasis added).

Accordingly, the Family Courts issuing orders that are submitted for SIJ eligibility

necessarily must be "authorized by law to make such decisions" that "family reunification is no

longer a viable option" as to the petitioner appearing before that court.  And for the Family

Courts to have jurisdiction to determine parental reunification with respect to a petitioner, the

Family Courts necessarily must have jurisdiction to determine whether the allegedly abusive,

neglectful, or abandoning (or other similar basis under state law) parent or parents has the right

to regain custody over that petitioner.  USCIS's position, as expressed in its Policy Manual and

internal guidance—*i.e.,* that the juvenile court issuing the order needs to follow its state laws on

jurisdiction (AR 0708, 0724, 0728)—is far from an unreasonable or erroneous reading of federal

law.  On the other hand, nothing in the statute and regulations supports Plaintiffs' untenable view

that "a juvenile court need only be one that has jurisdiction over the custody and care of

juveniles *generally*," Am. Compl. ¶ 59 (emphasis added).  *Cf. Durkin v. Shea*, 957 F. Supp.

1360, 1369 (S.D.N.Y. 1997) "[i]t is axiomatic that a court must have jurisdiction over both the

subject matter and the defendant to have jurisdiction over the cause of action").

Plaintiffs also assert, erroneously, that USCIS "granted SIJS petitions on the basis . . .

that the Family Court was *empowered* to issue a finding that the petitioner's reunification with

his or her parent is not viable due to abuse, neglect or abandonment," Am. Compl. ¶ 41

(emphasis added), and seek a legal determination that "the New York Family Court is

*empowered to issue SIJS Orders under 8 U.S.C. § 1101(a)(27)(J) . . . ."  Id.* at 54 (emphasis

added).  Nothing in the SIJ statute or regulations "empowers" a state court to issue orders,

particularly where the state court lacks jurisdiction under its own state law to determine the

viability of parental reunification with respect to an individual petitioner.  It strains logic and

credulity to hold that a federal immigration statute "empowers" a state court to make findings

outside of its jurisdictional authority under state law, and nothing in the plain language of the INA or the regulations can be reasonably interpreted to suggest otherwise. *Cf. National Federation of Independent Business v. Sebelius*, 567 U.S. 519, 585 (2012) ("Congress may not simply 'conscript state [agencies] into the national bureaucratic army.") (citation omitted).

>    3.    USCIS's Denials of SIJ Petitions Were Not Contrary to Law

Plaintiffs contend that "USCIS is plainly wrong in its policy that the Family Court lacks jurisdiction over the custody and care of juveniles," and cites New York Family Court Act § 141 for the proposition that the Family Court has a "wide range of powers for dealing with the complexities of family life so that its action may fit the particular needs of those before it." Am. Compl. ¶ 61. USCIS does not dispute that New York family courts have jurisdiction to generally determine the "custody or visitation of minors," but in the context of custody proceedings, "[t]he term 'infant' or 'minor' means a person who has not attained the age of eighteen years." N.Y. Fam. Ct. Act §§ 119(c), 651. Under New York law, it is well-settled that the ability of a parent to challenge the court's placement of the child outside of his or her own custody generally ends when the child becomes 18 years of age. *See* Defendants' Opposition Brief at 18–19. Plaintiffs and the Prudenti Affidavit submitted with their RFE responses contend that New York Family Court Act § 657 grants court-appointed guardians with "custody" over the child, *see* Am. Compl. ¶¶ 63, 71; Prudenti Aff. at AR 0352, but section 657 does not address the Family Court's authority to make custodial determinations vis-à-vis the parent or parents whose custodial rights are being affected by the appointment of a guardian under New York Family Court Act § 661.

Plaintiffs assert that USCIS violated the APA when it denied SIJ classification on the ground that the Family Court "lacked the authority to make a legal determination that the petitioner's reunification with one or both parents is not viable." Am. Compl. ¶ 54. (*See, e.g.,* AR 0832). USCIS's denial of SIJ classification on this ground was also not arbitrary and

capricious or contrary to law.  Federal immigration law does not define "abuse," "neglect" or "abandonment," and specific legal definitions of those terms for the purposes of juvenile dependency derive from state law and thus vary by state.  (AR 0714).  Although the named Plaintiffs' Special Findings Orders purported to make findings relating to "abuse, neglect and abandonment" under "state law," the statutory cites they provided for the Family Court's authority to make these findings relate to state child welfare proceedings for *children under 18*. For example, R.F.M., T.D. and O.M.S.'s amended Special Findings Orders found that reunification with their parents was not viable due to neglect and abandonment under the authority of New York Social Services Law § 384-b and/or New York Family Court Act § 1012(e)-(f) (AR 0343, 0595, 0891), but both statutes relate to findings of neglect and abandonment that the Family Court is authorized to make for *children under the age of 18* in child protection proceedings under Article 10 of the Family Court Act, or abandonment proceedings under New York Social Services Law § 383-C or § 384.  Accordingly, USCIS reasonably determined that the cited statutory contexts for reunification, abuse, neglect, and abandonment findings derive from child protective and other related proceedings authorized for children under the age of 18, and that the named Plaintiffs' guardianship proceedings under New York Family Court Act § 661(a), standing alone, did not confer jurisdiction on the Family Court to make additional determinations relating to reunification due to abuse and neglect for petitioners over the age of majority.

