UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

R.F.M., *et al.*, on behalf of themselves and all others  :
similarly situated,
                                   :

                Plaintiffs,       :

                                   :       18 Civ. 5068 (JGK)

      -against-         :

                                   :

KIRSTJEN NIELSEN, *et al.*,        :

                                 :

           Defendants.      :

                                 :

------------------------------------------------------------------- x

## CORRECTED BRIEF

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
(I) PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION;
(II) PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; AND
(III) PLAINTIFFS' MOTION FOR LEAVE TO PROCEED
ANONYMOUSLY**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York,
*Attorney for Defendants*
86 Chambers Street, Third Floor
New York, New York 10007
Telephone:  (212) 637-2721
Facsimile:   (212) 637-2686

KIRTI V. REDDY
TOMOKO ONOZAWA
Assistant United States Attorneys
   – Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ..............................................................................................4

    A.    Statutory Background ........................................................................4

    B.    The SIJ Adjudications Process........................................................8

    C.    USCIS's Consent Requirement and Standards Regarding the Validity of Juvenile Court Orders for SIJ Purposes ................................12

    D.    Principles of Federal and New York State Child Welfare Law............................14

    E.    Factual Background ........................................................................20

        1.    R.F.M. ................................................................................20

        2.    T.D. ...................................................................................23

        3.    S.W....................................................................................26

        4.    D.A.F.A. ...........................................................................28

        5.    O.M.S. ..............................................................................30

ARGUMENT ..................................................................................................................32

I.    PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED....................................................................................................................32

    A.    Legal Standard ................................................................................32

    B.    Plaintiffs Have Failed to Show a Likelihood of Success on the Merits................33

        1.    The Only Reviewable "Final Agency Action" under the APA is USCIS's Denials of the Named Plaintiffs' SIJ Petitions .........................33

        2.    USCIS's Denials of the Plaintiffs' SIJ Petitions Were Not Arbitrary and Capricious or Contrary to Law............................36

        3.    This Court Lacks Jurisdiction to Review Decisions Revoking USCIS's Previous Grant of SIJ Classification............................46

        4.    USCIS Was Not Required to Provide "Adequate Notice" .......................47

    C.    Plaintiffs Have Failed to Show That USCIS's Denials of Their Petitions Have Caused "Irreparable Harm" ........................................................48

      D.      Plaintiffs' Proposed Injunctive Relief is Improper ...............................................50

II.      PLAINTIFFS' MOTION FOR CLASS CERTIFICATION SHOULD BE DENIED ......51

      A.      Legal Standards..................................................................................................52

      B.      The Named Plaintiffs  Do Not Meet Rule 23(a)(2)'s Typicality
              Requirement........................................................................................................54

      C.      The Proposed Class Does Not Meet Rule 23(a)(2)'s Commonality
              Requirements ......................................................................................................56

      D.      The Definition of the Proposed Class Is Overbroad .............................................58

III.     PLAINTIFFS' MOTION FOR LEAVE TO PROCEED ANONYMOUSLY  SHOULD
       BE DENIED...........................................................................................................59

      A.      Legal Standard ...................................................................................................60

      B.      Plaintiffs Should Not Be Permitted to Proceed With Initials ...............................61

CONCLUSION.........................................................................................................................68

# TABLE OF AUTHORITIES

Page(s)

Federal and State Cases

*Abboud v. I.N.S.*,
  140 F.3d 843 (9th Cir. 1998) ............................................................. 35

*Abdel-Razeq v. Alvarez & Marshal, Inc.*,
  No. 14 Civ. 5601, 2015 WL 7017431 (S.D.N.Y. Nov. 12, 2015) ........................................... 65

*Abdelwahab v. Frazier*,
  578 F.3d 817 (8th Cir. 2009) ............................................................. 46

*Acquest Wehrle LLC v. United States*,
  567 F. Supp. 2d 402 (W.D.N.Y. 2008) ............................................................. 36

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................. 52

*Amgen, Inc. v. Conn. Retirement Plans & Trust Funds*,
  133 S. Ct. 1184 (2013) ............................................................. 53

*ANA Int'l, Inc. v. Way*,
  393 F.3d 886 (9th Cir. 2004) ............................................................. 47

*Batalla Vidal v. Nielsen*,
  279 F. Supp. 3d 401 (E.D.N.Y. 2018) ............................................................. 48, 49

*Bechtel v. Admin. Review Bd.*,
  710 F.3d 443 (2d Cir. 2013) ............................................................. 36

*Bennett v. Donovan*,
  703 F.3d 582 (D.C. Cir. 2012) ............................................................. 51

*Bennett v. Spear*,
  520 U.S. 154 (1997) ............................................................. 33, 34, 35

*Bernardo* ex rel. *M & K Eng'g, Inc. v. Johnson*,
  814 F.3d 481 (1st Cir. 2016) ............................................................. 46

*Brown v. Kelly*,
  609 F.3d 467 (2d Cir. 2010) ............................................................. 53, 54

*Budhathoki v. Nielsen*,
  898 F.3d 504 (5th Cir. 2018) ............................................................. 39, 40, 63

*Bultasa Buddhist Temple of Chicago v. Nielsen*,
  878 F.3d 570 (7th Cir. 2017) ...................................................................... 46

*Califano v. Yamasaki*,
  442 U.S. 682 (1979)...................................................................................... 53

*Camp v. Pitts*,
  411 U.S. 138 (1973)...................................................................................... 36

*Carlson v. U.S. Citizenship and Immigration Servs.*,
  No CV 12-7893-CAS, 2012 WL 4758118 (C.D. Cal. Oct. 3, 2012)........................ 49

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*,
  504 F.3d 229 (2d Cir. 2007)......................................................................... 56

*Chevron. U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*,
  467 U.S. 837 (1984)...................................................................................... 36

*Christensen v. Harris Cty.*,
  529 U.S. 576 (2000)...................................................................................... 37

*Colozzi v. St. Joseph's Hosp. Health Ctr.*,
  275 F.R.D. 75 (N.D.N.Y. 2011)..................................................................... 53

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013) ........................................................................... 52, 53

*De Oliveria v. De Oliveria*,
  54 N.Y.S.3d 592 (2d Dep't 2017)................................................................. 19

*Dodona I, LLC v. Goldman, Sachs & Co.*,
  296 F.R.D. 261 (S.D.N.Y. 2014) ................................................................. 54

*Doe v. City of New York*,
  201 F.R.D. 100 (S.D.N.Y. 2001) ................................................................. 67

*Doe v. Frank*,
  951 F.3d 320 (11th Cir. 1992) ..................................................................... 65

*Doe v. Kamehameha Schools*,
  596 F.3d 1036 (9th Cir. 2010) ............................................................... 62, 65

*Doe v. Merten*,
  219 F.R.D. 387 (E.D. Va. 2004) ............................................................ 60, 64

*Doe v. Shakur*,
  164 F.R.D. 359 (S.D.N.Y. 1996) ........................................................... 60, 64

*Doe v. United States*, 16 Civ. 7256 (JGK),
   2017 WL 2389701 (S.D.N.Y. June 1, 2017) ...................................................... 64, 65, 66, 67

*Dunnigan v. Metro. Life Ins. Co.*,
   214 F.R.D. 125 (S.D.N.Y. 2003) ....................................................................... 53

*Durkin v. Shea*,
   957 F. Supp. 1360 (S.D.N.Y. 1997)................................................................... 38

*El-Khader v. Monica*,
   366 F.3d 562 (7th Cir. 2004) ........................................................................... 47

*Elizabeth M. v. Montenez*,
   458 F.3d 779 (8th Cir. 2006) ........................................................................... 56

*Femedeer v. Haun*,
   227 F.3d 1244 (10th Cir. 2000) ....................................................................... 65

*Florida Power & Light Co. v. Lorion*,
   470 U.S. 729 (1985).......................................................................................... 50

*Free Speech v. Reno*,
   No. 98 Civ. 2680, 1999 WL 47310 (S.D.N.Y. Feb. 1, 1999) .................................. 60

*Freedom Holdings, Inc. v. Spitzer*,
   408 F.3d 112 (2d Cir. 2005)............................................................................. 48

*Gannett Co. v. DePasquale*,
   443 U.S. 368 (1979).......................................................................................... 60

*Gao v. Jenifer*,
   185 F.3d 548 (6th Cir. 1999) ........................................................................... 63

*Ghanem v. Upchurch*,
   481 F.3d 222 (5th Cir. 2007) ........................................................................... 47

*Golden & Zimmermann, LLC v. Domenech*,
   599 F.3d 426 (4th Cir. 2010) ........................................................................... 35

*Gomez-DeLeon v. INS*,
   No. Civ. A 301 CV 1825, 2002 WL 1608331 .......................................................... 55

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
   481 F.3d 60 (2d Cir. 2007)............................................................................... 48

*Green v. Napolitano*,
   627 F.3d 1341 (10th Cir. 2010) ....................................................................... 46

*Hill Dermaceuticals, Inc. v. Food & Drug Admin.*,
    709 F.3d 44 (D.C. Cir. 2013) ........................................................................ 50

*In re Agam B.*,
    996 N.Y.S.2d 632 (2d Dep't 2014) ................................................................. 18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009) ............................................................................ 53

*In re Fosamax Prods. Liab. Litig.*,
    248 F.R.D. 389 (S.D.N.Y. 2008) ................................................................... 58

*In re Initial Public Offering Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006) ....................................................................... 53, 58

*In re Marisol N.H.*,
    115 A.D.3d ............................................................................................. 42, 43

*In re Michael O.F.*,
    989 N.Y.S.2d 343 (2d Dep't 2014) ................................................................ 18

*In re Shontae R.*,
    852 N.Y.S.2d 473 (3d Dep't 2008) ................................................................ 18

*In re Sumitomo Copper Litig.*,
    262 F.3d 134 (2d Cir. 2001) .......................................................................... 59

*Islam v. Rodriguez*,
    Civil Action No. 16-2424, 2018 WL 576830 (D.N.J. Jan. 25, 2018) ................... 46

*James v. Jacobson, Jr.*,
    6 F.3d 233 (4th Cir. 1993) ....................................................................... 66, 67

*Jillin Pharm. USA, Inc. v. Chertoff*,
    447 F.3d 196 (3d Cir. 2006) .......................................................................... 47

*Johnson v. Nextel Commc'ns Inc.*,
    780 F.3d 128 (2d Cir. 2015) .......................................................................... 57

*Julian B. v. Williams*,
    948 N.Y.S.2d 399 (2d Dep't 2012) ................................................................ 19

*Khalil v. Napolitano*,
    983 F. Supp. 2d 484 (D.N.J. 2013) ................................................................ 35

*Larson v. United States*,
    888 F.3d 578 (2d Cir. 2018) .......................................................................... 33

*Lore v. City of Syracuse*, No. 00-CV-1833,
  2001 WL 263501 (N.D.N.Y. Mar. 9, 2001) ........................................................ 49

*Luis R. v. Maria Elena G.*,
  990 N.Y.S.2d 851 (2d Dep't 2014) .................................................................... 25

*Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*,
  993 F.2d 11 (2d Cir. 1993) ............................................................................... 59

*Lynch v. City of New York*,
  589 F.3d 94 (2d Cir. 2009) ............................................................................... 32

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) ............................................................................. 55

*Matter of Antowa McD*,
  856 N.Y.S.2d 576 (1st Dep't 2008) .............................................................. 22, 31

*Mazzei v. Money Store*,
  829 F.3d 260 (2d Cir. 2016) ............................................................................. 54

*McIntire v. China MediaExpress Holdings, Inc.*,
  38 F. Supp. 3d 415 (S.D.N.Y. 2014) ................................................................ 59

*McLaughlin v. Am. Tobacco Co.*,
  522 F.3d 215 (2d Cir. 2008) ............................................................................. 54

*Mehanna v. U.S. Citizenship & Immigration Servs.*,
  677 F.3d  312 (6th Cir. 2012) ........................................................................... 46

*Monserrate v. N.Y. State Senate*,
  599 F.3d 148 (2d Cir. 2010) ............................................................................. 33

*Motor Vehicles Mfrs. Ass'n of  the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ............................................................................... 36, 45, 48

*Mullins v. City of New York*,
  626 F.3d 47 (2d Cir. 2010) ............................................................................... 33

*NAACP v. East Haven*,
  70 F.3d 219 (2d Cir. 1995) ............................................................................... 33

*Nat. Res. Def. Council v. EPA*,
  808 F.3d 556, 569 (2d Cir. 2015) ..................................................................... 36

*Navajo Nation v. U.S. Dep't of Interior*,
  819 F.3d 1084 (9th Cir. 2016) .......................................................................... 34

*Nixon v. Warner Commc'ns, Inc.*,
   435 U.S. 589 (1978) ................................................................................. 60

*Oakley v. Verizon Communs., Inc.*,
   No. 09-9175 (CM), 2012 WL 335657 (S.D.N.Y. Feb. 1, 2012) ................................ 56

*People United for Children, Inc. v. City of New York*,
   214 F.R.D. 252 (S.D.N.Y. 2003) ................................................................... 53

*Perez-Olano v. Gonzalez*,
   248 F.R.D. 248 (C.D. Cal. 2008) .................................................................. 63

*Pierce v. Soc'y of Sisters*,
   268 U.S. 510 (1925) ................................................................................. 15

*Plaintiffs #1-21 v. County of Suffolk*,
   138 F. Supp. 3d 264 (E.D.N.Y. 2015) ............................................................ 62

*Plaza Health Labs., Inc. v. Perales*,
   878 F.2d 577 (2d Cir. 1989) ....................................................................... 33

*Pollis v. New Sch. For Soc. Research*,
   829 F. Supp. 584 (S.D.N.Y. 1993) ................................................................ 49

*Prince v. Commonwealth of Mass.*,
   321 U.S. 158 (1944) ................................................................................. 15

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) ....................................................................... 52

*Rodriguez ex rel. Rodriguez v. DeBuono*,
   175 F.3d 227 (2d Cir. 1999) ....................................................................... 48

*Rutstein v. Avis Rent-A-Car Systems*,
   211 F.3d 1228 (11th Cir. 2000) ................................................................... 58

*S.E.C. v. Alpine Sec. Corp.*,
   308 F. Supp. 3d 775 (S.D.N.Y. 2018) ............................................................ 36

*Sands v. U.S. Dep't of Homeland Sec.*,
   308 Fed. Appx. 418 (11th Cir. 2009) ............................................................. 46

*Sealed Plaintiff v. Sealed Defendant*,
   537 F.3d 185 (2d Cir. 2008) .......................................................... 60, 61, 66, 67

*Shakhnes v. Berlin*,
   689 F.3d 244 (2d Cir. 2012) ....................................................................... 33

*Shapiro v. Cadman Towers, Inc.*,
    844 F. Supp. 116 (E.D.N.Y. 1994) ................................................... 49

*Southern Methodist University Association of Women Law Students v. Wynne & Jaffe*,
    599 F.2d 707 (5th Cir. 1979) ........................................................... 64

*Spencer Enterprises, Inc. v. United States*,
    345 F.3d 683 (9th Cir. 2003) ........................................................... 35

*Stankiewicz v. Universal Commerce Corp.*,
    No. 16-cv-2050 (JGK), 2017 WL 3671040 (S.D.N.Y, Aug. 9, 2017)................... 65

*Stanley v. Ill.*,
    405 U.S. 645 (1971)......................................................................... 15

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*,
    546 F.3d 196 (2d Cir. 2008)........................................................ 53, 58

*Troxel v. Granville*,
    530 U.S. 57 (2000)............................................................................ 15

*Trudy-Ann W. v. Joan W.*,
    901 N.Y.S.2d 296 (2d Dep't 2010)............................................... 22, 31

*United States v. Amodeo*,
    71 F.3d 1044 (2d Cir. 1995)............................................................... 60

*Vincent v. Money Store*,
    304 F.R.D. 446 (S.D.N.Y. 2015) ................................................... 55, 59

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)........................................................ 52, 53, 54, 57

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008)............................................................... 32, 37, 44

*Wright v. Giuliani*, 99-cv-10091,
    2000 WL 777940 (S.D.N.Y. Jun. 14, 2001) ......................................... 58

*Xia Fan Huang v. Holder*,
    591 F.3d 124 (2d Cir. 2010)............................................................. 36

## Federal Statutes

5 U.S.C. § 552...........................................................................47, 48

5 U.S.C. § 704............................................................................ 3, 33

5 U.S.C. § 706 .................................................................................................... 36, 47

8 U.S.C. § 101(a)(27)(i) ................................................................................................ 28

8 U.S.C. § 204(a)(1)(G)(i) .............................................................................................. 8

8 U.S.C. § 1101(a)(27)(J) ...................................................................................... passim

8 U.S.C. § 1101(b)(1) ..................................................................................................... 7

8 U.S.C. § 1153(b)(4) ..................................................................................................... 4

8 U.S.C. § 1155 ............................................................................................................. 46

8 U.S.C. § 1252(a)(2)(B)(ii) ............................................................................... 2, 46, 47

8 U.S.C. § 1252(g) ........................................................................................................ 49

8 U.S.C. § 1361 .............................................................................................................. 9

42 U.S.C. § 191 ............................................................................................................ 15

42 U.S.C. § 671(a)(29) ................................................................................................. 15

42 U.S.C. § 671(a)(15)(D) ............................................................................................ 43

Pub. L. No. 105-89 ......................................................................................................... 6

Pub. L. No. 110-457 ............................................................................................... 6, 7, 12

Pub. L. No. 101-649 ....................................................................................................... 4

Pub. L. No. 105-119 ............................................................................................ 5, 6, 45

Pub. L. No. 107-296 ................................................................................................... 7, 8

Pub. L. No. 110-351 ..................................................................................................... 17

Federal Regulations

8 C.F.R. § 103.2(b)(8)(iv) .............................................................................................. 9

8 C.F.R. § 204.11(a) ............................................................................................... passim

8 C.F.R. § 204.11(c) ............................................................................................. 8, 13, 14

8 C.F.R. § 204.11(d) ................................................................................................. 9, 14

8 C.F.R. § 205.1 ............................................................................................ 10, 46

8 C.F.R. § 205.2 ............................................................................................ 10

45 C.F.R. § 1355.20(a) .................................................................................. 16

State Statutes

N.Y. Dom. Rel. L. § 2 .................................................................................... 18, 65

