**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| R.F.M., T.D., S.W., D.A.F.A., and O.M.S., on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v . <br><br> KIRSTJEN NIELSEN, *et al.*, <br><br> Defendants. | Case No. 18-CV-5068 (JGK) (OTW) <br><br> **ORAL ARGUMENT REQUESTED** |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, MOTION FOR CLASS CERTIFICATION, AND MOTION TO PROCEED ANONYMOUSLY**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 3

I.      PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION ........................ 3

      A.     Plaintiffs Have Suffered Irreparable Harm ................................................ 3

      B.     Injunctive Relief Sought Is Not Improper .............................................. 6

II.     Class Certification ............................................................................................. 8

      A.     The Proposed Class Satisfies Typicality Despite Procedural Differences
             Between Named Plaintiffs and Class Members ........................................ 8

      B.     The Proposed Class Satisfies Commonality Despite Minor, Immaterial
             Factual Differences Between Named Plaintiffs and Class Members .............. 10

      C.     The Class Is Appropriately Drawn ...................................................... 12

III.    Plaintiffs' Motion To Proceed Anonymously Should Be Granted ..................... 13

CONCLUSION ...................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abdi v. Duke,*
   323 F.R.D. 131 (W.D.N.Y. 2017)................................................................8, 9, 10

*Arizona Dream Act Coal. v. Brewer,*
   757 F.3d 1053 (9th Cir. 2014) .................................................................4

*Baby Neal for and by Kanter v. Casey,*
   43 F.3d 48 (3d Cir. 1994) ........................................................................11

*Batalla Vidal v. Nielsen,*
   279 F. Supp. 3d 401 (E.D.N.Y. 2018) ....................................................4

*Benisek v. Lamone,*
   138 S. Ct. 1942 (2018).............................................................................7

*Benten v. Kessler,*
   799 F. Supp. 281 (E.D.N.Y. 1992) .........................................................6

*Butler v. Suffolk Cty.,*
   289 F.R.D. 80 (E.D.N.Y. 2013)...............................................................8, 9

*Casa de Maryland, Inc. v. Trump,*
   No. GJH-18-845, 2018 WL 1947075 (D. Md. Apr. 25, 2018) ...............13

*Central States Se and Sw. Areas Health and Welfare Fund v. Merck-Medco
   Managed Care, L.L.C.,*
   504 F.3d 229 (2d Cir. 2007).....................................................................7

*Clarkson v. Coughlin,*
   145 F.R.D. 339 (S.D.N.Y. 1993) .............................................................9

*Comer v. Cisneros,*
   37 F.3d 775 (2d Cir. 1994).......................................................................9

*Devitri v. Cronen,*
   289 F. Supp. 3d 287 (D. Mass. 2018) ......................................................5

*Doe No. 2 v. Kolko,*
   242 F.R.D. 193 (E.D.N.Y. 2006)..............................................................15

*Doe v. Trump,*
   288 F. Supp. 3d 1045 (W.D. Wash. 2017)...............................................5

*Does I thru XXIII v. Advanced Textile Corp.*,
214 F.3d 1058 (9th Cir. 2000) ........................................................................13, 14

*Exley v. Burwell*,
No. 3:14-cv-1230 (JAM), 2015 WL 3649632 (D. Conn. June 10, 2015)...................8

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982)...................................................................................................10

*Hispanic Interest Coal. of Ala. v. Governor of Ala.*,
691 F.3d 1236 (11th Cir. 2012) .................................................................................13

*J.L. v. Cissna*,
2018 U.S. Dist. LEXIS 182702 (N.D. Cal. Oct. 24, 2018)...........................3, 4, 5, 7

*J.S.R. v. Sessions*,
2018 U.S. Dist. LEXIS 116653 (D. Conn. July 13, 2018).........................................5

*Johnson v. Bowen*,
817 F.2d 983 (2d Cir. 1987)........................................................................................6

*L.V.M. v. Lloyd*,
318 F. Supp. 3d 601 (S.D.N.Y. 2018).........................................................................6

*Lozano v. City of Hazleton*,
620 F.3d 170 (3d Cir. 2010), *vacated on other grounds sub nom. City of
Hazleton v. Lozano*, 563 U.S. 1030 (2011)...............................................................13

*M.M. v. Zavaras*,
139 F.3d 798 (10th Cir. 1998) ..................................................................................14

*MacNamara v. City of New York*,
275 F.R.D. 125 (S.D.N.Y. 2011) ................................................................................8

*Maczaczyj v. New York*,
956 F. Supp. 403 (W.D.N.Y. 1997) ............................................................................4

*Mahmood v. Nielsen*,
312 F. Supp. 3d 417 (S.D.N.Y. 2018).........................................................................5

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997)........................................................................................8

