**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| R.F.M., T.D., S.W., D.A.F.A., and O.M.S., on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>    v.<br><br>KIRSTJEN NIELSEN, *et al.*,<br><br>                Defendants. | Case No. 18-CV-5068 (JGK) (OTW) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ............................................................................................................... i

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................ 4

STANDARD OF REVIEW ....................................................................................................... 8

ARGUMENT ............................................................................................................................ 9

I.      Defendants' Adoption And Implementation Of The Over-18-Denial Policy For New
        York SIJS Applicants Is An Arbitrary And Capricious Final Agency Action ............................ 9

        A.      The Over-18-Denial Policy For New York Youth Is A Change In USCIS
                Policy ........................................................................................................................ 9

        B.      USCIS's Over-18-Denial Policy Is Based On Erroneous Interpretations Of
                Federal And State Law And Is Therefore Arbitrary And Capricious ................... 11

                1.      USCIS's Over-18-Denial Policy Contradicts The Federal Statute
                        And Relies On An Outdated Regulation .................................................... 12

                        a.      Congress Expanded SIJS Eligibility When It Enacted The
                                William Wilberforce Trafficking Victims Protection
                                Reauthorization Act Of 2008 ........................................................ 12

                        b.      Congress Vested State Courts With The Authority To Make
                                Findings Under State Law Establishing Eligibility For SIJS ......... 17

                2.      USCIS's Over-18-Denial Policy Is Premised On An Erroneous
                        Interpretation Of New York Law ............................................................... 21

                        a.      New York Family Court Has the Authority To Issue Orders
                                Directing The Care And Custody Of Juveniles, Including
                                Those Ages 18 To 20 .................................................................... 22

                        b.      New York Family Courts Have The Authority To Render
                                Determinations Of Abuse, Abandonment, And Neglect In
                                Various Proceedings For Youth 18 To 20 Years Old,
                                Which Is All The SIJS Statute Requires ........................................ 26

        C.      The Over-18-Denial Policy Is Arbitrary And Capricious Because It
                Improperly Treats SIJS Petitioners Differently Depending on Whether the
                Petitioner Is Over or Under 18 Years Old ............................................................ 28

        D.      USCIS's Over-18-Denial Policy Is Arbitrary And Capricious Because It Is
                Predicated Upon The Misuse Of USCIS's Consent Function, Which
                Requires The Agency To Review Orders Using The Reasonable Factual
                Basis Standard ........................................................................................................ 30

II.   USCIS Was Required To Provide Notice Of A Policy Change Of This Magnitude Under
      the APA and 5 U.S.C. § 522(a)(1)(D) ......................................................................32

III.  This Court Has Jurisdiction To Review The Over-18-Denial Policy, Including
      Revocations Based On The Policy ...........................................................................33

      A.    USCIS Has Taken Reviewable Final Agency Action............................................33

      B.    The Court Has Jurisdiction Over The Entire Putative Class, Including
            Revocations, Because This Case Challenges the Over-18-Denial Policy,
            Not Individual Revocation Decisions ..................................................................36

      CONCLUSION.........................................................................................................41

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Abdelwahab v. Frazier,*
  578 F.3d 817 (8th Cir. 2009) ...................................................39

*Abramski v. United States,*
  134 S. Ct. 2259 (2014) ...........................................................11

*In re Agam B.,*
  121 A.D.3d 1109 (2d Dep't 2014) ...........................................24

*Agor v. Lynch,*
  276 F. Supp. 3d 7 (S.D.N.Y. 2017) (Gardephe, J.) ..................40

*In re Alamgir A.,*
  81 A.D.3d 937 (2d Dep't 2011) ...............................................26

*In re Alana M.,*
  2011 N.Y. Slip Op. 52321[U] (N.Y. Fam. Ct. Bronx Cty. Dec. 22, 2011) ......................23, 28

*Allen v. Fiedler,*
  96 A.D.3d 1682 (4th Dep't 2012) ..........................................3, 28

*In Re Alonso R.L.V.,*
  147 A.D.3d 1070 (2d Dep't 2017) ...........................................24

*In re Amondie T.,*
  107 A.D.3d 498 (1st Dep't 2013) .............................................27

*ANA Int'l, Inc. v. Way,*
  393 F.3d 886 (9th Cir. 2004) ............................................38, 39, 40

*Ankenbrandt v. Richards,*
  504 U.S. 689 (1992) .................................................................18

*Appalachian Power Co. v. EPA,*
  208 F.3d 1015 (D.C. Cir. 2000) ..............................................35

*Appointment of a Guardian Pursuant to Family Court Act of the Person of Christian J.C.U. v. Jorge R.C.,*
  No G-10061-2018, 2018 WL 2424279 (N.Y. Fam. Ct. May 17, 2018) ................................26

*Ass'n of Proprietary Colls. v. Duncan,*
  107 F. Supp. 3d 332 (S.D.N.Y. 2015)....................................8, 9

*Auer v. Robbins,*
   519 U.S. 452 (1997)............................................................................................9

*Bennett v. Spear,*
   520 U.S. 154 (1997)......................................................................................33, 34

*Bowen v. Georgetown Univ. Hosp.,*
   488 U.S. 204 (1988)..........................................................................................15

*Budhathoki v. Nielsen,*
   898 F.3d 504 (5th Cir. 2018) .......................................................................20, 21

*Bultasa Buddhist Temple of Chi. v. Nielsen,*
   878 F.3d 570 (7th Cir. 2017) .............................................................................39

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
   467 U.S. 837 (1984)............................................................................................9

*Ciba-Geigy Corp. v. EPA,*
   801 F.2d 430 (D.C. Cir. 1986) ..........................................................................34

*Cohen v. JP Morgan Chase & Co.,*
   498 F.3d 111 (2d Cir. 2007)...........................................................................9, 11

*Copeland v. Vance,*
   893 F.3d 101 (2d Cir. 2018)...............................................................................21

*CropLife Am. v. EPA,*
   329 F.3d 876 (D.C. Cir. 2003) ..........................................................................35

*De La Mota v. U.S. Dep't of Educ.,*
   No. 02 Civ. 4276(LAP), 2003 WL 21919774 (S.D.N.Y. Aug. 12, 2003)
   (Preska, J.)..........................................................................................................33

*Diersen v. Chicago Car Exchange,*
   110 F.3d 481 (7th Cir. 1997), *cert. denied*, 522 U.S. 868 (1997)...........................15

*El-Khader v. Monica,*
   366 F.3d 562 (7th Cir. 2004), *reh'g en banc denied*.............................................39

*Encino Motorcars, LLC v. Navarro,*
   136 S. Ct. 2117 (2016)........................................................................................3

*Esso Standard Oil Co. (PR) v. United States,*
   559 F.3d 1297 (Fed. Cir. 2009)..........................................................................15

*FCC v. Fox Television Stations, Inc.,*
   556 U.S. 502 (2009).............................................................................................4

*First America Bank v. Resolution Tr. Corp.*
   30 F.3d 644 (5th Cir. 1994) ................................................15

*Firstland International Inc. v. INS*,
   377 F.3d 127 (2d Cir. 2004)................................................40

*Garcia v. Holder*,
   659 F.3d 1261 (9th Cir. 2011) ............................................38

*Ghanem v. Upchurch*,
   481 F.3d 222 (5th Cir. 2007) ..............................................39

*Green v. Napolitano*,
   627 F.3d 1341 (10th Cir. 2010) ..........................................39

*Matter of Guardianship of Keilyn GG*,
   159 A.D.3d 1295 (3d Dep't 2018)........................................26

*In re Hei Ting C.*,
   109 A.D.3d 100 (2d Dep't 2013) ....................................20, 21

*Iglesias v. U.S.*,
   848 F.2d 362 (2d Cir. 1988)................................................17

*INS v. St. Cyr*,
   533 U.S. 289 (2001)............................................................37

*Islam v. Rodriguez*,
   Civil Action No. 16-2424 (ES) (MAH), 2018 WL 576830 (D.N.J. Jan. 25,
   2018) ..................................................................................39

*Israel-British Bank (London) Ltd. v. FDIC*,
   536 F.2d 509 (2d Cir. 1976)................................................12

*J.L. v. Cissna*,
   2018 U.S. Dist. LEXIS 182702 (N.D. Cal. Oct. 24, 2018)............................. *passim*

*Jilin Pharm. USA, Inc. v. Chertoff*,
   447 F.3d 196 (3d Cir. 2006)................................................39

*Matter of Jonathan M.*,
   306 A.D.2d 413 (2d Dep't 2003)..........................................27

*In re Karen C.*,
   111 A.D.3d 622 (2d Dep't 2013)..........................................26

*Koopmann v. U.S. Dep't of Transp.*,
  __ F. Supp. 3d __, No. 18-CV-3460 (JMF), 2018 WL 3946450 (S.D.N.Y.
  Aug. 16, 2018) ........................................................................................................................8

*Kreis v. Sec'y of the Air Force*,
  406 F.3d 684 (D.C. Cir. 2005) .................................................................................29, 30

*Kucana v. Holder*,
  558 U.S. 233 (2010).............................................................................................................38

*Lamie v. U.S. Tr.*,
  540 U.S. 526 (2004).............................................................................................................11

*Bernardo ex rel. M & K Eng'g, Inc. v. Johnson*,
  814 F.3d 481 (1st Cir. 2016) .............................................................................................39

*Matter of Marisol N.H.*,
  115 A.D.3d 185 (2d Dep't 2014) .....................................................................................24

*Massachusetts v. EPA*,
  549 U.S. 497 (2007)...............................................................................................................9

*Mehanna v. U.S. Citizenship & Immigration Servs.*,
  677 F.3d 312 (6th Cir. 2012) .............................................................................................39

*Mejia Rodriguez v. U.S. Dep't of Homeland Sec.*,
  562 F.3d 1137 (11th Cir. 2009) (per curiam).............................................................39

*In re Michael O.F.*,
  119 A.D.3d 785 (2d Dep't 2014) .....................................................................................24

*In re Mohamed B.*,
  83 A.D.3d 829 (2d Dep't 2011) .......................................................................................26

*Nat'l Audubon Soc'y v. Hoffman*,
  132 F.3d 7 (2d Cir. 1997) .....................................................................................................6

*Navajo Nation v. U.S. Dep't of Interior*,
  819 F.3d 1084 (9th Cir. 2016) .........................................................................................35

*Osorio-Martinez v. Attorney General United States of America*,
  893 F.3d 153 (3d Cir. 2018)..............................................................................................38

*Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs.*,
  444 F.3d 991 (8th Cir. 2006), *cert. denied*, 549 U.S. 1205 (2007)........................15

*Perez-Olano v. Gonzalez*,
  248 F.R.D. 248 (C.D. Cal. 2008) .....................................................................................18

*R.I.L.-R v. Johnson*,
   80 F. Supp. 3d 164 (D.D.C. 2015) ..............................................................6, 35, 37

*Red Lake Band of Chippewa Indians v. United States*,
   800 F.2d 1187 (D.C. Cir. 1986) ...........................................................................37

*Rhodes-Bradford v. Keisler*,
   507 F.3d 77 (2d Cir. 2007).......................................................................................9

*Ross v. Blake*,
   136 S. Ct. 1850 (2016) ...........................................................................................11

*Sands v. U.S. Dep't of Homeland Sec.*,
   308 F. App'x 418 (11th Cir. 2009) ........................................................................39

*SEC v. Chenery Corp.*,
   318 U.S. 80 (1943)...................................................................................................9

*Sepulveda v. Gonzales*,
   407 F.3d 59 (2d Cir. 2005)................................................................................38, 39

*Sharkey v. Quarantillo*,
   541 F.3d 75 (2d Cir. 2008)........................................................................36, 38, 40

*In re Shontae R.*,
   48 A.D.3d 1006 (3d Dep't 2008) ...........................................................................24

*Singh v. Gonzales*,
   468 F.3d 135 (2d Cir. 2006)...................................................................................40

*Succar v. Ashcroft*,
   394 F.3d 8 (1st Cir. 2005) ......................................................................................17

*Travelers Ins. Co. v. 633 Third Assoc.*,
   14 F.3d 114 (2d Cir. 1994)......................................................................................21

*In re Trudy-Ann W.*,
   73 A.D.3d 793 (2d Dep't 2010) .............................................................................26

