**LATHAM & WATKINS LLP**

53rd at Third
885 Third Avenue
New York, New York  10022-4834
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | Rome |
| Frankfurt | San Diego |
| Hamburg | San Francisco |
| Hong Kong | Seoul |
| Houston | Shanghai |
| London | Silicon Valley |
| Los Angeles | Singapore |
| Madrid | Tokyo |
| Milan | Washington, D.C. |

July 23, 2020

<u>**VIA ECF**</u>

Hon. Louis L. Stanton
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re:   <u>*R.F.M. et al., v. Kirstjen Nielsen et al.*</u>, No. 18 Civ. 5068 (LLS)

Dear Judge Stanton:

   We, along with The Legal Aid Society, represent Plaintiffs in the above-captioned case ("*R.F.M.*").  On June 1, 2020, counsel for Defendants submitted their second compliance report (the "June Compliance Report," Doc. No. 197) pursuant to Section VI.B. of the May 31, 2019 Amended Judgment ("Amended Judgment") (Doc. No. 148).  On June 11, 2020, Plaintiffs submitted a response to the June Compliance Report pursuant to Section VI.C of the Amended Judgment, requesting a conference to address Defendants' continued non-compliance with the terms of the Amended Judgment (the "June 11 Letter") (Doc. No. 199).  On July 2, 2020, Defendants submitted a letter to the Court in response Plaintiffs' June 11 letter (the "July 2 Letter") (Doc. No. 200).  We now submit this response to reaffirm our request for a conference and to clarify the record with respect to Defendants' compliance-related deficiencies and the associated implications for *R.F.M.* Class Members.

**I.  THE AMENDED JUDGMENT REQUIRES DEFENDANTS' COMPLIANCE REPORT TO DESCRIBE "ALL ACTIONS TAKEN" BY DEFENDANTS TO COMPLY**

   In their July 2 Letter, Defendants spend five pages on the history of the Amended Judgment in an attempt to limit what they are obligated to include in their compliance reports.  The Amended Judgment speaks for itself.  It requires Defendants to provide a "description of *all actions taken . . .* to comply with the terms of this Judgment."  Amended Judgment at Section VI.B. (emphasis added).  The plain meaning of "all actions taken" defies Defendants' argument that Judge Koeltl somehow intended to limit the scope of Defendants' compliance reports.

LATHAM&WATKINS LLP

## II. DEFENDANTS' SHIFTING DEFINITIONS AND EXPLANATIONS DO NOT EXCUSE THEIR NON-COMPLIANCE WITH THE AMENDED JUDGMENT

In response to the Compliance Reports' inconsistencies identified by Plaintiffs, Defendants' July 2 Letter asserted clarifications and explanations that were not included in the original Reports.[1] Nonetheless, Defendants' July 2 Letter failed to address key deficiencies in the Compliance Reports.

Plaintiffs, the Court, and SIJS applicants should be able to read Defendants' Compliance Reports and understand "all actions" Defendants have taken to comply with the Amended Judgment. Instead, what Defendants offer is obfuscation. Since Defendants submitted their first Compliance Report on December 2, 2019 (Doc. No. 177), Defendants have *still* failed to provide clear information with respect to the following questions, all of which directly relate to actions that Defendants have been ordered by this Court to take pursuant to the Amended Judgment:

1. Before the Court entered the Amended Judgment, how many *R.F.M.* Class Member I-290B petitions were in USCIS's possession? *See* Amended Judgment at Section IV.A.

    a. How many such petitions have been adjudicated?

        i. How many such petitions were approved?

        ii. How many such petitions were denied based on determinations by USCIS that the petitions were not filed by *R.F.M.* Class Members? How many petitions were denied for other reasons?

    b. How many such petitions remain pending?

2. Since the Court entered the Amended Judgment, how many *R.F.M.* Class Member I-290B petitions has USCIS received? *See* Amended Judgment at Section IV.A.

    a. How many such petitions have been adjudicated?

        i. How many such petitions were approved?