Plaintiffs also contend that, because Family Courts are authorized to "appoint a natural parent to be the guardian of his or her children," Am. Compl. ¶ 71, and because N.Y. Family Court Act § 661 extends guardianship on consent to juveniles between the ages of 18 and 21, the Family Courts naturally have "jurisdiction under New York state law to make a legal conclusion

about returning a petitioner over the age of 18 to his or her parent's custody." *Id*. ¶ 72.  This interpretation belies the plain language of the INA, which provides that an alien is eligible for SIJ classification if "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under state law."  8 U.S.C. § 1101(a)(27)(J).  Section 1101(a)(27)(J) cannot be plausibly interpreted to mean that a guardianship order appointing the non-abusive, non-neglectful, non-abandoning parent provides a sufficient jurisdictional basis for determining "custody" of a juvenile for purposes of establishing SIJ eligibility.  Even if one parent has been granted guardianship of his or her child, the INA requires the Family Court to possess the authority to make, and to actually make, the requisite determination to affect the *other* parent's (*i.e.*, the "1" in "1 or both of the immigrant's parents") custodial rights by deeming *that* parent unfit to be reunified with the child due to abuse, neglect, abandonment, or similar basis under state law.  *Id.*  Plaintiffs' interpretation runs counter to the INA and related principles in federal and state child welfare laws which recognize that *each* parent—whether present or absent, or who has been deemed fit or has been accused of unfitness—possesses substantive and procedural rights over his or her child, such that the "state, through its Family Court, may intervene against the wishes of a parent on behalf of a child so that his needs are properly met" as long as it makes statutorily-authorized findings that warrant such intervention.  N.Y. Fam. Ct. Act § 1011.  *See also* 8 U.S.C. § 671(a)(15)(D).

Plaintiffs also argue that "USCIS's position that state courts must have the power to reunify SIJS petitioners with their natural parents makes little sense because such a requirement would eviscerate SIJS protections for the very population the SIJS Statute was originally intended to protect: children in foster care."  Am. Compl. ¶ 70.  This contention is at odds with New York law, which promotes family rehabilitation and reunification as a goal for children who

were removed from abusive parents in certain proceedings and placed in foster care.  *See, e.g.,*
N.Y. Fam. Ct. Act § 1015-a (in Article 10 proceeding, court may direct social services official to
provide or arrange for services or assistance to child and his or her family to facilitate
"rehabilitation of the family and, as appropriate, the discharge of the child from foster care");
§ 1028(a), (b) (in Article 10 proceeding, permitting parent of temporarily-removed child to
request hearing to determine whether child should be returned, and directing court to consider,
*inter alia*, whether "reasonable efforts were made after removal of the child to make it possible
for the child to safely return home").

    4.    <u>SIJ Petitioners Under 18 and Petitioners Over 18 Are Not "Similarly Situated"</u>

Plaintiffs assert that USCIS's "new policy" is unreasonable because "it impermissibly
leads the agency to treat similarly situated individuals differently," Am. Compl. ¶¶ 74, 80, in that
"a 17-year-old SIJS applicant in guardianship proceedings in Family Court would be in an
identical legal situation as an 18 year-old SIJS applicant in guardianship proceedings."  *Id.* at
¶ 80.  As explained in Defendants' Opposition Brief, 17- and 18-year-olds are not in "identical
legal situations."  *See* Defs.' Opp. Br. at pp. 16–19.  New York law makes unequivocal legal
distinctions between children under 18 and people over 18 with respect to the Family Court's
*parens patriae* authority to make custodial determinations that affect absent or unfit parents,
order reunification with the absent or unfit parent, and make statutory findings regarding neglect,
abuse or abandonment.  *Id.*

    5.    <u>Plaintiffs Cannot Assert a "Reliance Interest" in Obtaining SIJ Classification</u>

Plaintiffs assert that, by "rejecting the New York Family Court orders on which SIJS
petitioners have relied for a decade, USCIS is acting arbitrarily and capriciously, not in
accordance with law, and in excess of its statutory authority."  Am. Compl. ¶¶ 6, 47.  To the
extent Plaintiffs are urging this Court to consider purported reliance interests on obtaining SIJ

classification when it weighs the legality of USCIS's interpretation of the SIJ statute and regulations, that argument must fail.  As a threshold matter, the INA does not confer a personal "right"—let alone a legally protectible "interest"—in obtaining SIJ classification which engenders cognizable reliance interests for any one petitioner, even if the agency previously granted the same immigrant benefit to another.  *Cf. Azizi v. Thornburgh*, 908 F.2d 1130, 1134 (2d Cir. 1990) (plaintiffs could not succeed on due process challenge to statute relating to immigration marriage fraud, "because they do not have an inherent property right in an immigrant visa"); *Royal Siam Corp. v. Chertoff*, 484 F.3d 139, 148 (1st Cir. 2007) ("The mere fact that the agency, by mistake or oversight, approved a specialty occupation visa petition on one occasion does not create an automatic entitlement to the approval of a subsequent petition for renewal of that visa.").