N.Y. Gen. Oblig. L. § 3-101 ......................................................................... 18

N.Y. Fam. Ct. Act § 115 ............................................................................... 16, 21

N.Y. Fam. Ct. Act § 119(c) ........................................................................... 23, 26, 40

N.Y. Fam. Ct. Act § 141 ............................................................................... 22, 40

N.Y. Fam. Ct. Act § 355.3 ............................................................................ 25

N.Y. Fam. Ct. Act § 384(b)(5) ...................................................................... 22, 31

N.Y. Fam. Ct. Act § 614(1) .......................................................................... 19

N.Y. Fam. Ct. Act § 657 ............................................................................... 18, 22, 41

N.Y. Fam. Ct. Act § 661(a) ........................................................................... 19, 21, 42

N.Y. Fam. Ct. Act § 661(b) ........................................................................... 42

N.Y. Fam. Ct. Act § 1011 ............................................................................. 17, 43

N.Y. Fam. Ct. Act § 1012 ............................................................................. 22, 29, 31, 41

N.Y. Fam. Ct. Act § 1015 ............................................................................. 43

N.Y. Pub. Health § 2504 ............................................................................... 18

N.Y. Soc. Serv. Law § 383 ........................................................................... 42

N.Y. Soc. Serv. Law § 384 ........................................................................... 17, 25, 41, 42

N.Y. Surr. Ct. Proc. Act § 103(27) ............................................................... 21

N.Y. Surr. Ct. Proc. Act § 1701 ................................................................... 25

N.Y. Surr. Ct. Proc. Act § 1707 ................................................................... 21, 23, 28

N.Y. Surr. Ct. Proc. Act § 1764 ................................................................... 30

22 N.Y. Comp. Codes R. & Reg. § 205.17 ................................................................. 25


Federal Rules

Fed. R. Civ. P. 5.2(a)(3) ........................................................................................... 65

Fed. R. Civ. P. 23(a)(3) ..................................................................................... 52, 54

Fed. R. Civ. P. 23(b)(2) ............................................................................................ 54

Fed. R. Civ. P. 23(c)(4) ............................................................................................ 59


Other Authorities

58 Fed. Reg. 42843 ................................................................................................. 4, 7

76 Fed. Reg. 54978 .................................................................................................... 7

*Depts. of Commerce, Justice and State, the Judiciary, and Related Agencies Appropriations for Fiscal Year 1998: Hearings Before a Subcomm. of the Comm. on Appropriations*, 105th Cong. 1 (1998) ................................................................................................................... 5

H.R. Rep. No. 105-405 at 130, 1997 U.S.C.C.A.N. 2941, 2981 (1997) ........................................ 6

John G. Myers, *Golden Anniversary Issue: A Short History of Child Protection in America*, 42 Fam. L.Q. 449, 451 (2008) ...................................................................................... 15

U.S. Congress, House Comm. on Appropriations, *Making Appropriations for The Depts. of Commerce, Justice, and State, the Judiciary, and Related Agencies for the Fiscal Year Ending September 30, 1998, and for Other Purposes*, Conference Report to Accompany H.R. 2267, 143 Cong. Rec. H. 10809-01 (daily ed. Nov. 13, 1997) ............................................. 5

Defendants (the "Government"), by their attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in opposition to Plaintiffs' motions for: (1) a preliminary injunction; (2) class certification; and (3) leave to proceed anonymously.

## PRELIMINARY STATEMENT

Congress enacted the Special Immigrant Juvenile ("SIJ") statute, 8 U.S.C. § 1101(a)(27)(J), to provide a path for lawful permanent residency and ultimately citizenship to a specific group of children under the age of 21 who are physically present in the United States and have required the intervention of a juvenile court to provide relief from parental abuse, neglect or abandonment. The United States Citizenship and Immigration Services ("USCIS"), a component agency of the Department of Homeland Security ("DHS"), has sole statutory authority under federal law to implement the SIJ classification provisions. To ensure that the SIJ provisions would be utilized for their intended narrow purpose and to prevent SIJ benefits from being used as alternate means of immigration for children under the age of 21, USCIS must review the petition and take into consideration the factual basis for the juvenile courts rulings in order to decide if the petition is *bona fide*.

Under the implementing regulations, USCIS has made clear that a state court that does not have authority under state law to render custody decisions with respect to a particular juvenile—that is, it lacks authority to make determinations regarding the viability of parental reunification—cannot make the factual findings necessary to support an SIJ petition. 8 C.F.R. § 204.11. And under New York law, family courts have not been granted jurisdiction to affect the custodial rights of parents of individuals over the age of 18. Instead, the power of such state

courts over 18- to 21-year olds is limited to adjudicating certain types of consensual guardianship proceedings.

In this action, plaintiffs R.F.M., T.D., S.W., D.A.F.A., and O.M.S. filed for SIJ status based on boilerplate guardianship orders that they obtained from New York state juvenile courts when they were between the ages of 18 and 21. USCIS properly denied their SIJ petitions, as the state court had no jurisdictional bases for making the necessary findings regarding reunification for petitioners, who are of majority age. These decisions were fully consistent with the SIJ statute, the implementing regulations, and agency policy guidance. Accordingly, the Court should deny the motion for preliminary injunction. Plaintiffs' motion is unlikely to succeed on the merits because USCIS's denials of Plaintiffs' SIJ petitions were not contrary to law, but rather was based on the plain terms of the statute and implementing regulations. USCIS's reading of the statute gives proper effect to Congress's dual intent of granting SIJ status only to those juvenile minors who have been determined, in bona fide custody proceedings, to be the subjects of abuse, neglect or abandonment, while preventing SIJ status from being exploited as a means of obtaining immigration status by those who do not fall within the ambit of the statute. Moreover, USCIS's reading of the state court orders and the state law cited therein was not arbitrary or capricious, but rather was fully consistent with the statutory language and state caselaw.

Plaintiffs are further unlikely to prevail on the merits because the Court lacks jurisdiction to review decisions of purported class members in which USCIS revoked a previous grant of SIJS status, as the exercise of such jurisdiction is prohibited by 8 U.S.C. § 1252(a)(2)(B)(ii). And as for proposed class members whose petitions have not yet been denied, their claims are

unreviewable under the Administrative Procedures Act, 5 U.S.C. § 704, because no final agency decision has been rendered with respect to their petitions.

Finally, Plaintiffs are unlikely to prevail on the merits because there is no change in policy that resulted in USCIS's determinations that a state court lacked jurisdiction to make reunification determinations for petitioners. Prior to November 2016, USCIS decisions regarding SIJ petitions were done on an ad hoc basis by each field office. There was no "policy" in effect with respect to the issue of New York guardianship orders issued to individuals over the age of majority. To ensure consistency in adjudication of SIJ petitions that are based on different state juvenile courts, in November 2016 USCIS centralized its adjudications of SIJ-based benefits to one location. In doing so, USCIS was able to thoroughly consider whether and under what circumstances state courts had jurisdiction to make the necessary findings about the possibility of parental reunification, and provide uniform training to those adjudicating SIJ petitions. But USCIS did not adopt guidance or policy with respect to the specific issue of New York guardianship orders. Rather, the denial of the petitions in this case is the result of USCIS's correct application of the law to the facts of each case.

The Court should also deny Plaintiffs' motion for leave to proceed anonymously and motion for class certification. The Court should deny Plaintiffs' motion to proceed anonymously because there is an important public interest in maintaining openness in judicial proceedings, and Plaintiffs' speculation of potential future issues for participating in this litigation, such as retaliation or embarrassment, are not sufficient bases to justify the extraordinary relief of anonymity. The Court should likewise deny Plaintiffs' motion for class certification because they fail to establish that their proposed class claims meet the requirements of commonality and typicality, and because the class, as defined, is overbroad.

## STATEMENT OF FACTS

### A.    Statutory Background

The Immigration and Nationality Act ("INA") allocates a percentage of immigrant visas to individuals who are considered "special immigrants."  8 U.S.C. § 1153(b)(4).  In 1990, Congress established procedures for unauthorized alien children who became dependents of the state juvenile courts and eligible for long-term foster care to apply for lawful permanent resident status as a category of "special immigrant" under the INA.  Pub. L. No. 101-649, § 153, 104 Stat. 4978 (1990).  Before the statutory provisions relating to SIJ classification were added to the INA in 1990, unauthorized alien minors in foster care who were declared dependent on the state juvenile courts were considered an especially vulnerable group within the child welfare system. Unlike non-alien minors, this population lacked the ability to transition from state care to independence.  For example, because these minors did not have legal immigration status, they could not be lawfully employed when they reached a legal working age.  *See generally* 58 Fed. Reg. 42843, 42844 (Aug. 12, 1993).

        Accordingly, the Immigration Act of 1990 created SIJ status as an immigrant classification to provide children in the state child welfare system a pathway to obtain lawful permanent residence.  As originally enacted in 1990, federal law required that a qualified SIJ petitioner be an individual:

> (i) who has been declared dependent on a juvenile court located in the United States and has been deemed eligible by that court for long-term foster care, and (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country or nationality or country of last habitual residence.

Pub. L. No. 101-649, § 153, 104 Stat. 4978 (1990).

In 1997, Congress amended the INA to address abuses encountered in the implementation of the SIJ program,[1] and to ensure that SIJ classification was not "sought primarily for the purpose of obtaining the status of an alien lawfully admitted for permanent residence, rather than for the purpose of obtaining relief from abuse or neglect." *See* Appropriations Act, Pub. L. No. 105-119, § 113, 111 Stat. 2440, 2469 (1997) ("Appropriations Act"); *see also* U.S. Congress, House Comm. on Appropriations, *Making Appropriations for The Depts. of Commerce, Justice, and State, the Judiciary, and Related Agencies for the Fiscal Year Ending September 30, 1998, and for Other Purposes*, Conference Report to Accompany H.R. 2267, 143 Cong. Rec. H. 10809-01 (daily ed. Nov. 13, 1997), available at 1997 WL 705004, at *17. Section 113 of the Appropriations Act amended the definition of a "special immigrant juvenile" as follows:

> [A]n immigrant who is present in the United States—(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State and who has been deemed eligible by that court for long-term foster care due to abuse, neglect, or abandonment; (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and (iii) in whose case the Attorney General expressly consents to the dependency

---

[1] During Congressional hearings related to the 1998 Act, U.S. Senator Pete Domenici of New Mexico asserted that SIJ status "was intended to be reserved for certain juveniles who were abused, neglected, and abandoned," and cited several anecdotes which supported his view that SIJ status was being used as a "giant loophole" by alien juveniles "who are neither abused, neglected, or abandoned." *Depts. of Commerce, Justice and State, the Judiciary, and Related Agencies Appropriations for Fiscal Year 1998: Hearings Before a Subcomm. of the Comm. on Appropriations*, 105th Cong. 1 (1998) (testimony of Senator Pete Domenici). In one example, a relative of an alien juvenile filed a petition for permanent guardianship in New Mexico state court, even though the juvenile was planning to start college under a non-immigrant student visa and had not yet arrived in the United States when the guardianship petition was filed. *Id.* In another example, a 20-year-old Mexican male obtained SIJ status after his parents agreed to have his uncle in New Mexico serve as his guardian; the state court nonetheless determined that the juvenile was "eligible for long-term foster care." *Id.*

> order serving as a precondition to the grant of special immigrant juvenile
> status . . . .

Pub. L. No. 105-119 at § 113.  The Appropriations Act's amendments to the SIJ definition added

a requirement that the Attorney General "expressly consent" to the "dependency order" required

for eligibility, "for the purposes of determining special immigrant juvenile status and not for

making determinations of dependency status . . . ."  H.R. Rep. No. 105-405 at 130, 1997

U.S.C.C.A.N. 2941, 2981 (1997).

In December 2008, Congress enacted the William Wilberforce Trafficking Victims

Protection Reauthorization Act of 2008 ("TVPRA"), Pub. L. 110-457, § 235, 122 Stat. 5044

(2008), which expanded and clarified the eligibility requirements for SIJ status.  Since 2008,

immigrants eligible for SIJ status have been defined as:

> [A]n immigrant who is present in the United States—
>
> (i) who has been declared dependent on a juvenile court located in the United
> States or whom such a court has legally committed to, or placed under the
> custody of, an agency or department of a State, or an individual or entity
> appointed by a State or juvenile court located in the United States, and whose
> reunification with 1 or both of the immigrant's parents is not viable due to
> abuse, neglect, abandonment, or a similar basis found under State law[2];
>
> (ii) for whom it has been determined in administrative or judicial proceedings
> that it would not be in the alien's best interest to be returned to the alien's or
> parent's previous country of nationality or country of last habitual residence;
> and
>
>  (iii) in whose case the Secretary of Homeland Security consents to the grant
> of special immigrant juvenile status . . .

---

[2] The TVPRA's changes to SIJ eligibility mirror a federal and state law trend towards
eliminating long-term foster care as a permanent placement option in favor of parental
reunification or another "permanent living arrangement."  *See, e.g.,* Adoption and Safe Families
Act, Pub. L. No. 105-89, 111 Stat. 2115, § 302 (1997) (removing long-term foster care as
permanent living arrangement goal); 143 Cong. Reg. H10776-05, H10787 (1997) (statement of
Rep. Kennelly) describing legislation "putting children on a fast track from foster care to safe
and loving and permanent homes.")

8 U.S.C. § 1101(a)(27)(J).  The TVPRA also provided age-out protections to SIJ petitioners. Under section 235(d)(6) of the TVPRA, SIJ status cannot be denied or revoked based on age if the immigrant was a "child"—which the INA defines as an "unmarried person under twenty-one years of age," 8 U.S.C. § 1101(b)(1)—on the date when the alien applied for SIJ status.  Pub. L. 110-457, at § 235(d)(6).  The TVPRA also amended the "consent" language in the INA by requiring the Secretary of Homeland Security to "consent" to the grant of SIJ classification, instead of "expressly consenting" to the juvenile court order.  Pub. L. 110-457, at § 235(d)(1)(B).

The regulations implementing SIJ were promulgated by the Immigration and Naturalization Service ("INS")[3] in 1993, *see* 58 Fed. Reg. 42843 (August 12, 1993).[4] The regulations provide that an alien is eligible for SIJ status under 8 U.S.C. § 1101(a)(27)(J), if the alien:

> (1) Is under twenty-one years of age;
>
> (2) Is unmarried;
>
> (3) Has been declared dependent upon a juvenile court located in the United States in accordance with state law governing such declarations of dependency, while the alien was in the United States and under the jurisdiction of the court;
>
> (4) Has been deemed eligible by the juvenile court for long-term foster care;
>
> (5) Continues to be dependent upon the juvenile court and eligible for long-term foster care, such declaration, dependency or eligibility not having been vacated, terminated, or otherwise ended; and

---

[3] The Homeland Security Act of 2002 created DHS, abolished the INS, and transferred INS functions to DHS.  *See* Pub. L. No. 107-296, 116 Stat. 2135 (2002).

[4] In 2011, USCIS proposed changes to the implementing regulations, but the amended regulations have not been finalized.  76 Fed. Reg. 54978, 54986 (proposed Sept. 6, 2011) (to be codified at 8 C.F.R. §§ 204, 205, and 245).

(6) Has been the subject of judicial proceedings or administrative proceedings authorized or recognized by the juvenile court in which it has been determined that it would not be in the alien's best interest to be returned to the country of nationality or last habitual residence of the beneficiary or his or her parent or parents . . . .

8 C.F.R. § 204.11(c).  The regulations define a "juvenile court" as "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles."  *Id.* § 204.11(a).  Section 204.11(d) of the regulations further requires an SIJ petitioner to submit one or more documents which include:

(i) A juvenile court order, issued by a court of competent jurisdiction located in the United States, showing that the court has found the beneficiary to be dependent upon that court;

(ii) A juvenile court order, issued by a court of competent jurisdiction located in the United States, showing that the court has found the beneficiary eligible for long-term foster care; and

(iii) Evidence of a determination made in judicial or administrative proceedings by a court or agency recognized by the juvenile court and authorized by law to make such decisions, that it would not be in the beneficiary's best interest to be returned to the country of nationality or last habitual residence of the beneficiary or of his or her parent or parents.

*Id.* § 204.11(d)(2).  The term "eligible for long-term foster care," as it appears in § 204.11(d)(2)(ii), "means that a determination has been made by the juvenile court that family reunification is no longer a viable option."  *Id.* § 204.11(a).

## B.    The SIJ Adjudications Process

USCIS has sole statutory authority under federal law to implement the SIJ classification provisions.  Homeland Security Act of 2002, §§ 471(a), 451(b), 462(c), Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002); 8 U.S.C. § 204(a)(1)(G)(i); USCIS Policy Manual, vol. 6, pt. J, updated Oct. 26, 2016 ("Policy Manual") (reproduced in part at AR 0703–AR 0722). [5]  The

_____

[5] All citations to "AR" are to the Administrative Records filed in this case on July 24,

Secretary of DHS, through the authority delegated to USCIS, must consent to the grant of SIJ classification for each petitioner.  *See* 8 U.S.C. § 1101(a)(27)(J)(iii).

An alien petitioning USCIS for SIJ classification must file a "Petition for Amerasian, Widow(er), or Special Immigrant" ("Form I-360"), along with a birth certificate or other evidence of age, and copies of the juvenile court order or orders that establish the alien's eligibility, and provide evidence of the factual basis for the juvenile court's findings (AR 0713). When adjudicating the SIJ petition, USCIS reviews the petition, the juvenile court order(s), and any supporting evidence.  8 C.F.R. § 204.11(d).  The petitioner bears the burden of proof to establish his or her eligibility for SIJ classification.  8 U.S.C. § 1361.

The USCIS adjudications officer may request the petitioner to submit additional evidence if needed, to confirm the petitioner's eligibility.  8 C.F.R. § 103.2(b)(8); (AR 0717).  To allow petitioners an opportunity to address the officer's concerns, an officer will generally issue the petitioner a Request for Evidence ("RFE") or a Notice of Intent to Deny ("NOID") if the officer believes the evidence is insufficient to approve the petition.  8 C.F.R. § 103.2(b)(8)(iv); (AR 0717).  If a petitioner's SIJ petition is granted, the alien may seek to adjust his or her status to that of a lawful permanent resident through the adjudication of a Form I-485, Application to Register Permanent Residence or Adjust Status.  (AR 0716).