*Medina v. U.S. Dep't of Homeland Sec.*,
313 F. Supp. 3d 1237 (W.D. Wash. 2018)..................................................................4

*Michael v. I.N.S.*,
48 F.3d 657 (2d Cir. 1995)..........................................................................................5

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
    545 U.S. 967 (2005)..................................................................................11

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Stucco Sys., LLC*,
    289 F. Supp. 3d 457 (S.D.N.Y. 2018)........................................................7

*Perez-Olano v. Gonzalez*,
    248 F.R.D. 248 (C.D. Cal. 2008) ...........................................................4, 10

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
    279 F. Supp. 3d 1011 (N.D. Cal. 2018) ......................................................4

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993).................................................................8, 9, 11

*Santillan v. Ashcroft*,
    No. C 04-2686 MHP, 2004 WL 2297990 (N.D. Cal. Oct. 12, 2004) ....................11

*Sealed Plaintiff v. Sealed Defendant*,
    537 F.3d 185 (2d Cir. 2008)................................................................14, 15

*Strouchler v. Shah*,
    286 F.R.D. 244 (S.D.N.Y. 2012) ...............................................................7

*Sykes v. Mel Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015)..................................................................2, 10

*Sykes v. Mel Harris and Assocs., LLC*,
    285 F.R.D. 279 (S.D.N.Y. 2012), *aff'd sub nom. Sykes v. Mel S. Harris and*
    *Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015).....................................................8

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)......................................................................10, 11, 12

## STATUTES

5 U.S.C. § 705...........................................................................................6

8 U.S.C. § 1101(a)(27)(J)(i).............................................................................1

8 U.S.C. § 1101(a)(27)(J)(ii)............................................................................1

8 U.S.C. § 1232(d)(a).....................................................................................1

8 U.S.C. § 1357(h).......................................................................................14

42 U.S.C. § 1997e(a).....................................................................................8

8 USC § 1101(a)(27)(j)..........................................................................1, 3, 12

Administrative Procedure Act..................................................................................2

Immigration and Nationality Act.......................................................................1, 13

Prison Litigation Reform Act..................................................................................8

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ......................1

## RULES

Fed. R. Civ. P. 5.2(c) .............................................................................................14

Fed. R. Civ. P. 23(b)(2)..........................................................................................12

## REGULATIONS

8 C.F.R. § 204.11(a)................................................................................................3

U.S. Dep't of Homeland Sec., U.S. Citizenship & Immigration Servs., PM-
    602-0050.1, Policy Memorandum 7-8 (June 28, 2018), *available at*
    https://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/2018/2018
    -06-28-PM-602-0050.1-Guidance-for-Referral-of-Cases-and-Issuance-of-
    NTA.pdf..............................................................................................................5

## OTHER AUTHORITIES

1 Newberg on Class Actions (5th ed.) .......................................................................8

## PRELIMINARY STATEMENT

R.F.M., T.D., S.W., D.A.F.A., and O.M.S. (collectively "Named Plaintiffs"), and the members of the putative class (the "Proposed Class"), meet the requirements for Special Immigrant Juvenile status ("SIJS") as set forth in the Immigration and Nationality Act ("INA") and the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"). Each Plaintiff has been declared dependent on the New York Family Court ("Family Court") in the context of a guardianship proceeding. *See* 8 U.S.C. § 1101(a)(27)(J)(i). In each proceeding, the Family Court determined that it would not be in the child's best interests to return to his or her country of nationality or last residence. *Id*. § 1101(a)(27)(J)(ii). Each child was under the age of 21 at the time of the petition, and is unmarried. *Id.* § 1232(d)(a). And—as the Family Court found in each case— each child suffered abuse, neglect and/or abandonment by a parent, such that reunification with one or both parents is not viable. 8 U.S.C. § 1101(a)(27)(J)(i). For nearly a decade, United States Citizenship and Immigration Services ("USCIS") correctly recognized that individuals in this posture are eligible for humanitarian relief under 8 U.S.C. § 1101(a)(27)(j) ("SIJS Statute").

That changed in early 2018. As part of a blanket policy of denying all SIJS petitions filed by petitioners aged 18-20 years old (the "Over-18-Denial Policy"), USCIS began rejecting each child's SIJS petition on the grounds that the New York Family Court was not a "juvenile court" because it could not return a child over the age of 18 back to a parent's custody and lacked authority to issue findings involving the viability of reunification due to abuse, neglect and

abandonment.  USCIS's position is contrary to federal and state law, and it is arbitrary and capricious.[1]

In conjunction with these claims, Plaintiffs moved (i) for a preliminary injunction, (ii) to certify a class, and (iii) for leave to proceed using their initials.  Defendants (referred to collectively herein as "USCIS") opposed all three motions.