*U.S. Gypsum Co. v. Muszynski*,
   161 F. Supp. 2d 289 (S.D.N.Y. 2001) (Rakoff, J.) ...............................................36

*U.S. v. Marte*,
   356 F.3d 1336 (11th Cir. 2004) .............................................................................15

*United States v. Fernandez-Antonia*,
   278 F.3d 150 (2d Cir. 2002)...................................................................................21

*Venetian Casino Resort, L.L.C. v. E.E.O.C.*,
  530 F.3d 925 (D.C. Cir. 2008) ...........................................................................35

*Matter of Vernice B.*,
  129 A.D.3d 714 (2d Dep't 2015) ...................................................................22, 27

*Weisberg v. U.S. Dep't of Justice*,
  489 F.2d 1195 (D.C. Cir. 1973) (en banc) .........................................................32

*Whitman v. American Trucking Ass'ns*,
  531 U.S. 457 (2001) .............................................................................................36

*Wideman v. Wideman*,
  38 A.D.3d 1318 (4th Dep't 2007) ........................................................................23

## STATUTES

5 U.S.C. § 552 ........................................................................................................32, 33

5 U.S.C. § 704 ..............................................................................................................33

5 U.S.C. § 706(2)(A)-(D) ..............................................................................................8

8 U.S.C. § 1101(a)(27)(J) .....................................................................................*passim*

8 U.S.C. § 1101(b)(1) ..................................................................................................13

8 U.S.C. § 1154 ............................................................................................................33

8 U.S.C. § 1155 ................................................................................................33, 39, 40

8 U.S.C. § 1232(d) ..................................................................................................1, 13

8 U.S.C. § 1252(a)(2)(B)(i) .........................................................................................40

8 U.S.C. § 1252(a)(2)(B)(ii) .............................................................................33, 36, 37

Fostering Connections to Success and Increasing Adoptions Act of 2008 ...................22

Immigration Act of 1990, Pub. L. 101-649, § 153, 104 Stat. 4978 (1990)............................14, 18

Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, § 219(a), 108 Stat. 4305 (1994) ....................................................................12

N.Y. DOM. REL. LAW § 74 ...........................................................................................23

N.Y. FAM. CT. ACT § 115 ..............................................................................................6

N.Y. FAM. CT. ACT § 141 ............................................................................................27

N.Y. FAM. CT. ACT § 657 ...............................................................3, 7, 23, 24, 28, 29

N.Y. FAM. CT. ACT § 661 ...............................................3, 6, 7, 23, 24, 25, 26, 27

N.Y. FAM. CT. ACT § 1012 ........................................................................22, 27

N.Y. FAM. CT. ACT § 1013(c) ....................................................................22, 27

N.Y. FAM. CT. ACT § 1015-a ...........................................................................24

N.Y. FAM. CT. ACT § 1052 ...............................................................................23

N.Y. FAM. CT. ACT § 1053 ...............................................................................23

N.Y. FAM. CT. ACT § 1054 ...............................................................................23

N.Y. FAM. CT. ACT § 1055 ...........................................................................3, 23

N.Y. FAM. CT. ACT § 1057 ...............................................................................23

N.Y. FAM. CT. ACT § 1089 .....................................................................3, 23, 24

N.Y. SURR. CT. PROC. ACT § 1704 ..................................................................24

Pub. L. No. 110-351, 122 Stat. 3975 ..............................................................22

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008,
    Pub. L. No. 110-457, § 122 Stat. 5044 (2008)....................................6, 12

## RULES

Fed. R. Civ. P. Rule 56 .......................................................................................8

## REGULATIONS

8 C.F.R. § 204.11 ................................................................................... *passim*

58 Fed. Reg. 42,843 (Aug. 12, 1993)......................................................5, 14, 18

76 Fed. Reg. 54978 ...........................................................................................16

## OTHER AUTHORITIES

2008 Reg. Sess., Ch. 404 (N.Y. 2008) ............................................................23

Assembly Memo in Support, Bill Jacket, L. 2008 ch. 404 ...............................3

N.Y. Bill Jacket, A.B. 8358-B, 231st ...............................................................23

R.F.M., T.D., S.W., D.A.F.A., and O.M.S. ("Plaintiffs"), on behalf of themselves and all other similarly situated individuals (the "Proposed Class"), respectfully submit this Memorandum of Law in support of Plaintiffs' Cross-Motion for Summary Judgment and in opposition to Defendants' Motions to Dismiss and for Summary Judgment.

## PRELIMINARY STATEMENT

R.F.M., T.D., S.W., D.A.F.A., and O.M.S., and the members of the Proposed Class, meet the requirements for Special Immigrant Juvenile status ("SIJS") as set forth in the Immigration and Nationality Act ("INA") and the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA").  Each Plaintiff has been declared dependent on the New York Family Court ("Family Court") in the context of a guardianship proceeding.  *See* 8 U.S.C. § 1101(a)(27)(J)(i).  In each proceeding, the Family Court determined that it would not be in the child's best interests to return to his or her country of nationality or last residence.  *Id*. § 1101(a)(27)(J)(ii).  Each child was under the age of 21 at the time of the petition, and is unmarried.  *Id.* § 1232(d)(4)(A).  And—as the Family Court found in each case— each child suffered abuse, neglect, and/or abandonment by a parent, such that reunification with one or both parents is not viable.  8 U.S.C. § 1101(a)(27)(J)(i).  For nearly a decade, U.S. Citizenship and Immigration Services ("USCIS") correctly recognized that such individuals are eligible for humanitarian relief under 8 U.S.C. § 1101(a)(27)(J) ("SIJS Statute").

That changed in early 2018.  As part of a blanket policy of denying all SIJS petitions filed by petitioners aged 18-20 years old (the "Over-18-Denial Policy"), USCIS began rejecting each child's SIJS petition on the grounds that the Family Court was not a juvenile court because it could not return a child over the age of 18 back to a parent's custody and/or lacked authority to issue findings involving the viability of reunification due to abuse, neglect, and abandonment.  But New York Family Courts have well-established authority to preside over

guardianship proceedings for children under the age of 21, and to issue a broad range of decisions, findings, and orders necessary to promote the interests of the subject child.  To this end, it is settled law that New York Family Courts have authority to make findings in guardianship proceedings about a child's relationship with an estranged parent, including whether there has been abuse, neglect, or abandonment such that reunification is not viable— even where a child is 18 or older.

USCIS's Over-18-Denial Policy is arbitrary and capricious, and USCIS's positions in this case distort both federal and state law.  USCIS's attempts to justify its Over-18-Denial Policy fail for the following reasons.

*First*, USCIS attempts to read into the SIJS Statute a requirement that the state court render a legal conclusion regarding the potential termination and restoration of a parent's custody rights over a child.  But the agency fails to identify any statutory text requiring this.  The only legal authority cited by USCIS is an outdated regulation defining the term "eligible for long-term foster care."  *See* 8 C.F.R. § 204.11(d)(2)(ii).  That statutory reference to foster care was *removed* from the SIJS Statute in 2008, when Congress expanded SIJS eligibility though the TVPRA.  USCIS's cramped interpretation is fundamentally at odds with Congress's efforts to expand the availability of SIJS.

*Second*, USCIS attempts to restrict SIJS eligibility by reinterpreting the regulatory definition of "juvenile court" as containing a requirement that the state court must have the authority to restore a parent's custody rights.  Such a narrow definition would be inconsistent with the statute, which requires, among other things, that a petitioner be declared "dependent on" a juvenile court *or* placed in a qualifying custody arrangement.  *See* 8 U.S.C. § 1101(a)(27)(J).

*Third*, even accepting USCIS's premise that the state court must have authority over the custody of a child—including the right to restore the custodial rights of a parent—New York Family Courts presiding over guardianship proceedings satisfy this requirement, including for children aged 18-20. USCIS mischaracterizes New York law when it suggests otherwise. A Family Court order of guardianship confers the guardian with the "right and responsibility to make decisions, including issuing any necessary consents, regarding the child's protection, education, *care and control*, health and medical needs, and the physical *custody* of the person of the child." N.Y. FAM. CT. ACT § 657(c) (emphases added). Accordingly, by virtue of a guardianship order from the Family Court, a juvenile is committed to the *custody* of the guardian. *See Allen v. Fiedler*, 96 A.D.3d 1682, 1684 (4th Dep't 2012) ("[T]here is no substantive difference between the rights and responsibilities of a custodian or guardian of a child.") (quoting Assembly Memo in Support, Bill Jacket, L. 2008 ch. 404) (internal quotation marks omitted). Moreover, the Family Court as a matter of law may award a parent guardianship of the child, regardless of whether the child is under or over eighteen years of age. *See* N.Y. FAM. CT. ACT §§ 661, 1055-b, 1089-a.

Not only is USCIS's Over-18-Denial Policy contrary to state and federal law, the manner in which the policy was implemented violates basic administrative law and due process principles. As USCIS acknowledges, the agency initially employed several different rationales to deny relief for the class, and has conceded that at least one of these rationales is contrary to law. (Defs.' Opp. at 16 n.6) (conceding that any RFEs seeking evidence on the question of dependency were in error). When the details of the Over-18-Denial Policy and its legal justification were finalized within the agency, it was implemented internally without notice to the public or reasoned explanation. *See Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125

(2016); *see also FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (When an agency changes its existing position, it must "display awareness that it is changing position" and "show that there are good reasons for the new policy."). It was only made public when a *Politico* reporter asked the USCIS to comment on what clearly was a change in policy.

Finally, USCIS argues that judicial review of its Over-18-Denial Policy would be improper, asserting that the policy does not constitute final agency action and invoking jurisdictional limitations on certain discretionary decisions. Both of these arguments should be rejected. USCIS's Over-18-Denial Policy is a final reviewable agency action and the Court has jurisdiction to review the policy, including revocations of SIJS based on the policy.

The facts and law underlying Plaintiffs' claims are undisputed. For all these reasons, Plaintiffs respectfully request that the Court enter summary judgment on behalf of Plaintiffs and all members of the Proposed Class.

## STATEMENT OF FACTS

Plaintiffs are immigrant youths who, between their 18th and 21st birthdays, have been determined by New York Family Court to have been abused, abandoned or neglected by one or both parents and meet the requirements for SIJS laid out on the face of the SIJS Statute. *See* Administrative Record ("AR") at 72, 155-156, 447, 595, 808-809. R.F.M. is a 20 year-old from the Dominican Republic who has been abandoned by both parents and has lived in the care of her grandmother in the Bronx since she was an infant. Decl. of R.F.M. ¶¶ 3-4. T.D. is a 20 year-old from Haiti who has been abused by family members, has been hospitalized for depression, but now has been taken under the wing of an assistant principal from her high school and strives for an education and the chance to work. Decl. of T.D. ¶¶ 4, 12-13, 17-19, 21-25, 38. S.W. is a 20 year-old abandoned by her parents to the care of a grandmother who was killed in a random act of violence in Jamaica; S.W. subsequently bounced from home to home before her uncle was

appointed her guardian.  Decl. of S.W. ¶¶ 2, 9-10, 13, 22.  D.A.F.A., who was born in El

Salvador, is a 19 year-old who was abandoned by his father and is fleeing gang violence in his

home country.  Decl. of D.A.F.A. ¶¶ 2, 8-9, 13, 26.  O.M.S. is a 20 year-old who was born in

Mexico, was reunited with her mother and siblings in the United States at age four, and was

abandoned by her physically abusive father.  Decl. of O.M.S. ¶¶ 2, 4, 6.  The New York Family

Court ("Family Court") has appointed a guardian on each Plaintiff's behalf, found that it is not

viable to reunify each Plaintiff with one or both parents because of abuse, neglect, or

abandonment, and found that it would not be in each Plaintiff's best interest to be returned to his

or her country of origin.  AR at 72, 155-156, 447-48, 544, 916-17.