---

[1] As just one example, with respect to the December Compliance Report, Defendants admitted "that the language used – specifically, the statement that USCIS 'received' [852 I-290B] applications – was imprecise inasmuch as the numbers do not reflect how many actual class members' applications the agency 'received' . . ." July 2 Letter at 8. Defendants blame Plaintiffs for "comparing two numbers that represent different information," when Defendants themselves admit that their reports were imprecise in the first place. *See id.*

LATHAM&WATKINS LLP

  ii. How many such petitions were denied based on determinations by USCIS that the petitions were not filed by *R.F.M.* Class Members? How many such petitions were denied for other reasons?

 b. How many such petitions remain pending?

3. Before the Court entered the Amended Judgment, how many *R.F.M.* Class Member I-360 petitions were in USCIS's possession? *See* Amended Judgment at Section IV.A-B.

 a. How many such petitions have been adjudicated?

  i. How many such petitions were approved?

  ii. How many such petitions were denied?[2]

 b. How many such petitions remain pending?

4. Since the Court entered the Amended Judgment, how many I-360 petitions implicating *R.F.M.* has USCIS received? *See* Amended Judgment at Section IV.A-B.

 a. How many such petitions have been adjudicated?

  i. How many such petitions were approved?

  ii. How many such petitions were denied?

 b. How many such petitions remain pending?

5. Before the Court entered the Amended Judgment, how many *R.F.M.* Class Member I-485 and I-765 applications were in USCIS's possession? *See* Amended Judgment at Section IV.E.

 a. How many such petitions have been adjudicated?

  i. How many such petitions were approved?

  ii. How many such petitions were denied?

 b. How many such petitions remain pending?

---

[2] As explained in Plaintiff's June 11 Letter and further below, Defendants must provide the grounds for denials of *R.F.M.* Class Members' petitions, given that there have been instances of USCIS adjudicating Class Members' petitions based on a flawed understanding of the Court's Opinion and Order. *See* June 11 Letter at Section III.B.

LATHAM&WATKINS LLP

6. Since the Court entered the Amended Judgment, how many I-485 and I-765 applications implicating *R.F.M.* has USCIS reopened? *See* Amended Judgment at Section IV.E.

   a. How many such petitions have been adjudicated?

      i. How many such petitions were approved?

      ii. How many such petitions were denied?

   b. How many such petitions remain pending?

7. Before the Court entered the Amended Judgment, how many Notices of Intent to Deny (NOIDs) or Notices of Intent to Revoke (NOIRs) were issued to *R.F.M.* Class Members?[3] *See* Amended Judgment at Section IV.D.

   a. How many such notices have been withdrawn?

   b. How many such notices remain outstanding?

8. After the Court entered the Amended Judgment, how many Notices of Intent to Deny (NOIDs) or Notices of Intent to Revoke (NOIRs) were issued to *R.F.M.* Class Members? *See* Amended Judgment at Section IV.D.

   a. How many such notices have been withdrawn?

   b. How many such notices remain outstanding?

Without answers to these questions, neither Plaintiffs nor the Court can properly assess whether Defendants are complying with the Amended Judgment. Defendants' refusal to provide clear responses to these basic questions is inexcusable and calls into question whether they are attempting to comply with the Amended Judgment in good faith. Even assuming that *all* of this data is as difficult to get as Defendants claim,[4] all the Amended Judgment orders Defendants to do

---

[3] Inexplicably, Defendants contend that they are under no obligation to provide reporting data with respect to USCIS's issuance of NOIDS or NOIRS to *R.F.M.* Class Members. *See* July 2 Letter at 12. Defendants apparently believe that they can pick and choose what actions they may include in their Compliance Report, despite the fact that the Amended Judgment clearly instructs Defendants to include a "description of *all actions taken* . . . to comply with the terms of this Judgment." Amended Judgment at Section VI.B. (emphasis added).

[4] In the negotiations leading up to the Amended Judgment, Defendants failed to inform Plaintiffs that they would be unable to provide a description of "all actions taken" to comply with the Amended Judgment. Had we understood that Defendants would beg out of their obligations with an excuse that the data is difficult to obtain, we would not have consented to the Court's entry of

is to describe all of the actions they have taken to get the answers to these questions. Despite having more than one year to do so, Defendants have not described any such actions.

Accordingly, we reiterate our request that the Court direct Defendants to supplement their Compliance Reports with the categories of information identified in Plaintiffs' June 11 Letter to the Court, *See* Sections II-III; IV.A-C, including the answers to the above questions.