Plaintiffs' claim of "reliance" on SIJ also flies in the face of a Congressional mandate that SIJ classification not be "sought primarily for the purpose of obtaining the status of an alien lawfully admitted for permanent residence, rather than for the purpose of obtaining relief from abuse or neglect or abandonment."  Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, Pub. L. No. 105–119, § 113, 111 Stat. 2440, 2469 (1997).  Any SIJ petitioner who needed to be "protected" from abuse, neglect, or abandonment through the appointment of a caring custodian always had, and availed themselves of, procedures under applicable state law to ensure that his or her guardian of choice had custodial rights to provide care and make decisions.  *See, e.g.,* R.F.M. Decl. ¶ 22 ("In Court, we explained how my grandmother has been my main source of support since I was eight months old and how I needed her to be appointed as my guardian until I turned 21."); D.A.F.A. Decl. ¶ 32 ("We further explained to the Court that I needed my mother to be appointed as my guardian because she

helped me take care of everything related to my health and education.").  Plaintiffs' motivations for obtaining guardianship orders between the ages of 18 and 21 presumably were and should have been separate and apart from any decision USCIS would make down the road about their eligibility for SIJ classification.  Plaintiffs now assert that the USCIS's "change in position" seriously affected an "expectation that they would be *protected by SIJS*" and caused them to "structure" major life decisions, which implies that their guardianship orders were obtained as a prerequisite for an immigration benefit that they believed they were fully entitled to under any circumstance.

**C.      USCIS Was Not Required to Provide "Adequate Notice"**

Plaintiffs also argue that USCIS's alleged "policy change" is facially invalid because USCIS violated section 706 of the APA, which permits this Court to "hold unlawful and set aside agency action, findings, and conclusions found to be—(D) without observance of procedure required by law."  5 U.S.C. § 706(2)(D).  Plaintiffs argue that USCIS's alleged "new policy" failed to comply with section 3 of the APA, as amended by the Freedom of Information Act, 5 U.S.C. § 552, which requires that "[e]ach agency shall separately state and currently publish in the Federal Register for the guidance of the public—(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency . . . ." 5 U.S.C. § 552(a)(1)(D). *See* Am. Compl. ¶ 81.

To the extent Plaintiffs have failed to allege what should have been published—and there is no dispute that the Policy Manual is plainly available to the public, as it was cited in the Amended Complaint—this Court should grant summary judgment in the Government's favor as to this procedural claim.  FOIA does not require that every policy statement by an agency must be published in the Federal Register.  An agency is only required to "make available for public

inspection in an electronic format . . . statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register" and "administrative staff manuals and instructions to staff that affect a member of the public," 5 U.S.C. § 552(a)(2)(C), (D), which the Policy Manual complies with.  The only "general statements of policy" subject to the publication requirement are those that advise "the public prospectively of the manner in which the proposes to exercise a discretionary power." *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1013 (9th Cir. 1988); *see also State of New York v. Lyng*, 829 F.2d 346, 354 (2d Cir. 1987) ("the requirement for publication [for rules of general applicability] applies only to matters which if not published would adversely affect a member of the public").  The agency's interpretation of existing law does not fall within this category.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their motion to dismiss in part, and grant their motion for summary judgment and enter judgment for Defendants.

Dated:   New York, New York
             September 27, 2018

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York,
*Attorney for Defendants*

By:          */s/ Tomoko Onozawa*
KIRTI VAIDYA REDDY
TOMOKO ONOZAWA
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Telephone:  (212) 637-2751/2721
Facsimile:  (212) 637-2686
E-mail: kirti.reddy@usdoj.gov
             tomoko.onozawa@usdoj.gov

## CERTIFICATE OF COMPLIANCE

I, Tomoko Onozawa, an Assistant United States Attorney with the United States Attorney's Office for the Southern District of New York, and counsel to Defendants, hereby certify that according to the word count feature of the word processing program used to prepare this brief, the brief contains 6,995 words (exclusive of the cover page, certificate of compliance, table of contents, and table of authorities), and complies with Rule 2.D of the Individual Practices of the Honorable John G. Koeltl.

Dated: New York, New York
      September 27, 2018


                                                 */s/ Tomoko Onozawa*
                                                 TOMOKO ONOZAWA