USCIS may also revoke an approved SIJ petition automatically as of the date of approval if, before USCIS issued its decision on the petitioner's adjustment application, the petitioner either: marries; is reunified with one or both parents in accordance with a juvenile court order that previously deemed reunification not viable; or the juvenile court reverses its prior determination that it would not be in the petitioner's best interest to be returned to his or her

---

2018 [Dkt. No. 46], and September 7, 2018 [Dkt. No. 74].

country of nationality.  (AR 0718 (citing 8 C.F.R. § 205.1)).  USCIS may also revoke an

approved SIJ petition "for good and sufficient cause" after providing the petitioner with a Notice

of Intent to Revoke ("NOIR") and giving the petitioner an opportunity to offer evidence

supporting the petition and opposing the grounds asserted by USCIS for revoking its prior

approval.  (AR 0718 (citing 8 C.F.R. § 205.2)).

Before November 1, 2016, petitions for SIJ classification were adjudicated at 87 USCIS

field offices nationwide (AR 0621).  The field office which adjudicated a petition was the one

with geographic jurisdiction over the individual petitioner's place of residence.  (AR 0621).  In

or around February 2015, USCIS began internal discussions regarding the need to centralize the

SIJ adjudications process to ensure that petitions were being adjudicated consistently and to

maintain the integrity of the SIJ program and process.  (AR 0621).  Lawyers and advocates for

SIJ petitions also informed the agency of their belief that SIJ petitions were being adjudicated

inconsistently between USCIS field offices (AR 625–26), and urged that SIJ adjudications be

centralized.  (AR 0621, 0633, 0646).

On December 11, 2015, the USCIS Ombudsman issued a report which noted

"inconsistencies in USCIS' adjudication of SIJ petitions, its application of legal principles, and

the factual evaluations that are conducted under its consent authority."  (AR 0642).  The

Ombudsman recommended that USCIS take several steps to improve the administration of the

SIJ program.  One recommended step was for USCIS to centralize the adjudication of SIJ-based

benefits to "improve the quality and consistency in adjudications by specially trained employees

dedicated to these and other petitions for protective and/or humanitarian relief."  (AR 0621,

0637-0639).  Another recommended step was for USCIS to provide supplemental training "to

ensure that adjudicators have the necessary resources to apply the law correctly and consistently."  (AR 0641).

On November 1, 2016, USCIS began to centralize the adjudication of SIJ petitions and SIJ-based Form I-485 applications at the National Benefits Center ("NBC") in Missouri to "allow USCIS to improve consistency in the SIJ Program" and to more efficiently monitor cases and processing times.  (AR 0621, 0650, 0655).  The centralized adjudications process was applied prospectively: NBC would adjudicate petitions received on or after November 1, 2016, while the USCIS field offices would adjudicate petitions that were still pending as of November 1, 2016.  (AR 0621, 0655).  In preparation for the NBC undertaking the adjudication of SIJ petitions, on July 1, 2016, USCIS trained NBC officers on the law, regulations and operational procedures regarding eligibility for SIJ classification.  (AR 0621, 0657–0701).

Additionally, on October 26, 2016, USCIS updated its United States Citizenship and Immigration Services Policy Manual ("Policy Manual"), which provided guidance in new chapters regarding SIJ classification and adjustment.  (AR 0622, 0703-0722).  *See also* https://www.uscis.gov/policymanual/Updates/20161026-SIJ-EB4Adjustment.pdf (USCIS Policy Alert dated October 26, 2016, announcing issuance of new guidance in Policy Manual regarding SIJ classification). The Policy Manual "contains the official policies of USCIS and must be followed by all USCIS officers in the performance of their duties."  *See generally,* USCIS Policy Manual, "About the Policy Manual," *available at* https://www.uscis.gov/policymanual/HTML/PolicyManual.html.  The Policy Manual clarified a number of eligibility requirements including: that the necessary court orders must be issued in accordance with relevant state child welfare laws (AR 0622, 0707–0708, 0713–0714); that the SIJ statute requires that juvenile court orders contain legal conclusions supported by a reasonable

11

factual basis (AR 0622, 0713–0714); and that for purposes of SIJ eligibility the state court must have jurisdiction over the petitioner's care and custody as a juvenile under state law (AR 0622, 0713).  The Policy Manual replaced the agency's former Adjudicator's Field Manual (AR 0622; *see also* Compl. Ex. 11 [Dkt. No. 1-11]), but did not alter the substantive guidance to adjudicators of the statutory eligibility requirements for SIJ status.  (AR 0622).

After SIJ adjudications were centralized at the NBC, both the NBC and the USCIS Field Office Directorate requested additional guidance from the USCIS Office of Chief Counsel ("OCC") regarding cases in which a state court's jurisdiction to make the necessary findings was based on guardianship appointments made for petitioners who had reached the age of majority, typically, petitioners between the ages of 18 and 21.  (AR 0622).  The NBC paused adjudication of such cases pending that guidance.  (AR 0622).  In response to that request, in February 2018, OCC issued guidance ("February 2018 Legal Guidance") consistent with the regulations and Policy Manual, which explained, among other things, that "[t]he evidence submitted must establish that the court had competent jurisdiction to make the required determinations about the care and custody of the petitioner, which includes parental reunification, as a juvenile."  (AR 0622, AR 0724–0725).  Following the guidance, USCIS revised its Consolidated Handbook of Adjudication Procedures ("CHAP"), a companion resource to the Policy Manual providing USCIS employees with procedures for implementing those policies. (AR 0622, 0727–0738).

## C.    USCIS's Consent Requirement and Standards Regarding the Validity of Juvenile Court Orders for SIJ Purposes

As stated above, the TVPRA requires the Secretary of Homeland Security to "consent" to the grant of SIJ classification, instead of "expressly consenting" to the juvenile court order.  Pub. L. 110-457, at § 235(d)(1)(B).  Pursuant to its authority under the INA, and as described in USCIS's October 2016 training materials and its Policy Manual, USCIS exercises its "consent"

authority by verifying whether SIJ petitions are *bona fide*, which means that neither the juvenile court order nor the administrative or judicial determination of the alien's best interest was sought primarily to obtain the status of an alien lawfully admitted for permanent residence, rather than to obtain relief from abuse or neglect.  (AR 0487, 0709) *(*citing 8 U.S.C. § 1101(a)(27)(J)(iii); H.R. Rep. No. 105-405, at 130 (1997)).

Under applicable law and regulations, to be eligible for SIJ status, a petitioner must provide an order or orders from a juvenile court in the United States which makes the following rulings: (1) "[d]eclares the petitioner dependent on the court, or legally commits or places the petitioner under the custody of either a state agency or department, or a person or entity appointed by a state or juvenile court"; (2) "[d]eclares, under the state child welfare law, that the petitioner cannot reunify with one or both of the petitioner's parents prior to aging out of the juvenile court's jurisdiction due to abuse, neglect, abandonment, or a similar basis under state law"; and (3) "[f]inds that it would not be in the petitioner's best interest to be returned (to a placement) in the petitioner's, or his or her parent's, country of nationality or last habitual residence." (AR 0707).

As a preliminary matter, the juvenile court must have competent jurisdiction under state law to make the requisite findings.  (AR 0708).  *See also* 8 C.F.R. §§ 204.11(c)(3), 204.11(d)(2)(ii).  As the Policy Manual states, "[t]here is nothing in USCIS guidance that should be construed as instructing juvenile courts on how to apply their own state law," but "[j]uvenile courts *should follow their state laws* on issues such as *when to exercise their authority*, evidentiary standards, and due process."  (AR 0714) (emphasis added).  "Template orders that simply recite the immigration statute or regulatory language are generally not sufficient" for purposes of establishing SIJ eligibility.  (AR 0714).  Juvenile court orders should use language

establishing that the courts' findings (*i.e.,* conclusions of law) were made under state law and have the required legal meaning (AR 0714).

A juvenile court's determination that parental reunification is no longer viable is a legal conclusion made in accordance with relevant state child welfare laws, that the SIJ petitioner cannot reunify with one or both parents before aging out of the juvenile court's jurisdiction. 8 U.S.C. § 1101(a)(27)(J)(i); 8 C.F.R. § 204.11(a) ("eligible for long-term foster care means that a determination has been made by the juvenile court that family reunification is no longer a viable option") (AR 0707, 0724, 0728). Thus, for a juvenile court to have the requisite authority to determine whether family reunification is viable, the juvenile court must necessarily have the jurisdiction to determine whether one or both parents will be able to regain custody of the petitioner. (AR 0724, 0728). Accordingly, for a juvenile court order to be valid for the purpose of establishing SIJ eligibility, the juvenile court must have the power and authority to determine: (a) whether a parent could regain custody over the petitioner; and (b) to order reunification with the petitioner, if warranted. *See* 8 C.F.R. § 204.11(a); 8 C.F.R. § 204.11(d)(2)(i) (requiring a "juvenile court order, issued by a court of competent jurisdiction . . . showing that the court has found the beneficiary to be dependent upon that court"); 8 C.F.R. § 204.11(d)(2)(ii) (requiring a "juvenile court order, issued by a court of competent jurisdiction . . . showing that the court has found the beneficiary eligible for long-term foster care") (AR 0707–0708).

## D.     Principles of Federal and New York State Child Welfare Law

Because the statutory and regulatory text relating to SIJ classification incorporates and intersects with child welfare law and concepts at the federal and state level relating to the viability of family relationships and the best interests of children, *see* 8 U.S.C. § 1101(a)(27)(J)(i)–(ii); 8 C.F.R. § 204.11(c)(6), (d)(iii), a summary of those relevant legal principles is provided below for the Court's guidance.

14

The Constitution recognizes that parents have a fundamental right to raise their children. *See Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925); *Prince v. Commonwealth of Mass.*, 321 U.S. 158, 166 (1944) ("the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder").  Under the principle of *parens patriae*, however, the government can intervene in the parent-child relationship when parents fail to provide proper care.  *Troxel v. Granville*, 530 U.S. 57, 88 (2000); *Stanley v. Ill.*, 405 U.S. 645, 651 (1971).  In 1912, the federal government established the Children's Bureau in the U.S. Department of Health and Human Services to guide federal programs to support state child welfare programs.  42 U.S.C. § 191. *See also* John G. Myers, *Golden Anniversary Issue: A Short History of Child Protection in America*, 42 Fam. L.Q. 449, 451 (2008).  To obtain federal funding for their child welfare programs, each state must comply with federal requirements in the Social Security Act.  *See* Department of Health and Human Services, *Major Federal Legislation Concerned With Child Protection, Child Welfare, and Adoption* (March 2015), available at https://www.childwelfare.gov/pubpdfs/majorfedlegis.pdf.

Overall, Congress has encouraged a national policy to strengthen families to prevent child abuse and neglect, and to promote reunification of families where appropriate.  For example, under federal child welfare law, within 30 days after a state agency has removed a child from the custody of his or her parent or parents, the state is required to exercise due diligence to identify and provide notice to all adult grandparents, all parents of a sibling of the child, and other adult relatives of the child; there are no exceptions in the statute for relatives living outside the United States.  42 U.S.C. § 671(a)(29).  Federal child welfare law also requires children in state foster care to have a case plan that includes services for the parents, child, and foster

parents to improve the conditions in the parents' home and facilitate the return of the child to his own safe home, or the permanent placement of the child outside the parent's home. *Id*. § 675. Under federal law, the appropriate state agency must make "reasonable efforts . . . to preserve and reunify families." *Id.* § 671(a)(15)(B).

Federal child welfare law also recognizes limited circumstances in which reasonable efforts are not required to reunify the child and family, for example, where a court of competent jurisdiction has determined that the parent has subjected the child to aggravated circumstances which may include, but are not limited to, abandonment, torture, chronic abuse, and sexual abuse. *Id.* § 671(a)(15)(D). Where reunification with a parent or parents is not appropriate, one alternative permanency option is legal guardianship, which refers to a "judicially-created relationship between a child and caretaker that is intended to be permanent and self-sustaining, as evidenced by the transfer to the caretaker of the following parental rights with respect to the child: protection, education, care and control of the person, custody of the person, and decision-making." 45 C.F.R. § 1355.20(a).

In New York, the Family Court is the forum for dependency cases, and adjudicates matters involving adoptions, child protection matters, custody and visitation determinations, delinquency proceedings, family offense matters, guardianships, and termination of parental rights. N.Y. Fam. Ct. Act § 115.[6]  Child protection proceedings in New York are governed by

---

[6] Plaintiffs' preliminary injunction motion argues that the New York Family Court has the authority to issue dependency orders for purposes of establishing SIJ eligibility (*see* Pls.' PI Br. at 22–23), in response to certain RFEs in the Administrative Records which asked petitioners to "cite or reference" the state law under which required dependency findings were made (AR 903–905). USCIS agrees that under New York law, a guardianship order issued by the Family Court is a dependency order and concedes that any RFEs seeking evidence on the question of dependency were in error (AR 0735).  However, USCIS still takes the position that, regardless of the juvenile court's dependency determination, the juvenile court must also have jurisdiction

Article 10 of the New York Family Court Act, which, is "designed to provide a due process of

law for determining when the state, through its family court, may intervene against the wishes of

a parent on behalf of a child so that his needs are properly met."  N.Y. Fam. Ct. Act § 1011.

Proceedings under Article 10 are commenced with the filing of a petition containing sufficient

facts to establish that a "child"—defined as being under the age of 18— has been "abused,"

"neglected," or "severely or repeatedly abused," as those terms are defined by law.  *See id.*

§ 1012(a), (b), (e), (f), (j); N.Y. Soc. Serv. Law § 384-b(2) (defining "abused child" as a person

under the age of 18).   After a fact-finding hearing in which the court determines that the child

has been abused or neglected, N.Y. Family Ct. Act § 1044, and other proceedings, the Family

Court will issue a dispositional order which may include placement in a foster home, group

home, or a guardianship.  *Id.* §§ 1055, 1055-b, 1057.  Juveniles who were in foster care pursuant

to an Article 10 proceeding may remain or return to care between the ages of 18 and 21, *id.*

§§ 1089, 1091, or the Family Court may order that a juvenile in a child protective proceeding be

placed in the custody of a relative or other appropriate person, with the child's consent, if the

child is 18 or over.  *Id.* § 1055(e), 1055-b(e).[7]

---

over parental "custody" to establish SIJ eligibility, and that the named Plaintiffs' orders did not
establish that the juvenile courts had jurisdiction to make custody determinations in their
circumstances.  *See supra* at Statement of Facts, §§ C, E.

[7] Section 202 of the federal Fostering Connections to Success and Increasing Adoptions
Act of 2008, Pub. L. No. 110-351, 122 Stat. 3949, included requirements for developing a
transition plan for youth 18 or older exiting foster care.  *See* New York State Office of Children
and Family Services Administrative Directive: Transition Planning with Youth for a Successful
Discharge, *available at* https://ocfs.ny.gov/main/policies/external/OCFS_2015/ADMs/15-OCFS-
ADM-
20%20%20Transition%20Planning%20with%20Youth%20for%20a%20Successful%20Discharg
e.pdf.

In New York, a guardianship is generally understood to be a legal arrangement where a court gives a person the legal right to make decisions for a person who is unable to make decisions for themselves, such as a child, an incapacitated adult, or someone who is development disabled.  *See, e.g., Guardianship Basics,* available at https://nycourts.gov/courthelp/Guardianship/basics.html.  Guardianship cases are heard in Family Court, Surrogate's Court, or Supreme Court guardianship proceedings, depending on who the ward is and the type of needs the guardianship is for.  *Id.*  A legal guardian of a child has the same power as a parent to make decisions for the child.  N.Y. Fam. Ct. Act § 657(c).  However, a parent loses the legal ability to make decisions on behalf of a child once the child attains the age of 18.  *In re Agam B.*, 996 N.Y.S.2d 632, 632 (2d Dep't 2014).

In New York, 18 is the age of majority.  N.Y. Dom. Rel. L. § 2; *see also* N.Y. Gen. Oblig. L. § 3-101 (contracts cannot be disaffirmed by persons 18 years or older on the ground of infancy); N.Y. Pub. Health § 2504 (persons 18 years or older may give effective consent for medical services).  Accordingly,  under New York state law relating to child abuse and neglect, "the ability of a parent to challenge the court's placement of the child outside of his or her own custody generally ends when the child becomes 18 years of age."  (AR 0728); *see, e.g., In re Shontae R.*, 852 N.Y.S.2d 473, 473 (3d Dep't 2008) (dismissing as moot a mother's appeal of a Family Court order extending the county social services department's placement of her child outside of the home due to neglect, where child turned 18 during the pendency of the appeal); *In re Michael O.F.*, 989 N.Y.S.2d 343, 343 (2d Dep't 2014) (dismissing as moot mother's appeal from Family Court orders refusing to vacate child placement orders issued after a finding of neglect, in part because one child turned 18 during the pendency of the appeal).  The same holds true in general custody proceedings that do not involve allegations of abuse and neglect; in those

18

cases, parents are still unable to obtain custody or pursue court-ordered visitation after their child turns 18.  (AR 0728; 0724); *see also Julian B. v. Williams*, 948 N.Y.S.2d 399, 399 (2d Dep't 2012) (father's appeal of family court order granting mother's petition for sole custody of the couple's children was moot as it pertained to one child who turned 18 during the pendency of the appeal, because "she is no longer subject to the order appealed from"); *De Oliveria v. De Oliveria*, 54 N.Y.S.3d 592, 592 (2d Dep't 2017) (dismissing father's appeal from Family Court order denying his petition for visitation with his daughters, since both daughters are over 18 years of age).

In 2008, the New York State legislature amended New York Family Court Act § 661 to extend guardianships to juveniles between the ages of 18 to 21, so long as the child consented to the guardianship placement.  *See* N.Y. Bill Jacket, A.B. 8358, 231st Leg., 2008 Reg. Sess., Ch. 404 (N.Y. 2008) [ECF No. 19-3].  Section 661(a) of the Family Court Act  provides generally that: "[f]or purposes of appointment of a guardian of the person pursuant to this part, the terms infant or minor shall include a person who is less than twenty-one years old who consents to the appointment or continuation of a guardian after the age of eighteen."  N.Y. Fam. Ct. Act § 661(a).