*First*, Plaintiffs are entitled to a preliminary injunction because the Proposed Class will suffer irreparable harm absent injunctive relief.  USCIS's argument that harm to Plaintiffs is too speculative ignores that risk of deportation alone constitutes irreparable harm sufficient to justify a preliminary injunction.  USCIS also argues that injunctive relief is improper.  USCIS's argument misconstrues the nature of the requested relief and the range of permissible remedies under the Administrative Procedure Act (the "APA") in a preliminary injunction context.

*Second*, this Court should certify the Proposed Class.  USCIS argues that the Named Plaintiffs do not satisfy typicality or commonality due to minor factual variations among members of the Proposed Class.  However, a common question of law—specifically, whether the Over-18-Denial Policy violates the APA—predominates over the entire class.  Resolution of this common question of law will allow for the resolution of the claim "in one stroke."  *Sykes v. Mel Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015).

*Finally*, this Court should grant Named Plaintiffs' motion to proceed anonymously.  The Named Plaintiffs are vulnerable youth whose SIJS petitions are based upon their having been abused, abandoned or neglected.  USCIS's argument ignores both Second Circuit precedent and the reality of discrimination based on immigration status.

---

[1] *See* Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Injunction, Docket No. 8.

# ARGUMENT

## I.    PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION[2]

USCIS argues that (i) the threat of removal alone is too speculative to constitute

irreparable harm; and (ii) the requested injunctive relief is improper because the appropriate

remedy is to remand the issue to USCIS for reconsideration consistent with the Court's opinion.

USCIS's arguments ignore the facts and are contrary to the law.[3]

### A.    Plaintiffs Have Suffered Irreparable Harm

Plaintiffs, by definition, are members of a class of young people who have been

determined by New York's Family Courts to have been abused or neglected, and for whom

return to their home country is not in their best interests.  *See* Plaintiffs' Memorandum in Support

of Motion for Class Certification, Docket No. 10, at 2-3.[4]  Plaintiffs seek a preliminary

injunction to maintain the status quo; they seek an order directing USCIS to process applications

as they were before adopting the Over-18-Denial Policy and to provide Plaintiffs' counsel with

notice prior to taking any adverse action against a member of the Proposed Class.  Absent the

---

[2] The parties have cross-moved for summary judgment in this case.  *See* Pls.' MSJ.  If the Court resolves the cross summary judgment motions, Plaintiffs' request for a preliminary injunction may become moot.  However, Plaintiffs address USCIS's arguments against the issuance of a *preliminary* injunction in this Reply brief to the extent the Court wishes to resolve the preliminary injunction motion prior to the summary judgment motions.

[3] In addition, USCIS argues that Plaintiffs are unlikely to prevail on the merits.  Plaintiffs incorporate by reference the accompanying Memorandum of Law in Support of Cross Motion for Summary Judgment and in Opposition to Defendants' Partial Motion to Dismiss and Defendants' Motion for Summary Judgment.  Plaintiffs also note that a federal court recently granted a preliminary injunction in another challenge to the Over-18-Denial Policy.  *See J.L. v. Cissna*, 2018 U.S. Dist. LEXIS 182702, at *21 n.11 (N.D. Cal. Oct. 24, 2018) (finding young immigrants seeking SIJS classification were likely to succeed on the merits of an APA challenge to the Over-18-Denial Policy).

[4] Plaintiffs have asked the Court to certify the Proposed Class of all SIJS petitioners who based their petitions on SFOs issued by the New York Family Court between the petitioners' 18th and 21st birthdays and either:

(1) have been issued (i) Notices of Intent to Deny ("NOID"), (ii) Notices of Intent to Revoke ("NOIR"), (iii) Decisions of Denial, or (iv) Decisions revoking previously-granted SIJS since January 1, 2016 on the ground that the Family Court is not a "juvenile court" under 8 C.F.R. § 204.11(a) and/or that the Family Court is not empowered to issue SIJS predicate Orders under 8 U.S.C. § 1101(a)(27)(J); or

(2) have a Family Court SFO finding the eligibility criteria of 8 U.S.C. § 1101(a)(27)(J) are satisfied and have a pending petition for SIJS before the USCIS based on the Family Court SFO.

requested relief, Plaintiffs with pending applications stand to suffer immediate irreparable injury as their applications are denied or revoked and they are put at immediate risk of deportation and family disruption, and they lose the opportunity to work and pursue an education.  Those whose applications have been denied—also at risk of deportation—seek notice so that this Court has the opportunity to consider applications for intervention where USCIS has initiated removal proceedings.