        Congress created SIJS in 1990 to provide relief from deportation to unaccompanied or

undocumented neglected children in the United States.  AR at 703-704.  Initially, SIJS was

available only to youth deemed "dependent" upon a juvenile court and determined to be eligible

for long-term foster care.  AR at 703-704.  In 1993, the Immigration and Naturalization Service

(INS), now USCIS, issued a rule pursuant to the SIJS Statute clarifying that the state court need

not be called a "juvenile court" to issue qualifying orders, and instead stating that the term

referred to a "court located in the United States having jurisdiction under State law to make

judicial determinations about the custody and care of juveniles."  8 C.F.R. § 204.11(a); AR at

779.  Noting that some state courts provide continued protection to individuals over the age of

18, the agency also explicitly extended SIJS benefits to individuals over the age of 18, but under

21 years old.  *Id*. at § 204.11(c)(1); Special Immigrant Status, 58 Fed. Reg. 42843-01, 42846

(Aug. 12, 1993); AR at 779-80.

        In 2008, the TVPRA broadened SIJS by removing the requirement that a child be deemed

eligible for long-term foster care; in place of that requirement, the TVPRA permitted children to

apply for SIJS so long as they obtained a court order stating that they had suffered "abuse, neglect, or abandonment" (or something similar) by *one* parent.  TVPRA § 235(d); AR at 704, 711.  The TVPRA also expressly provided that a qualifying immigrant could apply for SIJS until the age of 21, consistent with the INA's definition of "child," and that such applications could not be rejected on the basis of the applicant's age.  TVPRA § 235(d); AR at 704-705, 710.

Since the passage of the TVPRA in 2008, USCIS repeatedly granted SIJS based on Special Finding Orders ("SFOs") (outlining the prerequisite findings to support SIJS eligibility) issued by the Family Court for petitioners up to the age of 21.  *See* Decl. of Eve Stotland ¶¶ 7-10, Doc. No. 11-8; AR at 669-670.[1]  In the State of New York, the Family Court is a specialized court of the State Unified Court System that has jurisdiction over "abuse and neglect proceedings" and "support proceedings," among other legal matters related to the care and custody of minors.  N.Y. FAM. CT. ACT § 115.  The Family Court's jurisdiction includes making custodial and caretaking determinations for minors up to age 21, including in guardianship proceedings.  *See, e.g.*, N.Y. FAM. CT. ACT § 661 (providing Family Court with jurisdiction over minors up to age 21 in guardianship proceedings); AR at 352, 735-36.  Under New York law, a guardianship order is a legal custody determination that involves the grant of physical custody rights; the Family Court has jurisdiction over custody for minors up to age 21 and has the

---

[1] Although courts are generally confined to the review of administrative record in APA cases, courts have discretion to consider evidence outside of the record when, as here, the absence of formal administrative findings makes it necessary for the court to determine the reasons for the agency's decision.  *See Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 15 (2d Cir. 1997); *R.I.L.-R v. Johnson*, 80 F. Supp. 3d 164, 174, 190 (D.D.C. 2015) (in an action challenging a DHS policy, citing facts set forth in declarations outside of the administrative record).  USCIS has not disputed any of the supporting facts cited herein from the declarations filed by Plaintiffs in support of their Motions for preliminary injunction, class certification or for leave to proceed anonymously.  While the cited facts from these declarations support granting summary judgment in Plaintiffs' favor, however, Plaintiffs' cross-motion for summary judgment is not dependent upon these facts.

authority to place a minor aged 18 or older in the custody of his or her parent.  N.Y. FAM. CT. ACT §§ 657, 661; AR at 352, 735-36.

In early 2018, USCIS started to deny SIJS petitions of individuals who were 18-20 when they received their SFOs in New York Family Court.  *See* Decl. of Beth Krause ¶ 12, Doc. No. 11-6; Stotland Decl. ¶ 8; AR at 24-27, 43-146, 389-92, 514-17, 830-32; *J.L. v. Cissna,* 2018 U.S. Dist. LEXIS 182702, at *15 (N.D. Cal. Oct. 24, 2018) (order granting preliminary injunction) ("USCIS also does not dispute Plaintiffs' assertion that it has not approved *any* SIJ petitions since its adoption of the new policy in February 2018.").[2]  USCIS's Over-18-Denial Policy is based on two legal rationales.  One rationale is that "[u]nder the implementing regulations . . . a state court that does not have authority under state law to render custody decisions with respect to a particular juvenile—that is, it lacks authority to make determinations regarding the viability of parental reunification—cannot make the factual findings necessary to support an SIJ petition."  Defs.' Opp. at 1; O.M.S. SIJS Petition Denial dated June 22, 2018 (AR at 836-841).  The second rationale is that "under New York law, family courts have not been granted jurisdiction to affect the custodial rights of parents of individuals over the age of 18." (Defs.' Opp. at 1); D.A.F.A. SIJS Petition Denial (AR at 24-29); R.F.M. SIJS Petition Denial (AR at 143-48); T.D. SIJS Petition Denial dated March 13, 2018 (AR at 514-519); S.W. SIJS Petition Denial (AR at 412-17); O.M.S. SIJS Petition Denial (AR at 836-41).

These two rationales derive from the following position and policy statement issued by the USCIS Office of Chief Counsel to the USCIS National Benefits Center and USCIS Directorate:

---

[2] In addition to New York, USCIS appears to have targeted other states with high volumes of SIJS petitions, such as California and Texas, in a concerted effort to deny SIJS petitions across the country. AR at 732-37; *see J.L. v. Cissna*, 2018 U.S. Dist. LEXIS 182702, at *15 (N.D. Cal. Oct. 24, 2018).

In order to be considered a valid juvenile court order for purposes of establishing SIJ eligibility, the court that issued the order must have had competent jurisdiction under state law to make the required determinations about the custody and care of juveniles. The evidence submitted must establish that the court had the power and authority to make the required determinations about the care and custody of the petitioner, which includes parental reunification, as a juvenile. The required determinations are meant to be judicial conclusions made in accordance with the appropriate state law….

The determination that parental reunification is no longer viable is a legal conclusion, made in accordance with relevant state child welfare laws, that the petitioner cannot reunify with one or both parents prior to aging out of the court's jurisdiction. See 8 U.S.C. § 1101(a)(27)(J)(i); 8 C.F.R. 204.11(a)(definition of eligible for long-term foster care); *see also* 6 USCIS Policy Manual J.2(D). In order for a juvenile court to have authority to determine the non-viability of family reunification, the court must have competent jurisdiction to determine whether a parent will be able to regain custody of the petitioner. Therefore, in order for a court order to be valid for the purpose of establishing SIJ eligibility, the court must have competent jurisdiction to determine both whether a parent could regain custody and to order reunification, if warranted.

(AR at 724 (emphasis omitted) (internal citations omitted) ("Legal Guidance")).

## STANDARD OF REVIEW

Where a party "seeks review of agency action under the APA, the district judge sits as an appellate tribunal and the entire case on review is a question of law." *Ass'n of Proprietary Colls. v. Duncan*, 107 F. Supp. 3d 332, 344 (S.D.N.Y. 2015) (internal quotation marks omitted). Accordingly, the usual summary judgment standard under Rule 56 of the Federal Rules of Civil Procedure does not apply to review of agency action under the APA. *Id.*; *see also Koopmann v. U.S. Dep't of Transp.*, __ F. Supp. 3d __, No. 18-CV-3460 (JMF), 2018 WL 3946450, at *3 (S.D.N.Y. Aug. 16, 2018). Because the APA authorizes a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary [or] capricious," "contrary to constitutional right," or "without observance of procedure required by law," 5 U.S.C. § 706(2)(A)-(D), summary judgment is "generally appropriate, as the question

whether an agency's decision is arbitrary and capricious … is a legal issue amenable to summary disposition." *Proprietary Colleges*, 107 F. Supp. 3d at 344 (internal quotation marks omitted). The Court should "address legal questions in deciding whether the agency acted arbitrarily, capriciously or in some other way" violated the APA. *Id.*

Although an agency generally receives deference with respect to its own regulations and the statutes it administers, *see Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984); *Auer v. Robbins*, 519 U.S. 452 (1997), deference is unwarranted "[i]f the intent of Congress is clear . . . ; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress," *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 116 (2d Cir. 2007) (internal quotation marks omitted), or "if the agency has misconceived the law," *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943). An agency decision that is based on a mistake of law is necessarily arbitrary and capricious. *See Massachusetts v. EPA*, 549 U.S. 497, 532-34 (2007) (concluding that agency action was arbitrary, capricious, and otherwise not in accordance with law because it was based on an incorrect legal conclusion). Nor is an agency entitled to *Chevron* deference where its arguments in litigation differ from those articulated at the agency level. *See Rhodes-Bradford v. Keisler*, 507 F.3d 77, 80 (2d Cir. 2007).

## ARGUMENT

I. **DEFENDANTS' ADOPTION AND IMPLEMENTATION OF THE OVER-18-DENIAL POLICY FOR NEW YORK SIJS APPLICANTS IS AN ARBITRARY AND CAPRICIOUS FINAL AGENCY ACTION**

A. **The Over-18-Denial Policy For New York Youth Is A Change In USCIS Policy**

The Over-18-Denial Policy constitutes a new policy affecting all SIJS petitioners between the ages of 18 and 20 in New York. USCIS contends that "[t]here was no 'policy' in effect with respect to the issue of New York guardianship orders issued" (*see* Defs.' Opp. at 3)

prior to November 2016.  That contention is not supported by the record.  According to Eve

Stotland, the director of Legal Services at The Door—A Center for Alternatives, Inc. ("The

Door"), with respect to several hundred petitioners over many years, "until March 2018, we had

never received a denial based on New York Family Court jurisdiction regarding children ages

18, 19 and 20."  Stotland Decl. ¶¶ 8-9.  In fact, USCIS granted Adjustment of Status based on

approved SIJS applications to a total of 664 of the Door's clients, approximately 73% of which

were over the age of 18 when the SIJS findings were granted.  *Id*.  The timing of this shift in

SIJS adjudications in early 2018 coincides with the February 2018 Legal Guidance that was

issued by USCIS Office of Chief Counsel to the USCIS National Benefits Center and USCIS

Directorate that set forth the two legal rationales for the Over-18-Denial Policy.  *See* AR at 724;

*J.L.*, U.S. Dist. LEXIS 182702 at *16 ("Whether USCIS's current interpretation of the SIJ statute

and regulation is a 'clarification' or a 'policy change' does not change that fact that the

interpretation represents a sharp departure from prior practice.").[3]

In fact, USCIS tacitly concedes that the agency never denied a SIJS petition in New York

based on the rationales provided in the Over-18-Denial Policy until early 2018.  The Defendants

are able to reference only USCIS Administrative Appeals Office ("AAO") denials from other

states that predate the agency's implementation of the Over-18-Denial Policy in New York.

Defs.' Mem. of Law in support of Motion to Dismiss in Part for Lack of Subject Matter

Jurisdiction and for Summary Judgment (Doc. No. 79, hereinafter "Defs.' MSJ") at 7-8.

Plaintiffs do not dispute inconsistencies in SIJS adjudications outside of New York prior to the

---

[3] In *J.L.*, the Northern District of California recently granted plaintiffs' request for a preliminary
injunction enjoining USCIS from effecting its new policy of SIJS adjudications on behalf of a putative
class of California SIJS petitioners.  Although not binding on this Court, and decided in a preliminary
injunction context, the *J.L.* Court's analysis is nonetheless instructive and persuasive authority for
Plaintiffs' cross-motion for summary judgment due to the nearly identical issues presented by *J.L.* and
this case.

implementation of the Over-18-Denial Policy, and, more fundamentally, those AAO decisions are irrelevant to this case because they do not address SIJS eligibility of juveniles who are under the jurisdiction of New York Family Courts.  Ultimately, while USCIS disputes the term "policy change," it cannot and does not dispute the facts:  Prior to 2018, USCIS had *never* denied a SIJS petition in New York based on the rationales cited in the February 2018 Legal Guidance.  Now, after the change in policy, USCIS denies *all* SIJS petitions in New York if the SIJS petitioners were 18 or older at the time of issuance of their SFOs.  Defendants thus can call it what they want; the facts show what amounts to a change in policy.[4]

### B. USCIS's Over-18-Denial Policy Is Based On Erroneous Interpretations Of Federal And State Law And Is Therefore Arbitrary And Capricious

The Defendants' new interpretation of the SIJS Statute is inconsistent with the plain text of the statute, contradicts the clear legislative history, and is almost entirely based on a regulation that is superseded by subsequent legislative action.  In ascertaining Congress's intent in enacting a statute, a court "begin[s] with the statutory text because if its language is unambiguous, no further inquiry is necessary."  *Cohen*, 498 F.3d at 116.  A court must "interpret the relevant words not in a vacuum, but with reference to the statutory context, structure, history, and purpose.  *Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014) (internal quotation marks omitted).  Because the SIJS Statute has been amended over time, the Court must consider the evolution of the statute and give credit to the amended statutory language.  *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) ("When Congress amends legislation, courts must presume it intends the change to have real and substantial effect.") (internal quotation marks omitted);

---

[4] Similar to the instant case, in the California SIJS litigation, "USCIS does not dispute Plaintiffs' assertion that it regularly approved SIJ petitions before February 2018."  *J.L. v. Cissna*, 2018 U.S. Dist. LEXIS 182702, at *15 (N.D. Cal. Oct. 24, 2018).

*Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("The starting point in discerning congressional intent is the existing statutory text, and not the predecessor statutes.") (internal citation omitted); *Israel-British Bank (London) Ltd. v. FDIC*, 536 F.2d 509, 512 (2d Cir. 1976) (it is appropriate to "consider the history of the phrase as it finally evolved, with particular reference to the language used in earlier statutes").

1.    **USCIS's Over-18-Denial Policy Contradicts The Federal Statute And Relies On An Outdated Regulation**

       a.    **Congress Expanded SIJS Eligibility When It Enacted The William Wilberforce Trafficking Victims Protection Reauthorization Act Of 2008**

Over time and culminating with the TVPRA in 2008, Congress amended the SIJS Statute from permitting SIJS exclusively for youth eligible for long-term foster care to a much broader category of juveniles. *See* Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, § 219(a), 108 Stat. 4305 (1994); William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, § 122 Stat. 5044 (2008) ("TVPRA"). The SIJS Statute now provides that a "special immigrant juvenile" is a youth:

> (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;

> (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence. . . .

8 U.S.C. § 1101(a)(27)(J).

Thus, to apply for SIJS, an immigrant youth must (1) be under the age of twenty-one; (2) be unmarried; (3) have been declared dependent on a state juvenile court (such as by being

appointed a guardian) or placed in the custody of a state agency or individual appointed by the court; (4) obtain a finding that reunification with one or both parents is not viable because of abuse, neglect, abandonment, or a similar basis found under state law; and (5) obtain a finding that it would not be in their best interests to be returned to their country of origin. *See* 8 U.S.C. § 1101(a)(27)(J).[5]  Nothing in the SIJS Statute can be construed as requiring Family Courts to have judicial authority to order reunification with a parent.  O.M.S. SIJS Petition Denial dated June 22, 2018 (AR at 836-41).  As the court in *J.L.* just held:  "In order to make such a finding, USCIS reasons, the court must also have the power to compel reunification if warranted. . . .  But this requirement is not found in either the SIJ statute or regulation and USCIS points to no case law to support its conclusion."  *J.L. v. Cissna,* 2018 U.S. Dist. LEXIS 182702, at *9 (N.D. Cal. Oct. 24, 2018).  Nor does the SIJS Statute require Family Courts to have "jurisdiction to affect the custodial rights of parents of individuals over 18."  D.A.F.A. SIJS Petition Denial (AR at 24-29); R.F.M. SIJS Petition Denial (AR at 143-48); T.D. SIJS Petition Denial dated March 13, 2018 (AR at 514-19); S.W. SIJS Petition Denial (AR at 412-17); O.M.S. SIJS Petition Denial (AR at 836-41).

It is undisputed that the TVPRA expanded SIJS eligibility by removing the requirement that children be deemed eligible for long-term foster care.  As USCIS's own Policy Manual explains:  "While there is no longer a requirement that a child be found eligible for long-term foster care, a juvenile court finding that reunification with one or both parents is not viable is still required for classification."  AR at 703-04.  The amendment aligns with the entire purpose of the TVPRA, which was enacted in part to provide critical protections to unaccompanied minors

---

[5] The requirements that a juvenile must be under 21 years old and unmarried are found in 8 U.S.C. § 1232(d)(6), which provides that a SIJS petition may not be denied on the basis of age if the petitioner was a "child"—that is, unmarried and under the age of 21, 8 U.S.C. § 1101(b)(1) at the time of filing.

fending for themselves in the United States.[6]  *See* AR at 643; Brief of *Amici Curiae* Members of Congress in Support of Plaintiffs' Motion for a Preliminary Injunction (Doc. No. 34-1) at 5-6. The USCIS Ombudsman ("Ombudsman"), who is charged with reporting recommendations to address inconsistencies in SIJS adjudications nationwide, confirms this purpose and effect of the TVPRA:  "[P]rovisions in the TVPRA were enacted to enhance protections for at-risk children, which was a shift from the 1997 amendments that sought to address problems and limit beneficiaries."  AR at 621, 643.

Unable to find support for its Over-18-Denial Policy in the SIJS Statute, USCIS's legal justification rests primarily on a regulation that has been superseded; namely, the description of a juvenile court order required for SIJS applications in 8 C.F.R. § 204.11(d)(2)(ii).  The regulation provides that the juvenile court order must demonstrate "that the court *has found the beneficiary eligible for long-term foster care*."  Defs.' MSJ at 14 (emphasis in original).  USCIS argues that "[u]nder the same regulations, '[e]ligible for long-term foster care means that a determination has been made by the juvenile court that family reunification is no longer a viable option.'"  *Id.* (quoting 8 C.F.R. § 204.11(a)) (emphasis omitted).

When this regulation was promulgated in 1993, the SIJS Statute contained a parallel requirement that a petitioner be "deemed eligible by [the juvenile] court for long-term foster care."  Immigration Act of 1990, Pub. L. 101-649, § 153, 104 Stat. 4978 (1990); *see* 58 Fed. Reg. at 42850.  But Congress amended the SIJS Statute in 2008 and removed the statutory requirement of foster care eligibility.  By removing this provision, Congress withdrew any authority delegated to the agency to define or interpret "eligib[ility] . . . for long-term foster

---

[6] A core principle espoused by the TVPRA is its emphasis of the "best interests of the child," which previously was absent in the INA.  *See* Brief of Amici Curiae Members of Congress in Support of Plaintiffs' Motion for a Preliminary Injunction (Doc. No. 34-1) at 5.

care." By relying on an interpretation of that outdated regulatory clause, USCIS impermissibly narrows the SIJS Statute in clear violation of Congressional intent. The agency is thus acting without Congressionally delegated authority. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (an agency's rulemaking authority "is limited to the authority delegated by Congress").

"When a regulation implements a statute, the regulation must be construed in light of the statute;" but when, as here, "a regulation conflicts with a statute, the statute controls." *U.S. v. Marte*, 356 F.3d 1336, 1341 (11th Cir. 2004). "[W]here regulations precede enactment of the statute, they cannot possibly be read as interpreting the statute." *Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs.*, 444 F.3d 991, 995 (8th Cir. 2006), *cert. denied*, 549 U.S. 1205 (2007). Similarly, a rule that is inconsistent with the statute is not entitled to deference. *See First America Bank v. Resolution Tr. Corp.* 30 F.3d 644, 647 (5th Cir. 1994). In fact, a rule that is in direct variance with unambiguous statutory provisions is void. *Diersen v. Chicago Car Exchange*, 110 F.3d 481, 486 (7th Cir. 1997), *cert. denied*, 522 U.S. 868 (1997) (finding that the rule also violated the statute's "broad purpose."); *Esso Standard Oil Co. (PR) v. United States*, 559 F.3d 1297, 1307-08 (Fed. Cir. 2009) (reliance on outdated regulations constitutes an error of law or misapprehension of law). As a District Court for the Northern District of California recently held, "USCIS's reliance on the SIJ regulation's definition of 'eligible for long-term foster care' holds no weight when Congress explicitly disapproved of that language." *J.L. et al. v. Lee Francis Cissna et al.*, *J.L. v. Cissna,* 2018 U.S. Dist. LEXIS 182702, at *10 (N.D. Cal. Oct. 24, 2018).

The proposed regulations drafted and circulated by USCIS in 2011 to reflect the TVPRA amendment further undermine USCIS's current interpretation. Defs.' Opp. at 7-8. The proposed

SIJS regulations make no mention of "long-term foster care" or "family reunification."  They do not require that a juvenile court have the power to determine that a parent could regain custody over the child and order reunification with that child.  In addressing juvenile court dependency, the proposed regulations instruct:

> The term "juvenile court" includes any court having jurisdiction to make judicial determinations about the custody and care of juveniles.  The use of the term "dependency" throughout this proposed rule encompasses dependency, commitment, or custody as provided in amended section 101(a)(27)(J)(i) of the Act, 8 U.S.C. 1101(a)(27)(J)(i).

Special Immigrant Juvenile Petitions, 76 Fed. Reg. 54978, 54980 (proposed Sept. 6, 2011).

Consistent with the current statutory text, the proposed regulations make clear that a custodial order or a dependency order would be sufficient in order for a minor to satisfy this prong of the statute.  Neither in the proposed regulations nor in the TVPRA is there any limitation on SIJS eligibility to those who were subject to a particular type of custodial placement.  In fact, the proposed regulations state:

> Proposed 8 CFR 204.11(b)(2)(i) clarifies that a juvenile who is adopted or placed under guardianship is eligible for SIJ classification under amended section 101(a)(27)(J)(i) of the Act, 8 U.S.C. 1101(a)(27)(J)(i).  This section allows eligibility where a petitioner has been "legally committed to, or placed under the custody of . . . an individual . . . ."  Therefore, commitment to or placement under the custody of an individual, can include adoption and guardianship.

76 Fed. Reg. at 54980 (proposed Sept. 6, 2011) (codified at 8 C.F.R. § 204.11).

With regard to the outdated regulations and SIJS adjudications, the Ombudsman explains, "[a]ddressing the meaningful comments of the regulated community in the issuance of a final rule as soon as possible would help clarify many of the currently problematic adjudicatory practices and clarify some of the issues arising from changes in law, gaps in outdated

regulations, and memoranda." AR at 647. In response to the Ombudsman's recommendation that DHS complete the rulemaking process, Leon Rodriguez, Director of USCIS, concedes the SIJS regulations "no longer fully comport with statutory language." AR at 0652. He explains that until the rule-making process is completed, the USCIS Policy Manual would provide "short term" consolidated and updated guidance. *Id.* And, as explained above, that Policy Manual clearly states that "there is no longer a requirement that a child be found eligible for long-term foster care." AR at 703-04.

USCIS cannot demand more than the SIJS Statute or regulation requires. Where Congress has delegated authority to an agency, the agency lacks authority to add extra-statutory requirements or to exclude an entire class of individuals whose eligibility is not excluded by statute. *See Succar v. Ashcroft*, 394 F.3d 8, 10 (1st Cir. 2005) (the Attorney General cannot preclude relief to noncitizens in violation of Congressional intent); *Iglesias v. U.S.*, 848 F.2d 362, 366 (2d Cir. 1988) (an agency may not "amend a statute . . . or add to the statute something which is not there") (internal quotation marks omitted).

Indeed, the court in *J.L.* explicitly rejected the exact argument USCIS makes in this case, holding that USCIS cannot rely on the outdated regulation to support its Over-18-Denial Policy. *J.L.*, 2018 U.S. Dist. LEXIS 182702, at *11("USCIS's reliance on language that has been explicitly removed by Congress casts significant doubt on the validity of its interpretation.").

>  **b.    Congress Vested State Courts With The Authority To Make Findings Under State Law Establishing Eligibility For SIJS**

While USCIS's interpretation of the SIJS Statute runs contrary to its plain text, the agency's interpretation also disregards Congress's clear intent to defer to state law on the SIJS eligibility criteria related to state child welfare law and to expand eligibility for SIJS. From the time the SIJS Statute was first enacted, it made clear that to establish eligibility for SIJS, an

17

immigrant must show that a state juvenile court made a declaration of dependency and that a "best interest" determination was made during an "administrative or judicial proceeding." Immigration Act of 1990, Pub. L. No. 101-649, § 153, 104 Stat. 4978 (1990).  Congress specifically vested the authority to make factual findings for SIJS eligibility criteria in the state "juvenile courts" because of the states' general domain over family matters.  *Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 265 (C.D. Cal. 2008) ("Congress appropriately reserved for state courts the power to make child welfare decisions, an area of traditional state concern and expertise.") (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 702 (1992)).