### III. PLAINTIFFS FACE REAL HARM AS A RESULT OF DEFENDANTS' CONTINUED NON-COMPLIANCE WITH THE AMENDED JUDGMENT

Defendants lost this case, but the individual members of the Class have not yet won. To be clear, the Court found Defendants violated federal and state law. The Court also found that Defendants' conduct was so far afield from reasonable that attorneys' fees should be awarded to Plaintiffs. But now, in the fourteen months since the Amended Judgment, Defendants have spent most of their energy wriggling out of their continued obligations rather than ensuring that the individual members of the Class obtain the relief to which they are entitled.

Beneath the obfuscated data permeating Defendants' Compliance Reports are serious, real-world implications for *R.F.M.* Class Members. As noted in Plaintiffs' Counsel's previous correspondence with the Court and Defendants' Counsel, we continue to confront instances in which USCIS has mis-adjudicated or unreasonably delayed the adjudication of *R.F.M.* Class Member petitions in violation of the Amended Judgment:

- On January 10, 2020, Class Counsel informed Defendants' Counsel that USCIS issued a Request for Evidence in December 2019 to a Class Member because there was no evidence that the Class Member was placed in the custody of his guardian, in direct contravention of the Opinion and Order of this court. *See R.F.M. v. Nielsen*, 365 F.Supp.3d 350, 378 (S.D.N.Y. 2019). This Request for Evidence was not rescinded, and the adjudication remains pending.

- In April 2020, Class Counsel raised a series of cases to the attention of Defendants' Counsel which remain unresolved. In one case, USCIS still has not adjudicated the I-360 petition of a Mexican Class Member that was filed in *2016*. USCIS's unreasonable delay in adjudication has negatively affected nearly every aspect of this Class Member's life. With an approval, this young person would have been eligible for permanent residency beginning in December 2018.

- In April 2020, Class Counsel also alerted the Government to at least five I-290B petitions which have been pending since before the Amended Judgment, some of which were filed in 2018. USCIS still has not adjudicated these cases. Similar to the class member referred to above, these young people would be eligible to have their petitions for permanent residency adjudicated if USCIS would adjudicate their SIJS petitions.

---

the Amended Judgment, and would have sought to work with Defendants to craft the judgment in a way that the Court could monitor Defendants' compliance with the judgment.

LATHAM&WATKINS LLP

- A Class Member filed an I-290B on April 2, 2018. The Administrative Appeals Office (AAO) sent the Class Member's I-290B petition to the local USCIS office for adjudication in July 2019. The Class Member's I-290B petition remains pending. The Class Member is currently in removal proceedings with a master calendar hearing in immigration court in August 2020. The upcoming court date makes this case especially urgent because the Class Member faces the prospect of a removal order without a decision in the case.

- It has also come to the attention of Class Counsel that DHS removed at least one R.F.M. Class Member while his SIJ petition was pending, thereby preventing him from benefiting from the Amended Judgment. The Department of Justice's Office of Immigration Litigation never flagged this case or other cases pending at the Second Circuit Court of Appeals as Class Members to Class Counsel or, presumably, to Defendants' Counsel.

Because Defendants refused to provide Class Counsel with the names or even attorneys' names of Class Members, these are just illustrative examples that we are aware of. There are likely many more Class Members, including *pro se* Class Members, who are uniquely disadvantaged and at risk of removal because of Defendants' noncompliance with the Amended Judgment. Every day that Defendants delay adjudication is a day when Class Members face return to places that are against their best interests, as determined by a New York State court. Accordingly, it is absolutely critical that Defendants provide Plaintiffs, and the Court, with information necessary to evaluate the extent of Defendants' noncompliance so that remedial measures can be instituted as soon as possible. It is essential that this information include the grounds for denials. Neither Plaintiffs nor the Court can effectively assess Defendants' compliance with the Amended Judgment without understanding USCIS's reasoning in denying *R.F.M.* Class Member petitions.

\* \* \*

We respectfully reiterate our request for a conference regarding the outstanding inconsistencies and deficiencies in the Compliance Reports and Defendants' continued noncompliance with the Amended Judgment. We appreciate Your Honor's consideration of this letter and thank you for your continued attention to this matter.

Respectfully submitted,

/s/ Robert J. Malionek

Robert J. Malionek
of LATHAM & WATKINS LLP

cc: All Counsel of Record (via ECF)