Section 661(b) of the New York Family Court Act, read together with section 661(a), extends the Family Court's authority to enter guardianship orders to consenting individuals between the ages of 18 and 21, but only if he or she was the subject of certain child protective or abandonment proceedings that were commenced when he or she was under 18.  Thus, under section 661(b), a family court that had exercised jurisdiction over a child who was, prior to the age of 18: (i) in neglect proceedings authorized under N.Y. Fam. Ct. Act § 614(1); (ii) placed in foster care in accordance with N.Y. Soc. Serv. L. § 383-C; or (iii) appointed a guardian under

N.Y. Soc. Serv. L. § 384, may continue to exercise jurisdiction over such a child between the ages of 18 through 21 for the purpose of entering a guardianship order.  Notably, however, section 661(b) does not authorize a family court to enter a guardianship order for 18 to 21 year olds who had not been subject to any of the foregoing types of proceedings before the age of 18.

## E.   Factual Background

### 1.   R.F.M.

R.F.M. was born in the Dominican Republic in 1998 (AR 0293).  In September 1998, when she was 8 months old, she was sent to live with her grandmother in Bronx County, New York, and has continued to live in New York City.  (AR 093; Am. Compl ¶¶ 9, 83).  She was never in the state child welfare system.  On or about February 23, 2017, when she was 19 years old, R.F.M. filed a Form I-360 seeking SIJ classification.  (AR 0291–309, 316).  In support of her SIJ petition, R.F.M. submitted a guardianship order issued by a Bronx Family Court referee on February 15, 2017, appointing R.F.M.'s grandmother as her guardian (AR 0313–314; Am. Compl ¶ 87), and a "Special Findings Order" issued by the same referee on the same date (AR 0311–312).  In addition to finding that R.F.M. was under 21 years of age, unmarried, and that it was not in her best interest to be returned to the Dominican Republic, the Special Findings Order made the following findings "in accordance with 8 U.S.C. § 1101(a)(27)(J) and New York State law, including the Family Court Act, Surrogate Court Procedure Act, and Social Services Law, and NY state case law":

- The above-named child is dependent upon the Family Court by virtue of the appointment of a guardian of the person for her.
- Reunification with her father is not viable due to abandonment under New York law because: (a) Her father has failed to have any contact with the child for the past approximately three years.  He has failed to financially provide for or meaningfully plan for the child's health, education, future, or well-being for since the child was an infant.  The child has never met her father in person.  His whereabouts are unknown.

- Reunification with the child's mother is not viable due to neglect under New York law because: (a) the mother failed to provide proper guardianship to the child by making hurtful comments, including telling the child that it was her fault that she had been sexually assaulted, such that the child's mental health was detrimentally affected.

(AR 0311).

On August 11, 2017, USCIS issued an RFE which stated that, as defined in 8 C.F.R.

§ 204.11(a) and in the USCIS Policy Manual, Volume 6, Part J, Chapter 2D (AR 0707):

> A juvenile court is defined as a U.S. court having jurisdiction under state law to make judicial determinations about the custody and care of juveniles.  The juvenile court order must have been properly issued under state law to be valid for the purposes of establishing eligibility for SIJ classification.  This includes the need for the juvenile court to follow their state laws on jurisdiction.

(AR 0339).  The RFE accordingly requested "evidence that the court order you submitted was issued by a juvenile court with jurisdiction over your care and custody as a juvenile under the state law of New York."  (AR 0339–340).  On or about November 2, 2017, R.F.M. submitted to USCIS, among other things, a written response from her attorney, an amended Bronx Family Court Special Findings Order dated October 19, 2017 that was issued *nunc pro tunc* to February 15, 2017, the "Expert Affidavit of The Hon. Gail A. Prudenti," dated August 8, 2017 ("Prudenti Affidavit"), and copies of state statutes.  (AR 0330–0375).

R.F.M.'s amended Special Findings Order made the following findings, in relevant part:

- The above-named child is dependent upon the Family Court by virtue of the appointment of a guardian of the person for her.
- The Family Court is a court which has jurisdiction to make judicial determinations about the custody and care of minors, which includes juveniles up to the age of 21.  N.Y. Surr. Ct. Proc. Act § 103(27); N.Y. Fam. Ct. Act  § 661(a).  This Court took jurisdiction as juvenile court over the petition for guardianship of the person of the subject child, pursuant to N.Y. Fam. Ct. Act § 115(c), and upon the child's consent, pursuant to N.Y. Fam. Ct. Act § 661(a) and N.Y. Surr. Ct. Proc. Act § 103(27).  On January 31, 2017 a final order of guardianship of the person was issued to [R.F.M.'s grandmother] pursuant to N.Y. Fam. Ct. Act § 661 and N.Y. Surr. Ct. Proc. Act § 1707.  As a result, the subject child is declared

21

> dependent on the Family Court. *Matter of Antowa McD*, 856 N.Y.S.2d
> 576 (1st Dep't 2008); *Matter of Trudy-Ann W. v. Joan W.*, 901 N.Y.S.2d
> 296 (2d Dep't 2010)[;] N.Y. Fam. Ct. Act § 141.

> • Reunification with . . . [R.F.M.'s father] is not viable due to abandonment.
> The child's father has failed to have any contact with the child for the past
> approximately three years. He has failed to financially provide for or
> meaningfully plan for the child's health, education, future, or well-being
> for since the child was an infant. The child has never met her father in
> person. His whereabouts are unknown. N.Y. Soc. Serv. L. § 384-b(5).

> • Reunification with  . . . [R.F.M.'s mother] is not viable due to neglect.
> The child's mother failed to provide proper guardianship to the child by
> making hurtful comments, including telling the child that it was her fault
> that she had been sexually assaulted, such that the child's mental health
> was detrimentally affected. N.Y. Fam. Ct. Act § 1012(f)(i)(B).

(AR 0343).

R.F.M.'s letter brief argued that: (1) the New York Family Courts qualify as a "juvenile court" within the meaning of 8 C.F.R. § 204.11(a); (2) USCIS's request that R.F.M. "prove that the juvenile court had jurisdiction over her care and custody 'as a juvenile' was "improper" and *ultra vires* because it "creates an additional requirement for SIJ applicants which was explicitly eliminated in the regulations"; and (3) even assuming *arguendo* that USCIS's request was proper, the New York Family Courts regularly exercise jurisdiction over children between the ages of 18 through 21. (AR 0332–338). The accompanying Prudenti Affidavit stated, in relevant part, that under New York law: "children in foster care and children in guardianship matters fall under the Family Court's jurisdiction until they turn 21" (AR 0352) (citing, *inter alia*, N.Y. Fam. Ct. Act §§ 661, 1055(e), 1087(a)); that guardianship proceedings in New York "directly concern issues of custody, protection and caretaking of minors," *id.* (citing N.Y. Fam. Ct. Act § 657(c)); that state courts have a "role in issuing findings relevant" to SIJ (AR 0353); and findings in Special Findings Orders derive from state law—*e.g.,* "abuse" (N.Y. Fam. Ct. Act § 1012(e)), "neglect" (N.Y. Fam. Ct. Act § 1012(f)), and "abandonment" (N.Y. Fam. Ct. Act § 384b-5) (AR 0355).

On March 15, 2018, USCIS denied R.F.M.'s petition, on the ground that she had failed to establish her eligibility to be classified as a SIJ in accordance with agency regulations. (AR 0143–148). Citing N.Y. Fam. Ct. Act §§ 119(c), 651, USCIS stated that New York "family court lack jurisdiction over the person's custody" once an individual turns 18. (AR 0144–145). The denial also provided that "[g]uardianship by consent of an individual between the ages of 18 and 21 is not equivalent to the custody of a child even though" New York law permits guardians to be appointed for a person up to the age of 21, because under 8 C.F.R. § 204.11(a), a state court "must have jurisdiction under state law over both 'the custody and care' of the SIJ petitioner as a juvenile to be considered a juvenile court." (AR 0145). R.F.M. appealed the decision to the Administrative Appeals Office of USCIS on or about April 16, 2018 (AR 0111–0279), but withdrew her appeal on May 24, 2018 (AR 0099).

2.    T.D.

T.D. was born in 1997 in Haiti, and came to the United States in May 2012, when she was 15 years old. (AR 0526). T.D.'s mother passed away in 2015 (Am. Compl. ¶ 95). T.D. attended and graduated from high school, where she developed a close relationship with her assistant principal, I.L. (Am. Compl. ¶¶ 96-97). She was never in the state child welfare system. On or about November 16, 2016, when T.D. was 19 years old, T.D. filed a Form I-360 seeking classification as a SIJ (AR 0524–587). T.D. filed with her petition two orders issued by a judge in the Family Court of the State of New York, Bronx County: (1) an order issued on October 18, 2016, under N.Y. Family Court Act § 661 and N.Y. Surr. Ct. Proc. Act § 1707 appointing I.L. as her guardian until T.D. reached the age of 21 (AR 0544; Am. Compl. ¶ 98); and (2) a Special Findings Order dated October 31, 2016 (AR 0543). In addition to finding that T.D. was under 21 years of age, a citizen of Haiti, and unmarried, and that it was not in T.D.'s best interest to be returned to Haiti, the Special Findings Order made the following findings "in accordance with 8

23

U.S.C. § 1101(a)(27)(J)":

- T.D. was "dependent upon the Family Court, or has been committed to or placed in the custody of a state agency or department, or an individual or entity appointed by the state or Family Court."
- Reunification with T.D.'s mother was "not viable due to . . . neglect; abandonment; and/or a similar basis under New York law" because: [T.D.'s] mother died in 2015.  Prior to her death she failed to plan for her child and provide her with meaningful financial or emotional support."
- Reunification with T.D.'s father was "not viable due to . . . neglect; abandonment; and/or a similar basis under New York law because [T.D.'s] father has failed to plan for his child, oversee her medical care, and provide any emotional or financial support since 2012.  He likewise failed to provide food, clothing, and shelter since that time.  Prior to that date he permitted her to be beaten at home."

(AR 0543).

On March 17, 2017, USCIS issued an RFE, which noted that the Special Findings Order made it "unclear if the Court relied upon state law" in finding that T.D.'s reunification with one or both of her  parents was not viable due to abuse, neglect, abandonment, or a similar basis under state law, because it "cites to provisions of 8 U.S.C. § 1101(a)(27)(J)."  (AR 0588).  The RFE also stated that the family court order "should use language establishing that the specific findings (conclusions of law) were made under state law," and "should not just mirror or cite to immigration law and regulations." (AR 0589, 0714).  The RFE therefore requested, among other things, "a copy of a juvenile court order that establishes the Court's conclusions of law derive from relevant state law(s) and does not merely mirror or cite to federal immigration law and/or regulations," or in the alternative, "any supporting documents contained in the court order that specifically demonstrate the Court's findings were based upon state law."  (AR 0589).

By letter response dated May 10, 2017 (AR 0594), T.D. submitted an amended Special Findings Order dated May 4, 2017 (AR 0595), which contained the same factual findings in the first Special Findings Order, but added that its findings were now based "in accordance with 8

24

U.S.C. § 1101(a)(27)(J), N.Y. Fam. Ct. Act § 661 and N.Y. Surr. Ct. Proc. Act § 1701, and

Article 6 of the Family Court Act [and] Social Services Law":

- Pursuant to Article 6 of the: Family Court . . . .the above-named child: is dependent upon the Family Court . . .

- (a) Reunification with [T.D.'s mother] is not viable due to . . . neglect [and] abandonment; and/or a similar basis under New York law (New York Social Services Law § 384-b and *Matter of Luis R. v. Maria Elena G.*, 990 N.Y.S.2d 851 (2d Dep't 2014) because [T.D.'s] mother died in 2015.  Prior to her death she failed to plan for her child and provide her with meaningful financial or emotional support.

- (b) Reunification with [T.D.'s father] is not viable due to . . . neglect; abandonment; and or a similar basis under new York law (New York Social Services Law § 384-b) because: [T.D.'s] father has failed to plan for his child, oversee her medical care, and provide any emotional or financial support since 2012.  He likewise failed to provide food, clothing, and shelter since that time.  Prior to that date he permitted her to be beaten at home.

(AR 0595).

On June 10, 2017, USCIS issued a second RFE (AR 0596–0597), requesting, *inter alia*, "evidence that the court order you submitted was issued by a juvenile court with jurisdiction over your care and custody as a juvenile under the state law of New York."  (AR 0597).  T.D. provided a letter response dated August 31, 2017 (AR 0602–0617), which raised arguments similar to those as R.F.M.'s (*see* AR 0332–338).  The response also attached a copy of the Prudenti Affidavit (AR 0610–616).  The response further attached a letter dated August 29, 2017 from Harry Gelb, Esq. of the New York City Administration for Children Services ("ACS") ("Gelb Letter") (AR 0617–618).  The Gelb Letter represented that children in New York are permitted to remain in foster care with ACS or similar agencies in other counties until their 21st birthday "under  the continuing jurisdiction of New York Family Court," as authorized by N.Y. Family Court Act §§ 355.3, 355.5, 756-a, 1086, 1087, 1088, and 1089; 18 N.Y. Comp. Codes R. & Regs. §§ 427.2; and 22 N.Y. Comp. Codes R. & Reg. § 205.17.  (AR 0617).

 T.D. also submitted an second amended Special Findings Order dated August 24, 2017, which was virtually identical to the first amended Special Findings Order, except for the following paragraph: "The Family Court, a juvenile court which took jurisdiction over the child pursuant to § 661 and § 115 of the Family Court Act to render decisions over her care and custody, finds the child is dependent upon the Family Court, and has been placed in the guardianship of an individual, [I.L.], appointed by the Family Court."  (AR 0609).

On March 13, 2018, USCIS denied T.D.'s petition on the grounds that: (1) although New York family courts have jurisdiction to determine the "custody or visitation of minors," in the context of custody proceedings, "the term 'infant' or 'minor' means a person who has not attained the age of eighteen years" (citing N.Y. Family Court Act §§ 119(c), 651); (2) although the Special Findings Orders "show that the court had jurisdiction to appoint a guardian for you pursuant to your consent, the record does not show that the court had jurisdiction over your custody as a juvenile"; and (3) under 8 U.S.C. § 1101(a)(27)(i) and 8 C.F.R. §204.11(a), a juvenile court is a "court with jurisdiction over both the 'custody and care' of the petitioner, and the "court must still have jurisdiction over a petitioner's custody as a juvenile" to qualify (AR 0514–0519).

   3.   S.W.

S.W. was born in Jamaica in 1998, and entered the United States in August 2005, when she was 7 years old.  (AR 0430).  She has never been in the state child welfare system.  On or about November 8, 2016, when she was 18 years old, S.W. filed a Form I-360 petition seeking classification as a SIJ.  (AR 0442, 0450).  S.W. filed with her petition two orders issued by a referee with the Family Court of the State of New York, Bronx County on October 3, 2016: (1) an order issued under N.Y. Family Court Act § 661 and N.Y. Surrogate's Court Procedure Act § 1764 appointing S.W.'s uncle as her guardian until S.W. reached the age of 21 (AR 0448–

0449; Am. Compl. ¶ 112); and (2) a Special Findings Order (AR 0447). In addition to

determining that S.W. was under 21 years of age and unmarried, and that it would not be in her

best interest to be returned to Jamaica, the Special Findings Order made the following findings

"in accordance with 8 U.S.C. § 1101(a)(27)(J)":

- S.W. was "dependent upon the Family Court, or has been committed to or placed in the custody of a state agency or department, or an individual or entity appointed by the state or Family Court."

- Reunification with one or both of S.W.'s parents was "not viable due to . . . abandonment . . . because: [S.W.'s] *mother and father have both demonstrated their intent to forgo their parental rights and responsibilities with respect to [S.W.] since she was a small child.*"

(AR 0447) (emphasis in original).

On March 29, 2017, USCIS issued an RFE, which requested, among other things,

"documentation to establish a reasonable factual basis for the court's findings" in the Special

Findings Order, and "evidence [that] the order was issued in accordance with relevant state law."

(AR 0455–457). By letter dated June 12, 2017, S.W. responded to the RFE by submitting a brief

that she had filed with the Family Court, and argued in a separate letter brief to USCIS that the

Family Court had properly determined that reunification with S.W.'s parents was not viable due

to abandonment, pursuant to N.Y. Social Services Law § 384-b. (AR 0462–0485).

On June 27, 2017, USCIS issued a second RFE, requesting evidence that S.W. had "been

placed under the custody of an individual," and that "the court order . . . was issued by a juvenile

court with jurisdiction over [S.W.'s] care and custody as a juvenile under the state law of New

York." (AR 0486–0487). By letter dated September 5, 2017, S.W. responded to the second RFE

with a letter brief that raised arguments similar to those advanced by R.F.M. (*see* AR 0492–

0497; AR 0332–338). S.W. also submitted a copy of the Prudenti Affidavit. (AR 00500–0506).

On March 6, 2018, USCIS denied S.W.'s SIJ petition, finding that S.W. had failed to

establish her eligibility to classified as a special immigrant juvenile in accordance with 8 U.S.C.

§ 1101(a)(27)(J)(i) and 8 C.F.R. § 204.11(a).  (AR 0389–0392).  Specifically, USCIS found that

S.W. had failed to meet her burden of showing that the Special Findings Order was issued by a

court with competent jurisdiction to make decisions about her custody and care as a juvenile

under state law, because the New York Family Court lacks "jurisdiction over the person's

custody" after the age of 18 (AR 0391).  USCIS acknowledged that the New York Family Court

had jurisdiction to appoint a guardian for S.W. with her consent, but stated the Family Court still

lacked jurisdiction "over [her] custody as a juvenile" because she was over the age of 18 (AR

0391).  On April 3, 2018, S.W. appealed the denial to the Administrative Appeals Office of

USCIS (AR 0383–0385), but withdrew the appeal on or about May 24, 2018 (AR 0377–0382).