On October 24, 2018, the Northern District of California granted a preliminary injunction in favor of young immigrants seeking SIJS, enjoining the enforcement of the same Over-18-Denial policy that Plaintiffs challenge here.  *J.L.*, 2018 U.S. Dist. LEXIS 182702.  The court found that the loss of SIJS-related benefits, including "federally-funded education and preferential status for employment-based green cards," constitutes irreparable harm in and of itself.  *Id.* at 21.  Other courts have also found that the loss of lawful status and the resultant inability to work, attend school, or engage in a productive life constitute irreparable harm. *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (limiting professional opportunities and the ability to work and advance their careers constitutes irreparable harm); *Medina v. U.S. Dep't of Homeland Sec.*, 313 F. Supp. 3d 1237, 1251-52 (W.D. Wash. 2018) (revocation of DACA status and concomitant withdrawal of work authorization constitutes irreparable harm); *Maczaczyj v. New York*, 956 F. Supp. 403, 408 (W.D.N.Y. 1997) (inability to pursue chosen career constitutes irreparable harm); *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 434-35 (E.D.N.Y. 2018) (sudden unemployment stemming from an arbitrary policy constitutes irreparable harm); *Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 267 (C.D. Cal. 2008) (denial of SIJS and ability to adjust status constitutes irreparable harm).

USCIS argues that the threat of removal alone is too speculative to constitute irreparable harm when removal proceedings have not been commenced. *See* Defs.' Opp. at 48-50. However, the risk of deportation alone constitutes irreparable harm sufficient to justify an injunction. *See Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011, 1046-47 (N.D. Cal. 2018) (a class of people made removable by the arbitrary rescission of DACA would suffer irreparable harm without injunctive relief). The district court in *J.L.* dismissed an identical argument from USCIS, explaining that although "removal is not certain," plaintiffs had demonstrated that "removal is at least likely to occur." *J.L.*, 2018 U.S. Dist. LEXIS 182702, at *25-26.

Moreover the risk of deportation has been exacerbated since this lawsuit was filed. In late June 2018, USCIS announced it will issue a Notice to Appear ("NTA") in removal proceedings to applicants unlawfully present in the country upon the denial of "an application, petition, or benefit request." *See* U.S. DEP'T OF HOMELAND SEC., U.S. CITIZENSHIP & IMMIGRATION SERVS., PM-602-0050.1, POLICY MEMORANDUM 7-8 (June 28, 2018), *available at* https://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/2018/201 8-06-28-PM-602-0050.1-Guidance-for-Referral-of-Cases-and-Issuance-of-NTA.pdf. An "application" includes an I-485 application for adjustment of status, which is filed concurrently with an I-360 SIJS application. Thus, for the first time, a SIJS denial could immediately trigger the commencement of deportation proceedings. Because of this recent change in USCIS's policy, the risk of removal is decidedly not speculative, it will be a direct consequence of SIJS denial. Where, as here, removal is imminent, irreparable harm is demonstrated. *Michael v. I.N.S.*, 48 F.3d 657, 671-72 (2d Cir. 1995); *see also Devitri v. Cronen*, 289 F. Supp. 3d 287, 297 (D. Mass. 2018).

Plainly, deportation constitutes irreparable injury.  The interference with the sanctity and security of the family *is* irreparable harm.  *Mahmood v. Nielsen*, 312 F. Supp. 3d 417, 425 (S.D.N.Y. 2018); *J.S.R. v. Sessions*, 2018 U.S. Dist. LEXIS 116653, at \*27-\*28 (D. Conn. July 13, 2018) (finding trauma as the result of family separation constituted irreparable harm); *Doe v. Trump*, 288 F. Supp. 3d 1045, 1082 (W.D. Wash. 2017).  USCIS does not contest that deportation constitutes an irreparable injury.  *See* Defs.' Opp. at 48-50.  Plaintiffs (and all members of the Proposed Class) are children who, absent an arbitrary change in policy, would have been granted humanitarian relief—the goal of which is to protect them against future harm. The particularly cruel nature of the harm should be a factor in the Court's assessment here.

### B.      The Injunctive Relief Sought Is Appropriate

USCIS argues that the Court should deny the Plaintiffs' preliminary injunctive relief because, in an APA action, "the appropriate remedy is to remand the issue back to the agency for reconsideration[,] . . . further investigation[,] or an explanation adequate to support the agency's decision."  Defs.' Opp. at 50.  USCIS appears to have a fundamental misunderstanding about the nature of this case and the range of permissible remedies under the APA in a preliminary injunction context.

*First*, the APA expressly authorizes a reviewing court, "to the extent necessary to prevent irreparable injury, . . . [to] issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings," including preliminary injunctions against arbitrary administrative actions.  5 U.S.C. § 705; *see also L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 620-21 (S.D.N.Y. 2018).  Here, a preliminary injunction would preserve the rights of SIJS petitioners until the court can rule on the legality of arbitrary and capricious actions by USCIS.