Thus, with regard to the determination that it is not in a child's best interests to be returned to his or her country of origin, "Congress elected to defer to the expertise of the States in this domestic relations matter, a traditional domain of state control."  *See* Brief of *Amici Curiae* Members of Congress at 3-4.  Additionally, the INS acknowledged that it lacked the expertise or time to make such determinations:  "[I]t would be both impractical and inappropriate for the Service to routinely readjudicate judicial or social service agency administrative determinations as to the juvenile's best interest."  *See id.* at 3 (citing Special Immigrant Status; Certain Aliens Declared Dependent on a Juvenile Court, Final Rule, Supplementary Information, 58 Fed. Reg. 42,843, 42,847 (Aug. 12, 1993)).

Determinations about the viability of children reunifying with their parents are also traditionally in the domain of state courts.  Nevertheless, USCIS now attempts to instruct New York state courts how to apply state child welfare law, substituting its own interpretation of the Family Court's jurisdiction to make findings relating to whether reunification of a child with his or her parent is viable for that of the Family Court itself.  This is contrary to both Congressional intent to (i) defer to state courts as to how they make these types of determinations in their

18

respective proceedings and (ii) expand the types of state law proceedings that make youth eligible for SIJS. *See J.L.*, 2018 U.S. Dist. LEXIS 182702, at *9 ("On the face of these statutes and regulations, [state juvenile] courts have jurisdiction to make the required SIJ findings.  The plain text of the implementing regulation imposes no substantive requirements before a state court is permitted to make SIJ findings.").

USCIS's current Policy Manual explicitly states that a SFO is sufficient for purposes of SIJS eligibility as long as it contains findings about dependency or custody, parental reunification, and best interests made under state law.  *See* AR at 706 ("If a juvenile court has made certain findings, under state law, on dependency or custody, parental reunification, and the best interests of the child, then the child may be eligible for SIJ classification.").  The SFOs for each of the Named Plaintiffs satisfy these requirements.

USCIS also now concedes that Family Courts correctly applied New York law in determining that guardianship orders are dependency orders—*i.e.*, one of the grounds that USCIS had been using to adjudicate SIJS petitions.  USCIS stated that "USCIS *agrees that under New York law, a guardianship order issued by the Family Court is a dependency order* and concedes that any RFEs seeking evidence on the question of dependency were in error (AR at 0735)."  (Defs.' Opp. at 16 n.6) (emphasis added).  This concession highlights that fact that the eligibility criteria in the SIJS Statute are highly dependent on state child welfare law concepts and New York courts are therefore best suited to make determinations about their own jurisdiction and to apply New York state law to make determinations regarding the eligibility criteria.[7]

---

[7] USCIS also appears to have conceded that the SIJS eligibility are factual findings.  For example, in O.M.S.'s denial, the agency explained that it was rejecting her petition because the finding set forth in the Family Court order "appears to be a factual determination that reunification was not practical, rather than a legal conclusion under the relevant state child welfare law."  AR 832 (denial letter of O.M.S.); *accord*

USCIS asserts that *Budhathoki v. Nielsen*, 898 F.3d 504 (5th Cir. 2018), stands for the proposition that USCIS need not defer to New York's interpretation of its own law.  Defs.' MSJ at 12-13.  But *Budhathoki* stands for a narrower proposition than that.  There, the Court concluded that SIJS orders from Texas child support proceedings (which concern access to financial child support) do not satisfy the federal statute because "[t]here was no declaration of dependency."  898 F.3d at 512.  As the *Budhathoki* court concedes, "what controls on eligibility for th[e] status is the *state law* governing decisions over the care and custody of juveniles."  *Id.* at 513.  Because the Texas child support orders did not involve custodial or supervisory rulings, they were not sufficient SFOs.  Similarly, child support orders under New York law are not valid SFOs to determine SIJS eligibility.  *See In re Hei Ting C.*, 109 A.D.3d 100, 106 (2d Dep't 2013) (upholding the Family Court's denial of the entry of SIJS findings in a child support proceeding held under New York law and noting that "[a] child becomes dependent upon a juvenile court when the court accepts jurisdiction over the custody of that child, irrespective of whether the child has been placed in foster care or a guardianship situation").

Because the state court conducting the Texas child support proceeding in *Budhathoki* did not (and apparently could not) make a finding that the state court had considered dependency or custody in the child support proceedings, the *Budhathoki* court did not defer to the Texas state court's findings.  898 F.3d at 514.  In this case, by contrast, New York law clearly establishes

_____

AR 724-25 (OCC Guidance) (same text provided as "[s]uggested language").  In its briefing, however, USCIS concedes that the special findings set forth at 8 C.F.R. § 204.11 must be *factual* findings, Defs.' MSJ at 1 ("USCIS must review the petition and consider the *factual* basis for the juvenile courts rulings in order to decide if the petition is *bona fide*," and citing 8 C.F.R.§ 204.11) (emphasis added); *see also id.* at 18 (describing the authority of the family court to make *factual* findings).  USCIS's failure to explain its interpretation until prompted by an investigative reporter, coupled with the inconsistencies between the agency's interpretation in its briefs and the agency's interpretation in Plaintiffs' denials, reflect that USCIS's interpretation does not bear the hallmarks of reasoned decision-making.  This is one reason that USCIS should not be afforded *Chevron* deference.

that Family Courts have the authority to issue orders relating to dependency and custody of 18 to

20 year olds, *see* Brief of *Amici Curiae* Certain Law Professors in Support of Plaintiffs' Motion

for a Preliminary Injunction (Doc. No. 19-2) at 5-13, and Plaintiffs each submitted Family Court

orders that contain all of the requisite findings in the SIJS Statute.  As such, it was arbitrary,

capricious and impermissible for USCIS to substitute its own interpretation of New York Family

Court jurisdiction for that of the Family Court itself.

In short, the issue here is not whether USCIS may examine SIJS orders for their

sufficiency, as USCIS suggests.  Plaintiffs are challenging USCIS's denials because, as the

Appellate Division noted in *Hei Ting*, 109 A.D.3d at 106, New York Family Courts are juvenile

courts that render custody and care determinations in accordance with New York law.  A

*Budhathoki* analysis would find that New York guardianship orders satisfy dependency as they

"in some way address custody or at least supervision," in sharp contrast to the child support

orders at issue in that case.  898 F.3d at 513.

### 2. USCIS's Over-18-Denial Policy Is Premised On An Erroneous Interpretation Of New York Law

The Over-18-Denial Policy also turns on the agency's impermissible and flawed

interpretation of New York family law.  When reviewing a federal agency's interpretation of

state law, a federal court affords no deference to the agency, and instead looks to the relevant

state courts.  *See Copeland v. Vance*, 893 F.3d 101, 117 (2d Cir. 2018) (where a law "is a state

statute, we must defer to the interpretation given to it by the state courts"); *United States v.

Fernandez-Antonia*, 278 F.3d 150, 162 (2d Cir. 2002) ("when interpreting state statutes federal

courts defer to state courts' interpretation of their own statutes"); *see also Travelers Ins. Co. v

633 Third Assoc.*, 14 F.3d 114, 119-20 (2d Cir. 1994) (federal court looks to state common law,

among other sources to determine applicable state law).

Even assuming the Over-18-Denial Policy represents a permissible interpretation of the SIJS Statute and regulations—which Plaintiffs dispute, *see supra* at § I.B.1—USCIS can only support its argument that it reasonably denied Plaintiffs SIJS classification by relying upon a tortured interpretation of New York law that focuses on certain narrow provisions while ignoring the whole.  As such, it must be rejected.

As explained below, New York statutory and case law clearly establish that the Family Court exercises jurisdiction over the "care and custody" of 18 to 20-year-olds in many types of proceedings, including foster care, guardianship, and even delinquency, and that the Family Court has authority to render factual findings within those proceedings.[8]  Even after a child turns 18, the New York Family Court has the ability to appoint a guardian—*including the parent*—so long as the child consents, and the court may place the child in the physical custody of that guardian.

        a.        **New York Family Court Has the Authority To Issue Orders Directing The Care And Custody Of Juveniles, Including Those Ages 18 To 20**

It is indisputable that the New York Family Court has the authority to issue orders directing the custody of young people ages 18 to 20.  For example, even when a child is the subject of a child protective proceeding, which must be commenced before the child turns 18, the court may enter a finding of neglect after the child turns 18. N.Y. Fam. Ct. Act §§ 1012, 1013(c); *see Matter of Vernice B*., 129 A.D.3d 714, 715 (2d Dep't 2015) (court retained jurisdiction after child turned eighteen where child consented to placement).  Upon making such

---

[8] Notably, New York Family Courts have long been committed to the care and custody of 18-20 year olds; for example, New York Family Courts had jurisdiction over 18-20 year olds in foster care years before the federal government began contributing funding for those youngsters pursuant to the Fostering Connections to Success and Increasing Adoptions Act of 2008 (Pub. L. No. 110-351, 122 Stat. 3975).

a finding, the court may, among other things, with the consent of the child 18 to 20 years old, place a child in foster care or with a relative or other suitable person, reunify the child with his or her parent, or grant guardianship of the child to a parent or relative pursuant to Article 6 of the Family Court Act.  N.Y. FAM. CT. ACT §§ 1052, 1053, 1054, 1055, 1055-b, 1057.  In subsequent proceedings to monitor a child's placement, the Family Court retains the authority to, with the consent of an 18 to 20 year old, enter orders directing continued foster care or guardianship with a parent or relative.  N.Y. FAM. CT. ACT § 1089.

The Family Court's authority to enter guardianship orders for children over 18 is clear and unequivocal in Family Court Act § 661.[9]  Equally clear is that, under New York law, a guardianship order is an order directing care and custody.[10]

Ignoring this clarity, USCIS seizes upon Family Court Act § 651, which governs custody and visitation, to argue that a parent's ability to seek custody of a child 18 or older under that provision somehow is relevant to a guardianship order made pursuant to Section 661.  Defs.' MSJ at 16.  It is not, and the cases that USCIS cites to support this position are either inapposite

---

[9] Section 661(a) provides:  "Guardianship of the person of a minor or infant. When making a determination regarding the guardianship of the person of a minor or infant, the provisions of the surrogate's court procedure act shall apply to the extent they are applicable to guardianship of the person of a minor or infant and do not conflict with the specific provisions of this act. For purposes of appointment of a guardian of the person pursuant to this part, the terms infant or minor shall include a person who is less than twenty-one years old who consents to the appointment or continuation of a guardian after the age of eighteen."  N.Y. FAM. CT. ACT § 661.

[10] Under New York law, a guardianship order grants the guardian the authority to make decisions about the physical custody of the child.  N.Y. FAM. CT. ACT §§ 657(c), 661; *see also Wideman v. Wideman*, 38 A.D.3d 1318, 1319 (4th Dep't 2007); *In re Alana M.*, 2011 N.Y. Slip Op. 52321[U], at *9 (N.Y. Fam. Ct. Bronx Cty. Dec. 22, 2011); Pls.' PI Mot. (Doc. No. 8) at 10-11; Decl. of the Hon. A. Gail Prudenti (Doc. No. 11-5); *see* Brief of *Amici Curiae* Certain Law Professors at 11-12.  Under New York law, guardianship is functionally equivalent to legal custody.  *See* N.Y. Bill Jacket, A.B. 8358-B, 231st Leg., 2008 Reg. Sess., Ch. 404 (N.Y. 2008) (clarifying that guardians and custodians have the same rights and responsibilities with respect to the children in their care); N.Y. FAM. CT. ACT § 657; N.Y. DOM. REL. LAW § 74; Pls.' PI Mot. at 10-11.

or actually support the Plaintiffs.[11]  In addition, when it argues that "section 657 does not address the Family Court's authority to make custodial determinations vis-à-vis the parent," Defs.' MSJ at 16, USCIS appears not to understand that the Family Court's authority to make "custodial determinations vis-á-vis the parent"—whether the parent is the petitioner or the respondent—lies in Section 661, which incorporates the New York Surrogate's Court Procedure Act.  Section 661, consistent with the Surrogate's Court Procedure Act, authorizes the Family Court to render a decision upon a guardianship petition that must, among other things, set forth the reasons why the petitioner would be a suitable guardian and why any living parent should not be appointed guardian.  N.Y. SURR. CT. PROC. ACT § 1704.