    4.   <u>D.A.F.A.</u>

D.A.F.A. was born in El Salvador in 1998, and entered the United States in November

2015 when he was 17 years old to reunite with his mother, who had already moved to the United

States.  (Am. Compl. ¶¶ 119, 124; AR 0051).  He has never been in the state child welfare

system.  On or about March 2, 2017, when he was 18 years old,  D.A.F.A. submitted a Form I-

360 petition to USCIS seeking classification as a SIJ. (AR 0049–67, 73).  D.A.F.A. filed with his

petition two orders issued by judge in the Family Court of the State of New York, Suffolk

County on February 21, 2017: (1) an order issued under N.Y. Family Court Act § 661 and

S.C.P.A. § 1707  appointing D.A.F.A.'s mother as his guardian until he reached the age of 21

(AR 0071); and (2) a Special Findings Order (AR 0072).  In addition to determining that

D.A.F.A. was under 21 years of age and unmarried and that it would not be in his best interest to

be returned to El Salvador, the Special Findings Order made the following findings "in

accordance with 8 U.S.C. § 1101(a)(27)(J) and § 661 of the Family Court Act":

    • Pursuant to § 661 of the Family Court Act, [D.A.F.A.] is dependent upon

the Family Court [and] has been placed in the guardianship of an
individual or entity appointed by the state or Family Court.

- Reunifications with the following parent: [D.A.F.A.'s father] is not viable
  due to . . . neglect . . . abandonment . . . because: The child's father failed
  to support and maintain regular contact with the child for most of his life.

(AR 0086).

On August 15, 2017, USCIS issued D.A.F.A. a RFE, which, *inter alia*: (1) stated that the

Special Findings Order "cites to provisions of the federal law, 8 U.S.C. § 1101(a)(27)(J)" which

made it "unclear if the Court relied upon state law in reaching its findings that . . . reunification

with your father is not viable due to abandonment and . . . it is not in your best interest to return

to [El Salvador]"; (2) asked for evidence that the Special Findings Order was "issued in

accordance with relevant state law"; and (3) asked for evidence "that the court order you

submitted was issued by a juvenile court with jurisdiction over your care and custody as a

juvenile under the state law of New York."  (AR 0090–91).

On October 20, 2017, in response to the RFE, D.A.F.A. submitted a memorandum of law

with supporting exhibits (AR 0077–86).  D.A.F.A.'s letter brief raised arguments similar to those

as R.F.M.'s (*see* AR 0077–0082, 0332–338), and like S.W., argued that the Family Court had

properly determined that reunification with his father was not viable due to abandonment and

neglect, pursuant to N.Y. Soc. Serv. L. § 384-b, and N.Y. Fam. Ct. Act § 1012(f)(ii).  (AR 0081).

On March 7, 2018, USCIS denied D.A.F.A.'s Form I-360 petition (AR 0024–29) on the grounds

that "there is insufficient evidence to conclude that the order was issued by a juvenile court"

because D.A.F.A. was 18 years old when his family court orders were issued. (AR 0025).

D.A.F.A. appealed the denial to the Administrative Appeals Office of USCIS on or about April

2, 2018 (AR 0002), but subsequently withdrew his appeal (AR 0001).

5.   <u>O.M.S.</u>

O.M.S. was born in Mexico in 1997.  (AR 859).  She entered the United States in May

2002, when she was four years old, to reunite with her parents, who had already moved to the

United States without her.  (AR 859; Am. Compl. ¶ 135).  O.M.S. alleges that her mother

obtained custody of her when she was 9 years old.  (Am. Compl. ¶ 143).  She has never been in

the state child welfare system.  On or about January 9, 2017, when she was 19 years old, O.M.S.

submitted a Form I-360 petition to USCIS seeking classification as a SIJ.  (AR 857–883).

O.M.S. filed with her petition two orders issued by the Family Court of the State of New York,

Bronx County on December 6, 2016: (1) an order issued under N.Y. Fam. Ct. Act § 661 and

N.Y. Surr. Ct. Proc. Act § 1764 appointing O.M.S.'s mother as her guardian until she reached the

age of 21 (AR 880–82); and (2) a Special Findings Order (AR 879).  In addition to determining

that O.M.S. was under 21 years of age and unmarried, and that it was not in her best interest to

be returned to Mexico, the Special Findings Order made the following findings "in accordance

with 8 U.S.C. § 1101(a)(27)(J) and relevant New York state law":

- The above-named child is dependent upon the Family Court, or has been committed to or placed in the custody of a state agency or department, or an individual or entity appointed by the state of Family Court.

- Reunification with the above-named child's father . . . is not viable in accordance with relevant New York state law due to . . . abuse; neglect; abandonment . . . because: [O.M.S.'s father] misused alcohol to the extent of losing self-control in [her] presence, acted violently against her mother and put [O.M.S.] at risk of harm.  He exposed [O.M.S.] to domestic violence against her mother when he hit her mother leaving bruises on her body.  He also violently pulled [O.M.S.] by her hair and ears.  He has not consistently provided food, clothing, shelter or other monetary support.  He has not initiated visits or communication with [O.M.S.] since approximately November of 2015.

(AR 879).

On August 14, 2017, USCIS issued O.M.S. a RFE, asking O.M.S. to: "provide evidence

30

that the court order you submitted was issued by a juvenile court with jurisdiction over your care and custody as a juvenile under the state law of New York"; provide evidence that that she had "been placed under the custody of an individual"; and provide a copy of "a juvenile court order that specifically cites or references state law(s) under which the dependency or custody, non-viability of parental reunification and best interest findings were made," because the Special Findings Order did not "specifically cite or reference [any] state law(s) under which the [required findings] for dependency or custody, non-viability of parental reunification and best interest findings were made."  (AR 903–905).

On October 24, 2017 (AR 884) and October 30, 2017 (AR 909), O.M.S. mailed two responses to the RFE, which included: (1) an Amended Special Findings Order dated October 3, 2017 (AR 891–892); (2) a letter brief (AR 885–890, 910–915); (3) the Prudenti Affidavit (AR 893–899); and (4) the Gelb Letter (AR 900–901).  This time, the Amended Special Findings Order purported to make certain findings "in accordance with 8 U.S.C. § 1101(a)(27)(J), New York Family Court Act § 661 and Surrogate's Court Procedure Act § 1701":

- The Family Court, a juvenile court which has jurisdiction over minors up to the age of 21 pursuant to the New York Family Court Act § 661, took jurisdiction over the above-named child pursuant to the New York Family Court Act § 661 and § 115 to render decisions over her care and custody. The above-named child is dependent upon the Family Court, and has been placed in the guardianship of an individual, [O.M.S.'s mother], appointed by the Family Court.  *See also Matter of Trudy-Ann W.*, 901 N.Y.S.2d 296 (2d Dep't 2010); *Matter of Antowa McD.*, 856 N.Y.S.2d 576, 577 (1st Dep't 2008).

- Reunification with the above-named child's father . . . is not viable in accordance with relevant New York state law, including New York Family Court Act § 1012(e)-(f) and New York Social Services Law § 384(b)(5)(a), due to . . . abuse; neglect; abandonment . . . because: [O.M.S.'s father] misused alcohol to the extent of losing self-control in [her] presence, acted violently against her mother and put [O.M.S.] at risk of harm.  He exposed [O.M.S.] to domestic violence against her mother when he hit her mother leaving bruises on her body.  He also violently pulled [O.M.S.] by her hair and ears.  He has not consistently provided

food, clothing, shelter or other monetary support.  He has not initiated
visits or communication with [O.M.S.] since approximately November of
2015.

AR 916–917.

On June 22, 2018, USCIS denied O.M.S.'s petition.  (AR 830–834).  The denial letter

stated that: "[a]lthough you have presented evidence that a court placed you in a guardianship

with your consent, because you had already reached the age of majority in the state of New

York, there is no evidence that the state court had jurisdiction under New York state law to make

a legal conclusion about returning you to your parents' custody."  (AR 832).  The denial letter

also stated that "[t]he language in the order appears to be a factual determination that

reunification was not practical, rather than a legal conclusion under the relevant state child

welfare law that you cannot reunify with one or both of your parents and appears to be based

upon the court taking jurisdiction by relying on the immigration law definition of a child."  (AR

832).  On or about July 21, 2018, O.M.S. filed a motion to reopen and a motion to reconsider the

USCIS denial on or about July 18, 2018 (AR 791–795, 829), which are still pending.

## ARGUMENT

## I.   PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED

### A.   Legal Standard

As an "extraordinary remedy," a preliminary injunction is "never awarded as of right."

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008).  Generally, the district

court may grant a preliminary injunction "if the moving party establishes (1) irreparable harm

and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going

to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships

tipping decidedly in favor of the moving party."  *Lynch v. City of New York*, 589 F.3d 94, 98 (2d

Cir. 2009) (quoting *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir. 1989)).

"However, when a party seeks an injunction that will affect governmental action taken in the

public interest pursuant to a statutory or regulatory scheme," like here, "the plaintiff must

typically show a likelihood of success on the merits—a serious question going to the merits is

usually insufficient, even if the balance of hardships tips decidedly in the applicant's favor."

*Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (citing *Monserrate v. N.Y. State

Senate*, 599 F.3d 148, 154 (2d Cir. 2010); *NAACP v. East Haven*, 70 F.3d 219, 223 (2d Cir.

1995)).

**B.    Plaintiffs Have Failed to Show a Likelihood of Success on the Merits**

As set forth below, Plaintiffs have not established that they are likely to succeed on the

merits of their APA claims.

1.    The Only Reviewable "Final Agency Action" under the APA is USCIS's Denials
      of the Named Plaintiffs' SIJ Petitions

"APA review is limited to (1) final agency action (2) not committed to agency discretion

by law (3) where Congress has not implicitly or explicitly precluded judicial review.")  *See* 5

U.S.C. § 704; *Larson v. United States*, 888 F.3d 578, 587 (2d Cir. 2018).  An agency action is

"final" if two conditions are met: "(1) the action must mark the consummation of the agency's

decisionmaking process—it must not be of a merely tentative or interlocutory nature, and (2) the

action must be one by which rights or obligations have been determined, or from which legal

consequences will flow."  *Shakhnes v. Berlin*, 689 F.3d 244, 260 (2d Cir. 2012) (quoting *Bennett

v. Spear*, 520 U.S. 154, 177–78 (1997)).

Plaintiffs allege that for several years, USCIS has "applied the SIJS statute in its current

form" to grant SIJ petitions to immigrant children in New York between the ages of 18 and 21,

Am. Compl. ¶ 6, but because of a vague and unidentified "recent change in policy," *see, e.g.*, *id.*

¶¶ 2, 8, 41–46, USCIS has denied SIJ status to more petitioners in New York between the ages of 18 to 21.  *See, e.g, id.* ¶ 43.  There was, however, no "change in policy."  As explained by USCIS, before SIJ adjudications were centralized at the NBC in November 2016, the New York USCIS Field Office approved certain Form I-360 petitions for SIJ classification in which a state court appointed a guardian for petitioners between the ages of 18 and 21, while the NBC denied similar petitions (AR 0622).  To the extent Plaintiffs assert that the centralization of SIJ adjudications in the NBC, USCIS's training to NBC adjudicators, the USCIS Policy Manual, the February 2018 Legal Guidance, and the April 2018 CHAP collectively constitute a "new" policy or a "reversal" of prior "policy," the agency's effort to centralize adjudications and train its adjudicators on the applicable law are not a "final agency action" "by which rights or obligations have been determined or from which legal consequences will flow" under both prongs of the *Bennett* test.  *Bennett*, 520 U.S. at 178.  Rather, the increase in Form I-360 petition denials relating to SIJ petitioners between the ages of 18 through 21 in New York was the result of a newly-established centralization of SIJ-based adjuciations, which resulted in an improved consistency in the overall adjudications process.  (AR 0622).

"For an action to 'mark the consummation of the agency's decisionmaking process' under the first *Bennett* prong, there must be an established 'formal procedure,' in which the agency 'evaluate[s] the merits of [the issue] to arrive at a reasoned, deliberate decision.'"  *Navajo Nation v. U.S. Dep't of Interior*, 819 F.3d 1084, 1098 (9th Cir. 2016) (citing cases).  "A final decision must establish an official position that is 'considered, definite and firm,' and constitutes the agency's 'last word on the matter.'"  *Id.* (citing cases).  In this case, Plaintiffs have not identified, nor cannot identify, any deliberate, established "formal procedure" for changing the agency's

interpretation of the SIJ statute and regulations—because there was none—and thus they cannot

meet the first prong of the *Bennett* test.

Moreover, the so-called "new policy" does not meet the second prong of the *Bennett* test.

Even if the centralization of adjudications, the Policy Manual, training documents and internal

guidance somehow mark the "consummation" of some formal agency decisionmaking process,

these documents and processes are not ones "by which rights or obligations have been

determined or from which legal consequences will flow." *Bennett*, 520 U.S. at 178.  Rather, it is

the SIJ statute and the regulations that impose such legal obligations, and legal consequences

flow from USCIS's application of the law and regulations in individual cases.  As a result, the

only reviewable "final agency decision" here is USCIS's decision to deny or approve an

individual SIJ petition.  *See, e.g., Spencer Enterprises, Inc. v. United States*, 345 F.3d 683, 688

(9th Cir. 2003) (identifying the "particular agency action at issue" as "INS's denial of an

immigrant investor visa petition"); *Abboud v. I.N.S.*, 140 F.3d 843, 847 (9th Cir. 1998)

("[B]ecause the INS's denial of [claimant's visa petition] was a final order, we conclude that the

district court had jurisdiction over this matter."); *Khalil v. Napolitano*, 983 F. Supp. 2d 484, 488–

89 (D.N.J. 2013) ("[T]he district courts may review the final determinations of visa denials when

they are alleged to have violated the terms of the APA")— not the training given to NBC

adjudicators or the agency's publicly-available guidance documents.  *Cf. Golden &*

*Zimmermann, LLC v. Domenech*, 599 F.3d 426, 433 (4th Cir. 2010) (agency's FAQ explaining

law and regulations was not final agency action under the APA because, *inter alia*, "if the

[agency] had never published the Reference Guide and FAQ[], the [agency] would still have had

the authority to prosecute licenses for engaging in the conduct described in FAQ[] because legal

consequences do not emanate from FAQ[] but from the [statute] and its implementing

regulations."); *Acquest Wehrle LLC v. United States*, 567 F. Supp. 2d 402, 410 (W.D.N.Y. 2008) (no final agency action when "the legal rights and obligations of the parties were precisely the same the day after the jurisdictional determination was issued as they were the day before").

> 2. USCIS's Denials of the Plaintiffs' SIJ Petitions Were Not Arbitrary and Capricious or Contrary to Law

Under the APA, this Court may only hold unlawful and set aside an agency decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law" or "unsupported by substantial evidence." *See* 5 U.S.C. § 706(2); *Bechtel v. Admin. Review Bd.*, 710 F.3d 443, 445–46 (2d Cir. 2013). This standard of review is narrow and does not give the Court the authority to substitute its judgment for that of the agency. *See Motor Vehicles Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Additionally, the Court's review of an agency's action under the APA is generally limited to the administrative record compiled by the agency. *See* 5 U.S.C. § 706; *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam). "An agency to which Congress has delegated authority to administer a statute is entitled to judicial deference to its views of the statute it administers." *S.E.C. v. Alpine Sec. Corp.*, 308 F. Supp. 3d 775, 789 (S.D.N.Y. 2018) (citing *Chevron. U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)). Additionally, "[t]o defer to an agency's interpretation of a statute as reasonable, this Court 'need not conclude that the agency construction was the only one it permissibly could have adopted . . . or even the reading the court would have reached if the question initially had arisen in a judicial proceeding.'" *Xia Fan Huang v. Holder*, 591 F.3d 124, 129 (2d Cir. 2010) (quoting *Chevron*, 467 U.S. at 843 n.11). This Court must also "defer to to an agency's 'interpretation of its own regulations unless that interpretation is plainly erroneously or inconsistent with the regulation.'" *Id.* (quoting *Nat. Res. Def. Council v. EPA*, 808 F.3d 556, 569 (2d Cir. 2015)). If the regulation at issue "is unambiguous, however, 'the

clear meaning of the regulation controls and may not be overridden by an inconsistent agency interpretation.'"  *Id.* (citing *Christensen v. Harris Cty.*, 529 U.S. 576, 588 (2000)).  As set forth below, USCIS's denials of the Plaintiffs' SIJ petitions were not arbitrary, capricious or contrary to law.

> a.   USCIS's Interpretation of Federal Law Is Reasonable and in Accordance With Law

First, Plaintiffs contend that USCIS "misinterpret[ed]" state and federal law when it determined that the named Plaintiffs (and other members of the putative class between the ages of 18 to 21 in similarly situated circumstances) had not met their burden of showing that the Family Courts which issued Special Findings Orders were "juvenile courts" for purposes of establishing SIJ eligibility, as required by 8 U.S.C. § 1101(a)(27)(J)(i).  *See* Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Injunction [Dkt. No. 8] ("Pls.' PI Br.") at 20–24.  Plaintiffs similarly assert that the SIJ statute and regulations do not require "the juvenile court issuing an order" to "have actual authority to reunify the petitioner with his or her natural parent in order to make a finding that the petitioner's reunification with a parent is not viable." *Id.* at 24–25.  Plaintiffs have not established a likelihood of success on the merits of their claim that USCIS's interpretation of applicable law was unreasonable and erroneous.

As applicable here, the INA defines an SIJ as an immigrant in the United States "whom . . . .  has [been] legally committed to, or placed under the custody of . . . an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law."  8 U.S.C. § 1101(a)(27)(J)(i).  The SIJ regulations provide that an SIJ petitioner must submit: (i) "[a] juvenile court order, *issued by a court of competent jurisdiction* located in the United States, showing that the court has found the beneficiary to be

dependent upon that court; (ii) "[a] juvenile court order, *issued by a court of competent jurisdiction located in the United States*, showing that the court *has found the beneficiary eligible for long-term foster care*; and (iii) [e]vidence of a determination made in judicial or administrative proceedings by a court or agency recognized by the juvenile court *and authorized by law to make such decisions*, that it would not be in the beneficiary's best interest to be returned to the country of nationality or last habitual residence of the beneficiary or of his or her parent or parents."  8 C.F.R. § 204.11(d)(2)(i)-(iii) (emphases added).  Under the same regulations, "[e]ligible for long-term foster care *means that a determination has been made by the juvenile court that family reunification is no longer a viable option.*" *Id.* § 204.11(a) (emphasis added).