6

*Second*, courts routinely hold that a preliminary injunction preserving the status quo—which is exactly what Plaintiffs are seeking here—is appropriate in challenges brought under the APA to arbitrary and capricious agency actions.  *See, e.g.*, *Benten v. Kessler*, 799 F. Supp. 281, 291 (E.D.N.Y. 1992) ("[W]here administrative misuse of procedure has delayed relief, the courts have the equitable power to order relief tailored to the situation, not mere remand for agency use of its discretion."); *see also Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration.").  Plaintiffs' requested preliminary relief is that USCIS (i) be required to adjudicate SIJS petitions under the agency's longstanding prior (and correct) interpretation of the law, and (ii) provide notice to Plaintiffs' counsel regarding adverse enforcement actions against putative class members prior to taking any such action.  This is aligned with longstanding case law that a preliminary injunction should preserve the status quo temporarily in the context of the overall litigation.  *See Benisek v. Lamone*, 138 S. Ct. 1942, 1945 (2018); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Stucco Sys., LLC*, 289 F. Supp. 3d 457, 463 (S.D.N.Y. 2018) ("The general purpose of a preliminary injunction is to avoid irreparable injury to the movant and to preserve the court's power to render a meaningful decision after a trial on the merits."); *J.L.*, 2018 U.S. Dist. LEXIS 182702, at *27 ("Although a class has not yet been certified, [state]-wide preliminary injunctive relief is necessary to preserve the status quo and to prevent irreparable harm for all Plaintiffs and the putative class.").

7

## II.      CLASS CERTIFICATION[5]

USCIS asserts the Proposed Class fails to satisfy the commonality and typicality

requirements, the class is overbroad, and Plaintiffs fail to state a claim upon which relief can be

granted as to "unexhausted claims and revoked petitions."  Defs.' Opp. at 51.  These assertions

are without merit and, accordingly, the Court should certify the class.

### A.      The Proposed Class Satisfies Typicality Despite Procedural Differences Between Named Plaintiffs and Class Members

Typicality is satisfied "when each class member's claim arises from the same course of

events . . . and each class member makes similar legal arguments to prove the defendant's

liability."  *Strouchler v. Shah*, 286 F.R.D. 244, 247-48 (S.D.N.Y. 2012) (quoting *Central States

Se. and Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d

229, 245 (2d Cir. 2007)); *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  "However,

the plaintiffs' claims need not be identical to those of the class; typicality will be satisfied so

long as the named representatives' claims share the same essential characteristics as the claims of

the class at large."  1 NEWBERG ON CLASS ACTIONS § 3:29 (5th ed.).  "When it is alleged that the

same unlawful conduct was directed at or affected both the named plaintiff and the class sought

to be represented, the typicality requirement is usually met irrespective of minor variations in the

fact patterns underlying individual claims."  *Exley v. Burwell*, No. 3:14-cv-1230 (JAM), 2015

WL 3649632, at *5 (D. Conn. June 10, 2015) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936-37

(2d Cir. 1993)); *see also Sykes v. Mel Harris and Assocs., LLC*, 285 F.R.D. 279, 291 (S.D.N.Y.

2012), *aff'd sub nom. Sykes v. Mel S. Harris and Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015).

---

[5] Plaintiffs respectfully ask the Court to resolve the class certification motion prior to or concurrently with the cross motions for summary judgment.  Plaintiffs' cross-motion for summary judgment seeks relief on behalf of the entire Proposed Class, and not merely for the Named Plaintiffs.

USCIS argues that the Named Plaintiffs do not satisfy typicality regarding Proposed

Class members who have revoked or pending SIJS petitions.  Defs.' Opp. at 55-56, 58-59.

Notably, Second Circuit courts have never found that a future class member—a class member

who will suffer "imminent" harm if the challenged practice is not altered—is atypical of the class

because none of the named plaintiffs are future class members.  *See, e.g.*, *Abdi v. Duke*, 323

F.R.D. 131, 137-38 (W.D.N.Y. 2017) (certifying class of present and future immigration

detainees).[6]

The fact that the SIJS petitions of certain class members are at various levels of review

does not defeat class certification.  Courts have repeatedly certified classes with similar variation

among class members.  *See, e.g.*, *MacNamara v. City of New York*, 275 F.R.D. 125, 143

(S.D.N.Y. 2011) ("[T]he status of various class members as protestors, observers, or bystanders

does not render their claims atypical where, as here, 'the same unlawful conduct was directed at

or affected both the named plaintiff and the class sought to be represented.'" (quoting

*Robidoux*, 987 F.2d at 936-37)); *Comer v. Cisneros*, 37 F.3d 775, 797 (2d Cir. 1994) (certifying

class despite named plaintiffs having already received relief sought for class).  Similarly, courts

have routinely certified classes including *future* class members especially where, as here, the

class is fluid.  *See, e.g.*, *Abdi*, 323 F.R.D. at 137-38; *Butler v. Suffolk Cty.*, 289 F.R.D. 80, 99

(E.D.N.Y. 2013) ("[W]ith respect to the Injunctive Class, it is not only proper, but preferred, to

include future detainees."); *Clarkson v. Coughlin*, 145 F.R.D. 339, 346-47 (S.D.N.Y.