The Family Court's appointment of a guardian for a child 18 or older requires the consent of the child, but is not automatic; the Family Court's determination is based upon a full consideration of the petition, the positions of the parties, and what is in the child's best interest. If the court is persuaded that it is in the child's best interest after a hearing, it has the authority to grant guardianship to a parent, even one who it has found neglected or abused the child, with the consent of a child 18 or older.[12]  *See, e.g., Matter of Marisol N.H.*, 115 A.D.3d 185, 189-90 (2d Dep't 2014) (mother could be appointed guardian of 19-year-old son); *see also In Re Alonso*

---

[11] In *In re Agam B.*, 121 A.D.3d 1109 (2d Dep't 2014), the Appellate Court dismissed a mother's appeal of the appointment of a guardian ad litem for her child who was over the age of 18, finding the mother had lost the legal right to make decisions on the child's behalf, especially medical decisions, *because she had not obtained some form of court-authorized guardianship*. Defs.' Opp. at 18.  In both *In re Shontae R.*, 48 A.D.3d 1006 (3d Dep't 2008), and *In re Michael O.F.*, 119 A.D.3d 785, 785 (2d Dep't 2014), the Court dismissed the appellants' appeals because the placement orders challenged had expired by their own terms, not by reason of age.  *Id.*  Those cases involved children in foster care, where Family Court retains jurisdiction to enter orders in the child's best interests, including orders that would enable the youth over 18 to be returned to the parent if the child consents.  N.Y. FAM. CT. ACT §§ 1015-a, 1089.

[12] For obvious reasons, it would be rare that a court would enter a guardianship order in favor of a parent who neglected or abused the child.

*R.L.V.*, 147 A.D.3d 1070, 1071 (2d Dep't 2017) (Family Court properly exercised discretion by issuing process to respondent father who lives out of state and who has a known address).[13]

      USCIS incorrectly states that the "named Plaintiffs' guardianship proceedings under New York Family Court Act § 661(a), standing alone, [do] not confer jurisdiction on the Family Court to make additional determinations relating to reunification due to abuse and neglect for petitioners over the age of majority." Defs.' MSJ at 17. USCIS plainly gets it wrong when it asserts that only orders issued under subdivision (b) of Section 661 are valid. AR at 736. Section 661(b) describes one type of guardianship, called permanent guardianship, which is available to children who have previously been the subjects of Family Court proceedings which terminated their parents' legal rights to parent them, either voluntarily or involuntarily. Independent of Section 661(b), Section 661(a) governs proceedings for guardianship of the person, including *any* minors up to 21 years old, and provides that "the provisions of the surrogate's court procedure act shall apply to the extent they . . . do not conflict with the specific provisions of this act." USCIS's attempt to limit valid custody orders for 18 to 20 year olds to those where a parent's rights have already been terminated is arbitrary and capricious because it is not grounded in the TVPRA or the SIJS regulation. Had Congress intended that SIJS eligibility be contingent on the termination of a parent's presumptive and constitutional custodial rights, it would have specified that.

---

[13] The arbitrary nature of USCIS's position is evident from its own waffling over what argument it would use to justify its Over-18-Denial Policy. Originally, USCIS intended to deny SIJS applications based on the lack of a custodial determination even where a petitioner submitted an SFO finding the applicant dependent on the New York Family Court. D.A.F.A. Request for Evidence (AR at 74) ("Please provide evidence that you have been placed under the custody of an individual."). But USCIS abandoned that position through its briefing in this litigation, now stating that "USCIS agrees that under New York law, a guardianship order issued by the Family Court is a [sufficient] dependency order and concedes that any RFEs seeking evidence on the question of dependency were in error (AR 0735)." (Defs.' Opp. at 16 n.6).

**b.   New York Family Courts Have The Authority To Render Determinations Of Abuse, Abandonment, And Neglect In Various Proceedings For Youth 18 To 20 Years Old, Which Is All The SIJS Statute Requires**

Under New York common law, the Family Court's authority to make findings of abuse, abandonment or neglect in the context of a guardianship proceeding—even for a child 18 or older—is well established.  *In re Trudy-Ann W.*, 73 A.D.3d 793, 796 (2d Dep't 2010); *Matter of Guardianship of Keilyn GG*, 159 A.D.3d 1295, 1297 (3d Dep't 2018); *In re Alamgir A.*, 81 A.D.3d 937, 939-40 (2d Dep't 2011); *Appointment of a Guardian Pursuant to Family Court Act of the Person of Christian J.C.U. v. Jorge R.C.*, No G-10061-2018, 2018 WL 2424279, at *3 (N.Y. Fam. Ct. May 17, 2018); *see also, e.g.*, *In re Karen C.*, 111 A.D.3d 622, 623 (2d Dep't 2013) (granting SFO for purposes of SIJS petition to a child originally issued a guardianship order at 20 years old); *In re Mohamed B.*, 83 A.D.3d 829, 830 (2d Dep't 2011) (granting an order declaring a 19-year-old child dependent on the Family Court).

USCIS argues, however, that the Named Plaintiffs' "statutory contexts for reunification, abuse, neglect, and abandonment findings derive from child protective [under Article 10] and other related proceedings authorized for children under the age of 18."  Defs.' MSJ at 17.  But the fact that a petition alleging that a child is abused, neglected or abandoned under Family Court Act Article 10 must be filed before the child turns 18 should not preclude SIJS eligibility in an over-18 guardianship pursuant to Family Court Act § 661(a).  In both types of proceedings, the Family Court's authority to enter a finding of abuse, neglect, or abandonment after the child has turned 18 is supported by New York law.  N.Y. FAM. CT. ACT §§ 1012, 1013(c); *see Matter of Jonathan M.*, 306 A.D.2d 413, 414 (2d Dep't 2003); *see also Matter of Vernice B.*, 129 A.D.3d at 715 (court retained jurisdiction after child turned eighteen where child consented to placement); *In re Amondie T.*, 107 A.D.3d 498 (1st Dep't 2013) (court properly denied motion to

dismiss petition as to 18-year-old where he was seventeen when petitions were filed and consented to continued placement in foster care). These common law principles relating to findings of abuse and neglect are consistent with the Family Court Act, which gives the New York Family Court "a wide range of powers for dealing with the complexities of family life so that its action may fit the particular needs of those before it. The judges of the court are thus given a wide discretion and grave responsibilities." N.Y. FAM. CT. ACT § 141.

Plaintiffs' SFOs all cite New York law and all include findings for each requirement of the SIJ Statute. In arguing that the citations in Plaintiffs' SFOs to Article 10 of the New York Family Court Act and to the New York Social Services Law somehow vitiate the Court's authority under Family Court Act § 661(a), USCIS impermissibly ignores New York decisional law. Defs.' MSJ at 17-18. That law establishes Family Court's authority to enter findings of abuse, abandonment and neglect in the context of over-18 guardianship proceedings.

Thus, even after a child turns 18, the New York Family Court has the ability to appoint a guardian—*including the parent*—so long as the child consents (again, under Section 661(a)), and the court may place the child in the physical custody of that guardian (including the parent). Moreover, the Court, whether in the context of a neglect or guardianship proceeding, can render determinations regarding abandonment, abuse or neglect, and the viability of reunification with a parent. A Family Court order of guardianship confers the guardian with the "right and responsibility to make decisions, including any necessary consents, regarding the child's protection, education, *care and control*, health and medical needs, and the physical *custody* of the person of the child." N.Y. Fam. Ct. Act § 657 (emphasis added). Accordingly, by virtue of the guardianship order from the Family Court, that individual has been committed to the *custody* of the guardian. *See Allen v. Fiedler*, 96 A.D.3d 1682, 1684 (4th Dep't 2012) ("[T]here is no

substantive difference between the rights and responsibilities of a custodian or guardian of a child" (quoting Assembly Memo in Support, Bill Jacket, L. 2008 ch. 404) (internal quotation marks omitted)); *In re Alana M.*, 2011 NY Slip Op 52321[U], at *11 ("Appointment as a guardian by the court is akin to lawful custody.").  Although a child (regardless of age) need not reside with the guardian, the guardian nevertheless retains the right and responsibility to make decisions about the child's physical custody—again, regardless of whether the child is under or over eighteen years of age.

In sum, New York law clearly establish that the Family Court exercises jurisdiction over the "care and custody" of 18 to 20-year-olds in many types of proceedings, including guardianship proceedings, and that the Family Court has authority to render factual findings within those proceedings.  The Family Court has the ability to appoint a guardian for 18 to 20-year olds—*including the parent*—with the child's consent.  The Family Court may place the child in the physical custody, or reunify, the child with the guardian.

### C.     The Over-18-Denial Policy Is Arbitrary And Capricious Because It Improperly Treats SIJS Petitioners Differently Depending on Whether the Petitioner Is Over or Under 18 Years Old

In addition, USCIS's Over-18-Denial Policy is arbitrary and capricious because USCIS has failed to identify any proper basis for treating an 18-year-old differently from a 17-year-old when both juveniles have guardianship-based Special Findings Orders and are identical for SIJS eligibility purposes.  Instead, USCIS merely relies upon its own misinterpretation of New York law.  *See* Defs.' Opp. at 44 ("New York law makes unequivocal legal distinctions between children under 18 and children over 18 with respect to the Family Court's *parens patriae* authority to make custodial determinations . . . .  *See supra* at Statement of Facts § D.").  But as discussed above, USCIS misunderstands and therefore misapplies New York law:  The Family Court's jurisdiction to enter a guardianship order—and therefore make a custodial determination

28

that includes whether it is viable for the juvenile to be returned to his or her parent—is the same for juveniles over 18 as it is for juveniles under 18. *See supra* at § I.B.2.

While a 17-year-old in a guardianship proceeding need not consent to the guardianship, whereas an 18-year-old must consent, that difference does not create or warrant any legal distinction for SIJS eligibility purposes: the legal rights relating to guardianship are identical, *see* N.Y. Fam. Ct. Act § 657, and the power of the New York Family Courts relating to guardianship are identical. A 17-year-old and an 18-year-old are both "juveniles" under New York law and "children" as defined in the INA; each of their guardians may make custody decisions on their behalf; neither situation requires that the Family Court reach a custody determination over the petitioner; and neither situation requires that the Family Court have the authority to reunify the petitioner with a parent. Yet USCIS's new policy results in a grant of SIJS to the 17-year-old and a denial of SIJS to the 18-year-old.[14]

"It is axiomatic that an agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so." *Kreis v. Sec'y of the Air Force*, 406 F.3d 684, 687 (D.C. Cir. 2005) (quotation marks and citation omitted). USCIS has failed to identify any interpretation of the SIJS Statute or SIJS regulation that could justify treating an 18-year-old differently from a 17-year-old when both juveniles have nearly identical, guardianship-based Special Findings Orders.[15]

---

[14] USCIS simply states that it is "not in a position to explain why, without more, one [17-year-old] sibling obtained SIJ status while the other [18-year-old sibling] did not." Defs.' Opp. at 44; *see* Defs.' MSJ at 19.

[15] As Plaintiffs explained in their moving papers, T.D., a Named Plaintiff who was 18 years-old at the time of her SIJS petition, was denied SIJS while her 16-year-old sister's SIJS petition was granted. Their applications were virtually identical, but for their age. USCIS does not deny that pursuant to its new policy, it adjudicates two applications differently if they are identical with the sole difference being whether the petitioner is over or under 18 years-old.

Thus, because USCIS has failed to provide a "legitimate reason" for treating 17-year-old SIJS applicants in guardianship proceedings differently than 18-year-old applicants, the denials of 18-year-old applicants' petitions are arbitrary and capricious. *Kreis*, 406 F.3d at 687.