Accordingly, the Family Courts issuing the requisite orders for SIJ eligibility necessarily must be "authorized by law to make such decisions" that "family reunification is no longer a viable option" as to the individual petitioner appearing before that court.  And for the Family Courts to have jurisdiction to determine the viability or non-viability of family reunification with respect to an individual petitioner, the Family Courts necessarily must have jurisdiction to determine whether the allegedly abusive, neglectful, or abandoning (or other similar basis under state law) parent or parents has the right to obtain custody over that petitioner.  USCIS's position, as expressed in its Policy Manual and related internal guidance—*i.e.,* that the juvenile court issuing the order needs to follow its state laws on jurisdiction (AR 0708, 0724, 0728)—is far from an unreasonable or erroneous reading of federal law.  On the other hand, nothing in the statute and regulations supports Plaintiffs' broad and untenable view that "a juvenile court need only be one that has jurisdiction over the custody and care of juveniles *generally*," Pls.' PI Br. at 21 (emphasis added).  *Cf. Durkin v. Shea*, 957 F. Supp. 1360, 1369 (S.D.N.Y. 1997) "[i]t is

axiomatic that a court must have jurisdiction over both the subject matter and the defendant to have jurisdiction over the cause of action").

> b.  USCIS Has the Authority to Determine Whether a Family Court Order is a "Juvenile Court Order" For Purposes of Establishing SIJ Eligibility

As a general matter, Plaintiffs argue that USCIS's denials of Plaintiffs' petitions are wrong because USCIS went beyond its authority to require "the Family Court [to] have jurisdiction to make a custody determination as to the petitioner in order to qualify as a 'juvenile court.'" Am. Compl. ¶ 60; *see also* Pls.' PI Br. at 21 ("Congress intended that the state court's interpretation of its own powers be given deference . . . ."). Plaintiffs have not established a likelihood of success on the merits of their claim that USCIS's review of the Special Findings Order is essentially an *ultra vires* action, because that claim was flatly rejected by the Fifth Circuit in a recent SIJ-related decision analogous to this one.

In *Budhathoki v. Nielsen*, 898 F.3d 504 (5th Cir. 2018), three alien plaintiffs over the age of 18 filed what is known in Texas as a "Suit Affecting Parent-Child Relationship" ("SAPCR") under the Texas Family Code. *Id.* at 506. Texas law generally defines "child" or "minor" as "a person under 18 years of age who is not and has not been married," but in the child-support context, "child" includes persons over 18. *Id.* In the plaintiffs' SAPCR suits, the state courts awarded plaintiffs child support and made certain findings—*e.g.*, that the applicants were under 21, unmarried, had been abandoned by their parents, and that returning to their home countries were not in their best interest. *Id.* at 507. Plaintiffs filed SIJ petitions with USCIS and submitted their SAPCR orders, but USCIS denied the petitions. *Id.* USCIS's denials were based on the ground that, while Texas courts had the legal authority to order *child support* for juveniles over 18, plaintiffs' SAPCR orders did not show that they were issued by a court "having jurisdiction under state law to make judicial determinations about the care and custody of juveniles." *Id.* at

509 (citing 8 C.F.R. § 204.11(a)).  In short, USCIS determined that an order requiring child

support was not a "care and custody" determination, and under state law, individuals 18 years

and older were not juveniles even if they were eligible for child support.  *Id.* at 509–510.

Plaintiffs brought an APA challenge against DHS, arguing that a SAPCR order is "a valid

custody or dependency order for SIJ purposes."  *Id.* at 510.  The Fifth Circuit affirmed the

district court's decision rejecting plaintiffs' APA challenge, finding that USCIS had not acted

arbitrarily and capriciously.  *Id.* at 516.  Characterizing the dispute as one "about the discretion,

indeed the obligation in USCIS's view, of the federal agency to decide the sufficiency for federal

purposes of Texas state court child support orders," the Fifth Circuit held that "[w]hether a state

court order submitted to a federal agency for the purpose of gaining a federal benefit made the

necessary rulings *very much is a question of federal law*, not state law, *and the agency had

authority to examine the orders for that purpose*."  *Id.* at 511 (emphases added). Likewise, here,

USCIS properly exercised its authority under federal law to examine the Plaintiffs' Special

Findings Orders to determine whether they were qualifying state law "care and custody"

determinations that established SIJ eligibility, and reasonably concluded that they were not.

c.      USCIS's Denials of SIJ Petitions Were Not Arbitrary and
        Capricious

Plaintiffs contend that "USCIS is plainly wrong in its policy that the Family Court lacks

jurisdiction over the custody and care of juveniles," and cites N.Y. Family Court Act § 141 for

the proposition that the Family Court has a "wide range of powers for dealing with the

complexities of family life so that its action may fit the particular needs of those before it."  Pls.'

PI Br. at 22.  USCIS does not dispute that New York family courts have jurisdiction to generally

determine the "custody or visitation of minors," but in the context of custody proceedings, "[t]he

term 'infant' or 'minor' means a person who has not attained the age of eighteen years."  N.Y.

40

Fam. Ct. Act §§ 119(c), 651.  Under New York law, then, it is also well-settled that the ability of a parent to challenge the court's placement of the child outside of his or her own custody generally ends when the child becomes 18 years of age.  *See supra* at Statement of Facts § D. Plaintiffs and the Prudenti Affidavit submitted with the named Plaintiffs' RFE responses contend that New York Family Court Act § 657 grants court-appointed guardians with "custody" over the child, *see* Pls.' PI Br. at 26; Prudenti Aff. at AR 0352, but section 657 does not address the Family Court's authority to make custodial determinations vis-à-vis the parent or parents whose custodial rights are being affected by the appointment of a guardian under N.Y. Fam. Ct. Act § 661.

Plaintiffs assert that USCIS violated the APA when it denied SIJ classification on the ground that the Family Court "lacked the authority to make a legal determination that the petitioner's reunification with one or both parents is not viable."  Am. Compl. ¶ 54.  (*See, e.g.,* AR 0832.)  USCIS's denial of SIJ classification on this ground was also not arbitrary and capricious.  Federal immigration law does not define "abuse," "neglect" or "abandonment," and specific legal definitions of those terms for the purposes of juvenile dependency derive from state law and thus varies by state.  (AR 0714).  Although the named Plaintiffs' Special Findings Orders purported to make findings relating to "abuse, neglect and abandonment" under "state law," the statutory cites they provided for the Family Court's authority to make these findings relate to state child welfare proceedings for *children under 18*.  For example, R.F.M., T.D. and O.M.S.'s amended Special Findings Orders found that reunification with their parents was not viable due to neglect and abandonment under the authority of N.Y. Social Services Law § 384-b and/or N.Y. Family Court Act § 1012(e)-(f) (AR  0343, 0595, 0891), but both statutes relate to findings of neglect and abandonment that the Family Court is authorized to make for

*children under the age of 18* in child protection proceedings under Article 10 of the Family Court

Act, or abandonment proceedings under New York Social Services Law § 383-C or § 384.

Accordingly, USCIS reasonably determined that the cited statutory contexts for making

reunification, abuse, neglect, and abandonment findings derive from child protective and other

related proceedings authorized for children under the age of 18, and that the named Plaintiffs'

guardianship proceedings under New York Family Court Act § 661(a), standing alone, did not

confer jurisdiction on the Family Court to make additional determinations relating to

reunification due to abuse and neglect for petitioners over the age of majority.[8]

Plaintiffs contend that, because Family Courts are authorized to "appoint a natural parent

to be the guardian of his or her children," Pls.' PI Br. at 26; Am. Compl. ¶ 71 (citing *In re*

*Marisol N.H.*, 115 A.D.3d at 187), and because N.Y. Family Court Act § 661 extends

guardianship on consent to juveniles between the ages of 18 and 21, the Family Courts naturally

have "jurisdiction under New York state law to make a legal conclusion about returning a

petitioner over the age of 18 to his or her parent's custody." *Id.* ¶ 72.  This interpretation belies

the plain language of the INA, which provides that an alien is eligible for SIJ classification if

"reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect,

abandonment, or a similar basis found under state law."  8 U.S.C. § 1101(a)(27)(J).  Section

1101(a)(27)(J) cannot be plausibly interpreted to mean that a guardianship order appointing the

non-abusive, non-neglectful, non-abandoning parent provides a sufficient jurisdictional basis for

---

[8] This does not mean, however, that USCIS has taken the position that *all* Family Court guardianship orders for petitioners between the ages of 18 through 20 are *per se* disqualifying. If a petitioner between the ages of 18 through 20 obtains a guardianship order entered under N.Y. Fam. Ct. Act § 661(b), which extends the Family Court's authority to approve guardianships on consent for juveniles between 18 to 20, where the juvenile was the already subject of certain child protective or abandonment proceedings—cited specifically in § 661(b)—that were

determining "custody" of a juvenile for purposes of establishing SIJ eligibility.  Even if one parent has been granted guardianship of his or her child, the INA requires the Family Court to possess the authority to make, and to actually make, the requisite findings to affect the *other* parent's (*i.e.*, the "1" in "1 or both of the immigrant's parents") custodial rights by deeming *that* parent unfit to be reunified with the child due to abuse, neglect, abandonment, or similar basis under state law.  *Id.*  Plaintiffs' interpretation runs counter to the INA and related principles in federal and state child welfare laws which recognize that *each* parent—whether present or absent, or who has been deemed fit or has been accused of unfitness—possesses substantive and procedural rights over his or her child, such that the "state, through its Family Court, may intervene against the wishes of a parent on behalf of a child so that his needs are properly met" as long as it makes statutorily-authorized factual findings that warrant such intervention.  N.Y. Fam. Ct. Act § 1011.  *See also* 42 U.S.C. § 671(a)(15)(D).

In addition, Plaintiffs argue that "USCIS's position that state courts must have the power to reunify SIJS petitioners with their natural parents makes little sense because such a requirement would eviscerate SIJS protections for the very population the SIJS Statute was originally intended to protect: children in foster care."  Pls.' PI Br. at 25–26.  This contention is at odds with New York law, which promotes family rehabilitation and reunification as a goal for children who were removed from abusive parents in certain proceedings and placed in foster care.  *See, e.g.,* N.Y. Fam. Ct. Act § 1015-a (in Article 10 proceeding, the court may direct social services official to provide or arrange for services or assistance to child and his or her family to facilitate "rehabilitation of the family and, as appropriate, the discharge of the child from foster care"); § 1028(a), (b) (in Article 10 proceeding, permitting parent of temporarily-removed child

---

commenced when he or she was under 18 (AR 0736).  *See supra* at Statement of Facts § D.

to request hearing to determine whether child should be returned, and directing court to consider, *inter alia*, whether "reasonable efforts were made after removal of the child to make it possible for the child to safely return home").

<blockquote>

d.   SIJ Petitioners Under 18 and Petitioners Over 18 Are Not "Similarly Situated"
</blockquote>

Plaintiffs assert that USCIS's "new policy" is unreasonable because "it arbitrarily treats similarly situated individuals differently," *see* Pls.' PI Br. at 32, in that "a 17-year-old SIJS applicant in guardianship proceedings in Family Court is in an identical legal situation as an 18 year-old SIJS applicant in guardianship proceedings." *Id.* at 33.   As one example of USCIS's purported "arbitrary treatment," Plaintiffs contend that T.D. younger sister was able to obtain SIJ status, while T.D. was not. *Id.* at 24.   As an initial matter, T.D.'s younger sister's administrative file has not been assembled and filed with this Court, and accordingly, USCIS is not in a position to explain why, without more, one sibling obtained SIJ status while the other did not.   More critically, as explained in detail above, 17-year-olds and 18-year-olds are not in "identical legal situations."   New York law makes unequivocal legal distinctions between children under 18 and children over 18 with respect to the Family Court's *parens patriae* authority to make custodial determinations that affect absent or unfit parents, order reunification with the absent or unfit parent, and make statutory findings regarding neglect, abuse or abandonment.   *See supra* at Statement of Facts § D.

<blockquote>

e.   Plaintiffs Cannot Assert a "Reliance Interest" in Obtaining SIJ Status
</blockquote>

Plaintiffs further assert that USCIS's "policy" is arbitrary and capricious because "SIJS was routinely granted for petitioners whose Family Court orders were obtained when they were over the age 18," which means that "[t]housands of beneficiaries have been relying on this consistent practice, [and] . . . structured their education, employment, and other life activities on

the assumption that they would be eligible for SIJS benefits . . . ."  Pls.' PI Br. at 31.  Plaintiffs

further assert that New York SIJ petitioners between the ages of 18 and 21 have "reasonably

come to rely on the expectation that they would be protected by SIJS." *Id.* at 32. But the

agency's alleged "failure to consider reliance interests" flies in the face of a Congressional

mandate that SIJ status not be "sought primarily for the purpose of obtaining the status of an

alien lawfully admitted for permanent residence, rather than for the purpose of obtaining relief

from abuse or neglect or abandonment." *See* Appropriations Act, Pub. L. No. 105-119, § 113,

111 Stat. 2440, 2469 (1997).  Any SIJ petitioner who needed to be "protected" from a history of

abuse, neglect, or abandonment through the continuing support of a caring guardian always had,

and availed themselves of, procedures under applicable state law to ensure that his or her

guardian of choice had custodial rights to provide care and make decisions.  *See, e.g.,* R.F.M.

Decl. ¶ 22 ("In Court, we explained how my grandmother has been my main source of support

since I was eight months old and how I needed her to be appointed as my guardian until I turned

21."); D.A.F.A. Decl. ¶ 32 ("We further explained to the Court that I needed my mother to be

appointed as my guardian because she helped me take care of everything related to my health

and education.").  Plaintiffs' motivations for obtaining guardianship orders between the ages of

18 and 21 presumably were and should have been separate and apart from any decision USCIS

would make down the road about their eligibility for SIJ classification.  Once granted, the

guardianship orders should have given Plaintiffs a sense of security from their history of abuse,

neglect, or abandonment.  Plaintiffs now assert that the USCIS's "change in position" seriously

affected an "expectation that they would be *protected by SIJS*" and caused them to "structure"

major life decisions, which implies that their guardianship orders were obtained as a mere

prerequisite for an important immigration benefit that they believed they were fully entitled to

under any circumstance.

    3.    <u>This Court Lacks Jurisdiction to Review Decisions Revoking USCIS's Previous Grant of SIJ Classification</u>

Plaintiffs also cannot establish a likelihood of success on the merits to the extent they seek relief for a proposed class that includes petitioners between the ages of 18 and 21 who "have been issued . . . (ii) Notices of Intent to Revoke'" and by extension, have had their SIJ petitions revoked.  *See* Am. Compl. ¶ 157.  This Court lacks subject matter jurisdiction to review decisions revoking the agency's previous grant of SIJ status.

Pursuant to 8 U.S.C. § 1155, the "Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154." 8 U.S.C. § 1155; *see also* 8 C.F.R. §§ 205.1, 205.2.  Under the INA, however, courts lack jurisdiction to review "any decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is . . . in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii).  Although the Second Circuit has not addressed this issue, nearly all of the courts of appeals and other district courts to have considered this question have uniformly held that decisions made in accordance with § 1155 to revoke a visa petition—which includes decisions to revoke the classification granted by an I-360 visa petition—are barred by judicial review under 8 U.S.C. § 1252(a)(2)(B)(ii).  *See Bultasa Buddhist Temple of Chicago v. Nielsen*, 878 F.3d 570, 573-74 (7th Cir. 2017) (DHS decision to revoke previous grant of I-360 petition not reviewable under APA because of § 1252(a)(2)(B)(ii)); *Islam v. Rodriguez*, Civil Action No. 16-2424, 2018 WL 576830, at *2 (D.N.J. Jan. 25, 2018) (same).  *See also Bernardo* ex rel. *M & K Eng'g, Inc. v. Johnson*, 814 F.3d 481, 482 (1st Cir. 2016); *Mehanna v. U.S. Citizenship & Immigration Servs.*, 677 F.3d  312, 314-15 (6th Cir. 2012); *Green v. Napolitano*, 627 F.3d 1341, 1344-46 (10th Cir.

2010); *Abdelwahab v. Frazier*, 578 F.3d 817, 821 (8th Cir. 2009); *Sands v. U.S. Dep't of Homeland Sec.*, 308 Fed. Appx. 418, 419-20 (11th Cir. 2009); *Ghanem v. Upchurch*, 481 F.3d 222, 223-24 (5th Cir. 2007); *Jillin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196, 205-06 (3d Cir. 2006). *El-Khader v. Monica*, 366 F.3d 562, 566 (7th Cir. 2004).  *But see ANA Int'l, Inc. v. Way*, 393 F.3d 886 (9th Cir. 2004) (holding that  § 1252(a)(2)(B)(ii) does not deny jurisdiction to review a revocation decision made pursuant to § 1155).

       4.    <u>USCIS Was Not Required to Provide "Adequate Notice"</u>

Plaintiffs also raise a procedural argument that USCIS's alleged "policy change" is facially invalid because USCIS violated section 706 of the APA, which permits a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be—(D) without observance of procedure required by law."  5 U.S.C. § 706(2)(D).  Specifically, plaintiffs argue that USCIS's alleged "new policy" failed to comply with section 3 of the APA, as amended by the Freedom of Information Act, 5 U.S.C. § 552, which requires that "[e]ach agency shall separately state and currently publish in the Federal Register for the guidance of the public—(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency . . . ." 5 U.S.C. § 552(a)(1)(D). *See* Pls.' PI Br. at 33–34.

To the extent Plaintiffs have failed to allege and identify what it was that was supposed to be published—and the Government notes that there is no dispute that the Policy Manual is plainly available to the public, as it was cited in Plaintiffs' Amended Complaint—Plaintiffs cannot establish a likelihood of success on the merits of this procedural claim.  FOIA does not require that every policy statement by an agency must be published in the Federal Register. Plaintiffs ignore the fact that FOIA separately requires an agency to "make available for public inspection in an electronic format . . . statements of policy and interpretations which have been

adopted by the agency and are not published in the Federal Register" and "administrative staff manuals and instructions to staff that affect a member of the public," 5 U.S.C. § 552(a)(2)(C), (D), which the Policy Manual complies with.