1993) (defining sub-classes to include all present and future inmates).  If the Over-18-Denial

Policy remains in effect, USCIS will deny the applications of all members of the Proposed Class

---

[6] Similarly, in the prison context, where exhaustion of administrative remedies is required under the Prison Litigation Reform Act before initiating a lawsuit, compliance with exhaustion by named plaintiffs suffices for the entire class. 42 U.S.C. § 1997e(a); *see Butler v. Suffolk Cty.*, 289 F.R.D. 80, 97 (E.D.N.Y. 2013) (PLRA's exhaustion requirement is limited to the class representatives).

whose applications have not yet been adjudicated, and revoke SIJS of Proposed Class members

whose applications have already been granted.  *See, e.g.*, Decl. of Beth Krause, Docket No. 11-6,

¶¶ 12, 15, 19, 20 (reviewing influx of Requests for Evidence ("RFEs"), NOIDs and NOIRs

arising from new USCIS policy).  Thus, harm to all members of the Proposed Class is imminent

since USCIS's unlawful practice will "necessarily impact" not only Proposed Class members

who have received denials, but also Proposed Class members with pending SIJS applications and

Proposed Class members whose applications have already been granted, who have received

NOIRs or decisions revoking SIJS.  *Abdi*, 323 F.R.D. at 138.

      **B.**    **The Proposed Class Satisfies Commonality Despite Minor, Immaterial**
                  **Factual Differences Between Named Plaintiffs and Class Members**

The commonality requirement "is satisfied where even a single issue of law or fact is

common to the class, and where a classwide proceeding is capable of 'generat[ing] common

answers apt to drive the resolution of the litigation.'"  *Abdi*, 323 F.R.D. at 140-41 (W.D.N.Y.

2017) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)); *see also Sykes v. Mel

S. Harris and Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015).  Typicality and commonality

standards under Rule 23 tend to merge.  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157

n.13 (1982).  "Both serve as guideposts for determining whether under the particular

circumstances maintenance of a class action is economical and whether the named plaintiff's

claim and the class claims are so interrelated that the interests of the class members will be fairly

and adequately protected in their absence."  *Id.*  Neither standard requires that all class members

share exactly the same factual positions or even exactly the same legal positions.

USCIS asserts that because SIJS eligibility is individualized and case-specific, the

commonality requirement of Rule 23 is not met.  Defs.' Opp. at 56-57.  This argument relies

upon a fundamental misconstruction of the relief sought in this matter.  Plaintiffs do not seek to

mandate the outcome of Proposed Class members' SIJS petitions, but rather to require that

USCIS review SIJS petitions under its policy in effect prior to the adoption of the Over-18-

Denial Policy.  In *Perez-Olano v. Gonzalez*, in a decision certifying a class of SIJS applicants,

the court noted that because "[t]his is a complaint about the legality of Defendants'

conduct . . . [t]he claims will not turn on individualized adjudications."  248 F.R.D. at 259.

Similarly here, Named Plaintiffs' and other Proposed Class members' claims all derive from the

same course of events—each obtained a Special Findings Order and petitioned for SIJS status

while over 18 and under 21 years of age; each will have or has had his or her petition determined

or SIJS revoked by USCIS under the Over-18-Denial Policy; and finally, each will have or has

had his or her SIJS petition denied or SIJS revoked pursuant to this policy.  Moreover, each

Proposed Class member will benefit from the relief sought—a single injunction mandating that

SIJS petitions be adjudicated under the original standard.  *See Dukes*, 564 U.S. at 350; *Robidoux*,

987 F.2d at 936-37; *see also Santillan v. Ashcroft*, No. C 04-2686 MHP, 2004 WL 2297990, at

*10 (N.D. Cal. Oct. 12, 2004) ("It is clear that all plaintiffs, whether present or future members

of the class, are challenging the legality of the same government program and thus inherently

share common issues.").

 Finally, USCIS argues that Plaintiffs cannot establish commonality because "Plaintiffs

have not even specified what particular policy they challenge."  Defs.' Opp. at 58.  USCIS has

failed to refute in a meaningful way that its recent pattern of adjudications is not a new policy.

*See* Pls.' MSJ at 9-11.  USCIS cannot defeat class certification by framing its new approach to

SIJS applications as a change in interpretation of law instead of a policy change.  *See*, *e.g.*, *Nat'l

Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982-83 (2005) (performing

an identical analysis regardless of whether an agency has labeled its new position as a policy change or a change in statutory interpretation).