**D.      USCIS's Over-18-Denial Policy Is Arbitrary And Capricious Because It Is Predicated Upon The Misuse Of USCIS's Consent Function, Which Requires The Agency To Review Orders Using The Reasonable Factual Basis Standard**

USCIS's Over-18-Denial Policy is also arbitrary and capricious because it is based upon the misconception that USCIS alone—relying on its "consent" function in granting SIJS—has the authority to determine whether a Family Court Order is a valid "Juvenile Court Order" for juveniles between 18 and 21. *See* Defs.' MSJ at 18. But USCIS's consent function is much more limited than USCIS suggests. USCIS cannot simply withhold consent because it does not wish to recognize the New York Family Court as a juvenile court in order to carry out the Over-18-Denial Policy. Moreover, USCIS's basis for refusing to recognize the Family Court—that the Family Court must make a custody determination as to each specific petitioner before it—is an *ultra vires* requirement that simply has no basis in federal law.

In order for a child to qualify for SIJS, the Secretary of Homeland Security must consent to the grant of special immigrant juvenile status. INA § 1101(a)(27)(J)(iii). According to USCIS's own Policy Manual, the proper standard in evaluating consent is whether a reasonable factual basis supports each finding by a state court necessary for SIJS classification. AR at 790, 10. In making this determination as to each finding, USCIS is not permitted to "reweigh the evidence." AR at 709. Special Immigrant Juvenile Status is not a discretionary determination, but instead a determination that a reasonable factual basis existed for each finding issued by the state court. The USCIS Ombudsman's report instructs, "USCIS's statutory consent function does not appropriately extend to a *de novo* review of every underlying fact that supported the

30

Court's findings."  AR at 638.  As the Ombudsman further recognizes, the consent function

merely serves as an acknowledgement that the SIJ classification is *bona fide*, *i.e.*, that SIJS was

not primarily[16] sought for immigration purposes.

The USCIS Ombudsman's report further advises, "nor should [USCIS] substitute its

application of State law for that of the court's exercise of dependency."  AR at 643.  This is

precisely what the Over-18-Denial Policy does.  Not only is USCIS replacing its determinations

on issues of New York state law for the determinations of the New York Family Court, but

USCIS also is usurping the Family Court's determination that it has jurisdiction to issue a SIJS

Special Findings Order for 18 to 20-year-olds.  This is expressly contrary to the TVPRA, which

recognized "State court authority and presumptive competence" regarding determinations of

dependence, abuse, neglect, abandonment, reunification, and the best interests of children.  AR at

641 (internal quotation marks omitted).  The Ombudsman explains:

> USCIS has now extended its review beyond the factual basis of
> abuse, abandonment, and neglect to now include an assessment of
> the legal basis of a court's action, contrary to the delineation of
> duties between State court and Federal immigration adjudicators
> expressed by Congress, and historic policy.  By examining a court's
> jurisdiction and delineating whether the jurisdiction of the court will
> be considered valid "for immigration purposes" USCIS is in effect
> reviving, in a novel way, the pre-TVPRA requirement to
> "specifically consent" to a court's exercise of jurisdiction.

AR at 645.

Thus, the USCIS Ombudsman has already rejected the exact position that USCIS is

taking before this Court.

---

[16] USCIS acknowledges that there "may be some immigration motive for seeking the juvenile court
order."  AR at 710.

**II.     USCIS WAS REQUIRED TO PROVIDE NOTICE OF A POLICY CHANGE OF THIS MAGNITUDE UNDER THE APA AND 5 U.S.C. § 552(A)(1)(D)**

USCIS argues that the agency has complied with the notice requirements of 5 U.S.C. § 552(a)(1)(D) because its Policy Manual is publicly available.  Defs.' MSJ at 47-48.  USCIS's argument fails to appreciate that nothing in the Policy Manual—or any publicly available source—explains the agency's Over-18-Denial Policy.

The administrative record makes clear that USCIS's adoption of a new and narrow interpretation of a juvenile court's authority was the dispositive factor in the denial of Plaintiffs' SIJS petitions.  *See*, *e.g.*, T.D. SIJS Petition Denial dated March 13, 2018 (AR at 514-19) ("Accordingly, even when no custody placement is ordered, the court must still have jurisdiction over a petitioner's custody as a juvenile to qualify as a juvenile court for special immigrant juvenile purposes." and "Once a person attains the age of 18, the family courts lack jurisdiction over the person's custody.").  This narrow interpretation of the New York Family Court's authority is simply not expressed in the Policy Manual.  The purpose of 5 U.S.C. § 552(a)(1)(D) is to ensure that all individuals affected by a particular agency action or policy have notice of its terms.  *See Weisberg v. U.S. Dep't of Justice*, 489 F.2d 1195, 1199 (D.C. Cir. 1973) (en banc) (explaining that the purpose of 5 U.S.C. § 552 was to promote the "disclosure to the public of the manner in which [USCIS] conducts its business," and that Congress "was concerned with the dilemma in which the public finds itself when forced to 'litigate with agencies on the basis of secret laws or incomplete information.'").  Neither Named Plaintiffs nor any member of the Proposed Class received such notice.  Thus, USCIS has failed complied with the notice requirements of 5 U.S.C. § 552(a)(1)(D).  That failure has left New York juveniles between the ages of 18 and 20 who suffered from abuse, abandonment, or neglect—and were relying on legally valid SIJS adjudications—without a viable path to legal permanent residency status.

**III.   THIS COURT HAS JURISDICTION TO REVIEW THE OVER-18-DENIAL POLICY, INCLUDING REVOCATIONS BASED ON THE POLICY**

USCIS sets forth two arguments as to why the Court lacks authority to review the agency's adoption of its Over-18-Denial Policy, or aspects of it.  *First*, USCIS argues that the agency has not undertaken final agency action that is subject to judicial review.  Defs.' MSJ at 7-10; *see* 5 U.S.C. § 704.  *Second*, USCIS argues that pursuant to 8 U.S.C. §§ 1154, 1155, and 1252(a)(2)(B)(ii), the Court "lacks subject matter jurisdiction to review any decisions revoking the agency's previous grant of SIJ classification."  Defs.' MSJ at 5.[17]  USCIS is wrong on both accounts.

**A.   USCIS Has Taken Reviewable Final Agency Action**

An agency action is "final"—and thus reviewable—under the APA if two conditions are satisfied: (1) "the action must mark the consummation of the agency's decisionmaking process," and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks omitted).  The requirement of finality "should be applied in a 'flexible and pragmatic way,' with particular attention given to whether the agency's position is definitive and whether it has a direct and immediate effect."  *De La Mota v. U.S. Dep't of Educ.*, No. 02 Civ. 4276(LAP), 2003 WL 21919774, at *6 (S.D.N.Y. Aug. 12, 2003) (Preska, J.) (quoting *Ciba-*

---

[17] 8 U.S.C. § 1252(a)(2)(B)(ii) states, in pertinent part, that the courts lack jurisdiction to review "any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is . . . in the discretion of the Attorney General or the Secretary of Homeland Security."

*Geigy Corp. v. EPA,* 801 F.2d 430, 435-36 (D.C. Cir. 1986)).  USCIS's Over-18-Denial Policy

satisfies the APA's finality requirement.[18]

First, the Over-18-Denial Policy "mark[s] the consummation of the agency's

decisionmaking process."  *Bennett*, 520 U.S. at 178 (internal quotation marks omitted).  The

administrative record reveals that the agency's Office of Chief Counsel undertook a review

process and issued a directive on or about February, 2018 instructing its employees how to

interpret 8 U.S.C. § 1101(a)(27)(J) and 8 C.F.R. § 204.11.  This action had an immediate and

binding effect by directing USCIS adjudicators to apply a specific approach when adjudicating

petitions of members of the Proposed Class.  The Over-18-Denial Policy is not proposed,

tentative, preliminary or voluntary—USCIS officials are required to apply, and are applying, the

policy every day.  As the Northern District of California explained, "USCIS's interpretation of

the SIJ statute to require state courts to have the power to compel reunification is undeniably a

change in agency interpretation."  *J.L.*, 2018 U.S. Dist. LEXIS 182702, at *16 (internal quotation

marks omitted).

Second, the Over-18-Denial Policy both determines "rights or obligations," and is an

action from which "legal consequences will flow."  *Bennett*, 520 U.S. at 178 (internal quotation

marks omitted).  Though only one of these requirements must be met to demonstrate the

existence of a final agency action, *id.*, both are satisfied here.  The rights of the class members to

an adjudication of their petitions on the merits have been eviscerated by USCIS's Over-18-

Denial Policy, which obligates USCIS officials to deny SIJS petitions for almost all individuals

aged 18 to 20 on the basis that the New York Family Court lacks jurisdiction to make the

---

[18] There is no dispute that the finality requirement is met for members of the Proposed Class with final denials.  USCIS's finality arguments are confined to plaintiffs' challenge of the agency's Over-18-Denial Policy.

relevant special findings and/or is not empowered to return a child to a parent's custody.  *See*

*Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1023 (D.C. Cir. 2000) (final agency action

exists where officials are given "marching orders" that they are expected to follow).

Additionally, the denial policy has profound and immediate legal consequences for Named

Plaintiffs and the Proposed Class, because it (wrongly) mandates the denial of their SIJS

petitions.  *See, e.g.*, AR at 850-51 (adjudicator checklist indicating that O.M.S. satisfied all SIJS

requirements); AR at 95 (same for D.A.F.A.); AR at 619 (same for T.D.).[19]

   The APA finality requirements are satisfied where, as here, an agency has adopted broad,

categorical rules about how it will make particular kinds of determinations.  *See CropLife Am. v.*

*EPA*, 329 F.3d 876, 881 (D.C. Cir. 2003) (EPA directive, announced through a press release, that

it would not rely on certain studies in its regulatory decision-making was final agency action);

*Appalachian Power Co.*, 208 F.3d at 1022 (agency's "settled position" which "officials in the

field are bound to apply" was final agency action).  This is so even when the contours of a policy

are not initially clear, or when the agency denies that a policy has been effected at all.  *See*, *e.g.*,

*Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 530 F.3d 925, 930-31 (D.C. Cir. 2008) (concluding

that agency's adoption of a policy permitting the disclosure of confidential information was a

final agency action, even though agency never recognized the existence of such policy in

writing); *R.I.L–R v. Johnson*, 80 F. Supp. 3d 164, 175-76 (D.D.C. 2015) (finding the existence of

a reviewable policy based on plaintiff declarations and the defendant agency's concessions in

briefing).[20]

---

[19] Adjudicator checklists were not included in the administrative files of R.F.M. or S.W.

[20] USCIS cites a single Ninth Circuit case, *Navajo Nation v. U.S. Dep't of Interior*, 819 F.3d 1084, 1098
(9th Cir. 2016), for the proposition that finality is satisfied only if there has been "an established 'formal
procedure,' in which the agency 'evaluate[s] the merits of [the issue] to arrive at a reasoned deliberate
decision," and that the final decision must constitute the agency's 'last word on the matter.'"  Defs.' MSJ

USCIS has adopted a blanket Over-18-Denial Policy that is unsupported by law.  The administrative record, the sworn declarations of practitioners, and Defendants' own briefing make clear that the new policy is a final agency action reviewable under the APA.

**B.      The Court Has Jurisdiction Over The Entire Putative Class, Including Revocations, Because This Case Challenges the Over-18-Denial Policy, Not Individual Revocation Decisions**

USCIS also argues that the Court lacks jurisdiction over youth whose SIJS petitions were revoked based on the Over-18-Denial Policy.  However, that argument is premised on the mistaken assumption that Plaintiffs seek the Court's review of specific decisions by DHS to revoke SIJS.  USCIS fails to recognize that Plaintiffs do not seek review of DHS's revocation of SIJS for any particular putative class members, but instead challenge the unlawful basis on which revocation rests.  The law is clear that such a policy is not immune from judicial review.