**C.    Plaintiffs Have Failed to Show That USCIS's Denials of Their Petitions Have Caused "Irreparable Harm"**

For the "irreparable harm" component, the moving party must "demonstrate an injury that is neither remote nor speculative, but actual and imminent." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999). "To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)). Plaintiffs assert that, absent a preliminary injunction, they "will continue to remain ineligible for green cards and all the benefits that accrue from an adjustment of status," including the opportunity to "pursu[e] professions," *see* Pls.' PI Br. at 37, and they "will continue to be subject to mental, emotional, and psychological harm due to fear of exposure to immediate removal proceedings and deportation . . . ." *Id.* at 39. These assertions are not sufficient for establishing irreparable harm.

Notably, none of the named plaintiffs have asserted that removal proceedings have been initiated against them, or that they are subject to a final order of removal, which reduces their claim of irreparable harm to the *possibility* of removal. In *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 434 (E.D.N.Y. 2018), which involved a challenge to DHS's decision to end the Deferred Action for Childhood Arrivals ("DACA") program, the district court declined to grant plaintiffs' preliminary injunction based on the "possibility of deportation" facing DACA recipients if the

program was terminated.  The district court also declined to find irreparable harm based on

plaintiffs' assertions—similar to those raised here—that "DACA recipients may, for fear of

deportation, suffer from anxiety or depression, lose the 'abilit[y] to plan for the future and make

commitments, whether familial, career-based, academic, or otherwise.'"  *Id.*  As the district court

reasoned, because removal was not "sufficiently 'likely' for purposes of establishing irreparable

harm, harms accruing from the fear of deportation are also too speculative to support the grant of

a preliminary injunction."  *Id.  See Carlson v. U.S. Citizenship and Immigration Servs.*, No CV

12-7893-CAS, 2012 WL 4758118, at *9 (C.D. Cal. Oct. 3, 2012) (declining to find irreparable

harm for immigrant plaintiffs whose I-526 investor petitions were denied or revoked, on grounds

that, while plaintiffs' "deportation from this county would cause them irreparable harm, [] there

are no pending removal proceedings against plaintiffs here.").[9]

      Nor do the cases Plaintiffs cite support a finding of irreparable harm under the

circumstances alleged here.  Pls.' PI. Br. at 40.  *See Pollis v. New Sch. For Soc. Research*, 829 F.

Supp. 584, 598 (S.D.N.Y. 1993) ("it is well settled that 'the requisite irreparable harm is not

established in employee discharge cases by financial distress or inability to find other

employment, unless truly extraordinary circumstances are shown"); *Shapiro v. Cadman Towers,

Inc.*, 844 F. Supp. 116, 122 (E.D.N.Y. 1994) (where plaintiff suffered from multiple sclerosis

and sought to enjoin defendants from refusing to provide her with an accessible parking space in

violation of the Fair Housing Amendments Act, plaintiff suffered "irreparable harm" because her

disease subjected her to "risks of injury, infection, and humiliation substantially different in kind

---

[9] To the extent any of the named plaintiffs or the putative class *are* subject to removal
proceedings, this Court lacks jurisdiction under 8 U.S.C. § 1252(g) to enter preliminary relief in
the form of a classwide stay of removal, as set forth in the Government's letter to the Court dated
September 4, 2018 [Dkt. No. 69].

and magnitude" than the inconveniences faced by non-disabled drivers); *Lore v. City of Syracuse*, No. 00-CV-1833, 2001 WL 263501, at *4–5 (N.D.N.Y. Mar. 9, 2001) (finding no "irreparable harm" in Title VII case where plaintiff sought to prevent defendants from changing the terms and conditions of her employment, even though plaintiff alleged that her professional reputation "will be inexorably damaged," and that defendants' actions "have and will cause her permanent emotional damage").

### D.      Plaintiffs' Proposed Injunctive Relief is Improper

Plaintiffs' motion seeks an injunction that: (1) bars the Government "from departing from their longstanding practice of recognizing, when the Family Court's Special Findings Order appointed a guardian for an individual over the age of 18, (i) the New York Family Court [is] a 'juvenile court' under 8 C.F.R. § 204.11(a) and (ii) that the New York Family Court is empowered to issue SIJS Orders under 8 U.S.C. § 1101(a)(27)(J), pending a final adjudication of the case on the merits"; and (2) enjoins the Government to "provide 14 days' notice to Plaintiffs' counsel before Defendants take any adverse adjudicatory or enforcement action against Plaintiffs or members of the Proposed Class during the pendency of this litigation." Pls.' PI Br. at 43.  If the Court were to grant Plaintiffs' motion for a preliminary injunction, this Court should deny the requested relief.

Generally, when a court finds that an agency has acted arbitrarily in violation of the APA, the appropriate remedy is to remand the issue back to the agency for reconsideration and, if appropriate, further investigation or an explanation adequate to support the agency's decision upon remand.  *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 46 n. 1 (D.C. Cir. 2013) ("where a district court reviews agency action under the APA, it acts as an appellate tribunal, so the appropriate remedy for a violation is 'simply to identify a legal error and then remand to the

agency' ").  Here, Plaintiffs requested injunction removes "the prerogative of the agency to decide in the first instance how best to provide relief" for an unlawful agency action that has been set aside by the court.  *Bennett v. Donovan*, 703 F.3d 582, 589 (D.C. Cir. 2012).  Such drastic relief far exceeds the appropriate remedy for any arbitrary and capricious agency action and should be denied on that ground.

Requiring the Government to provide two weeks' notice of "any adverse adjudicatory or enforcement action" is also improper because "*any* adverse . . . action" broadly requires notice of any and all governmental action that goes beyond USCIS's adjudications of SIJ petitions and encompasses actions  that may be lawfully taken for the purpose of enforcing the criminal laws or in furtherance of any civil enforcement or regulatory proceedings.  And if Plaintiffs are seeking advance notice of any adverse decision for a pending SIJ petition, the regulations and agency procedures already provide for such notice through the issuances of NOIDs, RFEs, and NOIRs before a final decision on a petition is made (AR 0717–0718).

## II.    PLAINTIFFS' MOTION FOR CLASS CERTIFICATION SHOULD BE DENIED

The Court should deny Plaintiffs' class certification motion because they fail to establish that their proposed class claims meet the requirements of commonality and typicality; because their proposed class is overbroad; and because, as explained in the section of this memorandum that opposes preliminary injunction, *see supra* at Point I, Plaintiffs fail to state a claim on which relief can be granted for unexhausted claims and revoked petitions.

Plaintiffs define their proposed class as follows:

All SIJS petitioners who based their petitions on SFOs issued by the New York Family Court between the petitioners' 18th and 21st birthdays and either:

(1) have been issued

(i) Notices of Intent to Deny ("NOID"),

(ii) Notices of Intent to Revoke ("NOIR"),

(iii) Decisions of Denial, or

(iv) Decisions revoking previously-granted SIJS since January 1, 2016 on the ground that the Family Court is not a "juvenile court" under 8 C.F.R. § 204.11(a) and/or the Family Court is not empowered to issue SIJS predicate Orders under 8 U.S.C. § 1101(a)(27)(J); *or*

(2) have a Family Court SFO finding the eligibility criteria of 8 U.S.C. § 1101(a)(27)(J) are satisfied and have a pending petition for SIJS before the USCIS based on the Family Court SFO.

*See* Memorandum of Law in Support of Plaintiffs' Motion for Class Certification ("Pls.' Class Mem.") [Dkt. No. 10] at 2-3.

## A.   Legal Standards

Under Federal Rule of Civil Procedure 23(a), plaintiffs may sue as a class in certain types of cases described in Rule 23(b) "only" if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of [those] of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  These four requirements commonly are referred to as "numerosity," "commonality," "typicality," and "adequate representation."  The party seeking certification must establish each of the four threshold requirements of Rule 23(a)—numerosity; commonality; typicality; and adequacy of representation—and must also show that the case falls within one of the categories of cases described in Rule 23(b).  *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997); *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (class must also satisfy at least one of the requirements contained in Federal Rule of Civil Procedure 23(b)).  If the Court is not fully satisfied that these requirements are met, the Court cannot certify the class. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-351 (2011).  Further, while not specified in

the text of Rule 23, courts have determined that proposed class definitions must satisfy the implied requirement of ascertainability.  *See, e.g., Dunnigan v. Metro. Life Ins. Co*., 214 F.R.D. 125, 135 (S.D.N.Y. 2003); *People United for Children, Inc. v. City of New York*, 214 F.R.D. 252, 255 (S.D.N.Y. 2003).  A class should also be narrowly tailored to include only aggrieved parties.  *See Colozzi v. St. Joseph's Hosp. Health Ctr*., 275 F.R.D. 75, 86 (N.D.N.Y. 2011).

The permissibility of class actions in these limited circumstances "is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Comcast Corp.*, 569 U.S. at 33 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)).  Thus, a party seeking class certification "must affirmatively demonstrate" compliance with Rule 23 of the Federal Rules of Civil Procedure by a preponderance of the evidence.  *Wal-Mart Stores, Inc.* 564 U.S. at 350.  *See also Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010).  The Court must undertake a "rigorous analysis," *Wal-Mart Stores, Inc.*, 564 U.S. at 351, in determining whether each of the Rule 23 requirements has been met.  *In re Initial Public Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) ("*In re IPO Sec. Litig.*").  The Court should address merits issues where they overlap with the Rule 23 requirements. *Amgen, Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1194–95 (2013). Indeed, certification is permissible only if and when "the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established."  *In re IPO Sec. Litig.*, 471 F.3d at 41.  The court must make these findings by a preponderance of the evidence.  *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc*., 546 F.3d 196, 202 (2d Cir. 2008). Further, "when a claim cannot succeed as a matter of law, the Court should not certify a class

on that issue." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 39 (2d Cir. 2009)

(quoting *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 228 (2d Cir. 2008)).

In this case, the sole Rule 23(b) prong advanced by Plaintiffs is Rule 23(b)(2), which

permits class certification where "the party opposing the class has acted or refused to act on

grounds that apply generally to the class, so that final injunctive relief or corresponding

declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  Pls.'

Class Mem. at 11.  The Supreme Court has explained that "[t]he key to the (b)(2) class is 'the

indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct

is such that it can be enjoined or declared unlawful only as to all of the class members or as to

none of them.'"  *Wal-Mart Stores, Inc.*, 564 U.S. at 360.

### B.      The Named Plaintiffs  Do Not Meet Rule 23(a)(2)'s Typicality Requirement

A critical function of Rule 23(a) is to ensure that "the named plaintiffs are appropriate

representatives of the class whose claims they wish to litigate by effectively limiting the class

claims to those fairly encompassed by the named plaintiff's claims."  *Mazzei v. Money Store*,

829 F.3d 260, 271-72 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 1332 (2017) (alterations, citation,

and internal quotation marks omitted).  Toward that end, the typicality requirement of Rule 23

"requires that the claims or defenses of the class representatives be typical of the claims or

defenses of the class members."  *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (citing Fed.

R. Civ. P. 23(a)(3)).  Typicality requires that "the disputed issues of law or fact occupy

essentially the same degree of centrality to the named plaintiff's claim as to that of other

members of the proposed class."  *Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261,

267 (S.D.N.Y. 2014).  This requirement is satisfied when 'the claims of the class

representatives are typical of those of the class, and when each class member's claim arises

from the same course of events, and each class member makes similar legal arguments to

prove'" his or her case.  *Vincent v. Money Store*, 304 F.R.D. 446, 455 (S.D.N.Y. 2015)

(quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)) (alteration omitted).

Here, the named Plaintiffs are not typical of all members of the proposed class, and

instead are typical, at most, of a subset of those individuals who fall within subsection (1)(iii)

of the proposed class, which covers individuals who have been issued decisions of denial.

Am. Compl. ¶¶ 92, 102, 119, 134, 155 (denials of petitions for SIJ).

Three of the four remaining proposed subcategories of the class – (1)(i), (1)(ii) and (2),

consisting of New York majority-age SIJ petitioners whose petitions are pending and who

have been issued a NOID or a NOIR, or who have a pending petition for SIJ before USCIS

based on a Special Findings Order—have not obtained final agency decisions on their

petitions, unlike the proposed class representative Plaintiffs, such that the Court even lacks

jurisdiction to review their claims under the APA.  *See supra* at Point I.B.1; *Gomez-DeLeon v.*

*INS*, No. Civ. A 301 CV 1825, 2002 WL 1608331, at*8 (D. Ct. June 20, 2002) (finding that

because INS had not acted on I-360 petition, plaintiff had not exhausted his administrative

remedies).  The named Plaintiffs' claims are not typical of the premature claims of these

categories of proposed class members.

Nor are the named Plaintiffs typical representatives for the fourth proposed subclass,

which Plaintiffs term subclass (1)(iv)—New York majority-age SIJ petitioners whose SIJ

status was revoked after January 1, 2016 on the ground that the Family Court is not a "juvenile

court" under 8 C.F.R. § 204.11(a) and/or the Family Court is not empowered to issue SIJ

predicate Orders under 8 U.S.C. § 1101(a)(27).  None of the named Plaintiffs has had his or

her SIJ status revoked.  Am. Compl. ¶¶ 32–51.  This fact is significant because, as the

overwhelming majority of courts to rule on this question have held, the immigration statutes

bar the Court's consideration of claims challenging the revocation of visa petitions, *i.e.* the claims of the individuals encompassing subclass (1)(iv).  *See supra* at Point I.B.3.

Finally, even proposed subclass 1(iii), which encompasses the named Plaintiffs, may fail to meet the typicality requirement because, as discussed below, assessment of the reasons for and effect of a denial of an application that may trigger SIJ eligibility is necessarily individualized and case-specific.  *See supra* at Point I.B.2.  *Cf. Zabaleta v. Nielsen*, 17 Civ. 7512 (JGK) (case marked as related to instand action and in which USCIS's denial based on issues relating to gang membership), *Oakley v. Verizon Communs., Inc.*, No. 09-9175 (CM), 2012 WL 335657, at *14-15 (S.D.N.Y. Feb. 1, 2012) (even though challenged policies were uniformly applied across employer's various locations, no typicality present where class representatives were injured by different policies in different ways).   Even the assertion of a "common legal theory does not establish typicality when proof of a violation requires individualized inquiry."  *Elizabeth M. v. Montenez*, 458 F.3d 779, 787 (8th Cir. 2006); *see generally Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 245 (2d Cir. 2007) (typicality requires that "each class member's claim arises from the same course of events") (internal quotation marks omitted).

Accordingly, with the possible exception of subclass 1(iii), the named Plaintiffs have not carried their burden of showing that their claims are typical of the claims of the class of individuals whose petitions were revoked, and thus have not satisfied the typicality requirement for class certification.

## C.    The Proposed Class Does Not Meet Rule 23(a)(2)'s Commonality Requirements

Plaintiffs also fail to meet the commonality requirement.  Commonality requires a "question of law or fact is common to the class, if the question is capable of classwide resolution—which means that its truth or falsity will resolve an issue that is central to the validity

of each one of the claims in one stroke." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 349–50 (internal quotation marks and alterations omitted)).  Thus, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury."  *Wal-Mart Stores, Inc.*, 564 U.S. at 350 (internal quotation marks omitted).  It is not enough for a plaintiff to identify questions that are common to the entire class.  *See id.* at 350 ("'What matters to class certification . . . is not the raising of common questions . . . , but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" (internal quotations omitted)).  Here, the assertedly common questions of law and fact identified by Plaintiffs are:

> (1)  whether USCIS misinterpreted the SIJS statute, SIJS regulation and New York law, specifically (i) whether USCIS's requirement that the Family Court must have jurisdiction over the custody of petitioners between their 18th and 21st birthdays to qualify as a "juvenile court" for SIJS purposes is arbitrary and capricious or otherwise not in accordance with the law; or (ii) whether USCIS's requirement that the Family Court have the power to reunify the petitioner with one or more parents is arbitrary and capricious or otherwise not in accordance with the law;

> (2) articulated an unjustified and unelaborated change in policy that is substantively unreasonable because it treats similarly situated SIJS petitioners differently;

> (3) adopted a new policy without adequate notice.

Pls.' Class Mem. at 17.

The commonality requirement is not met because a SIJ determination requires analysis of each individualized juvenile court order.  Legal and factual variations exist with each Special Findings Order, and each individual class member would be entitled to individualized analysis.  *See* 8 U.S.C. § 1101(a)(27).  *Cf. Zabaleta v. Nielsen*, 17 Civ. 7512 (JGK) (case marked as related to instand action and in which USCIS's denial based on issues relating to gang membership);

*Rutstein v. Avis Rent-A-Car Systems*, 211 F.3d 1228, 1233 (11th Cir. 2000) (in analyzing Fed. R.

Civ. 23(b)(3), the "issues in the class action that are subject to generalized proof, and thus

applicable to the class as a whole, must predominate over those issues that are subject only to

individualize proof.") (citations and quotations omitted).

 Plaintiffs' second and third proposed "common" questions, analyses of whether USCIS

engaged in a "change in policy" or "adopted a new policy," likewise do not present common

questions.  In fact, despite their exhaustive briefing, Plaintiffs have not even specified what

particular policy they challenge, and, as shown below, there has been no such new policy

change.  *See supra* at Point I.B.1.  Plaintiffs' suggestion of a change in policy or a new policy

regarding SIJ petitions is unsupported and incorrect, and a class should not be certified on this

incorrect assumption.  *See In re Initial Public Offerings Securities Litigation*, 471 F.3d at 41;

*Teamsters Local 445*, 546 F.3d at 202 (plaintiff seeking class certification must establish factual

predicate by preponderance of evidence).

**D.     The Definition of the Proposed Class Is Overbroad**

  The Court should not certify the class that Plaintiffs propose because, as the preceding

two sections make clear, the proposed class is overbroad and includes members—namely,

subclasses (1)(i), (1)(ii), (1)(iv) and (2) of NY majority-age SIJ petitioners —who have no ripe

claim, and who may never have a justiciable claim at all, and because of the many varieties of

potential claimants whom Plaintiffs propose to sweep into a class represented by a small number

of individuals who have received adverse adjudications.  "The definition of the class is of

primary importance, since it enables courts to accurately determine whether the proposed class

satisfie[s] the other requirements of Rule 23."  *Wright v. Giuliani*, 99-cv-10091, 2000 WL

777940, at *10-11 (S.D.N.Y. Jun. 14, 2001); *In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389,

397 (S.D.N.Y. 2008) ("until a class of persons alleged to be entitled to relief is defined, the Court

cannot conduct the numerosity, commonality, typicality and adequacy analyses that must precede certification").