### C.      The Class Is Appropriately Drawn

USCIS claims that the definition of the Proposed Class is overbroad for two reasons. *First*, USCIS argues that because the class definition includes Proposed Class members who have NOIDs, NOIRs, revocations, and pending SIJS petitions, the class includes individuals whose claims are not ripe and may never be justiciable.  Defs.' Opp. at 58.  However, these claims are all ripe as they each face the same imminent risk of harm from USCIS's unlawful new policy.  *See, e.g.*, *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 63 (3d Cir. 1994) (certifying class where all class members were subject to the same *risk* of harm even though all had not *suffered* actual injury).  These claims are also justiciable because the injunctive relief Plaintiffs seek asks the Court to assess whether USCIS's *policy* is *unlawful* under federal and state law rather than reviewing a specific SIJS revocation.  *See* Pls.' MSJ at 36-37.  The central tenet of Rule 23(b)(2) is that plaintiffs must demonstrate that "a single injunction or declaratory judgment would provide relief to each member of the class."  *Dukes*, 564 U.S. at 360; *see also* FED. R. CIV. P. 23(b)(2).  As all of these Proposed Class members' claims arise from the Over-18-Denial Policy, share the same legal arguments and would benefit from the same requested relief—a single injunction mandating the reversion to USCIS's prior policy—they are all properly included in the class definition.

*Second*, USCIS asserts that the Proposed Class is overbroad because it relies upon Plaintiffs' interpretation of what constitutes a "juvenile court order."  Defs.' Opp. at 59.  But Plaintiffs' Proposed Class definition merely tracks the definition of a Special Findings Order as defined by the relevant statute 8 U.S.C. § 1101(a)(27)(J).  Unlike USCIS, Plaintiffs do not

supplant the statutory definition of "juvenile court order" with their own interpretation divorced from the statute.  *See* Pls.' MSJ at 12-17.

Because Plaintiffs have established that the Proposed Class meets all of the requirements under Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs' motion for class certification should be granted.

## III.  PLAINTIFFS' MOTION TO PROCEED ANONYMOUSLY SHOULD BE GRANTED

USCIS contests whether Named Plaintiffs—vulnerable youth whose SIJS petitions are based upon their having been abused, abandoned, or neglected and who have decided to serve as lead representatives in a class action challenging an unfair immigration policy of the federal government—should be permitted to proceed anonymously.  None of its arguments is compelling.

*First*, USCIS argues that Named Plaintiffs' fear of retaliation is too speculative.  It is true that, since the filing of Plaintiffs' Motion to Proceed Anonymously, USCIS has represented to the Court that it will not retaliate against the Named Plaintiffs.  However, forcing Plaintiffs to proceed with their full names would subject Plaintiffs, all of whom are SIJS applicants and by definition part of a vulnerable plaintiff class, to the scrutiny of a public which has regularly been stoked to aggression and violence against immigrants and emboldened by USCIS's own anti-immigrant rhetoric.  Given this context, Named Plaintiffs reasonably fear being subjected to harassment, intimidation, abuse, and discrimination.  *See generally* Declarations of R.F.M., T.D., S.W., D.A.F.A., and O.M.S., Docket Nos. 11-1, 11-2, 11-3, 11-4; *see also Hispanic Interest Coal. of Ala. v. Governor of Ala.*, 691 F.3d 1236, 1247 (11th Cir. 2012) ("revealing the illegal status of children could lead to criminal prosecution, harassment, and intimidation"); *Casa de Maryland, Inc. v. Trump*, No. GJH-18-845, 2018 WL 1947075, at *2 (D. Md. Apr. 25, 2018)

(granting immigrant-plaintiffs' motion to omit their home addresses from the docket because though their exposure to threats of violence was speculative, their fears were "nonetheless legitimate," as the current political climate bred "considerable public animus against immigrants, and [the plaintiffs'] safety could be compromised").

*Second*, contrary to USCIS's assertion that "immigration status is not a matter of a sensitive and highly personal nature," Defs.' Opp. at 64, courts have routinely recognized the particular vulnerability of undocumented immigrants and have permitted them to proceed anonymously.  *See, e.g.*, *Lozano v. City of Hazleton*, 620 F.3d 170, 195 (3d Cir. 2010), *vacated on other grounds sub nom. City of Hazleton v. Lozano*, 563 U.S. 1030 (2011); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-68 (9th Cir. 2000).  This assertion by USCIS also belies the Federal Rules of Civil Procedure as well as the Immigration and Nationality Act, both of which recognize the particularly sensitive nature of immigration proceedings in general and SIJS applications specifically.  *See* Fed. R. Civ. P. 5.2(c) (explicitly restricting access to electronic files in immigration cases); and 8 U.S.C. § 1357(h) (A SIJS applicant "shall not be compelled to contact the alleged abuser (or family member of the alleged abuser) at any stage of applying for special immigrant juvenile status . . .").  And the Second Circuit has recognized that lack of immigration status and history of childhood abuse, abandonment, or neglect are clearly matters that are "highly sensitive and [of a] personal nature."  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008) (quoting *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998)).