Here, the injunctive relief Plaintiffs seek asks the Court to assess whether USCIS's *policy is unlawful* under federal and state law.  When squarely presented with this issue, the D.C. Circuit Court of Appeals held that jurisdiction stripping provisions similar to Section 1252(a)(2)(B)(ii) do not deprive courts of jurisdiction over challenges to agency decisions that are alleged to be unlawful:

> Defendants' belief that [a jurisdiction-limiting provision of the INA] precludes jurisdiction here is mistaken.  This is because Plaintiffs do not seek review of DHS's exercise of discretion.  Rather, they challenge an overarching agency policy as unlawful under the INA,

at 9.  The test articulated in *Navajo* has not been followed by any court, and is inconsistent even with Ninth Circuit law; most importantly, however, it is inconsistent with Second Circuit law.  When determining finality, a court does not look to whether the agency has "dressed its decision with the conventional procedural accoutrements of finality," *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 479 (2001); rather, a court must "interpret[] the 'finality' element in a pragmatic way."  *Sharkey v. Quarantillo*, 541 F.3d 75, 88 (2d Cir. 2008) (internal quotation marks omitted).  "Ultimately, where an agency's decision is given practical effect, it will be sufficient to trigger judicial review."  *U.S. Gypsum Co. v. Muszynski*, 161 F. Supp. 2d 289, 291 (S.D.N.Y. 2001) (Rakoff, J.) (finding a new agency standard was given practical effect in part because the agency demanded compliance with its announced position).

> its implementing regulations, and the Constitution. That is, they
> challenge DHS policy as *outside* the bounds of its delegated
> discretion. As they rightly point out, it is not within DHS's
> discretion to decide whether it will be bound by the law.

*R.I.L-R*, 80 F. Supp. 3d at 176 (emphasis in original) (internal quotation marks omitted). By

arguing that the Court lacks jurisdiction over a subset of the Proposed Class, USCIS appears to

misconstrue the nature of this case. Plaintiffs' proposed injunctive relief would not require the

Court to review *any specific* SIJS revocation decision; instead, the proposed injunctive relief

requests that the Court overturn USCIS's illegal Over-18-Denial Policy. An agency does not

have "discretion to violate the binding laws, regulations, or policies" that define the extent of its

powers. *Red Lake Band of Chippewa Indians v. United States*, 800 F.2d 1187, 1196 (D.C. Cir.

1986).

In *J.L.*, USCIS made the exact same argument that USCIS attempts here, and the court

held that "Plaintiffs' lawsuit is not directly concerned with USCIS's specific denials of their SIJ

petitions. Rather, the instant action seeks to curb USCIS's adoption of a dubious legal theory to

justify a blanket policy of denying SIJ petitions for immigrant juveniles between the ages of 18–

20." *J.L. v. Cissna,* 2018 U.S. Dist. LEXIS 182702, at *21 (N.D. Cal. Oct. 24, 2018). Just as in

*J.L.*, the Court is asked to review USCIS's Over-18-Denial Policy, not to review individual SIJS

adjudications.

Even assuming that Plaintiffs' request for injunctive relief could be construed as

necessitating a review of specific SIJS revocations—which it does not—the Court should find

that it has jurisdiction here. The Supreme Court instructs that there is a "strong presumption in

favor of judicial review of administrative action" governing the implementation of INA

provisions like Section 1252(a)(2)(B)(ii). *INS v. St. Cyr*, 533 U.S. 289, 298 (2001); *see also*

*Kucana v. Holder*, 558 U.S. 233, 240 (2010). Thus, in general, "the narrower construction of a

jurisdiction-stripping provision is favored over the broader one." *ANA Int'l, Inc. v. Way*, 393

F.3d 886, 891 (9th Cir. 2004); *see also Sepulveda v. Gonzales*, 407 F.3d 59, 62-63 (2d Cir.

2005); *Sharkey*, 541 F.3d at 84 (only upon a showing of clear and convincing evidence of a

contrary legislative intent should the courts restrict access to judicial review of administrative

action).

A recent decision from the Third Circuit Court of Appeals found "the stripping of federal

court jurisdiction to hear the claims" of youth designated as Special Immigrant Juveniles violated

the Suspension Clause. *Osorio-Martinez v. Attorney General United States of America*, 893 F.3d

153, 166 (3d Cir. 2018). Although that case challenged Section 1252(e)(2)(B), a statute that

prevented judicial review of expedited removal orders to which youth were subject, the rationale

behind the ruling compels the same result here. The Third Circuit permitted judicial review for

SIJS designees because of Congressional intent to assist "'abused children to remain safely in the

country with a means to apply for LPR status.'" *Id.* at 168 (quoting *Garcia v. Holder*, 659 F.3d

1261, 1271 (9th Cir. 2011)). These children are afforded a host of "procedural rights designed to

sustain their relationship to the United States and to ensure they would not be stripped of SIJ

protections without due process." *Osorio-Martinez*, 893 F.3d at 171. Accordingly, youth whose

SIJS petitions previously had been approved, which results in a parole status and eligibility for

adjustment of status under INA § 245(h), should not be precluded from contesting the

deprivation of such an important status. *Id*. at 170-71.

USCIS cites no authority to support the proposition that this Court lacks jurisdiction to

review SIJS revocations because no such authority exists. In fact, while USCIS is correct that

"the Second Circuit has not addressed this issue," Defs.' MSJ at 6, to the Plaintiffs' knowledge,

*no* court has addressed the issue of whether SIJS revocations are immune from judicial review.

Moreover, USCIS has not shown any evidence, let alone clear and convincing evidence, that

Congress intended to strip courts of judicial review of SIJS revocations.  None of the cases cited

by USCIS involved a special immigrant juvenile.[21]

Although the application of the INA's jurisdiction stripping provisions to SIJS

revocations presents an issue of first impression—again, assuming *arguendo* that Plaintiffs'

request for injunctive relief could be construed as necessitating a review of specific SIJS

revocations—the Second Circuit and other Courts of Appeals have affirmed their ability to

review legal questions regarding *eligibility* for immigration relief.  *See, e.g.*, *Sepulveda v.*

*Gonzales*, 407 F.3d at 62-63 (explaining that the "longstanding principle of construing any

lingering ambiguities in deportation statutes in favor of the alien" favors a rule that does "not

strip courts of jurisdiction to review nondiscretionary decisions regarding an alien's eligibility

for the relief specified in 8 U.S.C. § 1252(a)(2)(B)(i)"); *see also Mejia Rodriguez v. U.S. Dep't*

*of Homeland Sec.*, 562 F.3d 1137, 1144-45, 1145 n.15 (11th Cir. 2009) (per curiam) (concluding

that the district court had jurisdiction to review a "non-discretionary, statutory eligibility

decision[ ] made by USCIS" in the APA context, even though court lacked jurisdiction over

discretionary aspect of determination); *Singh v. Gonzales*, 468 F.3d 135, 138 (2d Cir. 2006);

---

[21] *See Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570 (7th Cir. 2017) (nonimmigrant religious worker visa); *Bernardo ex rel. M & K Eng'g, Inc. v. Johnson*, 814 F.3d 481 (1st Cir. 2016) (work visa); *Mehanna v. U.S. Citizenship & Immigration Servs.*, 677 F.3d 312 (6th Cir. 2012) (spousal visa); *Green v. Napolitano*, 627 F.3d 1341 (10th Cir. 2010) (spousal visa); *Abdelwahab v. Frazier*, 578 F.3d 817 (8th Cir. 2009) (spousal visa); *Sands v. U.S. Dep't of Homeland Sec.*, 308 F. App'x 418 (11th Cir. 2009) (amateur athlete visa); *Ghanem v. Upchurch*, 481 F.3d 222 (5th Cir. 2007) (spousal visa); *Jilin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196 (3d Cir. 2006) (work visa); *El-Khader v. Monica*, 366 F.3d 562, 566 (7th Cir. 2004) (work visa), *reh'g en banc denied*; *Islam v. Rodriguez*, Civil Action No. 16-2424 (ES) (MAH), 2018 WL 576830 (D.N.J. Jan. 25, 2018) (spousal visa).  USCIS's position rests on the supposition that "good and sufficient cause" in Section 1155 grants the Attorney General unfettered authority to revoke any petition.  But the Ninth Circuit found, "the right or power to act is *not entirely* within the Attorney General's judgment or conscience."  *ANA Int'l, Inc.*, 393 F.3d at 894 (emphasis in original).  As the Ninth Circuit reviewed the revocation at issue under Sections 1155 and 1101(a)(44), this Court is urged to do the same using Section 1101(a)(27)(J).

*Agor v. Lynch*, 276 F. Supp. 3d 7, 18 (S.D.N.Y. 2017) (Gardephe, J.) (rejecting the government's assertion that 8 U.S.C. § 1252(a)(2)(B)(i) barred review of a "nondiscretionary, or purely legal, decision[] regarding an alien's eligibility for . . . relief" in the context of APA challenges).  Here, whether former SIJS designees meet the eligibility criteria for SIJS is a pure legal question over which the district courts retain jurisdiction, notwithstanding the INA's bars on judicial review of discretionary determinations.[22]  *See also ANA International*, 393 F.3d at 889.

The Second Circuit has also held it retained jurisdiction to review USCIS's revocation of a visa approval where the agency failed to follow statutorily-based procedural protections.  In *Firstland International Inc. v. INS*, the Second Circuit considered a visa revocation based on the previous version of 8 U.S.C. § 1155 and held that because the INS did not comply with the specific notice standards listed in Section 1155, the revocation was improper.  377 F.3d 127, 131 (2d Cir. 2004).  More recently, the Second Circuit reaffirmed *Firstland* in holding that when a suit alleges that the agency "had no statutory basis for its revocation decision," the matter was justiciable in the context of an APA case.  *Sharkey*, 541 F.3d at 86.  Although the *Firstland* and *Sharkey* courts analyzed a prior version of Section 1155 in the context of whether USCIS violated the statutory notice provisions, the cases are instructive insofar as they suggest that the Second Circuit would likely find that courts retain jurisdiction when, as here, USCIS has failed to comply with the statutorily-based SIJS eligibility criteria.

Moreover, a decision that this Court lacks jurisdiction to review USCIS revocations based on the Over-18-Denial Policy, would lead to an absurd result.  First, the agency could circumvent all judicial review of SIJS petitions by implementing a policy of granting, and then

---

[22] As explained *supra* at § I.D, to the extent USCIS argues that what it is doing here is merely using its discretion to withhold consent to applicants' SIJS petitions, that is an improper characterization of its Over-18-Denial Policy.

revoking them.  Second, if USCIS were correct, such revocation decisions would run afoul of the procedural and substantive protections of the INA, and courts would be powerless to adjudicate suits alleging that DHS failed to follow its governing statutes with respect to revocations.  That simply is not the law.

In sum, this Court has jurisdiction over Plaintiffs' injunctive relief because the injunction sought challenges USCIS's *policy* as unlawful under federal and state law.  Even if the Court were to construe the relief sought as necessitating review of individual SIJS revocations, because the challenge to revocation presents a pure legal question regarding SIJS eligibility, the INA's jurisdiction-stripping provisions do not apply.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny USCIS's motion to dismiss in part, deny USCIS's motion for summary judgment, grant Plaintiffs' cross-motion for summary judgment, and enter judgment for Plaintiffs.

Dated:  October 25, 2018
       New York, New York                Respectfully submitted,

                                        /s/ Robert J. Malionek
                                        Robert J. Malionek
                                        Nicholas L. McQuaid
                                        Virginia F. Tent
                                        Alexander R. DeLisi
                                        LATHAM & WATKINS LLP
                                        885 Third Avenue
                                        New York, NY 10022
                                        Tel: (212) 906-1200
                                        Robert.Malionek@lw.com
                                        Nicholas.McQuaid@lw.com
                                        Virginia.Tent@lw.com
                                        Alexander.DeLisi@lw.com

                                        Adriene Holder
                                        Hasan Shafiqullah
                                        Judith Goldiner
                                        Lisa Freeman
                                        Beth Krause
                                        Jennifer Levy
                                        Julie Dona
                                        Theresa B. Moser
                                        THE LEGAL AID SOCIETY
                                        199 Water Street, 3rd Floor
                                        New York, NY 10038
                                        (212) 577-3536
                                        JLevy@legal-aid.org

                                        *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing memorandum of law complies with the word count and formatting rules set forth in Section 1.D of the Court's Individual Practices as amended by the Court's October 11, 2018 Order (Doc. No. 87).  Excluding the cover page, certificate of compliance, table of contents, and table of authorities, the total number of words in the foregoing memorandum is 12,211 as calculated by Microsoft Word.  The foregoing memorandum is double-spaced, in 12-point Times New Roman font, and uses one-inch margins.

<u>/s/ Robert J. Malionek</u>
Robert J. Malionek