The proposed class also is overbroad because subsection (2) of the proposed class is based on a faulty premise, as it seeks to include SIJ petitioners who have a Family Court Special Findings Order meeting the eligibility criteria of 8 U.S.C. § 1101(a)(27)(J).  As worded, this definition assumes, without any determination on the merits, that Plaintiffs' interpretation of what constitutes a "juvenile court order" within the meaning of the statute is the legally correct one that is binding on USCIS.  Therefore, the Court should not certify a class based on Family Court orders that improperly render eligibility determinations pursuant to the INA.

Finally, the Court should not exercise its authority to modify a proposed class definition *sua sponte*.  *See* Fed. R. Civ. P. 23(c)(4); *Vincent v. Money Store*, 304 F.R.D. 446, 453 (S.D.N.Y. 2015) ("[A] district court may carve out a narrower class from an overbroad class proposed in the Complaint.") (citing *Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*, 993 F.2d 11, 14 (2d Cir. 1993)); *see also In re Sumitomo Copper Litig.*, 262 F.3d 134, 139 (2d Cir. 2001); *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 423 (S.D.N.Y. 2014) (noting the "substantial discretion" of trial courts to alter the class).  Given the individualized nature of each SIJ determination, the claims presented here inherently lack typicality and commonality, such that no class is appropriate.  If the Court disagrees, at a minimum, it should narrow the proposed class definition to, at most, subcategory 1(iii).

## III.   PLAINTIFFS' MOTION FOR LEAVE TO PROCEED ANONYMOUSLY SHOULD BE DENIED

Plaintiffs seek to proceed with the litigation anonymously, claiming that it will protect their highly sensitive and personal information, such as their immigration status and facts relating to issues such as abandonment, neglect or abuse by a parent.  *See* Mem. of Law in

Support of Plaintiffs' Motion for Leave to Proceed Anonymously [Dkt. No. 6] ("Pls.' Anon. Mem.") at 1.  For the reasons set forth below, this Court should deny Plaintiffs' motion.

## A.    Legal Standard

Openness in judicial proceedings is a bedrock principle of American law.  *Nixon v. Warner Commc'ns, Inc*., 435 U.S. 589, 597 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."); *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness"); *Doe v. Merten*, 219 F.R.D. 387, 390 (E.D. Va. 2004) (citing *Gannett Co. v. DePasquale*, 443 U.S. 368, 384-91 (1979)); *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996) ("lawsuits are public events and the public has a legitimate interest in knowing the facts involved in them. Among those facts is the identity of the parties").

The Federal Rules of Civil Procedure embody the presumption of openness in the courts. Rule 17(a) of the Federal Rules of Civil Procedure proves that an action "must be prosecuted in the name of the real party in interest," and Rule 10(a) requires the complaint to include the "names of all parties."  "The intent of the rule is to provide all parties with the identities of their adversaries, as well as to protect the public's legitimate interest in knowing the facts at issue in court proceedings."  *Free Speech v. Reno*, No. 98 Civ. 2680, 1999 WL 47310, at *1 (S.D.N.Y. Feb. 1, 1999); *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-189 (2d Cir. 2008) ("This requirement, though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly.").

The Second Circuit has established a multi-factor balancing inquiry which requires the district court to exercise its discretion when weighing plaintiff's interest in proceeding

60

anonymously against the interests of defendants and the public.  *Sealed Plaintiff*, 537 F.3d at

190.  These factors include, but are not limited to: (1) whether the litigation involves matters that

are highly sensitive and personal matters; (2) whether there exists a risk of retaliatory harm to the

party who wishes to proceed anonymously or any other individuals; (3) whether identification

may lead to other harms and the likely severity of those harms; (4) whether the plaintiff is

particularly vulnerable to the harms of disclosure, especially on the basis of age; (5) whether the

suit concerns the actions of government or private parties; (6) whether the plaintiff's proceeding

anonymously prejudices defendant, and if so at which stage of the litigation, and whether the

court can mitigate any prejudice; (7) whether the plaintiff's identity remains confidential; (8)

whether disclosure of the plaintiff's identity furthers the public's interest in the litigation; (9)

whether there is an atypically weak public interest in knowing the parties' identities due to the

predominance of a purely legal issue; and (10) whether alternative mechanisms can be used to

protect the plaintiff's confidentiality.  *Id.* (internal quotations and citations omitted).

## B.    Plaintiffs Should Not Be Permitted to Proceed With Initials

Under the Second Circuit's criteria, Plaintiffs should not be allowed to proceed as

anonymous parties in this litigation.  Plaintiffs rely primarily on the arguments that disclosure of

their identity will lead to retaliation by the Government and the public in general, that they may

lose potential employments prospects, will cause harm to their reputations, and disclose private

information of a sensitive nature.  Pls.' Anon. Mem. at 3–4; Declaration of R.F.M., dated May

10, 2018 ("R.F.M. Decl.") [Dkt. No. 1-1] ¶ 2; Declaration of T.D., dated May 10, 2018 (T.D.

Decl.") [Dkt. No. 1-2] ¶ 49; Declaration of S.W., dated May 18, 2018 ("S.W. Decl.") [Dkt. No.

1-3] ¶ 40; Declaration of D.A.F.A., dated May 19, 2018 ("D.A.F.A. Decl.") [Dkt. No. 1-4], ¶ 49;

Declaration of O.M.S., dated August 7, 2018 [Dkt. No. 58-1], ¶ 51.  Plaintiffs' contentions lack

merit.

First, the Court should not grant the extraordinary relief of anonymous proceeding based on Plaintiffs' blanket, speculative assertions that disclosure of their identities "could lead" to retaliation from authorities, "school personnel, family members, and the public at large," nor based on their invocation of "President Trump's immigration rhetoric."  Pls.' Anon. Mem. at 4. As an initial matter, none of the Plaintiffs' supporting declarations even assert that they seek to proceed anonymously because they fear retaliation from the Government, nor have they asserted any facts evincing any such threats or retaliatory acts as a result of their status as SIJ petitioners. *See generally* R.F.M. Decl.; T.D. Decl.; S.W. Decl.; D.A.F.A. Decl.; O.M.S. Decl.  *Compare Doe v. Kamehameha Schools*, 596 F.3d 1036 (9th Cir. 2010) (holding minor's interests in anonymity insufficient to justify anonymity even though plaintiffs, school children, received anonymous threats on the internet such as "who want to kick this boy's [sic]****", "go into hiding", "jus gonna get lickins everyday" and "gonna be targeted by . . . Hawaiians armed with baseball bats or guns").  And while Plaintiffs' memorandum asserts very broad fears of retaliation, they present no basis in fact for that fear, rendering it speculative and conclusory. Pls.' Anon. Mem. at 4.  Nor have they identified plausible threats to themselves from, among the matters they cite, an article about President Trump calling some aliens "animals," a tenants' rights guide for undocumented tenants, and a video of one person in a deli threatening to call ICE when he overheard employees speaking Spanish.  *See id.* at 5, n.3.  Thus, they have not met their burden to present persuasive evidence that there is a "risk that these particular Plaintiffs will be retaliated against if their identities are disclosed in this case." *Plaintiffs #1-21 v. County of Suffolk*, 138 F. Supp. 3d 264, 272 (E.D.N.Y. 2015).

Moreover, to the extent Plaintiffs claim that their identities should be withheld because they are "by definition young people for whom a state court . . . has found reunification with one

or more of their parents is not viable because of abuse, neglect or abandonment, or a similar

basis," Pls.' Anon. Mem. at 3, Plaintiffs do not reconcile their request for anonymity with other

SIJ cases brought by similarly-situated alien minors who have asserted similar claims of abuse,

neglect or abandonment, and yet have disclosed their full identities.  This includes plaintiff

Jefferson Randolfo Flores Zabaleta, who is also challenging USCIS's denial of his SIJ petition in

the related case, *Zabaleta v. Nielsen*, 17 Civ. 7512 (JGK), and asserts that he is a member of the

proposed *R.F.M.* class.  *See* Transcript of Court Conference on June 26, 2018 ("June 26 Court

Tr.") [Dkt. No. 37-2] at 5:21–23, 10:24–11:11 ("Mr. Flores Zabaleta is eligible for Special

Immigrant Juvenile status as a young man whose father abandoned him from a very young age

. . . . Because Mr. Flores Zabaleta is a putative class member and because the issues overlap, we

applied to have this case marked as related and, your Honor, you granted that.").  *See also*

*Budhathoki v. Nielsen*, 898 F.3d 504, 506 (5th Cir. 2018) (disclosing full names of plaintiffs

challenging denials of SIJ petitions); *Gao v. Jenifer*, 185 F.3d 548, 550 (6th Cir. 1999) (same);

*Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 254 (C.D. Cal. 2008) (same).

Additionally, Plaintiffs' request for anonymity is not justified because it will not achieve

the supposed retaliation avoidance on which they base their application.  This lawsuit is

premised on the fact that each plaintiff submitted to USCIS a Form I-360 for SIJ classification,

and that their petitions were denied.  Am. Compl. ¶¶ 2, 9-13.  The Government has obtained the

named Plaintiffs' A-files in this case, and is aware of Plaintiffs' immigration status, but has

disavowed any intention to retaliate for Plaintiffs' undertaking this litigation.  *See* Ltr. from K.

Reddy to Hon. John G. Koeltl, dated July 5, 2018 [Dkt. No. 39] (stating that the Government will

not initiate removal proceedings as a punitive measure or otherwise act in bad faith because

Plaintiffs are litigants in this action); June 26 Court Tr., at 27:15-16 ("the government does not

intend to proceed in bad faith"); Order dated July 7, 2018 [Dkt. No. 40], at 1 ("The government

has represented that it will not take any action against any of the named plaintiffs in retaliation

for filing the R.F.M. lawsuit.").  Additionally, allowing Plaintiffs to proceed anonymously when

the Government already knows their identities and immigration status will not, as a logical

matter, do anything to protect them from the type of future governmental retaliatory acts they say

justifies proceeding anonymously.  *See Doe v. United States*, 16 Civ. 7256 (JGK), 2017 WL

2389701, at *3 (S.D.N.Y. June 1, 2017) ("[I]t is unclear how permitting the plaintiff to proceed

anonymously would mitigate the risk of retaliation raised by the plaintiff," where the plaintiff

already disclosed his identity to the Government to allow the Government to investigate the

plaintiff's claims, and allowing plaintiff to "proceed anonymously would do nothing to protect

him from future retaliatory actions because the Government is already aware of the plaintiff's

identity"); *Doe v. Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y. 1996) (denying plaintiff's request to

proceed anonymously in part because "those who presumably would have any animosity" toward

plaintiff "already know her true identity").

   Second, each of the named plaintiffs declare that they seek to proceed anonymously, in

part, because "I don't want people to know who I am and judge me."  R.F.M. Decl. ¶ 2; T.D.

Decl. ¶ 49; S.W. Decl. ¶ 40; D.A.F.A. Decl. ¶ 49; O.M.S. Decl. ¶ 51.  However, a party's

immigration status is not a matter of a sensitive and highly personal nature, such that requiring

plaintiffs to reveal their identities would require them to divulge "personal information of the

utmost intimacy."  *Doe v. Merten*, 219 F.R.D. 387, 392 (E.D. Va. 2004) (quoting *Southern

Methodist University Association of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713

(5th Cir. 1979)).  Further, the risk that a plaintiff may suffer some embarrassment is not enough

to overcome the strong public interests against anonymous court proceedings.  *Femedeer v.*

*Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000) (citing *Doe v. Frank*, 951 F.3d 320, 324 (11th Cir.

1992); *Stankiewicz v. Universal Commerce Corp*. No. 16-cv-2050 (JGK), 2017 WL 3671040

(S.D.N.Y, Aug. 9, 2017) (mere fact that the allegations are embarrassing are not sufficient).

Third, each of the Plaintiffs asserts that they seek to proceed anonymously because "I

don't want to feel the consequences of being undocumented later on, for example, when I apply

for a job." R.F.M. Decl. ¶ 2; T.D. Decl. ¶ 49; S.W. Decl. ¶ 40, D.A.F.A. Decl. ¶ 49; O.M.S.

Decl. ¶ 51. This rationale, however, again is not sufficient to grant their sweeping request for

anonymity. *See Stankiewicz*, 2017 WL 3671040, at *1 (S.D.N.Y. Aug. 9, 2017) (citing *Abdel-

Razeq v. Alvarez & Marshal, Inc*., No. 14 Civ. 5601, 2015 WL 7017431, at *4 (S.D.N.Y. Nov.

12, 2015)) (noting that "courts have consistently rejected anonymity requests predicated on harm

to a party's reputational or economic interests" and collecting cases); *Doe*, 2017 WL 2389701, at

*2 (denying motion to proceed anonymously, where plaintiff claimed that disclosure of "his

personal and sensitive medical information . . . could affect his future career prospects," because

targeted redactions and sealing would address his concerns, and "the plaintiff's prediction that

his economic prospects may be diminished is not a sufficient basis to permit the plaintiff to

proceed anonymously here").

Fourth, while Plaintiffs claim that that they are vulnerable due to their "young age," they

are all above eighteen years old, the age of majority. *See* N.Y. Dom. Rel. L. § 2 ("minor" is a

person under the age of eighteen years); *See also* Fed. R. Civ. P. 5.2(a)(3) (court filings may

include only "the minor's initials"). Additionally, a party's status as a member of a vulnerable

age group and the party's subjective concern about retaliation does not automatically establish an

entitlement to anonymity. *See Kamehameha Schools*, 596 F.3d at 1045 (determining that

plaintiffs did not meet need for anonymity despite being members of a vulnerable class as minors because fears were unreasonable).

Fifth, while it is true that ordinarily "the Government is viewed as having a less significant interest in protecting its reputation from damaging allegations," that has no bearing on whether Plaintiffs are entitled to proceed anonymously.  *Sealed Plaintiff*, 537 F.3d at 190.  While Plaintiffs assert that their identities should not be disclosed because of a generalized fear of retaliation, mostly from the Government, Pls.' Anon. Mem. at 4–5, they have not established a basis for their asserted fears, and granting their motion to proceed anonymously would imply that any individual who openly challenges the Government's immigration decisions can proceed anonymously based on their subjective fear of retaliation or adverse consequences from possible public awareness of their immigration status.  That premise would turn the exceptional nature of anonymous litigation into the norm, and it also would prejudicially imply judicial endorsement of the view that the Government routinely engages in improper retaliation.  *See generally James v. Jacobson, Jr.*, 6 F.3d 233, 240 (4th Cir. 1993) ("knowledge by the jury that pseudonyms were being used would convey a message to the fact-finder that the court thought there was merit to the plaintiffs' claims of intangible harms").

Further, "[w]hile a suit against the government is often a factor that weighs in favor of permitting a plaintiff to proceed anonymously, courts have also determined that it can weigh against the use of a pseudonym."  *Doe*, 2017 WL 2389701, at *3.  Here, Plaintiffs' allegation that this is a matter of important public interest that affects SIJ petitioners nationwide as well as their communities, *see* Am. Compl. ¶ 7, indicates that there is "a public interest in the facts of the incident at issue as opposed merely to a public interest in the knowledge of the manner in which the courts function in resolving disputes" that militates against permitting a plaintiff raising such

66

a significant challenge to proceed anonymously. *Doe v. City of New York*, 201 F.R.D. 100, 102 (S.D.N.Y. 2001). As noted above, courts have long recognized that openness in court proceedings, including by having parties proceed in their own names, are key methods of protecting and advancing the public interest in court proceedings.

Finally, Plaintiffs do not acknowledge that alternative mechanisms other than proceeding anonymously may be sufficient to protect any legitimate confidentiality interests they may have. Should the Court determine that certain documents detailing Plaintiffs' experiences with abuse, neglect or abandonment are sufficiently confidential, this information could be filed in redacted form or under seal to avoid public disclosure of particularly sensitive information. *See, e.g., Sealed Defendants*, 537 F.3d at 190 (identifying as a factor for courts to consider in evaluating a motion to proceed anonymously whether alternative mechanisms could protect the plaintiff); *Doe*, 2017 WL 2389701, at *2 (denying plaintiff's request to proceed anonymously because of "the adequacy of alternative mechanisms for protecting the confidentiality of the plaintiff")

In sum, the balance of the relevant factors weigh against granting Plaintiffs the extraordinary measure of proceeding anonymously. Thus, they fail to overcome the important public interest that make anonymous litigation disfavored, and their request as to proceed with initials should be denied. *James*, 6 F.3d at 238 (the principle that the grant of an anonymity request is a "rare dispensation" reserved for particularly critical privacy or confidentiality concerns).

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' motions for leave to proceed anonymously, for class certification, and for a preliminary injunction.

Dated:   New York, New York
         September 17, 2018

> GEOFFREY S. BERMAN
> United States Attorney for the
> Southern District of New York,
> *Attorney for Defendants*

By:      _____*/s/ Tomoko Onozawa*_____
> KIRTI VAIDYA REDDY
> TOMOKO ONOZAWA
> Assistant United States Attorneys
> 86 Chambers Street, Third Floor
> New York, New York 10007
> Telephone:  (212) 637-2751/2721
> Facsimile:   (212) 637-2686
> E-mail: kirti.reddy@usdoj.gov
>         tomoko.onozawa@usdoj.gov

68

## CERTIFICATE OF COMPLIANCE

I, Tomoko Onozawa, an Assistant United States Attorney with the United States Attorney's Office for the Southern District of New York, and counsel to Defendants, hereby certify that according to the word count feature of the word processing program used to prepare this brief, the brief contains 22,124 words (exclusive of the cover page, certificate of compliance, table of contents, and table of authorities), and complies with Rule 2.D of the Individual Practices of the Honorable John G. Koeltl, and the Court's endorsed order dated September 13, 2018 [Dkt. No. 76].



TOMOKO ONOZAWA