USCIS also generalizes that because certain other plaintiffs have previously challenged denials of SIJS petitions without proceeding anonymously, Named Plaintiffs should also disclose their full identities.  However, other plaintiffs' decisions to disclose their identities does not

undercut the potential harmful effects of disclosure of Named Plaintiffs' identities and should have no bearing on Named Plaintiffs' desire to proceed anonymously.  Indeed, such consideration is absent in the Second Circuit's factors courts must consider when determining whether a plaintiff should be permitted to proceed anonymously.  *See Sealed Plaintiff*, 537 F.3d at 189.

*Third*, USCIS contends that the potential economic harm to Named Plaintiffs is insufficient to warrant granting the motion to proceed anonymously.  However, economic harm is not the only harm Named Plaintiffs fear.  The potential economic harm Plaintiffs will suffer should be considered with all other factors, including the highly sensitive and personal nature of the litigation.  *See, e.g.*, *Does I thru XXIII*, 214 F.3d at 1069 (economic injury must be considered in conjunction with other consequences, such as deportation if the economic injury is job loss); Decl. of Alan Shapiro, Doc. No. 11, ¶¶ 8-13 ("Immigrant youth applying for SIJS are often survivors of abuse, abandonment, neglect, malnutrition, physical assault, or sexual violence.  There is incontrovertible medical evidence that these kinds of 'adverse child experiences' (ACES) are physically and psychologically damaging.").

*Fourth*, while all Named Plaintiffs are over the age of 18, turning 18 does not shield them from discrimination based on their immigration status or eliminate the effects of child abuse, abandonment, or neglect.  *See, e.g.*, *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 197 (E.D.N.Y. 2006) (allowing alleged adult victim of sexual abuse to proceed anonymously).

*Fifth*, USCIS's argument that permitting Named Plaintiffs to proceed anonymously would open the door to all plaintiffs challenging immigration decisions to proceed anonymously also fails to appreciate the case-by-case analysis required by the Second Circuit.  *See Sealed Plaintiff*, 537 F.3d at 189-90.

Finally, USCIS's suggestion that only certain documents detailing Named Plaintiffs' experiences with abuse, neglect or abandonment could be filed in redacted form or under seal to avoid public disclosure of sensitive information simply defies reason.  At its core, eligibility for SIJS necessitates having been abused, neglected or abandoned.  Thus, revealing Named Plaintiffs' identities in relation to this suit while sealing or redacting the documents detailing any abuse, abandonment or neglect would not sufficiently protect the Named Plaintiffs.

Ultimately, Named Plaintiffs' need for anonymity outweighs any potential prejudice to USCIS, especially given that USCIS now has the Plaintiffs' identities.  As such, Named Plaintiffs should be permitted to proceed anonymously.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' motion for preliminary injunction, grant Plaintiffs' motion to certify the Proposed Class, and grant Plaintiffs' motion for leave to proceed anonymously.

Dated:   October 25, 2018
         New York, New York                    Respectfully submitted,

                                               /s/ Robert J. Malionek
                                               Robert J. Malionek
                                               Nicholas L. McQuaid
                                               Virginia F. Tent
                                               Alexander R. DeLisi
                                               LATHAM & WATKINS LLP
                                               885 Third Avenue
                                               New York, NY 10022
                                               Tel: (212) 906-1200
                                               Robert.Malionek@lw.com
                                               Nicholas.McQuaid@lw.com
                                               Virginia.Tent@lw.com
                                               Alexander.DeLisi@lw.com

                                               Adriene Holder
                                               Hasan Shafiqullah
                                               Judith Goldiner
                                               Lisa Freeman
                                               Beth Krause
                                               Jennifer Levy
                                               Julie Dona
                                               Theresa B. Moser
                                               THE LEGAL AID SOCIETY
                                               199 Water Street, 3rd Floor
                                               New York, NY 10038
                                               (212) 577-3536
                                               JLevy@legal-aid.org

                                               *Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

The foregoing reply memorandum in support of Plaintiffs' Motion for Preliminary Injunction, Plaintiffs' Motion for Class Certification, and Motion to Proceed Anonymously complies with the word count and formatting rules set forth in Section 1.D of the Court's Individual Practices as amended by the Court's October 11, 2018 Order (Docket No. 87). Excluding the cover page, certificate of compliance, table of contents, and table of authorities, the total number of words in the foregoing memorandum is 4,947 as calculated by Microsoft Word.  The foregoing memorandum is double-spaced, in 12-point Times New Roman font, and uses one-inch margins.

/s/ Robert J. Malionek
Robert J. Malionek